**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Shuffle Tech International, LLC, et al | |
|     Plaintiffs | Civil Action No. 1:15-cv-3702 |
|     v. | Honorable Matthew F. Kennelly |
| Scientific Games Corporation, et al | |
|     Defendants | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION
TO COMPEL COMPLIANCE WITH THIS COURT'S APRIL 11 MINUTE ORDER,
FOR PRODUCTION OF ATTORNEY DOCUMENTS, FOR PRODUCTION
OF ELECTRONIC DISCOVERY, AND FOR SANCTIONS**

2624640

# TABLE OF CONTENTS

**Page**

I.     The May 23 Disclosures ..................................................................................1

II.    The Attorney Documents ...............................................................................2

     A.     Current status of the Attorney Documents..............................................3

          1.     Winston & Strawn LLP ("W&S") ...............................................3

          2.     Kirkland & Ellis LLP ("K&E") ..................................................6

          3.     Kilpatrick Townsend & Stockton LLP ("Kilpatrick")................................7

          4.     Trask Britt P.C. ("Trask Britt")..................................................7

          5.     Mark A. Litman & Associates, P.A. ("Litman") .........................8

     B.     The legal basis for Plaintiffs' motion to compel Attorney Documents ..................9

III.   Electronic Discovery...................................................................................12

     A.     Legal authorities regarding email attachments and related documents ................13

IV.    Sanctions.....................................................................................................14

V.     Conclusion ..................................................................................................15

2624640

## TABLE OF AUTHORITIES

**FEDERAL CASES**                                                                    **PAGE(S)**

*Boyd Group (U.S.), Inc. v. D'Orazio*,
　　No. 1:14-cv-7751, 2015 WL 5321262 (N.D. Ill. Sept. 11, 2015)......................................2

*Burton Mechanical Contractors, Inc. v. Foreman*,
　　148 F.R.D. 230 (N.D. Ind. 1992) ..................................................................................10

*Chaveriet v. Williams Pipe Line Co.*,
　　11 F.3d 1420 (7th Cir. 1993) ........................................................................................11

*Cohen v. Trump*,
　　No. 13-CV-2519, 2015 WL 3617124 (S.D. Cal. June 9, 2015)......................................13

*CP Solutions PTE, LTD. v. General Electric Co.*,
　　No. 3:04cv2150, 2006 WL 1272615 (D. Conn. Feb. 6, 2006) ......................................14

*Del Socorro Quintero Perez v. United States*,
　　No. 13cv1417, 2016 WL 304877 (S.D. Cal. Jan. 25, 2016) ...........................................13

*Dobbey v. Randle*,
　　No. 10 C 3965, 2014 WL 1364428 (N.D. Ill. Apr. 7, 2014)...........................................9

*Gossard v. Adia Services, Inc.*,
　　No. 91 C 2047, 1992 WL 198424 (N.D. Ill. Aug. 11, 1992)..........................................9

*Hanwha Azdel, Inc. v. C & D Zodiac, Inc.*,
　　No. 6:12-cv-00023, 2012 WL 6726412 (W.D.Va. Dec. 27, 2012) ................................14

*Hobley v. Burge*,
　　433 F.3d 946 (7th Cir. 2006) ..........................................................................................9

*In re Denture Cream Products Liability Litigation*,
　　292 F.R.D. 120 (D.D.C. 2013).......................................................................................14

*In re Sulfuric Acid Antitrust Litigation*,
　　235 F.R.D. 407 (N.D. Ill. 2006).......................................................................................2

*PSEG Power N.Y., Inc. v. Alberici Constructors, Inc.*,
　　No. 1:05-CV-657, 2007 WL 2687670 (N.D.N.Y. Sept. 7, 2007)...................................14

*Sparks Tune-Up Centers, Inc. v. Panchevre*,
　　No. 90 C 4369, 1991 WL 101667 (N.D. Ill. June 4, 1991) ...........................................11

*SRAM, LLC v. Hayes Bicycle Group, Inc.*,
No. 12 C 3629, 2013 WL 6490252 (N.D. Ill. Dec. 10, 2013) ........................................... 9

*Thermal Design, Inc. v. Am. Society of Heating, Refrigerating & Air Conditioning Eng'rs, Inc.*,
755 F.3d 832 (7th Cir. 2014) ........................................................................... 10

*U & I Corp. v. Advanced Medical Design, Inc.*,
251 F.R.D. 667 (M.D. Fla. 2008)....................................................................... 14

*Valeo Electrical Systems, Inc. v. Cleveland Die & Mfg. Co.*,
No. 08-cv-12486, 2009 WL 1803216 (E.D. Mich. June 17, 2009) ................................. 14

