IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHUFFLE TECH INTERNATIONAL, LLC, *et al* | |
| Plaintiffs | |
| v. | Civil Action No. 1:15-cv-3702 |
| | Honorable Matthew F. Kennelly |
| SCIENTIFIC GAMES CORPORATION, *et al* | |
| Defendants | |

## PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION (NOS. 1-121) TO DEFENDANTS

In accordance with Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiffs

Shuffle Tech International, LLC ("Shuffle Tech"), Aces Up Gaming, Inc. ("Aces Up"), and

Poydras Talrick Holdings LLC ("Poydras") request that Defendants Scientific Games Corp.

("SGC"), Bally Technologies, Inc. ("Bally Technologies"), and Bally Gaming, Inc. ("Bally

Gaming") each respond to the following requests in accordance with the Federal Rules of Civil

Procedure, this Court's rules, the Definitions and Instructions contained herein, the Joint Status

Report and Discovery Plan (Dkt. #62), the Supplemental Joint Status Report Regarding Dispute

over Proper Subject of Discovery (Dkt. #64), and the Minute Order re Discovery (Dkt. #67) and

produce documents and things in their possession, custody, or control that are requested below,

within thirty (30) days after service pursuant to Federal Rules of Civil Procedures, and at the

office of Nixon & Vanderhye P.C., 901 North Glebe Road, Suite 1100, Arlington, Virginia,

22201 or at such other time and places as the parties may agree upon.

The following definitions and instructions, unless specified otherwise, apply equally to

all discovery requests propounded by Plaintiffs under Fed. R. Civ. P. 33, 34, or 36:

## **DEFINITIONS**

1.      The terms "document" or "things" shall have the same meaning and scope as in Fed. R. Civ. P. 34 and shall include any written, printed, recorded, or graphic matter that is or has been in Defendants' actual or constructive possession, custody, or control, regardless of the medium on which it is produced, reproduced, or stored, including without limitation anything that can be classified as a "writing," "original," or "duplicate."  Any document bearing marks, including without limitation initials, stamped indicia, comments or notations not a part of the original text or photographic reproduction thereof, is a separate document.  The term "document" shall have the broadest meaning possible under the Federal Rules of Civil Procedure and shall include, but not be limited to, the original (or a copy when the original is not available) and each non-identical copy (including those which are non-identical by reason of notation or markings, or by appearing in the files of a separate person).  This definition of "document" therefore includes the originals, any and all copies and drafts of any and all writings, as defined by Fed. R. Evid. 1001 to mean anything consisting of "letters, words, numbers, or their equivalent, set down in any form" including by handwriting, typewriting, printing, photostatting, photographing, magnetic impulse, mechanical or electronic recording, or other form of data compilation, and including, but not limited to, all contracts, policy statements, manuals, telephone messages, checks, correspondence, letters, telegrams, notes, mailgrams, minutes of any meetings, agendas, memoranda, communications, reports, studies forecasts, working papers, charts, expense account reports, ledgers, journals, financial statements, statements of account, calendars, appointment books, diaries, drawings, diagrams, graphs, schematics, specifications, blueprints, layouts, photographs, sound recordings, computer documents, computer disks, materials on a computer

2

hard drive, electronic mail, or any other tangible things. "Document" also includes originals, copies and drafts of all of the above upon which notations in writing, print, or otherwise have been made that do not appear on the originals.

2. "Amended Complaint" means the First Amended Complaint for Damages and Other Relief for Violation of Section 2 of the Sherman Act filed on October 26, 2015 in this lawsuit (Dkt. #50).

3. "Defendants," "you," or "your" means Defendants Scientific Games Corporation ("SGC,"); Bally Technologies, Inc. (d/b/a SHFL entertainment (formerly Shuffle Master, Inc.) or Shuffle Master ("SHFL")) and Bally Gaming, Inc. (d/b/a Bally Gaming and Systems) ("Bally") and all parents, subsidiaries, and affiliates thereof, all divisions, acquired entities, predecessors, successors, assigns of each of the foregoing, and all principals, officers, investors, employees, directors, agents, consultants, attorneys, and all other persons acting or purporting to act on behalf of or under the control of any of the foregoing.

4. "Plaintiffs" means Plaintiffs Shuffle Tech International, LLC ("Shuffle Tech"); Aces Up Gaming, Inc. ("Aces Up"); and Poydras-Talrick Holdings LLC ("Poydras"), including all parents, subsidiaries, and affiliates thereof, all divisions, acquired entities, predecessors, successors, and assigns each of the foregoing, and all principals, officers, investors, employees, directors, agents, consultants, attorneys, and all other persons acting or purporting to act on behalf of or under the control of any of the foregoing.

5. The terms "Nevada Litigation" or "*DigiDeal* litigation" shall mean the litigation between Shuffle Master, Inc. ("Shuffle Master") and DigiDeal, pending in the District of Nevada, and captioned *Shuffle Master, Inc. v. DigiDeal Corp.*, Case No. 2:12-cv-1782 (D. Nev.).

2576143

6.    "DigiDeal" means DigiDeal Corporation, including all parents, subsidiaries, and affiliates thereof, all divisions, acquired entities, predecessors, successors, and assigns each of the foregoing, and all principals, officers, investors, employees, directors, agents, consultants, attorneys, and all other persons acting or purporting to act on behalf of or under the control of any of the foregoing, including the defendant in the *DigiDeal* litigation.

7.    "*Taiwan Fulgent* litigation" means the civil action in the U.S. District Court for the District of Nevada captioned *Shuffle Master, Inc. v Taiwan Fulgent Enterprise Co., Ltd.,* No. 2:09-cv-2194.

8.    "Taiwan Fulgent" means Taiwan Fulgent Enterprise Co., Ltd., including all parents, subsidiaries, and affiliates thereof, all divisions, acquired entities, predecessors, successors, and assigns each of the foregoing, and all principals, officers, investors, employees, directors, agents, consultants, attorneys, and all other persons acting or purporting to act on behalf of or under the control of any of the foregoing, including the defendant in the *Taiwan Fulgent* litigation.

9.    "*TCS* litigation" means the civil action in the U.S. District Court for the District of Nevada captioned *Shuffle Master, Inc. v TCS John Huxley America Inc.,* No. 2:12-cv-1626.

