# EXHIBIT 17

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| Shuffle Tech International, LLC, et al | |
| Plaintiffs | Civil Action No. 1:15-cv-3702 |
| v. | Honorable Matthew F. Kennelly |
| Scientific Games Corporation, et al | |
| Defendants | |

### JOINT STATUS REPORT REGARDING DISCOVERY ISSUES

Pursuant to this Court's March 2, 2016 Order, the parties submit this Joint Status Report

Regarding Discovery Issues for the April 11, 2016 status hearing. Plaintiffs' position is that

there are currently three interrelated issues that require the Court's assistance: (1) the timing and

scope of Defendants' decision whether to rely on advice of counsel to defend against Plaintiffs'

*Walker-Process* fraud and sham litigation claims and thereby waive privilege with respect to the

subject matters addressed; (2) the start and finish dates of Defendants' Rule 34 document

production; and (3) Defendants' responsibility for producing documents that are in the

possession of their counsel in other litigations and patent prosecutions and which are subject to

Plaintiffs' document subpoenas to such counsel.

**1.** **Defendants' decision to invoke advice of counsel as a defense and thereby waive attorney-client privilege**

**a)** **Status:** Defendants have not stated whether they will rely on advice of counsel and

thereby waive privilege in order to defend against Plaintiffs' *Walker-Process* fraud and sham

litigation claims and have not provided Plaintiffs' with a date by which they will do so. The parties

2610963

engaged in a number of calls and email exchanges to discuss, among other issues, their positions on the advice of counsel defense and when a decision on the privilege waiver would be necessary prior to the last status hearing before the Court on March 2, 2016. The matter was again specifically raised at the March 2, 2016 status hearing. The parties have not discussed the matter further after the prior hearing. Plaintiffs have, however, issued a number of third party document subpoenas to Defendants' former litigation and patent prosecution counsel and noticed the deposition of Defendants' patent reexamination counsel, each of which invoked attorney-client privilege objections.

**b)** **Plaintiffs' position:** Fact discovery commenced on December 15, 2015 and almost one-third of the discovery period has now elapsed without a single deposition and with Defendants having answered two interrogatories and having produced a total of 145 pages of documents. Pending discovery, including document production, third-party subpoenas and fact depositions, such as the noticed deposition of Defendants' reexamination patent owner counsel, Allan Fanucci, tentatively scheduled for April 26, cannot proceed without resolution of the advice of counsel/privilege waiver issue. Plaintiffs request that the Court order the Defendants to promptly decide, i.e., by the end of this month, whether they will be relying on advice of counsel to defend Plaintiffs' *Walker-Process* fraud and sham litigation claims, thereby waiving privileges to the subject matter of such advice.

This case is totally unlike the patent infringement cases cited by Defendants and, as this Court has already decided, the Local Patent Rules do not apply.[1] In patent infringement cases, the advice of counsel and privilege waiver issues only pertain to willful infringement, and thus

---

[1] As the Court will recall, the applicability of the N.D. Ill. Local Patent Rules was repeatedly urged by Defendants' prior counsel, Latham & Watkins but, with the exception of a modified version of the ESI rules, the Court declined to adopt those rules in this case.

2610963

enhanced damages, or to an award of attorney's fees under the "extraordinary case" provision of 35 U.S.C. §285. These issues are largely peripheral to and independent of the central infringement and validity issues.[2] Here, the opinion of counsel/waiver of privilege at issue permeate all aspects of this sham litigation/*Walker-Process* fraud case. Defendants' alleged bad faith is a critical aspect of Plaintiffs' burden of proof on almost every liability issue of the case. Defendants' bad faith, and thus the alleged advice of counsel defense, will be an issue with respect to each of the following critical subject matters:

      1.     Defendants' non-disclosure of the Roblejo prototypes, the Luciano prototypes and the Block '044 patent during the original prosecution of the '982 patent.

      2.     Defendants' non-disclosure of the Roblejo and Luciano prototypes during the original prosecution of the '935 patent.

      3.     The good faith basis, if any, for the decisions by SHFL Entertainment, Inc. ("SHFL") to file and to continue the Nevada *DigiDeal* litigation, including SHFL's investigation of the validity, enforceability and infringement of the '982 and '935 patents asserted in that litigation, including after reexamination of those patents.[3]

      4.     Defendants' non-disclosure of the Roblejo and Luciano prototypes during reexamination of the '982 and '935 patents.

