# EXHIBIT 19

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Shuffle Tech International, LLC, et al | |
| Plaintiffs | Civil Action No. 1:15-cv-3702 |
| v. | Honorable Matthew F. Kennelly |
| Scientific Games Corporation, et al | |
| Defendants | |

**JOINT STATUS REPORT REGARDING DOCUMENT PRODUCTION DEADLINES**

**AND CLIENT CONTROL OF ATTORNEY DOCUMENTS**

Pursuant to this Court's April 11, 2016 Minute Order, the parties submit this Joint Status Report Regarding Document Production Deadlines and Client Control of Attorney Documents for the May 10, 2016 status hearing. There are two issues on which the Court asked the parties to report: (1) the deadline for substantial completion of document production responsive to previously served Rule 34 document requests; and (2) the nature of Defendants' responsibility, if any, for producing documents that are in the possession of their counsel in other litigations and patent prosecutions and which are the subject of Rule 34 requests as well as Plaintiffs' document subpoenas to such counsel.

**1.      The Parties' Document Production**

**Plaintiffs' Position:**

Plaintiffs produced 91,727 pages of documents on February 29, 2016, another 10,745 additional pages on April 7, 2016 and are continuing to produce further documents. Plaintiffs

2610963

Case: 1:15-cv-03702 Document #: 87 Filed: 05/03/16 Page 2 of 18 PageID #:638

have also provided Defendants a list of all of Plaintiffs' relevant e-mail custodians, as well as an initial list of selected Defendants' custodians and proposed search terms for Defendants' responsive email production. Defendants have not yet provided Plaintiffs with proposed e-mail search terms. Assuming that such terms are promptly provided, and barring other unforeseen circumstances, Plaintiffs can substantially complete their responses to all outstanding document requests by the end of the month.

Prior to the status conference with the Court on April 11, Defendants had produced 145 pages of documents and have since produced 657 documents comprising 4,854 pages in response to Plaintiffs' December 18, 2015 and February 19, 2016 Requests for Production. On May 2, Defendants produced an additional 363 documents comprising 2,544 pages. Defendants have also provided information to Plaintiffs concerning possible email custodians and regarding certain documents that they are reviewing, but have not yet produced.

Although the parties have conferred with respect to the completion of Defendants' document production, no deadline for the completion of Defendants' document production has been agreed to. Plaintiffs have asserted that Defendants should be able to complete their production by the 4th of July, while Defendants assert that they will need until September 1. Fact discovery closes on December 15.

Rule 34 requires production start and finish dates. Plaintiffs submit that Defendants ought to be able to complete their production responsive to Plaintiffs' December 18, 2015 and February 19, 2016 Requests for Production by July 4, which will be 6 ½ months after Plaintiffs' initial Requests, which comprised the great majority of Plaintiffs' Requests, and 4 ½ months after Plaintiffs' supplementary requests in February.

**Defendants' Position:**

Defendants have been working diligently to move through document production, including working to agree with Plaintiffs on the scope of Defendants' document review. Depending on the results of searches based on proposed terms provided by Plaintiffs and further negotiations this week, Defendants will provide an estimated substantial completion date for the document production as a supplement to this report before their May 10, 2016 status hearing.

To date, while a multi-disciplinary team searched a variety of current and legacy systems to determine what sources of electronic information are available for more than 33 custodians over a period of more than 16 years, Defendants' review has focused on hard copy documents. Defendants have collected and processed for review 45,233 hard copy documents, the vast majority of which come from legal department files. Defendants have completed at least a first-level review of 13,995 of those documents. At least 7,331 of these documents have been identified as potentially privileged (or at least will require further evaluation, interviews of potentially-involved attorneys, or research) before they can be produced. At least 2,368 of these documents appear to implicate pre-existing confidentiality obligations under past protective orders or non-disclosure agreements and will require notice to third parties before they can be produced. Of course, other documents in the review have been identified as non-responsive to Plaintiffs' requests. Thus, as one might expect when seeking documents from the files of lawyers, the yield of actual produce-able (responsive and non-privileged) documents from the review has been small compared to the volume of work. Defendants have produced 680 documents and are preparing to make additional rolling productions.

