# EXHIBIT 29

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

Shuffle Tech International, LLC, et al

    Plaintiffs

    v.

Scientific Games Corporation, et al

    Defendants

Civil Action No. 1:15-cv-3702

Honorable Matthew F. Kennelly

**JOINT STATUS REPORT AND DISCOVERY PLAN**

Pursuant to Fed. R. Civ. P. 26(f) and this Court's instructions to the parties at the November 10 hearing, Plaintiffs and Defendants have conducted a discovery planning conference, and submit this Joint Status Report and Discovery Plan ("Joint Status Report") resulting from that conference.

1.    **The Nature of the Case.**

This is a civil action brought under Section 2 of the Sherman Act, 15 U.S.C. § 2 and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, in which Plaintiffs have alleged monopolization of a relevant market for automatic card shufflers suitable for regulated casinos by the enforcement of patents procured by fraud on the U.S. Patent and Trademark Office ("USPTO") and "sham" litigations, including a pending case in the District of Nevada against DigiDeal Corporation ("DigiDeal"), a licensee of Plaintiffs Shuffle Tech International, LLC ("Shuffle Tech") and Poydras-Talrick Holdings LLC ("Poydras").

Plaintiffs seek, *inter alia*, a judgment ordering Defendants to pay damages (trebled), interest, costs, and attorneys' fees, as well as injunctive relief, under Section 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26. Pursuant to this Court's Memorandum Opinion and Order of October 12, 2015, granting in part and denying in part Defendants' Motion to Dismiss (Dkt. 48), Plaintiffs filed their First Amended Complaint (Dkt. 50) on October 26, 2015. Defendants filed their Answer to Plaintiffs' First Amended Complaint on November 16, 2015 (Dkt. 60), denying that Plaintiffs are entitled to any recovery or relief and asserting various affirmative defenses. No counterclaims have been asserted by Defendants.

Plaintiffs and Defendants agree that at least the following legal and factual issues are in dispute:

- Whether Defendants knew of and withheld, with deceptive intent, any reference identified in Plaintiffs' Amended Complaint;

- Whether any reference identified in Plaintiffs' Amended Complaint was material to the patentability of any claim of U.S. Patent Nos. 6,651,982 (the '982 patent) and 7,523,935 (the '935 patent);

- Whether Defendants committed an intentional fraud on the United States Patent and Trademark Office ("USPTO") with respect to the '982 and '935 patents;

- Whether such fraud was material to the grant or denial of any claim of the '982 and '935 patents;

- Whether Defendants knew that any of the patent claims of the '982 and '935 patents were invalid, unenforceable or not infringed at the time the alleged bad faith suit was commenced against DigiDeal;

- Whether one or more of the alleged "sham" litigations was brought on objectively baseless grounds;

- Whether any of the alleged "sham" lawsuits were filed with the intent to cause collateral damage to competitors, *e.g.*, as a result of unaffordable litigation expenses, rather than legitimately litigate the alleged dispute in good faith;

- Whether the asserted sham litigations were part of a pattern or series of bad faith litigations brought with the intent of inflicting harm to competitors, regardless of the merits of such cases;

- Whether the asserted sham litigations constituted predatory acts in furtherance of a plan to monopolize the alleged relevant market;

- Whether Defendants' petitioning of the PTO and alleged sham lawsuits are immunized from liability under the *Noerr-Pennington* doctrine;

- Whether the alleged relevant market constitutes an economically cognizable relevant market for purposes of a claim of monopolization under Section 2 of the Sherman Act;

- Whether Defendants have market power in the alleged relevant market;

- Whether Defendants obtained their market share and market power in the alleged relevant market by unlawful, predatory, or monopolistic practices or by business skill, or acumen or by the sale of a superior product;

- Whether Defendants' conduct was based on independent and legitimate business and economic justifications, done without any purpose or intent to injure competition, and to allow Defendants to offer a competitive, high-quality automatic card shuffler product at a competitive price;

- Whether Plaintiffs were injured, and if so by how much, as a result of the conduct alleged in the Amended Complaint;

- Whether Plaintiffs' alleged injury is due solely to SHFL's legitimate efforts to protect its valid intellectual property interests;

- Whether Plaintiffs' claims are barred, in whole or in part, by the applicable statute of limitations; and

- Whether Plaintiffs are consumers or competitors of Defendants, and whether they have standing to bring antitrust claims against the Defendants.

