# EXHIBIT 30

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Shuffle Tech International, LLC, et al<br>    Plaintiffs<br><br>    v.<br><br>Scientific Games Corporation, et al<br>    Defendants | Civil Action No. 1:15-cv-3702<br>Honorable Matthew F. Kennelly |

### SUPPLEMENTAL JOINT STATUS REPORT REGARDING
### DISPUTE OVER PROPER SUBJECT OF DISCOVERY

At the December 1 status conference, the Court directed the parties to submit a Supplemental Joint Status Report regarding their dispute over proper subjects of discovery together with an affidavit directed to the production of metadata.  See Dkt. 63. The parties have subsequently resolved their dispute regarding metadata and other e-discovery issues and submit their revised e-discovery report below.  The only remaining issue in dispute concerns the proper scope of discovery regarding the pre-*DigiDeal* litigations alleged by Plaintiffs to have been brought in bad faith.  The Parties' respective positions in that regard are set out below, beginning at page 3.  The Parties also respectfully remind the Court that the jointly proposed Protective Order submitted as Attachment B to the prior status report (Dkt. 62) still requires the Court's approval.

1

2572732

**Electronic Discovery. The Parties have reached the following agreements:**

The Parties agree that, except as provided herein, the treatment of Electronically Stored Information (ESI) shall be governed by the Northern District of Illinois Local Patent Rules for Electronically Stored Information and that technical production format specifications for the delivery of ESI shall be as set out in Attachment A.

a) Specifically Agreed ESI Discovery Procedures. :

1. Search Methodology. Without further agreement of the parties or leave of Court, the parties' initial requests for e-mail shall be limited to no more than 10 custodians per side and no more than 10 search terms per custodian and non-custodial data source in total. Combination search terms, e.g., X and (Y or Z) that contain a conjunctive limiting term shall be considered a single search term despite the presence of a disjunctive term. The parties shall confer in good faith with respect to search terms returning more than 500 megabytes of data. The parties shall cooperate, prior to the service of any request for electronic documents, to identity all relevant custodians.

2. De-duplication. The parties may de-duplicate their ESI production globally across custodial and non-custodial data sources, but must disclose the existence of such deduplication to the other party.

3. On-site inspection of electronic media. Such an inspection shall not be permitted absent a demonstration by the requesting party of specific need and good cause or by agreement of the parties.

b) Specific Limitations on Electronically Stored Information. A party need not provide discovery of electronically stored information from sources that is not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery. Metadata is producible, however, if certain requested metadata cannot be electronically extracted from a document, no party shall be required to manually populate requested fields for that document. To the extent data exists in a format that is incompatible with the format set forth in Attachment A, the parties shall meet and confer to determine a reasonable production format for such data.

c) Sources. Plaintiffs propose the following: Notwithstanding anything to the contrary herein, the following document types are not discoverable in this Litigation except upon a showing of good cause, and the parties shall have no obligation to preserve data contained in the following forms:

2

1. Recorded voice messages, including voicemail in the Avaya Voice Player (.lvp) or WAVE (.wav) file formats.

2. Instant messaging communications, including Skype communications.

3. Back-up tapes or other long-term storage media that were created strictly for use as a data back-up or disaster recovery medium unless the requested discovery appears to be unavailable from other sources and if such back-up or storage media is reasonably accessible without undue burden or cost. Such back-up or storage media shall be preserved until the termination of this litigation or an affirmative determination that the requested discovery is fully available from other sources.

4. Temporary data stored in a computer's random access memory (RAM), or other ephemeral data that are difficult to preserve without disabling the operating system.

5. Deleted, slack, fragmented or other data only accessible by forensics.

6. On-line access data such as temporary Internet files, history, cache, cookies, and the like.

7. Logs of calls made from mobile devices.

8. Server, system, or network logs.

9. Data remaining from systems no longer in use that is unintelligible on systems in use.

**Scope of Discovery Concerning Prior Litigations; Plaintiffs' Position:**

Defendants seek to limit or prevent discovery with respect to their prior bad faith litigations and fraudulent patent procurements, making a second and even more onerous run at truncating discovery, the court having previously denied Defendants' failed Motion to Sequence Discovery (Dkt. 54). Defendants now characterize the issue as a Rule 9(b)[1] pleading matter, rather than a Rule 26(b)(1) discovery issue. This characterization misses the point. There is no pending Rule 12 motion challenging the sufficiency of Plaintiffs' *Walker-Process* fraud or inequitable conduct allegations and, indeed, Section III.C.1 of

---

[1] Rule 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

2572732

Defendants' June 26, 2015 Motion to Dismiss, which had challenged the sufficiency of Plaintiffs' pleadings in these regards, has been withdrawn by Defendants.[2]  Moreover, even in the unlikely event of a successful renewed motion directed to Defendants' pre-*DigiDeal* inequitable conduct and *Walker-Process* fraud allegations, the discovery sought by Plaintiffs would still be relevant to Plaintiffs' sham litigation and Sherman 2 monopolization claims, as well as Plaintiffs' extremely detailed *Walker-Process* fraud claim addressed to the pending *DigiDeal* litigation.