*Weck v. Cross*,
88 F.R.D. 325 (N.D. Ill. 1980)........................................................................... 9

## FEDERAL AUTHORITIES

Fed. R. Civ. P. 16(f)(1)(C) ................................................................................... 1

Fed. R. Civ. P. 26(b)(3)(A)(ii) ...................................................................... 1, 2, 5

Fed. R. Civ. P. 26(b)(5)(A) ................................................................................. 2

Fed. R. Civ. P. 26(b)(5)(A)(ii) ............................................................................ 1

Fed. R. Civ. P. 34 ............................................................................................ 1

Fed. R. Civ. P. 34(b)(2)(E)(i)............................................................................ 14

Fed. R. Civ. P. 37(a)(3)(B)(iv)............................................................................ 1

Fed. R. Civ. P. 45(e)(2)(A)(ii)......................................................................... 2, 5

Plaintiffs submit this memorandum in support of their motion filed herewith pursuant to this Court's May 24, 2016 Minute Order [Dkt. No. 92] and Fed.R.Civ.P. 16(f)(1)(C), 26(b)(5)(A)(ii), 34 and 37(a)(3)(B)(iv).  At the outset, as noted in Plaintiffs' Motion, pursuant to Local Rule 37.2 counsel for the parties continue discussions to resolve their dispute and progress has been made in this regard.  No firm agreement has been reached, however, and Plaintiffs are necessarily filing the instant motion pursuant to the Court's order.  Plaintiffs will work with Defendants to update the Court to the extent an agreement is reached that moots the instant motion.

I.    **THE MAY 23 DISCLOSURES**

In purported response to this Court's April 11 Minute Order, Defendants filed on May 23 a document entitled "Defendant's Disclosures Regarding Advice of Counsel" [Dkt. No 91]. However, rather than "fish or cut bait," as the Court specifically required, Defendants provided what the Court referred to in a May 24 telephone status conference with the parties as a "hedged" response, tying Defendants' disclosure to the "present time" and conditioning that disclosure on multiple contingencies including "documents reviewed and produced by Defendants to date." The Court made clear on the May 24, 2016 call that this was an unacceptable response, further querying Defendants as to whether that they had reviewed the documents in the possession of their former attorneys.  When the Defendants advised that they had not, the Court was "stunned," and advised Defendants that its Minute Order was not a discovery request from a party, but a Rule 16 Order of the Court subject to Rule 16 sanctions.  To date, Defendants have still not provided a non-hedged response to the Court's April 11 Minute Order.  This motion seeks an order directing Defendants to provide a fully compliant response to the Court's April 11 Minute

1

Order and actually "fish or cut bait" with respect to reliance on opinion of counsel and waiver of privilege.

## II.    THE ATTORNEY DOCUMENTS

Plaintiffs served their Rule 34 Requests on December 18, 2015 and February 19, 2016. *See* Exhibits A and B. Some of the requested documents are in the possession of Defendants' counsel in prior or concurrent litigations, which Plaintiffs allege to be shams, or in proceedings before the U. S. Patent and Trademark Office ("PTO"), which Plaintiffs allege to have been fraudulently prosecuted, (collectively "the Attorney Documents"), all as part of a fully successful monopolization of the market for automatic card shufflers for regulated casinos.

Plaintiffs also served Rule 45 subpoenas on Defendants' other lawyers, seeking some of the same documents. *See* Exhibits C-G. Only 3,320 pages of documents have been produced -- by one firm, Kilpatrick Townsend & Stockholm LLP ("Kilpatrick"). Plaintiffs have not received any other Attorney Documents from the subpoenaed firms or from Defendants. Nor have Defendants or their former[1] attorneys produced a privilege log[2], despite extensive claims of privilege[3] and work product, in direct violation of Rules 26(b)(5)(A) and 45(e)(2)(A)(ii), and the parties' November 30, 2015 Joint Status Report and Discovery Plan [Dkt. No. 62].

Regardless of the subpoenas, Defendants had an independent obligation under Rule 34 to review, obtain and produce requested relevant, non-privileged documents under their "control." *See, e.g., Boyd Group (U.S.), Inc. v. D'Orazio,* No. 1:14-cv-7751, 2015 WL 5321262 at *3 (N.D.

---

[1]  Winston & Strawn is still retained in the Nevada *DigiDeal* litigation.
[2]  A privilege log is necessary to test the propriety of a privilege claim and to ascertain whether documents withheld as work product may nevertheless be obtained upon a showing of "substantial need" under Rule 26(b)(3)(A)(ii).
[3]  A claim of privilege in this District must comply with the strict standards set out by Magistrate Cole in *In re Sulfuric Acid Antitrust Litigation*, 235 F.R.D. 407 (N.D. Ill. 2006).