10.    "TCS John Huxley" means TCS John Huxley America Inc., including all parents, subsidiaries, and affiliates thereof, all divisions, acquired entities, predecessors, successors, and assigns each of the foregoing, and all principals, officers, investors, employees, directors, agents, consultants, attorneys, and all other persons acting or purporting to act on behalf of or under the control of any of the foregoing, including the defendant in the *TCS* litigation.

11.    "*CARD I* litigation" means the civil action in the U.S. District Court for the District of Minnesota captioned *Shuffle Master, Inc. v Casinos Austria Research and Development,* No. 0:02-cv-3633.

4

2576143

12.     "*CARD II* litigation" means the civil action in the U.S. District Court for the District of Nevada captioned *Card, LLC v Shuffle Master, Inc.,* No. 3:03-cv-244.

13.     "CARD" means Casinos Austria Research and Development, LLC and CARD Austria Forschungs and Entwicklungs GmbH, including all parents, subsidiaries, and affiliates thereof, all divisions, acquired entities, predecessors, successors, and assigns each of the foregoing, and all principals, officers, investors, employees, directors, agents, consultants, attorneys, and all other persons acting or purporting to act on behalf of or under the control of any of the foregoing, including the defendant in the *CARD I* litigation and plaintiff in the *CARD II* litigation.

14.     "*MP Games* litigation" means the civil action in the U.S. District Court for the Western District of Washington captioned *MP Games, et al v Shuffle Master, Inc.,* No. 2:05-cv-1017.

15.      "MP Games" means MP Games LLC, including all parents, subsidiaries, and affiliates thereof, all divisions, acquired entities, predecessors, successors, and assigns each of the foregoing, and all principals, officers, investors, employees, directors, agents, consultants, attorneys, and all other persons acting or purporting to act on behalf of or under the control of any of the foregoing, including the co-plaintiff in the *MP Games* litigation.

16.     "*VendingData 1* litigation" means the civil action in the U.S. District Court for the District of Nevada captioned *Shuffle Master, Inc. v VendingData Corp.,* No. 2:02-cv-438.

17.     "*VendingData 2* litigation" means the civil action in the Orleans Parish Civil District Court for the State of Louisiana filed on July 22, 2003 and captioned *Shuffle Master, Inc. v VendingData Corp.,* No. 2003-11016.

18.     "*VendingData 3* litigation" means the civil action in the U.S. District Court for the District of Nevada captioned *Shuffle Master, Inc. v VendingData Corp.,* No. 2:04-cv-1373.

2576143

19.     "VendingData" means VendingData Corporation (including its successor, Elixir Gaming Technologies Inc.), including all parents, subsidiaries, and affiliates thereof, all divisions, acquired entities, predecessors, successors, and assigns each of the foregoing, and all principals, officers, investors, employees, directors, agents, consultants, attorneys, and all other persons acting or purporting to act on behalf of or under the control of any of the foregoing, including the defendant in the *VendingData* litigations.

20.     "'982 patent" means U.S. Patent 6,651,982, including any reexamination certificate and any related applications or patents issuing therefrom.

21.     "'935 patent" means U.S. Patent 7,523,935, including any reexamination certificate and any related applications or patents issuing therefrom.

22.     The term "Shuffle Tech patents" refers collectively to U.S. Patents 8,602,416; 8,480,088; 8,109,514; 7,971,881; 7,900,923; 7,854,430; and D578,577, including any reexamination certificates.

23.     "Roblejo prototypes" means the devices described in Morrill Declaration Exhibit A and cited in Shuffle Master's U.S. Patent 7,413,191 and includes any prototype developed by Casino Concepts, Inc. between 1991-1997, or as identified in the Amended Complaint.

24.     "Luciano prototypes" means the devices described in Luciano Declaration Exhibit K and cited in Shuffle Master's U.S. Patent 7,413,191 and includes any prototype developed Luciano Packaging, including the Luciano Automatic Card Shuffler ("ACS") Prototype as identified in the Amended Complaint.

25.     "Block '044 patent" means U.S. Patent 6,361,044 to Block cited in Shuffle Master's U.S. Patent 7,036,818.

2576143

26.     "DigiShuffle™" means the card shuffling machine developed by DigiDeal utilizing Shuffle Tech technology and patents and referred to in the Amended Complaint at, *e.g.*, paragraphs 22, 24, 25, 26, and 52.

27.     "Casino Concepts" means Casino Concepts, Inc., the company that developed the Roblejo prototypes.

28.     "Mr. Gola" means Mr. Steven Gola, a former employee of Casino Concepts involved with the development of the Roblejo prototypes.

29.     "Dr. Roblejo" means Dr. Conrad Roblejo, the founder of Casino Concepts involved with the development of the Roblejo prototypes.

30.     "Mr. Solberg" means Mr. Hal Solberg, former president of Machine Design Associates, Inc. involved with the development of the Roblejo prototypes.

31.     "Luciano Packaging" means Luciano Packaging Technologies, Inc., the company that developed the Luciano Prototypes.

32.     "SDG" means Sierra Design Group.

33.     "L. Luciano" means Lawrence Luciano, the president of Luciano Packaging involved with the development of the Luciano prototypes.

34.     "R. Luciano" means Robert Luciano, the founder and president of SDG until 2004 and former Bally executive, and at various times involved with the development of the Luciano prototypes.

35.     "Mr. Block" means Lawrence M. Block, listed co-inventor of the Block '044 patent.

36.     "Mr. Koester" means Harold E. Koester, listed co-inventor of the Block '044 patent.

2576143

37.    The terms "person" or "individual" include natural persons, corporate or other business entities, and all other forms of legal entities including, but not limited to: corporations, partnerships, joint ventures, firms, associations, organizations, groups, and sole proprietorships.

38.    The term "litigation hold" refers to a stipulation, preservation order, or hold order requiring a litigant to preserve all data that may relate to a legal action so the data in question will be available for discovery.

39.    The term "PTO" means the United States Patent and Trademark Office.

40.    References to this "lawsuit," "case," or "action" mean the above-captioned action brought by Plaintiffs.

41.    "Purported Sham Litigations" refers to the following litigations identified in the Amended Complaint: (a) *Shuffle Master, Inc. v. Casino Austria Research and Development in Vienna, LLC*, Case No. 0:02-cv-3633 (D. Minn); (b) *Casino Austria Research and Development in Vienna, LLC v. Shuffle Master, Inc.,* Case No. 3:03-cv-244 (D. Nev.); (c) *Shuffle Master, Inc. v. VendingData Corp.*, Case No. 2:04-cv-1373 (D. Nev.); (d) *Shuffle Master, Inc. v. Taiwan Fulgen Enterprise Co., Ltd.*, Case No. 2:09-cv-2194 (D. Nev.); (e) *Shuffle Master, Inc. v. TCS Huxley*, Case No. 2:12-cv-1626 (D. Nev.); and (f) *Shuffle Master, Inc. v. DigiDeal Corp.*, Case No. 2:12-cv-1782 (D. Nev.).