---

[2] Further distinguishing the patent infringement cases and Local Patent Rules which Defendants claim are instructive, there will be no *Markman* claim construction hearing, briefing schedule or order to await in this case.

[3] On March 30, 2016, the *DigiDeal* court granted DigiDeal's Motion for Summary Judgment of non-infringement, finding that "the asserted claims were either cancelled or amended to cure invalidity during reexamination," and closed the case.

3

2610963

Case: 1:15-cv-03702 Document #: 84 Filed: 04/08/16 Page 4 of 16 PageID #:662

5. The good faith basis, if any, for SHFL's filing and prosecution of the *CARD II* litigation, including any investigation of the validity, enforceability and infringement of the patents asserted.

6. SHFL's defense to the inequitable conduct allegations set out in the defendants' Motion for Leave to Amend (Dkt. #192) in the *CARD II* litigation.

7. The good faith basis, if any, for SHFL's filing and continuing the *VendingData 3* litigation, including any investigation of the validity, enforceability and infringement of the patents asserted, including SHFL's decision to continue that litigation after the February 28, 2007 Order Adopting Magistrate Judge's Markman Report and Recommendation (Dkt. # 115).

Note particularly that items 3, 5, 6 and 7 would never arise in the typical patent infringement case except with respect to an unenforceability defense based on patent misuse or an award of attorney's fee under the "exceptional case" provision of 35 U.S.C. § 285, the latter of which would normally not even be addressed until the completion of trial or other dispositive adjudication. Here, these issues are absolutely central to Plaintiffs' sham litigation case and will be the subject of discovery from the outset.

c) **Defendants' Position**:

It is premature to require Defendants to definitively decide whether they will rely on an advice of counsel defense, or make a privilege waiver, with respect to some or all of the many different legal events Plaintiffs have raised. Defendants have not had an opportunity to review relevant documents and interview relevant witnesses. By analogy to patent cases, in this District, local rules do not require a decision about relying on advice of counsel (and any consequent waiver) until 35 days before the close of discovery, which would fall on November 10, 2016 here.

4

2610963

Local Patent Rule 3.6(a). While Defendants should not be ordered to make any decision on an advice of counsel defense before November 10, in an effort to cooperate and expedite discovery, Defendants have offered a substantially sooner determination than that — commencing in June 2016, a decision about any waiver that is reasonably likely to affect a deponent's testimony in advance of that testimony. In calls between the parties, Plaintiffs' counsel appeared to acknowledge the reasonableness of this proposal; consequently, this issue is unripe both in the sense that it is premature in the litigation, and the parties are not yet at an impasse.

By way of further background, Plaintiffs have served discovery requests involving *ten* different litigations, some of which were commenced as early as 2002, as well as discovery requests involving *dozens* of patents. Many of the law firms and attorneys involved in the previous litigations no longer work for Defendants, and many of the attorneys involved are no longer at their prior law firms. Defendants simply cannot — and are not required to — make any sort of wholesale decision on waiver by the end of April. Defendants have repeatedly requested that Plaintiffs provide any authority that supports a required earlier determination; Plaintiffs have not provided any. The authority Defendants have located supports a much later determination.

For example, the Northern District of Illinois's Local Patent Rule 3.6(a) provides that "[t]he substance of a claim of reliance on advice of counsel offered in defense to a charge of willful infringement, and other information within the scope of a waiver of the attorney-client privilege based upon disclosure of such advice, is *not subject to discovery until thirty-five (35) days prior to the close of the period of fact discovery that, under LPR 1.3, follows the court's claim construction ruling*." Local Patent Rule 3.6 (emphasis added). The Local Patent Rule 1.3 fact discovery period is the second — and final — discovery period in patent cases. Plaintiffs have used the Local Patent Rules as a guide to their production of documents in this case. Defendants

2610963

Case: 1:15-cv-03702 Document #: 84 Filed: 04/08/16 Page 6 of 16 PageID #:664

should not be asked to make a decision on whether to waive the privilege until *November 10, 2016* — 35 days before the December 15, 2016 fact discovery cut-off.

Similarly, in a decision predating the local rule, the Northern District of Illinois denied a plaintiff's "request that [d]efendants disclose immediately any opinions of counsel they intend to rely upon." Instead, the Court ordered defendants to make that disclosure and produce any relevant opinion letters "no later than four months before the close of fact discovery to allow [p]laintiff adequate time to conduct any related discovery." *Fellowes, Inc. v. Aurora Corp. of AM.*, 2009 U.S. Dist. LEXIS 38768, at \*11 (N.D. Ill. Apr. 1, 2009). Plaintiffs' demand that Defendants be ordered to make a decision on an advice of counsel defense nearly eight months before the close of fact discovery is not supported by the law.