Case: 1:15-cv-03702 Document #: 87 Filed: 05/03/16 Page 4 of 18 PageID #:690

In addition to the 45,233 hard copy documents they have collected, Defendants have now identified and are finalizing the collection and transfer of over ***1.5 terabytes***[1] of electronic data identified from over 33 custodians, including e-mail data, historic e-mail archive data, hard drives, personal drives located online, physical disks, and other sources.   On April 25, 2016, Defendants provided Plaintiffs with detailed information about the nature of the data available for particular custodians.  On April 27, 2016, the parties had a call, during which Plaintiffs identified which 11 custodians' data they wanted searched, but said that they would propose search terms on May 2, 2016.  Defendants received those search terms on May 3, 2016 and are in the process of determining the nature of the burden they would impose.  The parties have agreed to engage in an iterative process to determine whether they can agree on search terms that yield a reasonable burden and appropriate substantial completion date, and intend to file a short supplement on Friday, May 6, 2016 to provide the Court an update on their efforts.

Defendants are unable to agree to a specific substantial completion date in the two-month range suggested by Plaintiffs until this process is complete.  Once the universe of documents to be reviewed is defined, the time necessary to complete the review and production is a function of mathematics – depending on the nature of the documents, a reviewing attorney can generally review between 40 and 60 documents per hour and can work productively between 50 and 60 hours per week.  Defendants will commit whatever resources are necessary to complete a reasonable review in a reasonable time period.

But, depending on how the negotiations over search terms proceed, the two month period suggested by Plaintiffs may be both unreasonably and unnecessarily short.  Assuming

---

[1] By way of comparison, the complete works of Shakespeare take up approximately 5 megabytes of data in a plain text format; this collection is more than 300,000 times as large as the complete works of Shakespeare. *See* http://www.gn.apc.org/support/understanding-file-sizes.

4

negotiations were completed and review could begin on May 9, that would provide for 7 weeks of review.  It may not be reasonably possible to complete review if the universe of documents Plaintiffs insist upon (or the Court orders) is very large, even given a large team of dedicated reviewers.  And while Defendants also desire to complete document review and move on to depositions as soon as reasonably practicable, Plaintiffs' proposed early July 2016 completion is unnecessarily early.  The parties have agreed to a limit of 15 depositions, totaling 78 hours, per side.  Plaintiffs proposal would allow for 5 ½ months to complete those depositions.  Defendants have no desire to push the depositions to the "last minute," but also think that 15 depositions per side could just as reasonably be completed in 2-3 months to permit an orderly document production process.

2.      **Document Subpoenas to Defendants' Prior Counsel**

   a)      **Plaintiffs' Status Report:**

Plaintiffs served document subpoenas on the following Defendants' counsel in the asserted sham litigations and related patent prosecutions:

   1.      **Winston & Strawn LLP ("W&S")**

Plaintiffs' December 30, 2015 document subpoena to W&S was directed to:  (a) W&S' representation of SHFL in the alleged sham litigation against *DigiDeal,* which has now concluded in favor of DigiDeal—unless W&S files an appeal; (b) W&S' conduct of the USPTO reexamination of the patents asserted against *DigiDeal,* which has also concluded—with all previously asserted patent claims being canceled or amended; (c) W&S' representation of SHFL against TCS John Huxley America Inc., another alleged sham litigation, which has long since concluded; and (d)  W&S' representation of VendingData Corporation against Shuffle Master,

Inc. in two other alleged sham litigations, the latter of which terminated by order dated March 16, 2009.  Plaintiffs have conferred multiple times with W&S to substantially narrow their document requests at W&S' request, the end result of which was W&S' response on March 29, 2016 that it would not produce any documents, asserting that all responsive documents were protected by the attorney-client privilege and attorney-work product doctrine.  However, no privilege log has been provided.  Plaintiffs attempted to get Defendants' current litigation counsel, Jenner & Block, involved in those negotiations but, with one exception, that attempt failed as W&S appears determined not to produce any documents, even to Jenner & Block, as evidenced by Defendants' own admission *infra*, that W&S is now using Plaintiffs' subpoena, which it has essentially rebuffed, as an excuse not to produce documents to its own client.