2. **The Status of Settlement Discussions.**

The parties have not discussed settlement as of the date of this Joint Status Report. The parties do not believe that settlement discussions would be productive at this time but agree that settlement discussion may be fruitful once a certain amount of discovery, including depositions of some of the principal witnesses, has been conducted. Should such discussions be

unproductive after a reasonable period of time, the parties are amenable to a settlement conference(s) before a Magistrate Judge.

3.      **The Status of Discovery; Anticipated and Planned Discovery.**

Rule 26(a)(1) disclosures have been exchanged; no other discovery has commenced.

Plaintiffs anticipate fact discovery on, *inter alia*, the prosecution of the '982 patent, the '935 patent and the other patents asserted by the Defendants in the alleged bad faith litigations that Plaintiffs assert constitute a series of sham litigations and a pattern monopolistic practices; the validity and enforceability of such patents; the alleged infringement of such patents, the extent and timing of Defendants' knowledge of the various prior art references cited in the First Amended Complaint, *e.g.*, the Block patent and the Luciano and Roblejo prototypes; whether such knowledge was possessed by persons with a duty to disclose to the USPTO; whether such disclosures were properly made; whether any non-disclosures were material to the grant of any of the '982 and '935 patent claims or the claims of the other asserted patents; whether knowledge of such non-disclosures was possessed by persons in a decision-making capacity with respect to the alleged sham litigations; whether the withholding or non-disclosure of any such references was an intentional fraud on the USPTO or constituted inequitable conduct; whether Defendants' allegations of patent validity, enforceability and/or infringement in the sham litigations at issue were "objectively baseless"; whether such litigations were brought in good faith or for unlawful, monopolistic purposes; whether Plaintiffs were injured by any of the alleged sham litigations; and discovery pertaining to Defendants' affirmative defenses; Plaintiffs also anticipate expert discovery on issues including infringement, validity, enforceability, the relevant market, Defendants' market share and market power, and damages.

Defendants do not agree that the validity, unenforceability or prosecution history of any claims of any patent other than the '982 or '935 patents is a legitimate subject of discovery. Plaintiffs disagree with this contention, citing the allegations of paragraphs 60, 65, 77-78, 80-81, 88-90 (all incorporated by reference into the monopolization count), as well as paragraphs 104-106, 108-110, of the First Amended Complaint, which allege inequitable conduct and deliberate fraud by Defendants with respect to the patents asserted in the various prior litigations, which are alleged to be predatory acts in support of the alleged monopolization. Plaintiffs also urge that, under controlling case law fraud or inequitable conduct in one patent prosecution can "taint" other patents in the same "family" or technology. Defendants note that none of the eleven patents at issue in the alleged "sham" cases is at issue in the *DigiDeal* case, nor are any of those eleven patents related to the *DigiDeal* patents, which precludes application of the "tainting" theory. Nor, Defendants contend, does the Amended Complaint contain allegations sufficient to meet the heightened burden for pleading inequitable conduct or *Walker Process* fraud with respect to these eleven patents.

Defendants anticipate fact discovery pertaining to whether the alleged prototype references were withheld given the fact that patents covering the alleged prototypes were disclosed; whether the allegedly withheld prior art was material to patentability of the '982 and '935 patents given the fact that reexamination certificates issued over the allegedly withheld art; whether the allegedly withheld references were cumulative of references disclosed during prosecution; whether the references identified constitute prior art to the '982 and '935 patents; whether any of the allegedly withheld prior art references were known to any person substantively involved in the prosecution of the allegedly fraudulently obtained '982 and '935 patents; whether any alleged omission of any prior art references was made without specific intent; the nature and scope of pre-suit investigations performed by Defendants or their

predecessors-in-interest; Plaintiffs' knowledge of certain underlying patent infringement actions; when Plaintiffs became aware or should have become aware of such underlying patent infringement actions; whether Plaintiffs delayed in bringing the present action; whether Defendants initiated the allegedly sham litigations for the legitimate business justification of protecting their intellectual property rights and to provide competitive, high-quality card shuffler products at competitive prices; and whether Plaintiffs took steps to mitigate any alleged damages.