That latter claim, which is directed to the undisclosed prior art in the patent applications resulting in the '935 and '982 patents asserted against DigiDeal, necessarily requires discovery as to how, when and where Defendants first discovered the key Block patent and the Luciano and Roblejo prototypes (as distinguished from the Roblejo patents, which do not disclose all of the relevant features of the commercial device). Accordingly, even if the court were to assume, *arguendo*, that the issue of fraud and inequitable conduct in the prior cases had not been pleaded with Rule 9 specificity, the *Walker-Process* fraud allegations with respect to the *DigiDeal* litigation alone, which are not the subject of any challenge by Defendants, would require Plaintiffs to prove <u>when, where and how</u> Defendants' key personnel, for example, Mr. Attilla Grauzer (the first named inventor on most of the patents) and/or Mr. Mark Littman (the patent prosecution attorney on all the patents at issue), learned of the existence of the Block patent and the Roblejo and Luciano prototypes, <u>what</u> they knew about the relevant features of those prior art references; and **<u>why</u>** they chose to submit certain of those references in some of

---

[2]  Compare Defendants' Memorandum of Law in Support of their Rule 12(b)(6) Motion to Dismiss (Dkt. 33), with their July 30 Reply Brief (Dkt. 46) which contains no such argument.

2572732

the prior patent applications, but not others.  This inquiry not only implicates the file histories of the '935 and '982 patents asserted in the *DigiDeal* case, but also the file histories of the patents asserted in the prior litigations, as well as other pre-*DigiDeal* file histories of patents that may not have been asserted in any of those litigations --because those file histories prove "when" and "what" aspects of the prior art were known to Mr. Littman and Mr. Grauzer and, ultimately, their all-important state of mind during the prosecution of the '935 and '985 patents.  This information is also probative of the nature and context of the information related to Block, Luciano and Roblejo that was considered (or not considered) by the Defendants' executives and counsel in making the decisions to sue in each of the asserted sham litigations, including, but not limited to, the *DigiDeal* litigation.

Specifically, Plaintiffs' sham litigation allegations –with respect to each of the described litigations-- require discovery into whether:  (a) Defendants' litigation assertions were "objectively baseless"; and (b) whether such litigations were brought in "subjective" "bad faith", *i.e.,* as part of "'an attempt to interfere directly' with a competitor's business relationships through the 'use [of] the governmental *process* – as opposed to the *outcome* of that process – as an anticompetitive weapon.'"  *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.,* 508 U.S. 49, 50 (1993) ("*PRE* "), emphasis the Court's, internal cites omitted.

Here, Plaintiffs have asserted that Defendants have engaged in not just one, but a series of frivolous lawsuits designed to eliminate any and all competitors in the regulated automatic card shuffler market.  See ¶¶ 18, 25-26, 33, 36, 41, 51, 60-90, 104-105, 108-111, and 114 of the First Amended Complaint.  These allegations mirror, in at least one

2572732

important respect, those in *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 512 (1972) (allegations of a <u>series</u> of "proceedings and actions … with or without probable cause and regardless of the merits of the cases" is sufficient to state a "sham" claim and an exception to *Noerr-Pennington* immunity); *Otter Tail Power Co. v. United States,* 410 U.S. 366, 380 (1973) (sham litigation "evidenced by <u>repetitive</u> lawsuits carrying the hallmark of insubstantial claims"); and *USS-POSCO Industries v. Contra Costa County Bldg. & Constr. Trades Council*, 31 F.3d 800, 810-811 (9th Cir. 1994) ("the inquiry in ["series of lawsuits"] cases is prospective:  Were the legal filings made, not out of a genuine interest in redressing grievances, but as a part of a <u>pattern or practice</u> of successive filings undertaken essentially for purposes of harassment?")[3]. Emphasis added.  See also, Judge Posner's decision in *Grip-Pak, Inc. v. Illinois Tool Works, Inc.*, 694 F.2d 466, 472 (7th Cir., 1982), holding that:  (a) "since <u>three</u> improper lawsuits are alleged … it can make no difference that they were not all against Grip-Pak"; and (b) that "The line is crossed when [the sham litigant's] purpose is not to win … but to harass [a competitor], and deter others, by the process itself – regardless of outcome - of litigating." Emphasis added.