Ill. Sept. 11, 2015) (client has legal "control" over documents in its attorneys' possession, if generated in the course of client's representation, and has a legal obligation to produce those documents). Defendants have not complied with their Rule 34 duties and, as admitted to the Court on May 24, <u>have not even reviewed the documents in the possession of their clients' other attorneys, despite the passage of over five months</u> since those documents were requested. As noted, the Court was "stunned" by this admission and thereafter invited this motion.

### A. Current status of the Attorney Documents

#### 1. Winston & Strawn LLP ("W&S")

Plaintiffs' December 18, 2015 and February 19, 2016 Rule 34 Requests for Production ("RFPs") and overlapping December 30, 2015 Rule 45 subpoena[4] to W&S (*see* Exhibit C) are directed, *inter alia*, to: (a) W&S' representation of SHFL in the alleged sham litigations against TCS John Huxley America Inc. and DigiDeal Corporation, the latter of which has just concluded in DigiDeal's favor; (b) W&S' representation of VendingData Corporation <u>against</u> Shuffle Master, Inc. in two earlier sham litigations, and (c) W&S' conduct of the PTO reexamination of the patents asserted against DigiDeal, which has also concluded in favor of DigiDeal with the cancellation or substantial amendment of all previously asserted patent claims.

Plaintiffs have conferred multiple times with W&S counsel, Mr. Kimball Anderson, accompanied on one occasion by David Jimenez-Ekman of Jenner and Block ("Jenner"), with respect to W&S' Attorney Documents. Plaintiffs substantially narrowed their Rule 45 subpoena

---

[4] Plaintiffs issued parallel Rule 34 RFPs and Rule 45 subpoenas because of: (a) the likelihood that some requested documents, many of which are old, were lost by one entity, but preserved by the other; and (b) the need to place evidence of awareness of specific prior art in the files of the subpoenaed law firms as well as the Defendants' files. This is particularly true with respect to Plaintiffs' *Walker-Process* fraud allegations which may require proof of awareness of such prior art by specific attorneys and specific inventors who had a statutory duty to disclose such art to the PTO.

requests to accommodate W&S, but that only resulted in W&S' March 29, 2016 response that it would not produce any documents, asserting that every single responsive document was either privileged or work product doctrine or was available to Plaintiffs from other sources. *See* email correspondence with W&S dated March 15-29, 2016, attached as Exhibit H. Jenner's position, as set out in its last status report is that it has no legal responsibility in this regard unless "the subpoenaed firms need and are willing to accept help." May 3 Status Report [Dkt No. 87], at 15. This position was reconfirmed by Jenner on Wednesday, May 25. *See* letter attached as Exhibit I in which Defendants continue to deny any legal obligation under Rule 34 with respect to the Attorney Documents, and, in the case of W&S, simply accepted Mr. Anderson's statement that W&S has no responsive non-privileged documents, without any review by Jenner of those documents. *Id.* at 1, 3. At a minimum, W&S' files must contain such non-privileged, non-public documents as transcripts not used in court, correspondence with opposing counsel, correspondence with third parties, etc., to which Plaintiffs are entitled.

No privilege log has been provided by either W&S or Jenner. In fact, Winston & Strawn asserts it has no such obligation under Rule 45. *See* Mr. Anderson's March 29, 2016 email to Mr. Rowan, attached as Exhibit H, where Mr. Anderson states:

> Winston & Strawn is not a party to the lawsuit, was not a participant in the Status Report and Discovery Plan, and has no obligation under Rule 45 to log voluminous privileged materials in its possession. Communications with our client likely will be reflected on Defendants' log and need not be double-logged by us.

Exhibit H at 1. However, as the Court is aware, Rule 45(e)(2)(A)(ii) expressly requires a log from the subpoenaed entity and, in any event, Jenner could not possibly log W&S' files without reviewing them.

It is not credible that every relevant document in W&S' possession is privileged or work product. Without a privilege log Plaintiffs cannot ascertain whether W&S' privilege claim meets

4

the strict *Sulfuric Acid* requirements, or whether the claimed work product is nevertheless producible under Rule 26(b)(3)(A)(ii)'s "substantial need" test.

Compounding W&S' and Jenner's non-compliance is their "catch-22" use of the subpoena. *See* May 3 Status Report [Dkt. No. 87], at 16, quoted below:

> [D]efense counsel in this litigation has requested certain boxes of documents from Winston, but the parties agreed that Winston need not provide those documents yet because they may be implicated by the pending subpoena to Winston. Contrary to Plaintiffs' assertion, Winston has not 'refus[ed] to produce a single document' to Jenner. Jenner is working collaboratively with Winston to address the subpoena to Winston and the requests to Defendants. No purpose is served by creating a need to review the same files.