42.    "Purported Sham Patents" refers to any patent asserted by Defendants in any of the Purported Sham Litigations.

43.    The term "file history" means the United States Patent and Trademark Office ("PTO") records of all communications and all Documents and Things sent between the United States Patent and Trademark Office and the patent applicant(s) in connection with the prosecution or reexamination of any patent.

8

2576143

44.     "Named Inventors" refers to the persons named as inventors on the face of the '982 patent and the '935 patent including Attila Grauzer, Feraidoon Bourbour, Troy D. Nelson, Paul K. Scheper, James B. Stasson, and Ronald R. Swanson.

45.     "Related Application" means any parent or ancestral application related in any way to a given patent and any continuing application, continuation-in-part application, divisional application, file wrapper continuation, reexamination proceeding, reissue application, abandoned application or foreign counterpart application for that patent.

46.     "Related patent" means any patent that issued from any Related Application.

47.     The terms "infringe," "infringing," "infringed," or "infringement" means direct infringement, indirect infringement, contributory infringement, induced infringement, literal infringement and/or infringement under the doctrine of equivalents.

48.     The term "asserted claims" means any claim(s) of any Purported Sham Patent that Defendants asserted in any Purported Sham Litigation.

49.     The term "prior art" is used in these Requests in the same sense that it is used in 35 U.S.C. §§ 102 or 103 and includes without limitation, any patent, publication, knowledge, use, sale, offer for sale, and/or any other act or event defined in 35 U.S.C. § 102, taken singly or in combination, and having or occurring at a date such as to be potentially relevant under any subsection of 35 U.S.C. §§ 102 or 103.

50.     "Casino Card Shuffler(s)" means card shufflers manufactured for any use by casinos.

51.     "Consumer Card Shuffler(s)" means card shufflers manufactured for any use other than use in casinos.

52.     The term "third party" means and includes any person or persons other than Plaintiffs or Defendants.

2576143

53.     The term "date" means the exact day, month and year if so ascertainable or, if not, the best approximation (e.g., relationship to seasons or other events).

54.     The term "communicate" or "communication(s)" means without limitation, any manner or means of disclosure, transfer, transmission, conveyance, or exchange of information whether by written, oral, or other means (such as person-to-person, in a group, by telephone, telephone, letter facsimile, electronic or computer mail, voicemail, telex, telecopy, or any other process, electric, electronic or otherwise).

55.     The terms "reflect," "reflecting," "concern," "concerning," "mentioning," "related," "relating," "relate," "refer," or "referring" and other variations thereof, as used herein shall be construed in their broadest possible sense, and mean without limitation and whether in whole or in part referring to, constituting, bearing upon, commenting upon, reflecting, evidencing, pertaining to, describing, depicting, consisting of, containing, comprising, embodying, identifying, stating, discussing, analyzing, studying, summarizing, dealing with, relating to, concerning, mentioning, involving, responding to or having any logical or factual connection whatsoever with the subject addressed, regardless whether the factual connection is favorable to or adverse to you.

56.     As used herein, the term "facts" shall have its ordinary meaning and, pursuant to Fed. Civ. P. 33(a)(2), also shall mean related opinions, related contentions, and the application of law to fact.

### INSTRUCTIONS

1.     These discovery requests call for information (including any information contained in or on any document or thing) that is known or available to you, or in your possession, custody, or

control, including all information known or available to your attorneys, agents, representatives, investigators, or any other person acting on behalf of you or under your direction or control, and/or their attorneys, agents, representatives, or investigators.

2. If you cannot comply with any discovery request fully and completely after exercising due diligence to make inquiry and secure the information necessary to do so, please so state and answer each such discovery request to the fullest extent possible, specifying the portion of such discovery request that you claim you are unable to answer fully and completely, stating the facts upon which you rely to support your contention that you are unable to comply fully and completely and what knowledge, information and belief you have concerning the unanswered portion of each such discovery request.

3. Whenever you identify or describe an event or a chain of events (a) state the date or dates of each occurrence relevant to the event; (b) identify all individuals having information about any occurrence or aspect of the event, including but not limited to those involved in witnessing, supervising, controlling, supporting, requesting, or otherwise participating in the event; (c) describe the role and contribution of each person identified; and (d) describe all related events and all previous or subsequent related attempts, whether or not completed and whether or not successful.

4. Consistent with the Federal Rules of Civil Procedure, and in accordance with the Joint Status Report and Discovery Plan (Dkt. #62), a party withholding or redacting any responsive document on the grounds of privilege, immunity, or any similar claim shall provide to the receiving party a privilege log, except that:

    a. the Parties shall have no obligation to log information generated on or after April 28, 2015; and

      b.      activities undertaken in compliance with the duty to preserve information (including, but not limited to, litigation hold letters) are protected from disclosure under Fed. R. Civ. P. 26(b)(3)(A) and (B) and need not be included in the privilege log, unless a dispute arises during the course of discovery with respect to a party's obligations under LPR ESI 2.3.

For each document withheld or redacted, the privilege log shall contain the following information: (i) the date of the document; (ii) the identity of all persons who authored, signed, or otherwise prepared the document; (iii) the identity of all persons designated as addressees or copyees; (iv) a description of the contents of the document that, without revealing information itself privileged or protected, is sufficient to understand the subject matter of the document and the basis of the claim of privileged or immunity; (v) the type or nature of the privilege asserted (e.g., attorney-client privilege, work product doctrine, etc.); and (vi) for redacted documents only, the bates numbers corresponding to the first and last page of any document redacted.

5.      You are required to supplement or amend your responses to these requests upon obtaining information that any responses were incorrect when made or which may become incomplete or no longer true, in accordance with the provisions of Fed. R. Civ. P. 26(e). Each Request shall be deemed continuing, so as to require supplemental or mandatory responses should you obtain additional or different responsive information subsequent to your initial responses.