Plaintiffs' argument that the local patent rule and patent cases are not analogous to this antitrust case because in patent cases, the issue of privilege waiver is relevant only to the "peripheral" issue of willfulness, is mistaken. Willfulness is nearly always a *central* issue in patent cases, both in discovery and at trial, because of its potential to treble damages. In addition, as Plaintiffs acknowledge, Defendants also commonly waive privilege in patent cases in defense to claims of inequitable conduct for the failure to disclose prior art to the patent office. The waiver occurs so that the Defendants can explain the reasons the attorneys did not disclose those references. Similar allegations form the core of Plaintiffs' sham litigation allegations in this case. At all events, Plaintiffs have provided no authority for their position that an earlier waiver can be required in the context here.

Moreover, discovery is not at an impasse. As described below, Defendants are working diligently to produce documents in response to Plaintiffs' 152 document requests. In addition, Defendants have responded to Plaintiffs' first set of interrogatories, and at Plaintiffs' request,

6

2610963

supplemented two of those interrogatories. Defendants are also working diligently to provide several complex, detailed lists of information in satisfaction of 11 document requests, essentially providing interrogatory responses. Subpoena discovery is proceeding as well. Fact discovery in this matter is open until December 15, 2016.

Moreover, to the extent that Defendants make a waiver here, that waiver would likely be limited in scope and affect only a handful of documents — those transmitted to and from a client by counsel. *See In re Echostar Communications Corp.*, 448 F.3d 1294 (Fed. Cir. 2006). "By asserting the advice-of-counsel defense to a charge of willful infringement, the accused infringer and his or her attorney do not give their opponent unfettered discretion to rummage through all of their files and pillage all of their litigation strategies." *Id.* at 1303. Thus, in the infringement context, "[i]t is what the alleged infringer knew or believed, and by contradistinction not what other items counsel may have prepared but did not communicate to the client, that informs the court of an infringer's willfulness." *Id.* Similarly, here, documents created by counsel but not provided to the client would likely not be implicated by an advice of counsel here. This limited number of documents can be produced later in the case without any prejudice to Plaintiffs.

### 2.     The Parties' Document Production

#### a)     Status:

Plaintiffs produced 91,727 pages of documents on February 29, 2016, and another 10,745 additional pages on April 7, 2016 in response to Defendants' December 14 First Set of Requests for Production, and are continuing to produce further documents. Plaintiffs have not provided an end date for their document production. Plaintiffs have invoked the attorney-client privilege and attorney work product doctrine to prevent disclosure of documents responsive to Defendants' requests.

2610963

Defendants have likewise invoked the attorney-client privilege and attorney work product doctrine and, to date, have produced only 145 pages of documents, all related to their document retention policies, in response to Plaintiffs' First Set of Requests for Production to Defendants on December 18, 2015. Defendants have not produced any documents in response to Plaintiffs' February 19, 2016 Second Set of Requests.

**b)** **Plaintiffs' Position:**

Defendants' belated proffer below to begin its document production by April 22, now satisfies Rule 34's requirement for a production start date, but Defendants have still not provided even an estimate of a reasonable end date for the completion of production of the bulk of Defendants' non-email documents. Plaintiffs realize that additional documents will be located over time, but Defendants ought to be able to provide a reasonable estimate when their production will be substantially complete.

Defendants' belated proffer below also provides for proposed email search terms and custodians by April 22. This is reasonable.

However, Defendants must be required to promptly state whether they are relying on an advice of counsel defense and thereby waiving privilege with respect to their documents and witnesses and, equally importantly, their lawyer's documents, by the end of April, or at the latest, by mid-May.

**c)** **Defendants' Position:**

As this Court has recognized, discovery in this case will be a lengthy process, and there is likely "a year's worth of fact discovery," or even "north of a year" in this matter. 11/10/15 Transcr. 20:21; 23:2-12. Fact discovery is open until December 15, 2016. It is not practical for Defendants to complete their production of non-email documents by mid-May. However, Defendants will

8

2610963

commit to making an initial production of documents by April 22, 2016, and will also be prepared to discuss search terms for emails and other electronic documents by April 22, 2016.