### 2.    Kirkland & Ellis LLP ("K&E")

Plaintiffs' February 19, 2016 document subpoena to K&E is directed to K&E's representation of Shuffle Master, Inc. in the alleged sham litigations against CARD, LLC and VendingData Corporation.  K&E responded on March 4, 2016, invoking attorney-client privilege and attorney work-product, further requiring the payment of K&E's fees to collect, search for, or produce emails.  No privilege log has been provided.  There has been no further "meet and confer" with K&E pending Defendants' court-ordered May 23 deadline to "fish or cut bait" with respect to Defendants' potential reliance on advice of counsel, and consequent waiver of privilege, to defend against Plaintiffs' sham litigation and *Walker-Process* fraud allegations.

### 3.    Kilpatrick Townsend & Stockton LLP ("Kilpatrick")

Plaintiffs' February 19, 2016 subpoena to Kilpatrick was directed to its representation of Shuffle Master, Inc. against CARD, LLC in that alleged sham litigation.  Kilpatrick has also asserted privilege and work-product but, unlike the other subpoenas, recipients produced 3,320

pages of non-privileged paper documents on April 1, 2016.  In return, Plaintiffs agreed to withdraw their subpoena, without prejudice, and to suspend the requirement for a privilege log, pending resolution of the privilege issue on May 23.

### 4. Trask Britt P.C. ("Trask Britt")

Plaintiffs' February 19, 2016 subpoena to Trask Britt is directed to that firm's representation of Defendants in card shuffler patent prosecution.  Trask Britt's March 4, 2016 response invoked privilege and work product.  No privilege log has been provided.  Further negotiations have been suspended pending Defendants' "fish or cut bait" decision on privilege.

### 5. Mark A. Litman & Associates, P.A. ("Litman")

Plaintiffs' March 8, 2016 subpoena to Litman is directed to the prosecution of the '982 and '935 patents and other related card shuffler patents.  Litman's March 21, 2016 response stated that it had returned all paper documents to Shuffle Master, Inc. in 2011 and that its electronic files were permanently lost in May of 2012.  All remaining Litman documents responsive to Plaintiffs' subpoena are thus in the possession of Defendants' present counsel who has yet to produce them.

Each of these subpoena disputes is currently in limbo pending Defendants' decision on whether to rely on advice of counsel and thereby waive privilege as well as resolution of Defendants' responsibility for producing documents responsive to Plaintiffs' Rule 34 requests which are in the possession of their other counsel.  Plaintiffs acknowledge that the various law firm subpoenas are not 100% co-extensive with the pending Rule 34 requests to Defendants and that the subpoenaed law firms have their own work-product rights.  However, the attorney-client privilege, as well as the vast majority of the subpoenaed documents, belong to the Defendants, who have the ultimate responsibility to decide whether to waive privilege and to ensure

compliance with the Rule 34 requests previously served on them, including production of all responsive non-privileged documents in the possession of the "agents" under their "control." Defendants have not done so.

Any further "meet and confer" with the subpoenaed counsel would be a waste of time and resources without a decision by Defendants and the Court in the above regards, as amply illustrated by the end result of the extensive negotiations with Winston & Strawn – which ended with a refusal to produce a single document in response to Plaintiffs' subpoena **and** –in Catch 22 fashion—a parallel refusal to produce a single document to Defendant's current counsel, Jenner & Block, using the pendency of Plaintiffs' subpoena as an excuse for W&S' thwarting of Jenner & Block's compliance with Defendants Rule 34 obligations. Court intervention is clearly required to resolve this untenable and unjustified situation.

Parties responding to requests for production have an obligation to produce responsive documents over which they have custody or "control." *Dobbey v. Randle*, No. 10 C 3965, 2014 WL 1364428 at *1 (N.D. Ill. April 7, 2014) ("control" construed broadly to include "documents that a party has the legal right to obtain on demand"). The courts have consistently held that a client has control over the documents in its attorneys' possession. *Boyd Group (U.S.), Inc. v. D'Orazio*, No. 1:14-cv-7751, 2015 WL 5321262 at *3 (N.D. Ill. Sept. 11, 2015) (party ordered to obtain documents in physical possession of former counsel because, as a former client, he had the legal right to demand that his attorneys turn over documents generated during his representation and thus had Rule 34 "control"); *Gossard v. Adia Services, Inc*., No. 91 C 2047, 1992 WL 198424 at *2 (N.D. Ill. Aug. 11, 1992) (case law clear that a party has Rule 34 "control" of its documents in its attorney's physical possession). The obligation to produce under Rule 34 does not turn on whether the party has legal ownership of the documents, but on

8

whether it has control.  *Weck v. Cross*, 88 F.R.D. 325, 327 (N.D. Ill. 1980) (legal ownership is not determinative; control over documents is sufficient to trigger obligation to produce).; *see also*, *SRAM, LLC v. Hayes Bicycle Group, Inc.*, No. 12 C 3629, 2013 WL 6490252 at *4 (N.D. Ill. Dec. 10, 2013) ("by including 'control' … [Rule 34] explicitly requires production of documents that "may not actually be owned by the party in question.").