Defendants anticipate expert discovery pertaining to whether any of the allegedly withheld prior art references cited in the First Amended Complaint were material to the allowance of any claim in the '982 and '935 patents; whether, based on the patents asserted and what was known about accused products at the time, any of the allegedly sham litigations were "objectively baseless"; whether Plaintiffs have suffered any protected injury directly traceable to Defendants' alleged conduct; whether Plaintiffs are consumers or competitors of Defendants or intended to compete in the alleged relevant market; whether Defendants' actions, as alleged, have restrained trade or tended to destroy competition in the relevant market.

The parties (subject to this Court's approval), propose that <u>fact discovery</u> commence immediately and be <u>concluded by December 15, 2016</u> and that <u>expert reports</u> by the party bearing the burden of proof on the subject of such testimony be due <u>January 31, 2017</u>, with <u>responsive reports</u> due on <u>March 31, 2017</u> and all <u>expert discovery to be completed</u> by <u>April 28, 2017</u>.

The parties also agree to the following limitations on discovery.

a)      **Interrogatories.**  Pursuant to Fed. R. Civ. P. 33(a)(1), the parties agree that each side will propound <u>no more than 40 interrogatories</u>, including all discrete subparts.

b)      **Requests for Admission.**  Pursuant to Fed. R. Civ. P. 36, the parties agree that each side will propound no more than <u>75 requests for admission</u>, including all discrete subparts,

excluding requests for admission that are directed to determine the authenticity and/or admissibility of a document.

      **c)**    **Fact Depositions.** Absent stipulation of the parties or leave of Court for good cause shown, each party shall be limited to <u>15 depositions</u> (excluding experts and Rule 30(b)(6) witnesses). The deposition of any deponent shall not exceed one day or seven hours of record time (exclusive of breaks), with a <u>total of 78 hours of deposition time for fact witnesses and an additional 7 hours of deposition time for Rule 30(b)(6) witnesses for a total of 85 hours of deposition time per side</u> (excluding experts). If either side requires more than 7 hours of Rule 30(b)(6) deposition time, any additional time spent on Rule 30(b)(6) depositions will be deducted from that side's fact witness deposition time.

4.      <u>**Electronic Discovery. The Parties are in disagreement in this regard**</u>

Plaintiffs propose that, except as provided herein, the treatment of Electronically Stored Information (ESI) shall be governed by Rules LPR ESI 1.1 through 2.4 (not 2.5 or 2.6) of the Northern District of Illinois Local Patent Rules for Electronically Stored Information and that technical production format specifications for the delivery of ESI should be as set out in Attachment A. Defendants propose adoption of this Court's patent ESI rules *in toto*.

      a) ESI Discovery Procedures. Plaintiffs propose the following:

      1. Search Methodology. Without further agreement of the parties or leave of Court, the parties' initial requests for e-mail shall be limited to no more than [Plaintiffs seek 12; Defendants seek 10] custodians and no more than [Plaintiffs seek 12; Defendants seek 7] search terms per custodian and non-custodial data source. Combination search terms, e.g., X and (Y or Z) that contain a conjunctive limiting term shall be considered a single search term despite the presence of a disjunctive term. The parties shall confer in good faith with respect to search terms returning more than 500 megabytes of data. The parties shall cooperate, prior to the service of any request for electronic documents, to identity all relevant custodians.

      2. De-duplication. The parties may de-duplicate their ESI production globally across custodial and non-custodial data sources, but must disclose the existence of such deduplication to the other party.

      3. On-site inspection of electronic media. Such an inspection shall not be permitted absent a demonstration by the requesting party of specific need and good cause or by agreement of the parties.

      b) Specific Limitations on Electronically Stored Information. A party need not provide discovery of electronically stored information from sources that is not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective

order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

c) Sources.   Plaintiffs propose the following: Notwithstanding anything to the contrary herein, the following document types are not discoverable in this Litigation except upon a showing of good cause, and the parties shall have no obligation to preserve data contained in the following forms:

1.   Recorded voice messages, including voicemail in the Avaya Voice Player (.lvp) or WAVE (.wav) file formats.

2.   Instant messaging communications, including Skype communications.

3.   Back-up tapes or other long-term storage media that were created strictly for use as a data back-up or disaster recovery medium unless the requested discovery appears to be unavailable from other sources or if such back-up or storage media is reasonably accessible without undue burden or cost.