Regardless of each court's precise formulation of the applicable test, the above-cited controlling case law makes clear that the Defendants' state of mind is central to at least the subjective aspect of the sham litigation inquiry.  In this case, Defendants' state of mind is also relevant to the objective prong of that inquiry.  As Justice Thomas framed the issue in *PRE*, "probable cause," for initiating litigation by a defendant claiming

---

[3]  As the court in *USS-POSCO* further explained, "the fact that a small number in the series of lawsuits turn out not to be frivolous will not be fatal to a claim under *California Motor Transport*; even a broken clock is right twice a day."  31 F.3d at 811.

2572732

*Noerr-Pennington* immunity in an anti-trust case, is whether "a reasonable litigant, <u>in the defendant's position</u>, could realistically expect success on the merits." 508 U.S. at 62. Emphasis added. In other words, the first part of the *PRE* sham litigation test, although "objective," must nevertheless be viewed from "the defendant's position."

Here, Plaintiffs have pleaded that the earlier litigations, as well as the *DigiDeal* litigation, were shams because Defendants could not have realistically expected success in their case against DigiDeal or in the prior patent infringement cases, particularly those brought against CARD and VendingData, for three distinct, but interrelated, reasons: (a) the patents asserted in those cases were manifestly not infringed (an assertion that requires examination of the respective file histories of the asserted patents for claim construction purposes); (b) the patents asserted were manifestly invalid over the prior art (also requiring inquiry into the respective file histories); and/or (c) the patents asserted were manifestly unenforceable due to inequitable conduct in the prosecution or patent misuse in the bad faith enforcement of the patents asserted (again requiring a detailed examination of the file histories). Each of the issues requires discovery into the prosecution of the patents asserted in the prior litigations, as well as the Defendants' state of mind in bringing each of those litigations (which in turn requires examination of the file histories and the who, what, when and how of the Defendants' discovery and disclosure or non-disclosure of the relevant prior art).

Finally, Plaintiffs' substantive monopolization claim itself requires inquiry into the exclusionary conduct utilized by Defendants to acquire and maintain their 100% monopoly of the relevant commercial card shuffler equipment market. See *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 458-59 (1993) (citing *Copperweld Corp. v.*

7

2572732

*Independence Tube Corp.*, 467 U.S. 752, 767-769 (1984)).  The offense of monopolization is defined as (1) the willful acquisition or maintenance of monopoly power (2) by the use of anticompetitive conduct "to foreclose competition, to gain a competitive advantage, or to destroy a competitor."  *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 482-483 (1992).  Stated slightly differently, any claim of monopolization requires proof of conduct that "reasonably [appears] capable of making a significant contribution to creating or maintaining monopoly power."  3 P. Areeda and H. Hovenkamp, Antitrust Law ¶ 651f, at 83-84 (2d ed. 2002).

Courts have recognized a variety of anticompetitive means by which defendants may acquire or maintain monopolies, including the same bad faith patent procurement and patent enforcement activities that Plaintiffs are required to demonstrate to overcome *Noerr-Pennington* immunity, i.e., either sham litigation *or Walker-Process* fraud.  See, *e.g., California Motor Transport*, 404 U.S. at 512-13,  holding, *inter alia*, that "Use of a patent obtained by fraud to exclude a competitor from the market may involve a violation of the antitrust laws," citing *Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.*, 382 U.S. 172, 175-77 (1965). [4].  See also, *Handgards, Inc. v. Ethicon, Inc.*, 743 F.2d 1282, 1289 (9th Cir. 1984). ("*Handgards II*") (antitrust liability premised on prosecution of a patent infringement suit with knowledge that the patent was invalid); and *Handgards, Inc. v, Ethicon, Inc.,* 601 F 2d 986, 993, n.13 (9th Cir 1979), *cert. denied*, 444 U.S. 1025 (1980) ("*Handgards I*") ("The requisite intent to monopolize in

---

[4]  The Federal Circuit in *Nobelpharma AB v. Implant Innovations, Inc.,* 141 F.3d 1059, 1071 (Fed. Cir. 1998), further held that, if fraud on the patent and trademark office could be established along with the elements of an antitrust claim such as monopoly power and effect on competition, liability under Section 2 of the Sherman Act could be imposed without the additional sham inquiry required under *PRE*.