In fact, Jenner has not even reviewed the "boxes of documents" it specifically "requested … from Winston." This conduct is entirely inconsistent with Defendants' obligations under Rule 34 as well as this Court's Discovery Plan and the case law. *See, e.g., Boyd*, at *3.

This same evasive behavior is mirrored in W&S' prior discovery responses in the just-concluded *DigiDeal* case where W&S, and specifically Mr. Anderson, first failed to produce deposition transcripts of two critical prior art witnesses, Robert and Larry Luciano, from previous sham litigation prosecuted by Defendants' former outside counsel, Kirkland & Ellis, until DigiDeal's counsel learned of their existence through other means. Mr. Anderson thereafter refused to produce the exhibits to those depositions, directing DigiDeal's counsel to contact the court reporter, advising that "The court reporter is not in our control," and that, in his opinion, the subject depositions were "totally irrelevant," and that "In any event, we are not spending any more time and money on your frolic and detour." *See* Exhibit F to DigiDeal's Motion for Attorneys' Fees, attached as Exhibit J. Mrs. Kerr cogently replied:

> There was a protective order in that case, and the transcript was deemed confidential. Therefore, I do not have the same right as you do to call the court reporter and get such exhibits. Quite frankly, I am shocked that both SHFL and Bally, and/or outside counsel did not retain copies of these exhibits, as well as the fact that SHFL has

concealed these deposition transcripts, and that I did not get them until only after I told you that they existed, having found out the existence of such documents through chance conversations.

The exhibits to two depositions show that during prosecution of the '935 patent, SHFL had knowledge of prior art showing precisely the same features that are claimed as novel in the '935 patent, that it knew such art was material, and it failed to disclose that art to the USPTO. This failure to disclose material prior art continued during the subsequent three years of prosecution. SHFL repeatedly asserted to the Examiner that there was no such prior art existed. This is relevant to invalidity and inequitable conduct, or could lead to the discovery of evidence, and we should have received these transcripts over a year ago to give us time to investigate this further, as well as to preserve any evidence that may exist with third parties.

*Id.* at PLA116088.

Mrs. Kerr also correctly informed Mr. Anderson that "'[c]ontrol' means 'the legal right, authority, or ability to obtain upon demand documents in the possession of another.'" *Id.* at PLA116089. Mr. Anderson ignored that controlling law, much as Defendants are ignoring it now.

Despite Mrs. Kerr's explicit recitation of the need for the exhibits, Mr. Anderson's replied: "You are now wasting your client's money and my time." *Id.* at PLA116088. Mr. Anderson's approach to discovery obligations has remained essentially the same in this litigation and it is totally unacceptable for Jenner to shirk its Rule 34 discovery obligations to review and produce the W&S documents that are clearly within its control. Mr. Anderson has admitted in the DigiDeal litigation that he is in possession of non-privileged correspondence that shows when and under what circumstances he learned of the prior art Luciano prototype which is a key issue relative to the sham litigation allegations in this cases, as explained in detail in the First Amended Complaint. *See* Exhibit J. Notwithstanding its importance, Mr. Anderson is apparently refusing to produce this correspondence (in addition to other presently unknown, but potentially equally important non-public, non-privileged documents). Since W&S' documents are clearly under Defendants' control, it would be improper for Jenner to rely solely on Mr.

Anderson's good faith (which has already been shown to be lacking) in accepting this representation that W&S has a single non-privileged responsive document, without reviewing those documents.

### 2. Kirkland & Ellis LLP ("K&E")

Plaintiffs' February 19, 2016 document subpoena to K&E is directed to K&E's representation of Shuffle Master, Inc. in the alleged sham litigations against CARD, LLC and VendingData Corporation. *See* Ex. D. K&E's March 4, 2016 response invoked both privilege and work-product but refused to "produce a privilege log or redact partially privileged documents." *See* Exhibit K at 2. K&E further stated that it would not even "collect, search for, or produce emails" absent payment for its services. *Id.* Defendants assured the Court they have been in contact with Kirkland and "have offered to assist with any needs related to the subpoena," [Dkt. No. 87], at 15, but it is now clear that Jenner has not reviewed any documents in K&E's possession, despite Defendants' known intention to assert privilege (which decision was holding up further discussion with K&E). As further made clear in Defendants' May 25 letter, they continue to assert that they have no obligation to review or produce K&E's documents under Rule 34. This is plainly wrong under *Boyd*.