6.      The following shall apply to all Requests:

      a.      The singular of any word includes its plural, and vice versa, to bring within the scope of these Requests any information that might otherwise be deemed outside their scope;

2576143

     b.     The terms "and" and "or" shall be construed either conjunctively or disjunctively, to bring within the scope of these Requests any information that might otherwise be deemed outside their scope;

     c.     The terms "all," "any," and "each" shall be construed as encompassing any and all to bring within the scope of these Requests any information that might otherwise be deemed outside their scope;

     d.     "Including" shall not be used to limit any general category or description that precedes it and shall mean "including without limitation" so as to be inclusive; and

     e.     The present tense shall be construed to include the past tense and vice versa.

7.     All Requests are to be understood as requesting information in your possession, custody, or control.

8.     In responding to these Requests, you are required to furnish all information that is available to you or subject to your reasonable inquiry, including information in the possession of your present and former attorneys, accountants, advisors, representatives, agents, employees, or other persons directly or indirectly employed by or connected with you, and anyone else otherwise subject to your control.  All documents and things that respond, in whole or in part, to any portion of the Requests below shall be produced in their entirety, including all attachments and enclosures.

9.     If there are no documents or things responsive to a particular Request, you should so state in writing.

10.     In the event you contend that any of these Requests are objectionable, in whole or in part, state with particularity each such objection and the bases therefore, and respond to the remainder of the Request to the extent that you are not objecting to it.

2576143

11.     If any Request is ambiguous or unclear to you, you are requested to contact undersigned counsel as soon as possible so that the Request can be clarified to avoid unnecessary delays in discovery.

12.     If production of any requested document or thing is objected to on the grounds that production is unduly burdensome or expensive, describe the expected burden or expense of the production.

13.     Each and every copy of a document or thing that is different from the original because of stamps, indications of the recipient(s), handwritten notes, marks, attachments, or any other reason, is a separate document or thing that must be produced.

## DOCUMENTS REQUESTED

**Request No. 1:**  All documents and things supporting, consulted, or relied upon in responding to any interrogatory served on you in this action, separating the documents by interrogatory number.

**Request No. 2:**  All documents and things relating to the '044 Block patent.

**Request No. 3:**  All documents and things relating to the Named Inventors' first awareness of the '044 Block patent.

**Request No. 4:**  All documents and things relating to your first awareness of the '044 Block patent or any application from which it issued, including communications with your counsel.

**Request No. 5:**  All documents and things relating to your disclosure or non-disclosure of the '044 Block patent to the PTO, including communications with your counsel.

14

**Request No. 6:**  All documents and things relating to your disclosure or non-disclosure of the '044 Block patent in any federal district court litigation, including but not limited to the *Taiwan Fulgent* litigation, *TCS* litigation, *CARD I* litigation, *CARD II* litigation, *MP Games* litigation, *VendingData 3* litigation, and/or the Nevada litigation including communications with your counsel.

**Request No. 7:**  All documents and things relating to the Roblejo prototypes.

**Request No. 8:**  All documents and things relating to the Named Inventors' first awareness of the Roblejo prototypes.

**Request No. 9:**  All documents and things relating to your first awareness of the Roblejo prototypes, including communications with your counsel.

**Request No. 10:**  All documents and things relating to your disclosure or non-disclosure of the Roblejo prototypes to the PTO, including communications with your counsel.

**Request No. 11:**  All documents and things relating to your disclosure or non-disclosure of the Roblejo prototypes in any federal district court litigation, including the *Taiwan Fulgent* litigation, *TCS* litigation, *CARD I* litigation, *CARD II* litigation, *MP Games* litigation, *VendingData 1* litigation, or *VendingData 3* litigation, including communications with your counsel.

**Request No. 12:**  All documents and things relating to the Luciano prototypes.

**Request No. 13:**  All documents and things relating to the Named Inventors' first awareness of the Luciano prototypes.

**Request No. 14:**  All documents and things relating to your first awareness of the Luciano prototypes, including communications with your counsel.

2576143

**Request No. 15:**  All documents and things relating to your disclosure or non-disclosure of the Luciano prototypes to the PTO, including communications with your counsel.

**Request No. 16:**  All documents and things relating to your disclosure or non-disclosure of the Luciano prototypes in any federal district court litigation, including the *Taiwan Fulgent* litigation, *TCS* litigation, *CARD I* litigation, *CARD II* litigation, *MP Games* litigation, *VendingData 1* litigation, *VendingData 3* litigation, and/or the Nevada litigation including communications with your counsel.

**Request No. 17:**  Documents and things sufficient to identify the organizational or corporate structure of each Defendant, including (i) any corporate parent(s) or other entities with ownership or control interests in each of the Defendants, (ii) subsidiaries, divisions, and business units, whether separately incorporated not, and (iii) any wholly-owned or partially-owned affiliates.

**Request No. 18:**  All documents or things referencing or relating to Shuffle Tech or any of its products, patents, personnel, business, customers or counsel.

**Request No. 19:**  All documents or things referencing or relating to Aces Up or any of its products, patents, personnel, business, customers or counsel.

**Request No. 20:**  All documents or things referencing or relating to Poydras or any of its products, patents, personnel, business, or customers or counsel.

**Request No. 21:**  All documents or things referencing or relating to Galaxy Gaming, Inc. or any of its products, patents, personnel, business, or customers or counsel, which relate in any way to Casino Card Shufflers.

16

**Request No. 22:**  All documents or things referencing or relating to Robert Saucier or any of his products, patents, personnel, business, or customers or counsel, which relate in any way to Casino Card Shufflers.

**Request No. 23:**  All documents or things referencing or relating to Ten Stix Gaming, Inc. or any of its products, patents, personnel, business, or customers or counsel, which relate in any way to Casino Card Shufflers.

**Request No. 24:**  All documents or things referencing or relating to Tony Cranford or any of his products, patents, personnel, business, or customers or counsel, which relate in any way to Casino Card Shufflers.

**Request No. 25:**  A copy of each insurance policy which provides any coverage to Defendants with regard to this lawsuit, or against which any claim of coverage has been made, or may be made with regard to this lawsuit, and all documents or things relating to any such claims.

**Request No. 26:**  All documents or things received, directly or indirectly, from Plaintiffs prior to this lawsuit.

**Request No. 27:**  All documents or things that relate to any meetings between or among any employee, agent, or representative of Defendants regarding or discussing Plaintiffs or any of Plaintiffs' products including, but not limited to, the DigiShuffle™.