Almost none of Plaintiffs' requests are limited to a specific time period, and many have an extremely broad scope. For example, *one* of the 152 requests calls for "[a]ll formal papers (including all pleadings, motions, discovery or other documents, and all exhibits or attachments thereto), deposition related materials (including transcripts, exhibits and video recordings) and document productions from any litigation involving any of the Defendants and any card shuffler competitor or perceived competitor." This request alone likely encompasses millions of pages of documents.

Nonetheless, Defendants are working diligently to respond to Plaintiffs' 152 document requests. They have collected and are currently reviewing more than 45,000 hard-copy documents that they have identified as potentially responsive to Plaintiffs' requests. Three Jenner & Block attorneys are dedicated to daily review of these documents. In addition, Defendants are working to collect and process for review electronic documents that may be responsive to Plaintiffs' requests.

Defendants are also taking significant steps to streamline certain of Plaintiffs' requests, at great burden, in an effort to expedite discovery. Defendants have essentially agreed to convert 11 of Plaintiffs' requests for production into interrogatories, agreeing to provide complex and detailed lists of information that Defendants are working very hard to collect by April 15, 2016, including information about the identity of counsel in prior litigation and prosecution, the identity of Defendants' employees who were involved in prior litigation and who have other specialized knowledge relevant to this litigation. Much of this information involves predecessor entities and

9

2610963

stretches back over a 15-year-period. Many of the people involved no longer work for Defendants, and collecting this information is extremely burdensome.

In addition, Defendants are working diligently on an electronic collection. Simply collecting information on potential custodians, repositories for electronic documents, locations of email archives, potential servers used by different custodians, and other data essential to collecting electronic documents has been a large task, given the number of entities at issue, the number of acquisitions Defendants have experienced, the number of legacy computer systems that must be searched, and the dozens of employees who were or may have been involved in the dozens of litigations and patents at issue. An interdisciplinary team of information technology professionals working for Defendants have been working diligently on a daily basis to understand and assess the universe of potential documents and document locations.

As for Plaintiffs' position regarding email, the parties have an agreement to confer by April 22, 2016 to implement their prior agreements. Under the Supplemental Joint Status Report on December 8, 2015, the parties agreed that their "initial requests for email shall be limited to no more than 10 custodians per side and no more than 10 search terms per custodian and non-custodial data source in total," and that the Northern District of Illinois Local Patent Rules for Electronically Stored Information apply. Under LPR ESI 2.6, "[t]o obtain emails parties must propound specific email production requests."

3.     **Third Party Document Subpoenas**

a)     **Status:**

Defendants served a document subpoena on third-party DigiDeal Corporation ("DigiDeal") on December 14, 2015. DigiDeal has to date refused to produce any documents under the subpoena, and Defendants are in the process of following up with DigiDeal. Plaintiffs

10

2610963

served document subpoenas on Defendants' counsel in the asserted sham litigations and related patent prosecutions as detailed below:

### 1.      Winston & Strawn LLP ("W&S")

Plaintiffs served a document subpoena on W&S on December 30, 2015 directed to: (a) W&S' representation of SHFL in the alleged sham litigation against *DigiDeal*; (b) W&S' conduct of the USPTO reexamination of the patents asserted against *DigiDeal*; (c) W&S' representation of SHFL against TCS John Huxley America Inc., another alleged sham litigation; and (d)  W&S' representation of VendingData Corporation against Shuffle Master, Inc. in two other alleged sham litigations.  Plaintiffs have conferred multiple times with W&S and have substantially narrowed their requests.  Nevertheless, W&S responded on March 29, 2016 that it would not produce any documents, asserting that all of its responsive documents are protected by the attorney-client privilege and attorney-work product doctrine.  No privilege log has been provided.

### 2.      Kirkland & Ellis LLP ("K&E")

Plaintiffs' February 19, 2016 document subpoena to K&E is directed to K&E's representation of Shuffle Master, Inc. in the alleged sham litigations against CARD, LLC and VendingData Corporation.  K&E responded on March 4, 2016, invoking attorney-client privilege and attorney work-product, further requiring the payment of K&E's fees to collect, search for, or produce emails.  No privilege log has been provided.  There has been no further "meet and confer" with K&E.

### 3.      Kilpatrick Townsend & Stockton LLP ("Kilpatrick")

Plaintiffs' February 19, 2016 subpoena to Kilpatrick is directed to its representation of Shuffle Master, Inc. against CARD, LLC in that alleged sham litigation.  Kilpatrick has also

11

asserted privilege and work-product but, unlike the other subpoenas recipients, produced 3,320 pages of non-privileged paper documents on April 1, 2016. In return, Plaintiffs agreed to withdraw their subpoena, without prejudice, pending resolution of the privilege issue.