Nor is "control" dependent upon the location of the documents.  *Dexia Credit Local v. Rogan*, 231 F.R.D. 538, 546 (N.D. Ill. 2004) (as a matter of law, location of documents under respondent's control is irrelevant).  The court having jurisdiction over the responding party can "order them to perform an act in another 'state' that may be required for production." *Id.*

At least one Illinois court has found that attorney's "working files and email" created on the client's behalf come within the scope of documents over which the client has "control."  *See, Boyd Group*, 2015 WL 5321262 at *3-*4; see also, The Restatement (Third) of Law Governing Lawyers (2000) (providing that an attorney must allow a current or former client to inspect and copy <u>any</u> document in the attorney's possession that relates to the representation, unless there are other substantial grounds to refuse, such as a duty to a third party under a confidentiality agreement or protective order); *Schmidt v. Kimberly-Clark Corp.*, No. 09-C-0643, 2013 WL 989829 at * 1 (E.D. Wisc. March 13, 2013) (adopting rule set forth in Restatement).

Defendants cite *Hobley v. Burge*, 433 F.3d 946 (7th Cir. 2006) to support an argument that discovery of requested documents in the hands of a party's current or former attorneys should be by subpoena.  *Hobley,* however*,* did not deal with a discovery dispute *per se* but, rather, with the propriety of a sanction imposed on a law firm, i.e., a court-ordered waiver of the firm's work product immunity despite their ignorance of the underlying litigation or discovery requests.  In this context, the 7th Circuit observed that the usual method of compelling production

9

of documents in the hands of a third party is through Rule 45.  However, the 7th Circuit also noted that the party whose former attorneys held the requested documents was not absolved of its "duty to respond fully and candidly to discovery requests."  *Hobley*, 433 F.3d at 952.  Ignoring that duty, the former client in *Hobley* neither sought to exercise its legal "control" over the documents in question nor ask its former attorneys to produce a privilege log.  *Id*., at 950.  Conversely, the party seeking the documents never moved to compel their production from the opposing party, even though those documents "were encompassed by requests Hobley had served on [the former client]" under Rule 34.  *Id.*

*Hobley* also made clear that an attorney's independent work product rights are dependent on whether "invoking the [work product] privilege would [not] harm the client's interests." 433 F.3d at 949 (citing Restatement (Third) of the Law Governing Lawyers § 90 cmt. c (2000)).  This consideration, which is particularly relevant here, can be triggered when the client voluntarily or involuntarily waives its attorney client privilege.  *Id*.  If Defendants decide it's in their best interests to waive privilege, its former attorneys would be hard pressed to successfully argue that their interests trump those of their current or former client.

Aside from *Hobley,* none of the other cases cited by defendants on the Rule 34 "control" issue address the agency relationship between attorneys and their clients or the inherent control that a client has over its documents in the possession of its current or former attorneys.  One of Defendants cases, *Thermal Design, Inc. v. American Society of Heating, Refrigerating & Air-Conditioning Eng'rs, Inc*., 755 F.3d 832, 836 (7th Cir. 2014), dealt with discovery of documents from an organization's committee members, who were not employees of the party-organization. *Burton Mechanical Contractors, Inc. v. Foreman*, 148 F.R.D. 230, 236 (N.D. Ind. 1992) similarly dealt with discovery of documents in the possession of a party's former employer.