4.   Temporary data stored in a computer's random access memory (RAM), or other ephemeral data that are difficult to preserve without disabling the operating system.

5.   Deleted, slack, fragmented or other data only accessible by forensics.

6.   On-line access data such as temporary Internet files, history, cache, cookies, and the like.

7.   Logs of calls made from mobile devices.

8.   Server, system, or network logs.

9.   Data remaining from systems no longer in use that is unintelligible on systems in use.


5.      **Privilege Log and Treatment of Privileged Materials.  The Parties are in agreement**

**that:**

a)  **Privilege Log.**   Consistent with the Federal Rules of Civil Procedure, a party withholding or redacting any responsive document on the grounds of privilege, immunity, or any similar claim shall provide to the receiving party a privilege log, except that:

1.   the Parties shall have no obligation to log information generated on or after April 28, 2015; and

2.   activities undertaken in compliance with the duty to preserve information (including, but not limited to, litigation hold letters) are protected from disclosure under Fed. R, Civ. Proc. 26(b)(3)(A) and (B) and need not be included in the privilege log, unless a dispute arises during the course of discovery with respect to a party's obligations under LPR ESI 2.3.

b)  **Privilege Log Contents.**   For each document withheld or redacted, the privilege log shall contain the following information:  (i) the date of the document; (ii) the identity of all

persons who authored, signed, or otherwise prepared the document; (iii) the identity of all persons designated as addressees or copyees; (iv) a description of the contents of the document that, without revealing information itself privileged or protected, is sufficient to understand the subject matter of the document and the basis of the claim of privileged or immunity; (v) the type or nature of the privilege asserted (e.g., attorney-client privilege, work product doctrine, etc.); and (vi) for redacted documents only, the bates numbers corresponding to the first and last page of any document redacted.

c) **Protocols for Logging E-mail Chains**. Any e-mail chain (i.e., a series of e-mails linked together by e-mail responses and forwarding) that is withheld or redacted on the grounds of privilege, immunity or any similar claim shall be logged as one document, provided that the contents of the entire chain are described as per subsection b)(iv) above, and shall be identified by the top-most e-mail in the chain that is withheld or redacted. The parties shall not be required to log identical copies of an e-mail that is included in a chain that has been logged in accordance with this Paragraph.

6. **A Jury Trial has been Requested.**

7. **At this time, the Parties do not Consent to Proceed before a Magistrate Judge.**

8. **A form of Protective Order, to which the parties have agreed, is attached as Attachment B for the Court's consideration.**

Dated:  November 30, 2015

By: /s/ *Robert A. Rowan*
  One of the Attorneys for Plaintiff

  Robert A. Rowan (*pro hac vice*)
  rar@nixonvan.com
  Joseph S. Presta (*pro hac vice*)
  jsp@nixonvan.com
  Michael E. Crawford (*pro hac vice*)
  mec@nixonvan.com
  Nixon & Vanderhye P.C.
  901 North Glebe Rd.
  Arlington, Virginia 22203
  Phone:  703-816-4000
  Fax:    703-816-4100

  Jonathan Hill (IBN 6256939)

Respectfully submitted,

By: /s/  *David K. Callahan*
  One of the Attorneys for Defendant

  Sean M. Berkowitz
  David K. Callahan
  Latham & Watkins LLP
  330 N. Wabash Street, Suite 2800
  Chicago, Illinois 60611
  sean.berkowitz@lw.com
  david.callahan@lw.com

  Christopher S. Yates
  Hanno Kaiser
  Latham & Watkins LLP
  505 Montgomery Street, Suite 2000
  San Francisco, CA  94111

jhill@freeborn.com
Jeffrey Cross
David Ter Molen

Freeborn & Peters LLP
311 South Wacker Drive, #3000
Chicago, IL 60606
Phone:  312-360-6643
Fax:      312-360-6520

*Attorneys for Plaintiffs*
*Shuffle Tech International, LLC,*
*Aces Up Gaming, Inc., and*
*Poydras-Talrick Holdings LLC*

chris.yates@lw.com
hanno.kaiser@lw.com

*Attorney for Defendants Scientific*
*Games Corporation, Bally Technologies,*
*Inc., and Bally Gaming, Inc.*

3496975v1/30432-0001