2572732

[an attempted monopolization] case could be inferred from the finding of bad faith [prosecution of a patent infringement suit]").

It should also be noted that both parties have already agreed, in their November 30, 2015 Joint Status Report and Discovery Plan (Dkt. 62), that "at least the following legal and factual issues are in dispute:"

- Whether Defendants knew of and withheld with deceptive intent any reference identified in Plaintiffs' Amended Complaint;

\* \* \*

- Whether one or more of the alleged "sham " litigations was brought on objectively baseless grounds;

\* \* \*

- Whether the asserted sham litigations were part of a pattern or series of bad faith litigations brought with the intent of inflicting harm to competitors, regardless of the merits of the case;

- Whether the asserted sham litigations constituted predatory acts in furtherance of a plan to monopolize the alleged relevant market;

\* \* \*

- Whether Defendants obtained their market share and market power in the alleged relevant market by unlawful, predatory, or monopolistic practices or by business skill, or acumen or by the sale of a superior product;

- Whether Defendants' conduct was based on independent and legitimate business and economic justifications, done without any purpose or intent to injure competition, and to allow Defendants to offer a competitive, high-quality automatic card shuffler product at a competitive price;

\* \* \*

- Whether Plaintiffs' alleged injury is due solely to SHFL's <u>legitimate</u> efforts to protect its valid intellectual property interests [emphasis added]

In sum, there is no way to avoid the need for the sought-after discovery regarding the prior litigations and the file histories of the asserted patents, for a host of reasons: (1) patent (a) infringement, (b) invalidity and (c) unenforceability in the *DigiDeal* case; (2) patent (a) infringement, (b) invalidity, and (c) unenforceability with respect to the pre-

9

2572732

*DigiDeal* litigations; (3) the "defendants' position" aspect of the objective prong of the *PRE* sham litigation test -- for all litigations; (4) the subjective intent aspect of that test -- for all litigations; and (5) proof that Defendants' total monopoly of the automatic card shuffler market was not the result of a superior product, business acumen or other legitimate reasons, but rather the result of exclusionary anti-competitive conduct against every competitor and would-be competitor that dared to intrude on Defendants' monopoly. It obviously makes no difference whether one reason or nine reasons require the evidence. If the evidence is required for any salient purpose, it is relevant and is the proper subject of discovery under Rule 26.

**Defendants' Position:**

Defendants submit that discovery in this case should be limited to Plaintiffs' allegations of inequitable conduct and *Walker Process* fraud with respect to the two patents asserted in the *DigiDeal* litigation, and whether that case and four other cases were "shams" within the meaning of *Professional Real Estate Investors*—and, of course, the substantive elements of the monopolization claim that those allegations support. During the meet and confer process with respect to a Scheduling Order, it became apparent that Plaintiffs intend to take extensive discovery into whether eleven patents asserted in four other cases (which are unrelated to U.S. Patent Nos. 6,651,982 ("the '982 Patent) and 7,523,935 ("the '935 Patent) asserted in the *DigiDeal* litigation) were procured by fraud or are unenforceable because of inequitable conduct. But, Plaintiffs did not plead facts sufficient to support a *Walker Process* or inequitable conduct claim with respect to the eleven unrelated patents. As a result, permitting Plaintiffs to take *Walker Process* fraud or inequitable conduct

2572732

discovery would constitute an end-run on the pleading requirements for such a claim and would dramatically expand the scope of discovery in this already complicated case.

Plaintiffs seek extensive discovery related to eleven patents (from four separate patent families) asserted in previous litigations ("the Unrelated Patents") that stretch back for more than a decade,[5] none of which are in the same genealogical family as the '982 Patent and the '935 Patent, which Plaintiffs' Amended Complaint alleges were fraudulently obtained. Plaintiffs are not entitled to full discovery on the Unrelated Patents because Plaintiffs' allegations related to the prior "sham" litigations do not meet the level of specificity required by Rule 9(b). Plaintiffs' merely allege that "[t]he sham litigation brought by SHFL and authorized and maintained by SGC against DigiDeal was ***part and parcel of the same unlawful strategy to monopolize and maintain SHFL's (and now SGC's) monopoly*** of the relevant market and, ***like SHFL's litigation against CARD, Vending Data, Taiwan Fulgent, and TCS Huxley***, was predicated on objectively baseless patent infringement claims which were motivated by SHFL's (and now SGC's) desire to impose collateral, anti-competitive injury" on SHFL's competitors, potential competitors, customers, and the market. *See* Am. Compl. ¶ 111 (emphasis added). Plaintiffs' discovery into these litigations should thus be limited to how they are connected to the *DigiDeal* litigation and thereby demonstrate they are part of the "same unlawful strategy to monopolize." This Court should not allow Plaintiffs to take discovery on the validity, unenforceability, and prosecution history of these Unrelated Patents. In doing so, Plaintiffs