### 3. Kilpatrick Townsend & Stockton LLP ("Kilpatrick")

Plaintiffs' February 19, 2016 subpoena to Kilpatrick was directed to its representation of Shuffle Master, Inc. against CARD, LLC in that alleged sham litigation. *See* Ex. E. Kilpatrick also asserted privilege and work-product but, unlike the other subpoenaed recipients, produced 3,320 pages of non-privileged paper documents on April 1, 2016. In return, Plaintiffs agreed to withdraw their subpoena, without prejudice, and to suspend the requirement for a privilege log, pending resolution of Defendants' privilege claim on May 23. The need for that log is now

apparent. Defendants' May 25 letter further advises that "when you have reached agreement with Kilpatrick," Defendants will "apply the same search and production methodology identified in Paragraph 1 [of their letter] to the "SI." In other words, Defendants' disclaim any responsibility to obtain the responsive documents from Kilpatrick, but nevertheless reserve the right to apply a second filter to such documents after an additional "30-day review time once they received the documents from Kilpatrick." *See* May 26 Letter from Defendants, Ex. L. This is not acceptable compliance with Rule 34.

### 4. Trask Britt P.C. ("Trask Britt")

Plaintiffs' February 19, 2016 subpoena to Trask Britt is directed to Trask Britt's representation of Defendants in the prosecution of card shuffler technology patents, alleged to have been fraudulently obtained. *See* Exhibit F. Trask Britt's March 4, 2016 response also invoked attorney-client and work-product privileges. Defendants state in the May 3, 2016 Joint Status Report [Dkt. No. 87] that "Trask Britt has sent potentially responsive data to counsel for Defendants for review and potential production, to the extent that Plaintiffs and Trask Britt determine through a meet-and-confer process that the data is appropriate for review." Defendants May 25 letter further indicates that such documents were provided to Jenner pursuant to "search parameters" that Trask Britt designed (but didn't disclose to Plaintiffs) and that Defendants propose to further filter those documents pursuant to an ESI protocol that was designed only for certain of Defendants' email and related electronic files, despite the fact that Trask Britt's production may be largely in hard copy for which no such ESI protocol is required. Notably, Defendants have not offered to prepare a privilege log, which they knew would be required given their May 23 disclosure (which they had presumably been deliberating since this Court's April 11 order), albeit with no prior review of any of these documents.

### 5.    Mark A. Litman & Associates, P.A. ("Litman")

Plaintiffs' March 8, 2016 subpoena to Litman is directed to the prosecution of the '982 and '935 patents asserted in the *DigiDeal* case and other related card shuffler patents.  *See* Exhibit G.  Litman advised that he had returned all paper documents to Shuffle Master, Inc. in 2011 and that his electronic files were lost.  Thus, all remaining Litman documents have been in Defendants' possession for years, but Jenner has neither produced them nor a privilege log, despite clear Rule 34 obligations, since mid-December.  There is no excuse for Jenner's failure to review and produce these documents and to provide a timely privilege log.

### B.    The legal basis for Plaintiffs' motion to compel Attorney Documents

Parties responding to Rule 34 requests have an obligation to produce responsive documents over which they have custody or "control."  *Dobbey v. Randle*, No. 10 C 3965, 2014 WL 1364428 at *1 (N.D. Ill. Apr. 7, 2014) ("control" means "documents that a party has the legal right to obtain on demand").  This obligation to produce does not turn on the party's ownership of the documents, but on whether it has "control."  *Weck v. Cross*, 88 F.R.D. 325, 327 (N.D. Ill. 1980) (legal ownership not determinative; control sufficient); *SRAM, LLC v. Hayes Bicycle Group, Inc*., No. 12 C 3629, 2013 WL 6490252 at *4 (N.D. Ill. Dec. 10, 2013) ("by including 'control' … [Rule 34] explicitly requires production of documents "not actually be owned by the party in question.").

The courts consistently hold that a client has control over documents in its attorneys' possession.  *Boyd Group (U.S.), Inc. v. D'Orazio*, No. 1:14-cv-7751, 2015 WL 5321262 at *3 (N.D. Ill. Sept. 11, 2015) (party ordered to obtain documents because, as a former client, it had a legal right to demand documents generated during that representation); *Gossard v. Adia Services,*

*Inc.*, No. 91 C 2047, 1992 WL 198424 at *2 (N.D. Ill. Aug. 11, 1992) (party has Rule 34 "control" of its documents in attorney's possession).