**Request No. 28:**  All documents or things referring or relating to Defendants' sales, products, or market share related to Casino Card Shufflers.

**Request No. 29:**  All documents or things referring or relating to Defendants' sales, products or market share related to Consumer Card Shufflers.

**Request No. 30:**  All documents or things referring or relating to Defendants' competitors' sales, products or market share related to Casino Card Shufflers.

2576143

**Request No. 31:** All documents or things referring or relating to Defendants' competitors' sales, products or market share related to Consumer Card Shufflers.

**Request No. 32:** All documents or things referring or relating to Defendants' strategic planning, marketing plans, promotional activities, and production plans with respect to card shufflers.

**Request No. 33:** All documents or things relating to any statement of any individual relating to this lawsuit, including but not limited to correspondence, witness statements, affidavits, memos, notes, video or audio recordings, or other documents or things supporting, refuting or relating in any way to any facts, claims or defenses in this lawsuit.

**Request No. 34:** All documents or things referring to any statements made about Shuffle Tech or its licensees by Defendants, including but not limited to correspondence, witness statements, affidavits, memos, notes, or video or audio recordings.

**Request No. 35:** All documents or things that Defendants have furnished or made available to, or which have been viewed by, any expert Defendants expect to call as a witness at trial, or any expert Defendants do not expect to call as a witness at trial but whose work product forms the basis either in whole or in part of the opinions of any expert who will be called by Defendants as a witness at trial.

**Request No. 36:** All documents or things relating or referring to Defendants' attempts to discover information about the activities of any of the Plaintiffs, including but not limited to any research or investigative reports.

**Request No. 37:** All documents or things relating or referring to any novelty search, prior art search, patentability search, or infringement analysis of any of the patents asserted in any of the following litigations: the *Taiwan Fulgent* litigation, *TCS* litigation, *CARD I* litigation, *CARD II*

litigation, *MP Games* litigation, *VendingData 1* litigation, *VendingData 3* litigation and/or Nevada litigation.

**Request No. 38:** All prior art patents and publications disclosing inventions, products, processes, apparatuses, or methods relating to card shufflers.

**Request No. 39:** A privilege log in accordance with the Joint Status Report and Discovery Plan (Dkt. #62) for any document withheld by Defendants on the basis of an asserted privilege.

**Request No. 40:** All documents or things relating to the level of ordinary skill in the art at the time of the alleged invention of the subject matter of the '982 and '935 patents and the patents asserted in the *Taiwan Fulgent* litigation, *TCS* litigation, *CARD I* litigation, *CARD II* litigation, *MP Games* litigation, *VendingData 1* litigation or *VendingData 3* litigation.

**Request No. 41:** All documents or things relating to Defendants' decision to bring and/or pursue the *CARD I* litigation.

**Request No. 42:** All documents or things relating to Defendants' decision to bring and/or pursue any counterclaims in the *CARD II* litigation.

**Request No. 43:** All documents or things relating to Defendants' decision to bring and/or pursue the *VendingData 1* litigation.

**Request No. 44:** All documents or things relating to Defendants' decision to bring and/or pursue the *VendingData 2* litigation.

**Request No. 45:** All documents or things relating to Defendants' decision to bring and/or pursue the *VendingData 3* litigation.

**Request No. 46:** All documents or things relating to Defendants' decision to bring and/or pursue the *Taiwan Fulgent* litigation.

2576143

**Request No. 47:** All documents or things relating to Defendants' decision to bring and/or pursue the *TCS* litigation.

**Request No. 48:** All documents or things relating to Defendants' decision to bring and/or pursue the *DigiDeal* litigation.

**Request No. 49:** All documents and things relating to Defendants' defenses in this lawsuit.

**Request No. 50:** All documents and things relating to Defendants' damage calculations asserted in the *Taiwan Fulgent* litigation, *TCS* litigation, *CARD I* litigation, *CARD II* litigation, *VendingData 1* litigation, *VendingData 2* litigation *VendingData 3* litigation and/or Nevada litigation.

**Request No. 51:** All documents and things relating to Defendants' plans to litigate against card shuffler competitors, including, but not limited to, the strategies and/or statements identified, e.g., in paragraphs 63, 64, 68 and 69 of the Amended Complaint.

**Request No. 52:** All documents and things relating to Defendants' plans or activities related to maintaining or increasing their sales, prices, market exclusivity or market share regarding card shuffler sales in the U.S.

**Request No. 53:** All documents and things relating to Defendants' plans or activities related to using their market presence or market power in Casino Card Shufflers to gain sales, market share or market exclusivity, or maintain or increase prices with respect to your other products.

**Request No. 54:** All formal papers (including all pleadings, motions, discovery or other documents, and all exhibits or attachments thereto), deposition related materials (including transcripts, exhibits and video recordings) and document productions from any litigation involving any of the Defendants and any card shuffler competitor or perceived competitor including, but not limited to, the *Taiwan Fulgent* litigation, *TCS* litigation, *CARD I* litigation,

2576143

*CARD II* litigation, *MP Games* litigation, *VendingData 1* litigation, *VendingData 2* litigation or *VendingData 3* litigation.

**Request No. 55:** All documents and things, whenever created, relating to the DigiShuffle™, including its operation, functions and any possible economic effects on Defendants' card shuffler operations or sales.

**Request No. 56:** All documents and things relating to any research or investigation relating to the DigiShuffle™ prior to the filing of the Complaint in the *DigiDeal* litigation.

**Request No. 57:** All documents and things relating to Defendants' decision to decline DigiDeal's offer to allow Defendants to inspect the DigiShuffle™ prior to commencing the *DigiDeal* litigation.

**Request No. 58:** All documents and things relating to the possible economic impact of the litigation costs on the defendants in the *DigiDeal* litigation, the *CARD I* litigation, the *Taiwan Fulgent* litigation, the *TCS* litigation, the *VendingData 1* litigation, *VendingData 2* litigation and *VendingData 3* litigation, and on the plaintiffs in the *CARD II* litigation.

**Request No. 59:** All documents and things describing or showing the prospective benefits to Defendants to be gained or actually gained from the buyout and/or settlement of CARD.

**Request No. 60:** All documents and things describing or showing the prospective or actual benefits to Defendants in acquiring VendingData's card shuffler technology.

**Request No. 61:** All documents and things relating to Taiwan Fulgent's products, entry into or departure from the card shuffler business, including but not limited to Casino Card Shuffler market.