### 4. Trask Britt P.C. ("Trask Britt")

Plaintiffs' February 19, 2016 subpoena to Trask Britt is directed to that firm's representation of Defendants in card shuffler patent prosecution. Trask Britt's March 4, 2016 response invoked privilege and work product. No privilege log has been provided.

### 5. Mark A. Litman & Associates, P.A. ("Litman")

Plaintiffs' March 8, 2016 subpoena to Litman is directed to the prosecution of the '982 and '935 patents and other related card shuffler patents. Litman's March 21, 2016 response stated that it had returned all paper documents to Shuffle Master, Inc. in 2011 and that its electronic files were permanently lost in May of 2012. All remaining Litman documents responsive to Plaintiffs' subpoena are thus in the possession of Defendants' present counsel who has yet to produce them.

### b) Plaintiffs' Position:

Each of these subpoena disputes requires prompt resolution of the privilege waiver issue as well as resolution of Defendants' responsibility for producing all of their documents, including those in the possession of their other counsel. The attorney-client privilege belongs to the client, not the attorney. Therefore, Defendants have the responsibility to make the decision regarding waiver of that privilege and have not done so. Any further "meet and confer" with the subpoenaed counsel will largely be a waste of time and resources without a decision by Defendants in that regard, as dramatically illustrated by the end result of the extensive negotiations with Winston & Strawn – which ended with a claim that every single responsive document in Winston & Strawn's position was privileged.

12

**c)**      **Defendants' Position:**

It is premature for the Court to decide whether Defendants have a responsibility to attempt to obtain and produce their outside counsels' documents. Plaintiffs have made no attempt to meet and confer with Defendants about Defendants' role in the subpoena response of any third party other than Winston & Strawn. Defendants are open to discussing reasonable compromises regarding subpoena responses. Plaintiffs overstate the importance of the waiver issue. Even if Defendants elect to make a waiver, as described above, it will affect a limited number of documents. The remaining documents are being reviewed and, to the extent there are non-privileged documents, produced.

The scope of the documents Plaintiffs have subpoenaed is enormous and requires further discussion and review. It is not reasonable to ask Defendants to make decisions about privilege waiver at this early time when they have not seen most of the documents at issue. Plaintiffs issued 90 subpoena requests to Kilpatrick; 122 to Kirkland; 187 to Litman; 179 to Trask; and 47 to Winston. These requests are largely not time-limited and broadly written.

Moreover, Plaintiffs have requested many documents in their subpoenas that are clearly property of the subpoenaed law firms and do not belong to Defendants, making Defendants' counsel an inappropriate agent to address these subpoenas. For example, Plaintiffs asked Kilpatrick for "[a]ll Roblejo Prototypes in your possession, custody or control" and "[a]ll Luciano Prototypes in your possession custody or control." They also asked for "[a]ll documents, things, and communications relating to your document retention policies and practices" potentially relevant to the documents requested. As another example, they asked for many communications with people and companies not affiliated with Defendants such as "[a]ll documents and things related to any communications between you and the following persons and entities: L. Luciano, R.

13

2610963

Luciano, Luciano Packaging, Sierra Design," and "[a]ll documents and things related to any communications between you and any of the following persons and entities: Mr. Gola, Dr. Roblejo, Mr. Solberg and/or Casino Concepts[.]"

Similarly, Plaintiffs requested from Trask such items as "[a]ll documents sufficient to determine what percentage of Trask Britt's revenues were derived from representing Shuffle Master, Inc. in each of the following years: 2007, 2008, 2009, 2010, 2011 and 2012; "[a]ll documents sufficient to determine what percentage of Trask Britt's revenues were derived from representing SHFL entertainment, Inc. in each of the following years: 2012 2013, 2014 and 2015;" "[a]ll Roblejo Prototypes in your possession, custody or control" and "[a]ll Luciano Prototypes in your possession custody or control."

All of Plaintiffs' subpoenas are similarly broad and seek information that clearly belongs to the law firms and not to Defendants. It would not be proper to require Defendants' counsel to speak for the subpoenaed parties under these circumstances.

**4.     Fact Depositions**

**a)     Status:**

As previously noted, Plaintiffs have scheduled the deposition of Defendants' patent reexamination counsel, Allan Fanucci, [4] for April 26. This deposition requires prompt resolution of the privilege issue. Other near term depositions, such as those of Mark Litman and Kimball Anderson, will also require prior resolution of both the privilege and document production issues.