Likewise, *Sparks Tune-Up Centers, Inc. v. Panchevre*, No. 90 C 4369, 1991 WL 101667 (N.D. Ill. June 4, 1991) addressed discovery of documents in the possession of individuals with whom the party had a former business relationship. *Id*. at *3. *Chaveriet v. Williams Pipe Line Co.,* 11 F.3d 1420 (7th Cir. 1993) dealt with discovery of documents in the possession of a non-party company hired by another non-party company to test soil samples. *Id*. at 1423 and 1426. "Agency" and "control" were hotly contested legal and factual issues in each of these cases. Those issues are not in dispute here. Each of the subpoenaed parties is a law firm that, by law, is the "agent" of its client or former client. See *Boyd Group*, at 3*.

Plaintiffs point out that the documents responsive to their Rule 45 requests that extend beyond the scope of their Rule 34 requests (such as those identified by Defendants below), are not nearly as important to Plaintiffs as the co-extensive requests, particularly now that over 6 months have passed with very few documents having been produced by Defendants. As a result, if Defendants are ordered to obtain the co-extensive documents under their control from their counsel (as Plaintiffs believe they are obligated to do) further pursuit of the non-co-extensive documents through enforcement of the subpoenas may not even be necessary.

**Defendants' Position:**

Plaintiffs have issued subpoenas to *five* law firms who currently represent or previously represented Defendants or their predecessors containing more than 700 requests in total. Discovery from a law firm's files is generally disfavored for the burden it imposes and the basic reality that most, but not all, documents in a law firm's files are either (i) privileged, work product or otherwise exempt from discovery, or (ii) publically available in the court or patent prosecution file. Plaintiffs may think that Defendants will waive the protection over some of

11

Case: 1:15-cv-03702 Document #: 84 Filed: 05/03/16 Page 12 of 18 PageID #:698

these documents, but Defendants' waiver (to the extent there is any) is not likely to be broad, and Plaintiffs have not articulated any theory by which they might pierce the protection afforded these documents. Plaintiffs' subpoenas thus attempt to impose an immense burden on Defendants for what is likely to be a puny yield of discoverable information. Nonetheless, Defendants' counsel has been working cooperatively to facilitate responses and productions from the subpoenaed law firms. Plaintiffs apparently take the position that this is not good enough, and Defendants must undertake a production from their prior law firms' files as if the files were their own.

Defendants should not be ordered to attempt to assert "control" over massive volumes of attorney data, much of which they have no right to obtain. Subpoenas to Defendants' former law firms is a better method here for three reasons. *First*, in the Seventh Circuit, the proper method for attempting to discover the work product of a party's attorney is by issuing a subpoena to the law firm, not by issuing discovery requests to the party to the suit. *Hobley v. Burge*, 433 F.3d 946, 949 (7th Cir. 2006). *Second*, many of the attorney documents that Plaintiffs seek are documents that Defendants do not "control" under Rule 34(a); Plaintiffs simply cannot meet their burden of showing that Defendants have a legal right to obtain the documents at issue. *See, e.g. Thermal Design, Inc. v. American Society of Heating, Refrigerating & Air-Conditioning Eng'rs, Inc.,* 755 F. 3d 832, 838-39 (7th Cir. 2014). *Third*, practicalities weigh against making Defendants responsible for the subpoenaed firms' responses. Under the circumstances, Plaintiffs should be required to conduct discovery of the subpoenaed firms through their document subpoenas.

*First,* Plaintiffs should seek discovery by subpoena rather than an attenuated "control" theory. In *Hobley*, the Seventh Circuit stated "[w]hen documents are sought from a nonparty, the

12

Case: 1:15-cv-03702 Document #: 58-19 Filed: 09/03/16 Page 13 of 18 PageID #:699

usual method of compelling production is via a subpoena under Fed. R. Civ. P. 45. This includes work product held by a nonparty attorney." 433 F.3d at 949-50, n.3. Then, after applying that general principle to the particular situation of a party's former attorney, the Seventh Circuit went on to explain: "[i]t is the City [the former client], not Jones Day [the City's former's attorneys], that is the responsive party in this suit. And even if Jones Day were the City's current counsel, Rule 34 would not be the correct discovery tool for gaining access to work product held by an attorney." *Id.* at 950. The Seventh Circuit recognized that "[b]ecause the [firm] has an independent interest in privacy, we believe its privilege claim would have negated the City's 'control' of the documents for purposes of this litigation." *Id.* at 950 n.3. Consistent with that guidance, subpoenas are appropriate here.