---

[5] U.S. Patent Nos. 6,149,154; 6,588,750; 6,267,248; 6,139,014; 6,588,751; 6,665,684; 7,255,344; 7,322,576; 6,254,096; 7,059,602; 7,073,791.

2572732

seek to avoid the strict pleading requirements of Rule 9(b), which serve to ensure that only colorable claims of fraud proceed to discovery.

Allegations of inequitable conduct and *Walker Process* fraud are subject to Rule 9(b)'s heighted pleading requirement. *See Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1325-31 (Fed. Cir. 2009); *see also* 1 H. Hovencamp et al., IP and Antitrust §5.4a1 (2d ed. 2015). To meet this requirement, "the pleading must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO. Moreover, although 'knowledge' and 'intent' may be averred generally, a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Exergen Corp.*, 575 F.3d at 1328-29; *see also* Fed. R. Civ. P. 9(b). "The Rule acts as a safety valve to assure that only viable claims alleging fraud or mistake are allowed to proceed to discovery." *In re BP Lubricants USA Inc.*, 637 F.3d 1307, 1310 (Fed. Cir. 2011). Moreover, *Walker Process* claims involve an even higher standard, requiring that the patent holder procured its patent by knowingly and willfully misrepresenting facts to the PTO, enforced the patent with the knowledge of the fraudulent manner in which it was procured, and monopolized or attempted to monopolize the relevant market. *See Walker Process Equip. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 174, 176-77 (1965).

The Unrelated Patents at issue in the four other alleged "sham" litigations – which cases date back more than a decade – are from completely unrelated families and do not

12

2572732

claim priority to any patent application in common with the '935 or '982 Patents. Specifically, the '935 and '982 patents both claim priority to U.S. Patent Application 09/967,502, which was filed on September 28, 2001, and issued as U.S. Patent 6,651,981. (A chart listing all of the patents and their families is attached as Exhibit 1.) The Unrelated Patents do not claim priority to this application or any other to which the '982 or '935 claim priority. Furthermore, none of the Unrelated Patents asserted in previous litigation matters claim priority to any progeny (divisional, continuation, or continuation-in-part) applications stemming from the '982 or '935 Patents. Thus, the patents asserted in the *CARD*, *VendingData*, *TCS John Huxley*, and *Taiwan Fulgent* matters do not bear any familial relationship whatsoever to the patents asserted in the *DigiDeal* matter. Nor are they even directed to the same type of shuffling technology; the Unrelated Patents all relate to what is known as "Compartmented" or "Cut, Interleave, Cut" technology, while the *DigiDeal* patents are related to "Grip, Lift and Insert" technology.

As a matter of law, inequitable conduct based on failure to disclose prior art in the application of one patent cannot render a genealogically unrelated patent unenforceable. *See Int'l Rectifier Corp. v. Ixys Corp.*, Case No. CV-00-6756-R, 2001 U.S. Dist. LEXIS 25708, *13-15 (C.D. Cal. Dec. 17, 2001) (citing *SSIH Equip. S.A. v. United States Int'l Trade Comm'n*, 718 F.2d 365, 378 (Fed. Cir. 1983)); *see also* <u>*FMC Corp. v. Hennessy Indus., Inc.*, 836 F.2d 521, 524 (Fed. Cir. 1987)</u> ("[Defendant]'s 'practice' with other applications is not relevant"); <u>*Black & Decker, Inc. v. Hoover Serv. Ctr.*, 765 F. Supp. 1129, 1138 (D. Conn. 1991)</u> ("a patent owner's alleged inequitable conduct in other patent application proceedings is not relevant"). To the extent that the Amended Complaint alleges omissions of prior art during the prosecution of the '982 and '935 Patents, those

13

allegations do not open the door to seek similar discovery in connection with the Unrelated Patents because they entirely lack any familial connection.