Defendants cite *Hobley v. Burge*, 433 F.3d 946 (7th Cir. 2006) to argue that discovery of documents held by former attorneys should only be by subpoena. *Hobley,* however*,* did not deal with a parties' obligation to produce such documents, only the propriety of sanctions imposed on the law firm solely under Rule 34, despite the law firm's ignorance of the discovery requests. Although the Court noted in *dicta* that the usual method of obtaining documents in a third party's hands is via Rule 45, the Court explicitly stated that Rule 34 recipients are not absolved of their "duty to respond fully and candidly to discovery requests." *Hobley*, 433 F.3d at 952.

Magistrate Judge Cox's September 11, 2015 decision in *Boyd* readily distinguishes *Hobley* from this case and explicitly rejects Defendants' argument:

> Based on this review of the case law, it appears clear that D'Orazio [the recipient of the Rule 34 request] has control over the relevant documents currently in possession of [his attorneys] Hagen and Miller. D'Orazio does not argue that Miller and Hagen previously served as his attorneys, or that they have possession over the documents sought by Boyd. Instead, D'Orazio, relying on *Hobley v. Burge*, 433 F.3d 946 (7th Cir. 2006), argues that Rule 34 is the improper vehicle to seek the documents in the possession of Hagen and Miller, and that Boyd's only avenue for seeking these documents is enforcing third party subpoenas pursuant to Rule 45.

> However, *Hobley* is easily distinguishable from the instant suit, and does not stand for the proposition that parties are not in control of documents that are possessed by their former attorneys.
>
>         *          *          *

> It is not particularly difficult to figure out why the *Hobley* case does not apply to D'Orazio. Notably, the Seventh Circuit never held that the city, as the party in that case, lacked control over the boxes in Jones Day's possession, or that the city had no obligation to retrieve and product those documents, to the extent they were not protected by some other privilege. Instead, the Seventh Circuit reached the uncontroversial conclusion that Jones Day was not a party to the litigation, and, therefore, was not subject to sanctions imposed pursuant to Rule 34.

> In this case, however, D'Orazaio is a party to the litigation, and is clearly subject to the discovery requirement imposed by Rule 34. As such, he must produce any documents that are in his possession, custody, or control. As a former client of Hagen

and Miller, D'Orazio has a legal right to demand that they turn over legal documents generated during their representation; in other words, he has control over those documents. Therefore, D'Orazio is ordered to obtain the relevant documents from Hagen and Miller and produce all non-privileged documents within 7 days of this order.

Aside from *Hobley,* none of Defendants' cases even address the agency relationship between attorneys and clients or the legal "control" a client has over documents held by its attorneys. See, *Thermal Design, Inc. v. Am. Society of Heating, Refrigerating & Air-Conditioning Eng'rs, Inc*., 755 F.3d 832, 836 (7th Cir. 2014), (documents requested from organization's non-employee committee members); *Burton Mechanical Contractors, Inc. v. Foreman*, 148 F.R.D. 230, 236 (N.D. Ind. 1992) (documents held by party's former employer); *Sparks Tune-Up Centers, Inc. v. Panchevre*, No. 90 C 4369, 1991 WL 101667 (N.D. Ill. June 4, 1991) (documents held by former business associates); and *Chaveriet v. Williams Pipe Line Co.,* 11 F.3d 1420, 1423, 1426 (7th Cir. 1993) (documents held by a non-party laboratory hired by another non-party to test soil samples).[5]  None of these cases even remotely implicate the attorney-client relationship.[6]

Defendants also argue that certain documents in their attorneys' files "appear to implicate pre-existing confidentiality obligations under past protective orders or non-disclosure agreements

---

[5]  Defendants further rely on *Chaveriet* for the proposition that "The fact that a party could obtain a document if it tried hard enough and maybe if it didn't try hard at all does not mean that the document is in its possession, custody, or control; in fact it means the opposite."  May 3 Status Report at 13.  This statement had nothing to do with the attorney-client relationship.

[6]  Defendants also argue that certain demands in Plaintiffs' subpoenas, such as demands 164 and 165 to Trask Britt, and 172 and 173 to Mark Littman, directed to the percentage of those firms' revenue derived from their work for Shuffle Master, Inc. and SHFL Entertainment, Inc. have nothing to do with them.  However, neither Plaintiffs' Rule 34 Request nor this motion is directed to any such documents.  Similarly, Defendants' argument that "Plaintiffs also seek information that … could reach information in other client files," citing subpoena demands directed to "Mr. Block" and the "Roblejo prototype," is similarly misplaced.  Neither Block nor Roblejo were ever represented by the subpoenaed firms.  The Block patent and the Roblejo prototypes are prior art that was withheld from the PTO.

and will require notice to third parties before they can be produced." May 3 Status Report [Dkt. 87] at 3. However, this cannot be true in the *CARD* and *Vending Data* litigations because the end result of those sham litigations was Defendants' acquisition of the parties they sued, either entirely or with respect to the intellectual property at issue. There is no longer any "third party" in those cases. Defendants control both sides of any protective order or confidentiality agreement that may have existed in those litigations. Moreover, even if any *bona fide* "third party" still exists to whom Defendants might owe a duty of notice, Defendants should have already provided that notice and resolved such confidentiality issues months ago. Finally, given the age of these documents and the extinction of the sued entities, it is hard to imagine that any of these documents contain confidential business information of any value in mid-2016. This is simply another red herring to obfuscate the issues and delay discovery.