**Request No. 62:** All documents and things relating to TCS's products, entry into or departure from the card shuffler business, including but not limited to Casino Card Shuffler market.

2576143

**Request No. 63:** All documents and things relating to each Defendant's retention policies, including with respect to electronic storage, for documents from litigations and patent prosecutions, including documents reflecting the effective dates of any such policies, and any documents reflecting the transfer of documents and things by any Defendant to any successor entity.

**Request No. 64:** All documents or things relating or referring to Defendants' communication with Shuffle King USA, APEX Gaming, Galaxy Gaming, Inc., Robert Saucier, Ten Stix Gaming, Inc. or Tony Cranford.

**Request No. 65:** All documents or things relating or referring to Shuffle King USA's and/or APEX's Shuffle King card shuffler product.

**Request No. 66:** Documents and things sufficient to identify any counsel retained by you, including any counsel retained in connection with the *Taiwan Fulgent* litigation, *TCS* litigation, *CARD I* litigation, *CARD II* litigation, *MP Games* litigation, *VendingData 1* litigation, *VendingData 2* litigation and *VendingData 3* litigation, whether or not such counsel made an appearance in any of these litigations, the dates such counsel was employed by you and the duties and roles played by such counsel in each litigation.

**Request No. 67:** Documents and things sufficient to identify any counsel retained by you in connection with the prosecution or reexamination of the '982 and '935 patents, the dates such counsel was employed by you and the roles and duties of such counsel in such prosecution or reexamination.

**Request No. 68:** Documents and things sufficient to identify any counsel retained by you in connection with the prosecution or reexamination of any of the patents asserted in the *Taiwan Fulgent* litigation, *TCS* litigation, *CARD I* litigation, *CARD II* litigation, *MP Games* litigation,

*VendingData 1* litigation, *VendingData 2* litigation, *VendingData 3* litigation, and/or the Nevada litigation, the dates such counsel was employed by you and the roles and duties of such counsel in such prosecution or reexamination.

**Request No. 69:** Documents and things sufficient to identify any counsel retained by you in connection with the prosecution or reexamination of any of your patents relating to card shufflers, the dates such counsel was employed by you and the roles and duties of such counsel in such prosecution or reexamination.

**Request No. 70:** All documents and things concerning, constituting, mentioning, reflecting or reporting your finances, including annual reports, sales reports, balance sheets, profit and loss reports, gross and net revenue, monthly operating reports, inventory reports and summaries, income and expense statements, profitability analyses and reports, account receivable and account payable ledgers, capital and operating equipment reports and schedules, bank statements, bank loan applications, and any other financial statements related in any way to card shufflers**.**

**Request No. 71:** All documents and things concerning, constituting, mentioning, relating to any meetings of your executives, officers or managers, including but not limited to, presentations, board books, and minutes or summaries of such meetings regarding this lawsuit.

**Request No. 72:** All documents and things concerning, constituting, mentioning, relating to any meetings of your executives, officers or managers, including but not limited to, presentations, board books, and minutes or summaries of such meetings regarding the *Taiwan Fulgent* litigation, *TCS* litigation, *CARD I* litigation, *CARD II* litigation, *MP Games* litigation, *VendingData 1* litigation, *VendingData 2* litigation, *VendingData 3* litigation, and/or the Nevada litigation.

**Request No. 73:** All documents and things concerning, constituting, mentioning, referring to, or relating to the manufacture, sale, or distribution of any card shuffler by you, including any Casino Card Shufflers and/or Consumer Card Shufflers**.**

**Request No. 74:** All documents and things concerning, constituting, mentioning, reflecting or reporting your yearly sales of card shufflers, including Casino Card Shufflers and/or Consumer Card Shufflers, in units and dollars, including data by customer, SKU, and brand name**.**

**Request No. 75:** All documents and things concerning, constituting, mentioning, relating to, or referring to any market analysis, sales assessments, and/or competitors assessments with respect to card shufflers, including Casino Card Shufflers and/or Consumer Card Shufflers.

**Request No. 76:** All documents and things concerning, constituting, mentioning, relating to, or referring to any strategic planning reports, growth projections, sales targets, sales and marketing analyses, and/or similar planning or strategy documents concerning card shufflers, including Casino Card Shufflers and/or Consumer Card Shufflers.

**Request No. 77:** All documents and things concerning, constituting, mentioning, relating to, or referring to your advertising, promotion, marketing, and/or market research for Casino Card Shufflers and/or Consumer Card Shufflers, including but not limited to all marketing budgets, reports, expenses, and plans.

**Request No. 78:** All documents and things concerning or relating to competition between you and other developers, manufacturers, distributers, or sellers of card shufflers, including Casino Card Shufflers and/or Consumer Card Shufflers, including but not limited to Plaintiffs.

**Request No. 79:** All documents and things concerning, constituting, mentioning, relating to, or referring to CARD, TCS John Huxley, Taiwan Fulgent, VendingData, Casinovations, Elixir Gaming, and/or DigiDeal.

**Request No. 80:** All documents and things relating to financial forecasts or projections for your development, manufacture, sale, or distribution of card shufflers, including Casino Card Shufflers and/or Consumer Card Shufflers.

**Request No. 81:** All communications between you and any third party regarding strategic planning and/or product development related to card shufflers.

**Request No. 82:** All documents and things related to or evidencing any of your methods and/or devices for shuffling cards.

**Request No. 83:** All documents and things concerning or relating to the interchangeability of any card shuffler designed, developed, manufactured, or distributed by you with any card shuffler designed, developed, manufactured, or distributed by Plaintiff or any other competitor with respect to card shufflers.

**Request No. 84:** All documents and things concerning any efforts by you to obtain any certifications from any product certification or standards-setting organization or state gaming authority for card shufflers and any certifications that you have received, including but not limited to certifications received from Gaming Laboratories International for any of Defendants' prototypes or products.

**Request No. 85:** All documents and things concerning, constituting, mentioning, referring to, or relating to the relationships among Defendants, including but not limited to any agreements or potential agreements between the Defendants and any negotiations related thereto.

**Request No. 86:** All documents and things concerning or supporting any claim or contention that Defendants interfered with or adversely affected the business operations of any competitors, including: (a) all documents concerning the existence and nature of such competitors' business operations; (b) all documents concerning any interference by Defendants with such business

25

2576143

operations; (c) all documents concerning any adverse effect by Defendants on any such business operations; and (d) all documents concerning any damages, injuries, or economic loss allegedly suffered by such competitors as a result of such interference or adverse effect.