---

[4] Mr. Fanucci was Defendants' patent counsel in the reexamination of the '982 and '935 patents asserted in the *DigiDeal* litigation (Case No. 2:12-cv-1782, D. Nev.). If the privilege issue cannot be resolved before Mr. Fanucci's deposition, Plaintiffs are prepared to proceed with that deposition as to non-privileged matter, reserving the right take it again once the privilege issue has been resolved.

14

**b)** __Plaintiffs' Position:__

These depositions, like the document production and subpoena issues, all require prompt resolution of the privilege waiver issue, preferably no later than the end of April. Defendants' proffer below, to "meet and confer" to reach a meaningful compromise about documents relevant to Mr. Fanucci, is meaningless without resolution of the advice of counsel/privilege waiver issues as Plaintiffs do not need any non-privileged documents not already in their possession in order to take Mr. Fanucci's deposition. Plaintiffs are prepared to depose Mr. Fanucci without any other non-privileged documents, subject to his recall if Defendants are allowed to waive privilege subsequent to his deposition, after invoking it during his deposition. Defendants' reliance on FRCP 30(a)(A)(ii) is misplaced since the issue of Mr. Fanucci's deposition is now squarely before the Court at this status hearing and further motion practice would only waste the parties' and the Court's resources. Contrary to the implication of Defendants' statements below, Plaintiffs have never indicated to Mr. Fanucci's counsel that his deposition would be continued indefinitely, only that it would not be taken until the Court had a chance to address the privilege waiver issue, e.g., at this status hearing.

**c)** __Defendants' Position:__

Defendants have responded to Plaintiffs' position regarding a privilege waiver above. Plaintiffs have told Mr. Fanucci's counsel they do not intend to take Mr. Fanucci's deposition in April if the Court does not grant their request that Defendants be required to make a decision whether to invoke the advice of counsel defense by the end of April. To the extent that Plaintiffs wish to proceed with Mr. Fanucci's deposition in April and re-depose him later if a privilege decision is made after April, Plaintiffs will be required to seek the leave of the Court under Fed.

15

2610963

Case: 1:15-cv-03702 Document #: 84 Filed: 04/08/16 Page 16 of 16 PageID #:674

R. Civ. P. 30(a)(2)(A)(ii), and both Defendants and Mr. Fanucci will oppose that second deposition.

Plaintiffs have previously indicated that they do not intend to wait for document productions before deposing witnesses. However, to the extent that Plaintiffs believe they need particular documents involving Mr. Fanucci before his deposition, Defendants are willing to meet and confer and reach a reasonable compromise about documents relevant to Mr. Fanucci. Plaintiffs have made no effort to meet and confer with Defendants about such a plan.

Dated:  April 8, 2016

By: */s/  Robert A. Rowan*
    One of the Attorneys for Plaintiff

    Robert A. Rowan (*pro hac vice*)
    rar@nixonvan.com
    Joseph S. Presta (*pro hac vice*)
    jsp@nixonvan.com
    NIXON & VANDERHYE P.C.
    901 North Glebe Rd.
    Arlington, Virginia 22203
    Phone:  703-816-4000
    Fax:     703-816-4100

    Jonathan Hill (IBN 6256939)
    jhill@freeborn.com
    Jeffery Cross
    David Ter Molen
    FREEBORN & PETERS LLP
    311 South Wacker Drive, #3000
    Chicago, IL 60606
    Phone:  312-360-6643
    Fax:     312-360-6520

*Attorneys for Plaintiffs*
*Shuffle Tech International, LLC,*
*Aces Up GAMING, INC., and*
*Poydras-TALRICK HOLDINGS LLC*

Respectfully submitted,

By: */s/ David Jimenez-Ekman*
    One of the Attorneys for Defendant

    Craig C. Martin
    David Jimenez-Ekman
    Timothy J. Barron
    Sara T. Horton
    JENNER & BLOCK LLP
    353 N. Clark Street
    Chicago, IL 60654-3456
    Tel: 312.222.9350
    Fax: 312.527.0484
    cmartin@jenner.com
    djimenez-ekman@jenner.com
    tbarron@jenner.com
    shorton@jenner.com

*Attorney for Defendants Scientific*
*Games Corporation, Bally Technologies,*
*Inc., and Bally Gaming, Inc.*

16

2610963