***Second,*** Federal Rules of Civil Procedure 34(a) limits a party's obligation to produce documents to documents that are within that party's "possession, custody, or control." Fed. R. Civ. P. 34(a). To establish "control," the party seeking production has the burden of establishing that the other party has a ***legal right*** to obtain those documents. *Thermal Design*, 755 F. 3d at 838-39; *Burton Mechanical Contractors, Inc. v. Foreman,* 148 F.R.D. 230, 236 (N.D. Ind. 1992); *Sparks Tune-Up Centers, Inc. v. Panchevre,* No. 90 C 4369, 1991 WL 101667, at *3 (N.D. Ill. June 4, 1991). The Seventh Circuit has explained that "the fact that a party could obtain a document if it tried hard enough and maybe if it didn't try hard at all does not mean that the document is in its possession, custody, or control; in fact it means the opposite." *Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420, 1427 (7th Cir. 1993).

Many of the documents that Plaintiffs apparently seek from the subpoenaed firms are not in Defendants' control. *See* ISBA Op. 94-13 (Jan. 1995). For example, Plaintiffs seek

documents that have nothing to do with the client file. As one example of this kind of request,

Plaintiffs seek internal law firm revenue information, including:

- Subpoena Category 164 to Trask Britt: "All documents sufficient to determine what percentage of Trask Britt's revenues were derived from representing Shuffle Master, Inc. in each of the following years: 2007, 2008, 2009, 2010, 2011 and 2012."

- Subpoena Category 165 to Trask Britt: "All documents sufficient to determine what percentage of Trask Britt's revenues were derived from representing SHFL entertainment, Inc. in each of the following years: 2012, 2013, 2014 and 2015."

- Subpoena Category 172 to Mark Litman: "All documents sufficient to determine what percentage of Mark A. Litman & Associates, P.A.'s revenues were derived from representing Shuffle Master, Inc. in each of the following years: 2000, 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2008, 2009, 2010, 2011 and 2012."

- Subpoena Category 173 to Mark Litman: "All documents sufficient to determine what percentage of Mark A. Litman & Associates, P.A.'s revenues were derived from representing SHFL entertainment, Inc. in each of the following years: 2012 and 2013."

Plaintiffs also seek information that is not limited to the subpoenaed firms' representations of

Defendants and could reach information in other client files, such as:

- Subpoena category 80 to Trask Britt: "All documents, things and communications related to any of the following persons: Mr. Block and Mr. Koester [people who are not affiliated with Defendants]. This request includes any calendar entries indicating any meetings or phone calls between you and any one or more of these persons."

- Subpoena category 30 to Kilpatrick: "All documents, things and communications relating to the Roblejo prototypes[.]"

- Subpoena category 31 to Kilpatrick: "All documents, things and communications relating to any tradeshows at which any of the Roblejo prototypes were described, shown or exhibited[.]"

Plaintiffs seek other information that is clearly beyond the scope of documents Defendants

would be entitled to collect from their law firms. For example,

- Subpoena category 1 to Kirkland seeks "the contents of your Litigation Files for the CARD I litigation," but does not exempt items that are the property of the lawyer and to which the client is not entitled, such as attorney notes, drafts, and research material. ISBA Op. 94-13 (Jan. 1995).

- Subpoena category 1 to Kilpatrick similarly seeks the contents of your Litigation Files for the CARD I litigation," but does not exempt items that are the property of the lawyer and to which the client is not entitled, such as attorney notes, drafts, and research material. ISBA Op. 94-13 (Jan. 1995).

Plaintiffs have made no effort to limit their requests to documents that Defendants actually control and have a legal right to obtain.

*Third,* practicalities weigh against requiring Defendants to collect the subpoenaed firms' documents here. The subpoenaed firms have not refused to cooperate with Plaintiffs, and Defendants have not explained why subpoenas are insufficient here. Moreover, as Defendants have indicated to Plaintiffs, they are willing to help facilitate the responses of subpoenaed firms — assuming the subpoenaed firms need and are willing to accept help.

- Kilpatrick Townsend & Stockton ("Kilpatrick") has already produced documents in response to Plaintiffs' subpoena. Defendants have offered to assist Kilpatrick with its subpoena response.

- Kirkland & Ellis ("Kirkland") responded to Plaintiffs' subpoena via letter on March 4, 2016. Defendants are not aware of any attempt by Plaintiffs to contact Kirkland after Kirkland's letter. Defendants have been in contact with Kirkland and have offered to assist with any needs related to the subpoena.