Plaintiffs' "sham" litigation allegations that relate to the other cases fail to identify the specific who, what, when, where, and how of any alleged "fraud" on the USPTO for any of the Unrelated Patents. *See Exergen*, 575 F.3d at 1329-30. For this reason, discovery into any alleged fraud or inequitable conduct in the procurement of these Unrelated Patents should not be permitted. Plaintiffs' only allegations as to any patent or its progeny, other than the '982 Patent and '935 Patent, are their vague assertions made in connection with U.S. Patent 6,149,154 ("the '154 Patent") that SHFL was in possession of, but never disclosed, one invalidating prior art reference—the Roblejo documents—that "clearly invalidated the '154 Patent claims asserted against CARD, and, on information and belief, invalidated or rendered unenforceable all remaining claims of the '154 patent and its progeny asserted against CARD, VendingData, Taiwan Fulgent, and TCS." *See* Am. Compl. at ¶¶65[6], 66, 75, 77; *see also id.* at ¶¶79-81 (vaguely asserting that SHFL failed to disclose the Roblejo documents during prosecution of U.S. Patent 6,655,684 ("the '984 Patent"), which is the progeny of the '154 Patent). These allegations fall woefully short of the particularity required by Rule 9(b) and cannot be used to obtain discovery on subjects not otherwise pled sufficiently in the Amended Complaint.

---

[6] Defendants note that ¶65 of the Amended Complaint and accompanying footnote 6 alleges that U.S. Patent No. 6,588,597 issued from Application 09/688,597 and was asserted against VendingData. However, according to the Patent Application Information Retrieval ("PAIR") database, Patent No. 6,588,597 is entitled "Disposal System for Plastic," issued from Application 09/381,378, and has never been assigned to any of the Defendants.

2572732

Because Plaintiffs have not even attempted to separately plead the elements of inequitable conduct with respect to these Unrelated Patents, let alone do so with the particularity Rule 9(b) requires, they are not entitled to pursue full *Walker-Process* or inequitable conduct discovery in connection with those patents. Moreover, newly amended Rule 26(b)(1) contemplates that parties may obtain discovery subject to its proportionality to the needs of the case. The Advisory Committee Notes clearly state that one of the intended purposes of this amendment is to prevent "unduly burdensome or expensive" discovery requests. Fed. R. Civ. P. 26(b)(1). Discovery directed towards the Unrelated Patents would not only be irrelevant to the claims pleaded in the Amended Complaint, but they would also be unduly burdensome and expensive in relation to the needs of the case; the four earlier litigations and *eleven* additional patents would require a scope of discovery not justified by the expense. Indeed, with no allegations of inequitable conduct with respect to these eleven patents, the discovery is of almost no value whatsoever.

Thus, Permitting Plaintiffs to obtain full discovery on these eleven Unrelated Patents would sanction expensive and cumbersome discovery for allegations that amount to little more than speculation that SHFL obtained those patents through fraud.

Dated: December 8, 2015                                         Respectfully submitted,

By: /s/ *Robert A. Rowan*                               By: /s/ *David K. Callahan*
One of the Attorneys for Plaintiff                      One of the Attorneys for Defendant

Robert A. Rowan (*pro hac vice*)                        Sean M. Berkowitz
rar@nixonvan.com                                        David K. Callahan
Joseph S. Presta (*pro hac vice*)                       Latham & Watkins LLP
jsp@nixonvan.com                                        330 N. Wabash Street, Suite 2800
Michael E. Crawford (*pro hac vice*)                    Chicago, Illinois 60611
mec@nixonvan.com                                        sean.berkowitz@lw.com
Nixon & Vanderhye P.C.                                  david.callahan@lw.com
901 North Glebe Rd.

15

2572732

Arlington, Virginia 22203
Phone:  703-816-4000
Fax:     703-816-4100

Jonathan Hill (IBN 6256939)
jhill@freeborn.com
Jeffery Cross
David Ter Molen
Freeborn & Peters LLP
311 South Wacker Drive, #3000
Chicago, IL 60606
Phone:  312-360-6643
Fax:     312-360-6520


*Attorneys for Plaintiffs*
*Shuffle Tech International, LLC,*
*Aces Up GAMING, INC., and*
*Poydras-TALRICK HOLDINGS LLC*

Christopher S. Yates
Hanno Kaiser
Latham & Watkins LLP
505 Montgomery Street, Suite 2000
San Francisco, CA  94111
chris.yates@lw.com

*Attorney for Defendants Scientific*
*Games Corporation, Bally Technologies, Inc.*
*and Bally Gaming, Inc.*

16

2572732