## III.    <u>ELECTRONIC DISCOVERY</u>

Counsel have had multiple communications concerning email custodians and non-custodial electronic file folders which resulted in a significant narrowing of Plaintiffs' e-discovery search terms and a significant reduction in search "hits," from 210,170 to 57,268 direct hits, and an even greater reduction in document "families" (attachments, etc.) from 567,789 to 195,104. To further reduce Defendants' burden, Plaintiffs previously proposed that only direct search term "hits" (and their parent document) be initially produced, subject to follow-up requests for attachments or related documents, if necessary. That offer, reducing Defendants' initial production by 70%, resulted, ironically, in onerous "conditions" imposed by Defendants on any such follow-up requests. Plaintiffs rejected these unreasonable "conditions," which required Plaintiffs to guess how many follow-up document families might be required without first seeing any of the "hits."

Defendants' proposal on May 25, provided new, even more onerous conditions, as "an indivisible 'package'", *i.e.,* a "take it or leave it" proposition that, among other things, made no provision at all for the follow-up requests for attachments and internally cited documents. This proposal even excluded "parents" of hits, *i.e.,* the documents to which hits were attached. Defendants further proposed to limit the hits generated by Plaintiffs' ESI to documents they deemed responsive to Plaintiffs' original December and February requests, despite Plaintiffs' repeated statements that any search term hits that Defendants unilaterally decide are outside those original requests should be regarded as new Rule 34 requests, dated May 2, and responded to accordingly. Plaintiffs rejected Defendants' proposal in a letter dated May 26. *See* Ex. M. Defendants' next proposal continues to impose limits on family document production. *See* Ex. L.

### A.    Legal Authorities Regarding Email Attachments and Related Documents

Rule 34 and the case law interpreting it makes clear that responsive documents cannot be severed from related documents, *i.e.,* other "family" members, as Defendants require. "[A] party who produces documents shall produce them as they are kept in the usual course of business…." Fed.R.Civ.P. 34(b)(2)(E)(i). If, for example, a responsive email ("parent") has an attachment ("child"), then the attachment must be produced along with the email. *See, e.g.,* *Del Socorro Quintero Perez v. United States,* No. 13cv1417, 2016 WL 304877, at *5 (S.D. Cal. Jan. 25, 2016) ("A party produces emails in the usual course when it arranges the responsive emails by custodian, in chronological order and with attachments, if any." *See also Cohen v. Trump,* No. 13-CV-2519, 2015 WL 3617124, at *19 (S.D. Cal. June 9, 2015) (citing cases from multiple

jurisdictions that "have held that emails should be produced along with their attachments"[7]; *U & I Corp. v. Advanced Medical Design, Inc.*, 251 F.R.D. 667, 675, n.14 (M.D.Fla. 2008) (citing *PSEG Power N.Y., Inc. v. Alberici Constructors, Inc.*, No. 1:05-CV-657, 2007 WL 2687670 at *5-7 (N.D.N.Y. Sept. 7, 2007)) "[t]he dubious practice of producing emails without attachments in federal discovery has not gone unnoticed by other courts."

Similarly, Defendants' prior demand that Plaintiffs "articulate…a context-dependent … rationale for the likely responsiveness of the [related] document" as a pre-condition for production of attachments, improperly requires divulgence of attorney work-product. The *PSEG Power* case involved a similar but less onerous demand. "PSEG want[ed] Alberici to identify a concise group of attachments that are important and necessary to *Alberici* and then it would consider producing said attachments …. *Id.*, at *5. The *PSEG* Court rejected that approach:

> "PSEG's suggestion of piecemeal identification of a 'concise' cadre of emails is not a fair and practical solution…. Furthermore, such a selective process would prolong the discovery period and eventually exacerbate the demands upon everyone's time and effort, rather than alleviate them. The hidden benefit of this process to PSEG is that Alberici could unwittingly reveal some of its thinking, strategy and impression each time it identifies selected documents to be used for ineluctable purposes such as certain depositions. Such revelation may trample upon the work product doctrine."

*Id.* at *8. Defendants' proposal here is equally dilatory, inefficient and invasive of work product.