**Request No. 87:** All organizational charts depicting your management employees, officers, and directors, including, but not limited to, positions in executive management, sales, marketing, finance, and product management and development.

**Request No. 88:** All documents and things relating to meetings of your Board of Directors or your members, including but not limited to, presentations, board books, and minutes or summaries of board meetings related in any way to card shufflers, regarding the facts giving rise to this lawsuit as described in the Amended Complaint.

**Request No. 89:** All documents and things concerning, constituting, mentioning, referring to, or relating to Plaintiffs' or Defendants' definition of the Casino Card Shuffler market or any sub-market thereof.

**Request No. 90:** All documents and things concerning, constituting, mentioning, referring to, or relating to Plaintiffs' or Defendants' definition of the Consumer Card Shuffler market or any other card shuffler market or sub-market.

**Request No. 91:** All documents and things concerning, constituting, mentioning, referring to, or relating to any actual or potential license of any of the Defendants' technology and patents relating in any way to card shufflers.

**Request No. 92:** All documents and things concerning, constituting, mentioning, referring to, or relating to any negotiations between Defendants or with Plaintiffs, DigiDeal or Ten Stix Gaming, Inc. regarding card shufflers, Defendants' or Plaintiffs' technology, or this litigation, and any offers or agreements related thereto.

2576143

**Request No. 93:** All communications between Defendants and any other entity regarding royalties, potential royalties, or any other payments with respect to Defendants' technology and card shuffler patents.

**Request No. 94:** All documents and things concerning, constituting, mentioning, referring to, or relating to Defendants' card shuffling products, including the design, development, manufacture, operation, performance, and marketing thereof.

**Request No. 95:** All documents and things concerning, constituting, mentioning, referring to, or relating to any card shuffler technology developed, acquired, manufactured, or sold by you, including but not limited to operator's manuals, performance reports, reviews, rating documents, and litigation involving that technology, including communications from or with any customer or potential customer regarding that technology.

**Request No. 96:** All documents and things concerning, constituting, mentioning, referring to, or relating to the 2012 Global Gaming Expo ("G2E") that took place in Las Vegas, Nevada, on October 2-4, 2012 as further identified in paragraph 24 of the Amended Complaint.

**Request No. 97:** All documents and things concerning, constituting, mentioning, referring to, or relating to the World Gaming Expo that took place in Las Vegas, Nevada on October 14-16, 1997 as further identified in paragraph 33 of the Amended Complaint.

**Request No. 98:** All documents and things concerning, constituting, mentioning, referring to, or relating to the Roblejo Prototypes referenced in Amended Complaint, including all sales brochures, development documentation; marketing materials, and patents relating to the technology disclosed in the Roblejo Prototypes.

**Request No. 99:** All documents and things concerning, constituting, mentioning, referring to, or relating to the Luciano Prototypes referenced in Amended Complaint, including all sales

brochures, development documentation, marketing materials, and any patents relating to the technology disclosed in the Luciano Prototypes.

**Request No. 100:** All documents and things related to the demonstration to Bally's Casino in 1995, the 16-minute video from Casino Concepts engineer Hal Solberg, and the demonstration by CARD attorney Robert Morrill in December 2003 of the Luciano Prototypes.

**Request No. 101:** All documents and things concerning, constituting, mentioning, referring to, or relating to U.S. 6,361,044 ("the Block '044 ") referenced in the Amended Complaint.

**Request No. 102:** All documents and things identified in your Initial Disclosures.

**Request No. 103:** All documents and things relating to the discovery in the Nevada litigation, including all deposition transcripts, deposition exhibits and deposition video and audio recordings, expert reports, and any other discovery requests and responses served or received in the Nevada Litigation**.**

**Request No. 104:** All documents and things, including communications with your counsel, relating to the prosecution and/or reexamination of any of the Purported Sham Patents.

**Request No. 105:** All documents and things obtained by you from third parties in connection with this lawsuit including, but not limited to, any and all documents and things obtained by you in response to any third-party subpoena.

**Request No. 106:** Any and all communications, meetings, agreements, or contracts with any of the following persons and entities: Mr. Gola, Dr. Roblejo, Mr. Solberg, Casino Concepts, L. Luciano, R. Luciano, Luciano Packaging, SDG, Mr. Block and Mr. Koester.

**Request No. 107:** Any and all documents and things related to, concerning or mentioning any of the following persons and entities: Mr. Gola, Dr. Roblejo, Mr. Solberg, Casino Concepts, L. Luciano, R. Luciano, Luciano Packaging, SDG, Mr. Block and Mr. Koester.

**Request No. 108:** All documents, things, employment records, letters of engagement or other records, including, but not limited to payroll records, organizational charts and company directories, sufficient to establish the full employment history, and the various duties and titles of each individual who was assigned to, worked on, billed time to, or was consulted with respect to any of the following litigations or patent prosecutions or enforcement activities: the *DigiDeal* litigation, the *CARD I and II* litigations, the *MP Games* litigation, the *Taiwan Fulgent* litigation, the *TCS* litigation, the *VendingData 1, 2*, and *3* litigations, including any work activities related to the prosecution or enforcement of any of the patents asserted in those litigations.

**Request No. 109:** All documents and things reflecting each Defendants' document retention policies and practices, including electronic storage policies, directed to, or which pertain to, or which affect the files, records and documents from or pertaining to the *DigiDeal* litigation, the *CARD I and II* litigations, the *MP Games* litigation, the *Taiwan Fulgent* litigation, the *TCS* litigation, the *VendingData 1, 2*, and *3* litigations, the prosecution or enforcement of any of the patents asserted in those litigations, the Roblejo prototypes, the Luciano prototypes and/or the Block '044.

**Request No. 110:** All documents and things relating to warning letters alleging patent infringement of any card shuffler patent sent to any party, and responses to such warning letters, regardless of whether or not litigation followed.

**Request No. 111:** All documents and things sufficient to identify every person, including officers, directors, employees, consultants and inside and outside counsel, who participated in any infringement, enforcement, enforceability, or validity analyses and/or decision-making processes regarding each Defendants' decision to initiate, pursue and/or maintain the *DigiDeal* litigation, the *CARD I and II* litigations, the *MP Games* litigation, the *Taiwan Fulgent* litigation,

the *TCS* litigation, the *VendingData 1, 2*, and *3* litigations, or any other litigations involving those companies or the patents asserted in those litigations, including documents and things that describe the nature and substance of each such person's knowledge, information, and contributions regarding the perceived legality, propriety, risks and benefits of such litigations and the identity of all persons to whom any communications reflecting such considerations were transmitted or received.