- Mark Litman and Associates, P.A. ("Mark Litman") has indicated that he does not possess any responsive files. As Plaintiffs know, Defendants assisted Mr. Litman with his subpoena response, at his request.

- Winston & Strawn LLP ("Winston") (current counsel for Defendant in a pending patent matter) has engaged in a lengthy meet-and-confer process with Plaintiffs, has provided some information in response to the subpoena, and has made detailed representations about what documents it has available and the privileges covering those documents.

Case: 1:15-cv-03702 Document #: 85-19 Filed: 05/03/16 Page 16 of 18 PageID #:702

- Trask Britt, P.C. ("Trask Britt") responded and objected to Plaintiffs' subpoena on March 4, 2016. Plaintiff have not contacted Trask Britt since receiving Trask Britt's objections. However, Defendants have been in contact with Trask Britt and have offered to assist with any needs related to the subpoena. Trask Britt has sent potentially-responsive data to counsel for Defendants for review and potential production, to the extent that Plaintiffs and Trask Britt determine through a meet-and-confer process that the data is appropriate for review. Defendants are more than willing to assist with Trask Britt's production once Plaintiffs and Trask Britt reach agreement on the scope of the production.

Further emphasizing that subpoenas are a better option that requiring Defendants to attempt to exercise control here, Plaintiffs are seeking different data from the subpoenaed firms than from Defendants. In some cases, the scope of the subpoena requests significantly *exceed* the requests to Defendants. For example, Plaintiffs have issued 152 requests for production to Defendants; they issued 187 categories of subpoena requests to Mark Litman and 179 categories of subpoena requests to Trask Britt.

Finally, as a practical matter, the law firms under subpoena are hesitant to release their files (which they may have an obligation to produce) to Defendants, without first determining the scope of their own production obligations. For example, defense counsel in this litigation has requested certain boxes of documents from Winston, but the parties agreed that Winston need not provide these documents yet because they may be implicated by the pending subpoena to Winston. Contrary to Plaintiffs' assertion, Winston has not "refus[ed] to produce a single document" to Jenner. Jenner is working collaboratively with Winston to address the subpoena to Winston and the requests to Defendants. No purpose is served by creating a need for multiple parties to re-review the same files.

In sum, Defendants have been and remain willing to work cooperatively with their current and former law firms to respond to Plaintiffs' immensely burdensome subpoenas.

However, the law firm files contain documents in which the law firms have an independent interest, and the subpoenas Plaintiffs served are not coextensive with Defendants' "client file" or consequent control over documents possessed by their current and former lawyers. The Court should not order Defendants to undertake to produce documents from five of its current and former law firms as if the files were Defendants' own.

Dated:  May 3, 2016

Respectfully submitted,

By: */s/  Robert A. Rowan*
    One of the Attorneys for Plaintiff

By: */s/ David Jimenez-Ekman*
    One of the Attorneys for Defendant

Robert A. Rowan (*pro hac vice*)
rar@nixonvan.com
Joseph S. Presta (*pro hac vice*)
jsp@nixonvan.com
NIXON & VANDERHYE P.C.
901 North Glebe Rd.
Arlington, Virginia 22203
Phone:  703-816-4000
Fax:     703-816-4100

Jonathan Hill (IBN 6256939)
jhill@freeborn.com
Jeffery Cross
David Ter Molen
FREEBORN & PETERS LLP
311 South Wacker Drive, #3000
Chicago, IL 60606
Phone:  312-360-6643
Fax:     312-360-6520


*Attorneys for Plaintiffs*
*Shuffle Tech International, LLC,*
*Aces Up Gaming, Inc., and*
*Poydras-Talrick Holdings LLC*

Craig C. Martin
David Jimenez-Ekman
Timothy J. Barron
Sara T. Horton
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654-3456
Tel: 312.222.9350
Fax: 312.527.0484
cmartin@jenner.com
djimenez-ekman@jenner.com
tbarron@jenner.com
shorton@jenner.com


*Attorney for Defendants Scientific*
*Games Corporation, Bally Technologies,*
*Inc., and Bally Gaming, Inc.*

17

18

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 3, 2016, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system.

_____/s/  *David L. Ter Molen*_____

18