It should also be recognized that there is no harm in producing email attachments that are irrelevant to this case. Plaintiffs will bear the burden of separating the wheat from the chaff.

---

[7] *See also In re Denture Cream Products Liability Litigation*, 292 F.R.D. 120, 125 (D.D.C. 2013) (same); *Hanwha Azdel, Inc. v. C & D Zodiac, Inc.*, No. 6:12-cv-00023, 2012 WL 6726412, at *2 (W.D.Va. Dec. 27, 2012) ("Emails, specifically, are produced in the usual course of business when the responsive emails are arranged by custodian, in chronological order and with attachments…."); *Valeo Electrical Systems, Inc. v. Cleveland Die & Mfg. Co.*, No. 08-cv-12486, 2009 WL 1803216, at *2 (E.D. Mich. June 17, 2009) (same); *CP Solutions PTE, Ltd. v. General Electric Co.*, No. 3:04cv2150, 2006 WL 1272615, at *4 (D.Conn. Feb. 6, 2006).

IV.      <u>**Sanctions**</u>

Pursuant to this Court's further invitation and Fed. R. Civ. P. 16, 26 and 37, Plaintiff respectfully moves this Court for an award of their reasonable legal expenses incurred in: a) preparing this motion and attending the June 2 hearing in Chicago; b) preparing the portions of the last three status reports directed to Attorney Documents and Defendants' May 19 "conditions" to the production of email attachments and internally cited documents.

As this Court noted on May 24, the "primary reason" for this Court's "fish or cut bait" order with respect to advice of counsel and waiver of attorney-client privilege was the "massive holdup" and continued uncertainty this issue was causing with respect to the Attorney Documents.  Defendants have nevertheless perpetuated that uncertainty by "hedging" (the Court's term) their May 23 court-ordered disclosures.  Defendants' violation of that order and the consequent need for this motion dictates the award of fees and costs under Rule 16(f).

Defendants' continued refusal to collect, review and produce the Attorney Documents sought by Plaintiffs' Rule 34 requests, unless "the subpoenaed firms need and are willing to accept help" and their continued reliance on case law having no bearing on the present case, similarly justifies Plaintiffs' request for fees and costs under Rules 26 and 37, as does Defendants' insistence on onerous conditions on, or outright refusal to produce email attachments.

V.      <u>**CONCLUSION**</u>

Plaintiffs seek an order requiring:  (a) strict compliance with the Court's April 11 "fish or cut bait" order; (b) prompt production of the non-privileged documents responsive to Plaintiffs' requests for Attorney Documents; (c) a privilege log compliant with the Federal Rules and this Court's Discovery Plan with respect to any documents withheld; (d) the prompt production of the

Defendants' electronic documents, including attachments, without onerous conditions

unilaterally imposed by Defendants; and (e) appropriate monetary sanctions.


Dated:  May 27, 2016                                    Respectfully submitted,


                                                        By:  */s/  Robert A. Rowan*
                                                             One of the Attorneys for Plaintiff

                                                        Robert A. Rowan (*pro hac vice*)
                                                        rar@nixonvan.com
                                                        Joseph S. Presta (*pro hac vice*)
                                                        jsp@nixonvan.com
                                                        NIXON & VANDERHYE P.C.
                                                        901 North Glebe Rd.
                                                        Arlington, Virginia 22203
                                                        Phone:  703-816-4000
                                                        Fax:      703-816-4100

                                                        Jonathan Hill (IBN 6256939)
                                                        jhill@freeborn.com
                                                        Jeffery Cross (IBN 547980)
                                                        jcross@freeborn.com
                                                        David Ter Molen (IBN 6270715)
                                                        dtermolen@freeborn.com
                                                        FREEBORN & PETERS LLP
                                                        311 South Wacker Drive, #3000
                                                        Chicago, IL 60606
                                                        Phone:  312-360-6643
                                                        Fax:      312-360-6520

                                                        *Attorneys for Plaintiffs*
                                                        *Shuffle Tech International, LLC,*
                                                        *Aces Up Gaming, Inc., and*
                                                        *Poydras-Talrick Holdings LLC*

**CERTIFICATE OF SERVICE**

I certify that on May 27, 2016, I electronically filed the foregoing document and exhibits thereto with the Clerk of Court using the CM/ECF system, which then sent a Notification of Electronic Filing (NEF) to all counsel of record.

<div style="margin-left:auto;">

*/s/ David Ter Molen*
David Ter Molen (IBN 6270715)
dtermolen@freeborn.com
FREEBORN & PETERS LLP
311 South Wacker Drive, #3000
Chicago, IL 60606
Phone:  312-360-6643
Fax:     312-360-6520

</div>

3607675v1/30432-0001

2624640