**Request No. 112:** All documents and things sufficient to identify every person employed or retained by Defendants, including outside counsel, who, prior to the filing of the instant action, possessed knowledge pertaining to the *CARD I and II* litigations, the *MP Games* litigation*,* the *Taiwan Fulgent* litigation, and the *TCS* litigation and *VendingData 1, 2*, and *3* litigations, the Roblejo prototypes, the Luciano prototypes, and/or the Block '044 patent, including documents and things describing in the nature and substance of each such person's knowledge, information, and communications regarding such subjects and their position and/or involvement with each defendant at the time they first possessed such knowledge.

**Request No. 113:** All documents and things sufficient to identify each person, including officers, directors, employees, consultants or inside or outside counsel, who conducted or assisted in the conduct of any due diligence or other similar investigation on behalf of Bally with respect to its acquisition of SHFL, or on behalf of SGC with respect to its acquisition of Bally, including, in particular, any analyses of Bally's or SHFL's intellectual property assets, enforcement, or litigation or any potential liabilities arising therefrom, and any documents relating to the nature of each person's contributions to that process and the identity of each individual to whom such persons communicated their contributions or conclusions.

2576143

**Request No. 114:** All documents and things sufficient to identify every person employed or retained by Defendants having knowledge or information relating to the definition or extent of the market, marketplace, channels of trade, means or methods of distribution, and customers for, automatic card shufflers in the U.S., including but not limited to the market for shufflers used by regulated casinos, each Defendant's historical and current share of that market, and each Defendant's strategic or tactical plans for acquiring, maintaining or expanding its sales or market share of or in that market.

**Request No. 115:** All documents and things related to any disagreement you may have that there is a relevant product and geographic market, for purposes of economic or antitrust analyses or commercial reality, that is comprised of automatic shuffling machines used by commercial casinos in the United States, or any documents related to any contention that the relevant product market should be more broadly or narrowly defined for purposes of this case, including documents and things that state what you contend to be the appropriately defined relevant product market and Defendants' share of the relevant market(s) as you define it/them

**Request No. 116:** All documents and things sufficient to identify each product that Defendants believe to be competitive with, or a reasonable substitute for, or interchangeable with the automatic card shufflers sold by Defendants, including any documents containing the name, make and model number of such product(s) and the address and contact information of the seller, distributor and manufacturer of such product(s).

**Request No. 117:** All documents and things sufficient to identify any and all persons having knowledge or information relating to each Defendant's document retention policies and actual practice, including electronic storage policies and practices, both prior to and after SGC's acquisition of, or merger with Bally, with respect to each Defendants' records, files and

2576143

documents from or pertaining to the *DigiDeal* litigation, the *CARD I and II* litigations, the *MP Games* litigation*,* the *Taiwan Fulgent* litigation, the *TCS* litigation, the *VendingData* 1, 2, and 3 litigations, the prosecution or enforcement of any of the patents asserted in those litigations, the Roblejo prototypes, the Luciano prototypes and/or the Block '044 patent, as well as documents relating to each Defendant's document retention policies and actual practices with respect to such Defendants' records.

**Request No. 118:** Documents and things sufficient to identify the persons involved in the *DigiDeal* litigation, the *CARD I and II* litigations, the *MP Games* litigation*,* the *Taiwan Fulgent* litigation, the *TCS* litigation, the *VendingData* 1, 2, and 3 litigations, the prosecution or enforcement of any of the patents asserted in those litigations, the Roblejo prototypes, the Luciano prototypes and/or the Block '044 patent, including documents relating to their role in such litigations and prosecutions, and their titles, duties and dates of employment with each Defendant (such as historical organizational charts, company directories, payroll records and the like) at the time of their respective involvements in such litigations and prosecutions.

**Request No. 119:** All documents and things relating to any due diligence or other similar investigation on behalf of Bally with respect to its acquisition of SHFL, or on behalf of SGC with respect to its acquisition of Bally, including, in particular, any analyses of Bally's or SHFL's intellectual property assets, enforcement, or litigation or any potential liabilities arising therefrom.

**Request No. 120:** All documents and things sufficient to identify all requirements and barriers to entry into the U.S. market for automatic card shufflers for use by regulated casinos.

**Request No. 121:** All documents and things supporting Defendants' disagreement or contention that the relevant product market for purposes of adjudicating Plaintiffs' monopolization claim is

2576143

not: "Card shufflers certified and approved for use by casinos, excluding card shufflers designed

for private consumer use in unregulated environments and also excluding card shufflers that

randomize virtual 'cards' in video-based games."

December 18, 2015

/s/  *Robert A. Rowan*

Robert A. Rowan (*pro hac vice*)
rar@nixonvan.com
Joseph S. Presta (*pro hac vice*)
jsp@nixonvan.com
Michael E. Crawford (*pro hac vice*)
mec@nixonvan.com
NIXON & VANDERHYE P.C.
901 North Glebe Rd.
Arlington, Virginia 22203
Phone:  703-816-4000
Fax:      703-816-4100

Jonathan Hill (IBN 6256939)
jhill@freeborn.com
FREEBORN & PETERS LLP
311 South Wacker Drive, #3000
Chicago, IL 60606
Phone:  312-360-6643
Fax:      312-360-6520

*Attorneys for Plaintiffs*
SHUFFLE TECH INTERNATIONAL, LLC,
ACES UP GAMING, INC., and
POYDRAS-TALRICK HOLDINGS LLC

2576143

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused to be served a true and correct copy of Plaintiffs' First Set of

Requests for Production (Nos. 1-121) to Defendants upon the following attorneys of record via

hand delivery and electronic delivery on December 18, 2015:

> David K. Callahan
> Sean M. Berkowitz
> LATHAM & WAKINS LLP
> 330 North Wabash Avenue
> Suite 2800
> Chicago, IL  60611
> (312) 876-7700
> david.callahan@lw.com
> sean.berkowitz@lw.com

> /s/  *David L. Ter Molen*
> David L. Ter Molen (IBN 6270715)
> FREEBORN & PETERS LLP

2576143