# EXHIBIT 33

| | |
|---|---|
| **From:** | Jimenez-Ekman, David |
| **To:** | "Bob Rowan" |
| **Cc:** | Martin, Craig C.; Lindsey, Caroline A.; Joe Presta; Bobby Foster |
| **Subject:** | RE: Shuffle Tech v. Scientific Games -- Discovery and other issues |
| **Date:** | Tuesday, March 01, 2016 4:01:34 PM |

Dear Bob:

I write in response to your email of Saturday, February 27. As I mentioned when we spoke on Thursday, I was traveling Friday through yesterday, and we have had a limited time to resolve any further issues. However, I did want to respond to your note prior to the hearing. We can also talk this afternoon if it would be helpful. I suggest 4:30 p.m. Chicago time, and if that works, you may just call my office. Here are responses to a number of your points.

1) <u>Privilege:</u> We have not determined at this time whether defendants will rely on an advice of counsel defense at trial, and whether out clients will waive the attorney-client privilege with respect to any testimony. We are not aware of any rule that requires us to make that determination at this early stage of litigation and have asked you to supply any authority for your position that you would like us to consider. In addition, the waiver issue may be present with respect to documents you have asked for relating to at least ten separate litigations stretching back to the early 2000s. Collecting and reviewing these documents, to the extent they are still available, will be very burdensome and expensive and may be a lengthy process. Once we perform that collection and review, we also need to analyze the documents and come to a waiver decision with our client. As we have only been counsel for a bit more than a month, we have yet to obtain and review all of these files. Consequently, as we have said, it is premature to address any waiver issues.

-

That said, as I have said on our calls, we share a mutual interest in making any waiver determination prior to any depositions that could be affected by those determinations. We will work with you to attempt to achieve that interest. For example, I told you that we would be willing to discuss an agreement where we would commit to deciding privilege issues implicating a particular witness before that witness is deposed. I told you that if you provide a list of planned depositions, that would be helpful. I acknowledge your desire to commence certain depositions in June 2016, even if document discovery is not complete (at your own risk, as we discussed, of not having a document relevant to a particular deposition) and we will work in good faith to make any waiver determinations before those depositions. However, given our early stages of document review, I am not in a position to commit to any date certain by which all waiver determinations would be made.

2) <u>Documents relating to prior litigations:</u> To confirm our discussion, we will not decline to produce documents relating to prior litigation on the sole ground that they are identified in the first set of discovery requests but not the complaint. As we discussed, these requests remain subject to our other objections. The list provided in your email appears generally representative; however, RFPs 78, 82, and 84 do not relate to prior litigation, and this understanding will not affect our response to those requests.

3) <u>Dates for production of documents:</u> We will provide all of the timing information that is available to us, as it becomes available to us. Discovery in this matter will be enormously asymmetrical. You have already propounded 152 document requests (most of which are compound requests); none of which are time-limited. Scientific Games and its affiliates have experienced corporate transactions in recent years that have resulted a variety of systems containing ESI and a variety of "legacy" systems. Coordinating a collection from this extensive universe of potential documents is a complex, expensive and time-consuming task. As we have discussed, we will accomplish this in a transparent way and keep you advised of our progress to the best of our ability. However, we do not yet have enough information to provide a specific date when we will be able to begin the rolling production.

We have a limited number of hard copies in our possession currently. However, we anticipate receiving many more documents (electronic and hard copy) in the next several weeks. As we discussed, it will be more costly to separately produce documents in hard copy before we have obtained the ESI that will be reviewed. Nonetheless, as soon as we obtain the additional paper documents and have a better sense of what they contain, we will make a proposal regarding the start of production.

We understand that the parties have agreed to a ten custodian limit/ ten search term limit for emails but that that agreement does not extend to electronic documents. As we discussed, we are gathering information about what other electronic information is available and will update you as we learn what is available and what the volume of data is.

4) <u>Competitive Products</u>. As discussed, we are working with our clients to develop more substantive responses to interrogatories 4 and 5 that will nonetheless remain subject to our objections regarding the terms you use in the interrogatories, and, after checking with our client, expect to provide initially amended responses by March 17 (which I recognize is later than we initially discussed on our call). As I told you, our clients can provide general information that may relate to interrogatories 4 and 5, but will not be making expert conclusions, and these responses may be further amended in the course of expert discovery. We also agree to produce documents responsive to RPFs 30, 31, and 116. However, our document production will be an extensive, expensive, and time-intensive effort. RFPs 30, 31, and 116 are broad "all documents" requests that are not time-limited. It would be too burdensome to make a separate, early production of documents responsive to RFPs 30, 31, and 116 outside of the course of our broader review unless you would like us to prioritize a search of those documents before reviewing the other documents you have requested.

5) <u>Document retention policies.</u> We will produce non-privileged document retention policies relevant to this case soon, and will provide an initial set of document retention policies currently available to our client's legal staff that can be readily located by March 10. We do not waive our other objections to RFPs 63 and 109, which are written in broad terms and could be read to require production of many documents other than document retention policies. As one (non-exclusive) example, RFP 63 asks for "documents reflecting the transfer of documents and things by any Defendant to any successor entity," and we do not agree to

that portion of the request.

6) <u>Identification of persons, titles, and duties.</u>  We will make an effort to identify job titles and duties to the extent they are available and relevant to this litigation.  We also appreciate the clarification that RFPs 66-69, 108, 111-114 and 117-118 are intended as requests for documents that will permit you to identify particular information (rather than "all documents" requests).  However, a number of the RFPs seek information about outside parties that our clients generally do not have and likely cannot gather.  For example, RFP 108, requests "[a]ll documents, things, employment records, letters of engagement or other records, including, but not limited to payroll records, organizational charts and company directories, sufficient to establish the full employment history, and the various duties and titles of each individual who was assigned to, worked on, billed time to, or was consulted with respect to any of the following litigations or patent prosecutions or enforcement activities:  the *DigiDeal* litigation, the *CARD I and II* litigations, the *MP Games* litigation, the *Taiwan Fulgent* litigation, the *TCS* litigation, the *VendingData 1, 2,* and *3* litigations, including any work activities related to the prosecution or enforcement of any of the patents asserted in those litigations."  It is not practical or necessary for our client to gather full employment histories for outside consultants and attorneys who worked on patent litigation cases.

We propose that we provide the following information, to the extent available to our client after a reasonable search, in full satisfaction of RFPs 66-69, 108, 111-114, and 117-118:

- A list of counsel for our clients who appeared in the *Taiwan Fulgent* litigation, *TCS* litigation, *CARD I* litigation, *CARD II* litigation, *MP Games* litigation, *VendingData 1* litigation, *VendingData 2* litigation and *VendingData 3* litigation; the date each counsel was retained; and a general description of any non-privileged information relating to the duties of each firm retained (if more than one firm appeared), to the extent available.

- A list of counsel retained by our clients in connection with the prosecution or reexamination of the '982 and '935 patents who publicly appeared, the date each counsel was retained; and a general description of any non-privileged information relating to of the duties of each firm retained (if more than one firm appeared), to the extent available.

- A list of counsel retained by our clients in connection with the prosecution or reexamination of the patents asserted in the *Taiwan Fulgent* litigation, *TCS* litigation, *CARD I* litigation, *CARD II* litigation, *MP Games* litigation, *VendingData 1* litigation, *VendingData 2* litigation and *VendingData 3* litigation who publicly appeared, the date each counsel was retained; and a general description of any non-privileged information relating to the duties of each firm retained (if more than one firm appeared), to the extent available.

- A list of our clients' employees who we can identify as having worked on the *DigiDeal* litigation, the *CARD I and II* litigations, the *MP Games* litigation, the *Taiwan Fulgent* litigation, the *TCS* litigation, the *VendingData 1, 2,* and *3* litigation; their job titles; and their dates of employment.

- A list of our clients' officers, directors, employees, consultants, and counsel (to the extent not privileged) who can be identified as having been involved in any infringement, enforcement, enforceability, or validity analyses or decisions relating to the *DigiDeal* litigation, the *CARD I and II* litigations, the *MP Games* litigation, the *Taiwan Fulgent* litigation, and the *TCS* litigation, the *VendingData 1, 2,* and *3* litigations.

- A list of employees who our client has identified as potentially having information about the *DigiDeal* litigation, the *CARD I and II* litigations, the *MP Games* litigation, the *Taiwan Fulgent* litigation, the *TCS* litigation, the *VendingData 1, 2,* and *3* litigations, the Roblejo prototypes, the Lucianao prototypes, or the Block '044 patent.

- A list of our clients' officers, directors, employees, consultants, and counsel (to the extent not privileged) who can be identified as having been involved in due diligence on behalf of Bally in its SHFL acquisition or SGC in its Bally acquisition.

- A list of our clients' employees who we believe have specialized knowledge about the market for card shufflers in the United States.

- A list of our clients' employees who have job responsibilities related to document retention policies or document retention for the documents at issue in this litigation.

This will be a burdensome and lengthy process, but we will endeavor to provide initial sets of the above information (subject to revision and amendment based on further discovery) by April 15.

7) <u>Product Sales.</u> We accept your proposal to narrow RFPs 28 and 29.

8) <u>Other narrowed document requests</u>:

- We maintain our objection to RFP 36 ("All documents or things relating or referring to Defendants' attempts to discover information about the activities of any of the Plaintiffs, including but not limited to any research or investigative reports") in its entirety.

- We agree to the narrowing of RFP 52.

- We agree to the narrowing of RFP 53.

- Plaintiffs have yet to articulate a relevancy theory for RFP 64. Please explain why Shuffle King, USA and Apex Gaming are relevant to this litigation.

- We agree to the narrowing of RFPs 70 and 74.

- We agree to the narrowing of RFPs 93 and 94.

- We agree to the narrowing of RFP 95.

9) Other RFPs. We agree to produce documents in response to RFP 32. Plaintiffs have yet to articulate a relevancy theory for RFP 65. Please explain why Shuffle King, USA and Apex Gaming are relevant to this litigation.

10) We agree to drop our limitation to patent files identified in the complaint for the particular requests you identify, relating to first awareness, subject to the other objections articulated in our responses and objections.

11) Winston & Strawn Subpoena. Essentially all of the 47 categories of documents that you requested from Winston & Strawn seek privileged information from a non-party that is not relevant to Plaintiff's claims, not proportional to the needs of the case, and unmindful of the parties' relative access to information from other sources such as www.pacer.gov and the United States Patent and Trademark Office. However, we note that for the vast majority of the requests, Winston indicated that it would produce documents after the requests are sufficiently narrowed and clarified. We are willing to coordinate with Winston to consider any clarification and narrowing you may propose (similar to the types of narrowing you have proposed for the RFPs to our clients). If there are particular requests that you would like to discuss in more detail, please identify them and we are happy to discuss.

Finally, I will reiterate what I said on our calls multiple times, namely, that I think many of these issues remain unripe. We will not know whether we have a genuine dispute until we have more information about what is available and can determine the level of burden in producing the available materials.

Best personal regards.

Sincerely,

David

---

**From:** Bob Rowan [mailto:rar@nixonvan.com]
**Sent:** Tuesday, March 01, 2016 11:56 AM
**To:** Jimenez-Ekman, David
**Cc:** Martin, Craig C.; Lindsey, Caroline A.; Joe Presta; Bobby Foster
**Subject:** RE: Shuffle Tech v. Scientific Games -- Discovery and other issues

Thanks, David.

I can be available any time from 3:30 to 7:00 EST (like to end by then).
-Bob

---

**From:** Jimenez-Ekman, David [mailto:DJimenez-Ekman@jenner.com]
**Sent:** Tuesday, March 01, 2016 12:52 PM
**To:** Bob Rowan
**Cc:** Martin, Craig C.; Lindsey, Caroline A.; Joe Presta; Bobby Foster
**Subject:** RE: Shuffle Tech v. Scientific Games -- Discovery and other issues

Bob:

I hope you had a good weekend.

As I mentioned, I was traveling Friday through Monday. We are preparing a response to the below and I hope very much to get it to you later today. To the extent a further conversation is helpful, it would be good to anticipate one late this afternoon. Are there times that work for you?

Best personal regards.

David

---

**From:** Bob Rowan [mailto:rar@nixonvan.com]
**Sent:** Tuesday, March 01, 2016 10:16 AM
**To:** Jimenez-Ekman, David
**Cc:** Martin, Craig C.; Lindsey, Caroline A.; Joe Presta; Bobby Foster
**Subject:** RE: Shuffle Tech v. Scientific Games -- Discovery and other issues

David-

Will you have time to discuss these issues later today, as we discussed?

Thanks,
Bob

---

**From:** Bob Rowan
**Sent:** Saturday, February 27, 2016 5:15 PM
**To:** 'Jimenez-Ekman, David'
**Cc:** Martin, Craig C.; Lindsey, Caroline A.; Joe Presta; Bobby Foster
**Subject:** RE: Shuffle Tech v. Scientific Games -- Rule 408 Agreement

David-

As promised, here is my summary of our conversation regarding discovery and other matters:

1) <u>Waiver of privilege/advice of counsel defense</u>. We understand that you have not

ruled out the possibility that defendants will rely on advice of counsel to defend against the sham litigation and *Walker-Process* fraud claims at issue. Obviously, if your clients rely on such advice, they will have to waive the attorney-client privilege with respect to communications relevant to that testimony. Therefore, we need to know your intentions in this regard before we depose witnesses who gave or received such advice. As we indicated, we intend to start taking depositions, including of such persons, as early as June of this year and therefore would need to know your position in this regard in advance of any such depositions. You indicated that your client should not be required to make that decision so early in the case. Accordingly, this may be an issue we need to discuss with Judge Kenelly next Wednesday.

2) Documents relating to prior litigations. You indicated that your clients would be producing, subject to other objections such as privilege and accessibility, the documents we requested regarding earlier litigations that were identified in our discovery requests regardless of whether they were identified by name in our amended complaint. Such document requests include: 6, 11, 16, 40-47, 50, 51, 54, 58-62, 66, 68, 72, 78, 79, 82, 84, 111, 112, and 117-118. Please let us know if we have correctly stated your position in this regard.

3) Starting and ending dates for production of documents. We have asked, pursuant to amended Rule 34, that you identify starting and end dates for your rolling production of documents, including both hard copies and electronic documents. You indicated that you will provide us more information in that regard by the end of next week. You also indicated that you already have some hard copy documents in your possession, but don't wish to start producing them. We asked that you start producing those hard copies within the next week or two. You declined. We also asked that you advise us as quickly as possible when you can identify the parameters and initial results of your electronic searches for both email and non-email electronic documents. You agreed. We agreed to work with you regarding proposed search

terms with respect to both kinds of electronic documents, but pointed out that the ten custodian/ten search term limitations previously agreed to do not apply to non-email electronic documents. You indicated you will review the orders and stipulations in that regard and let us know whether you agree with our position next week.

4) <u>Discovery regarding competitive products</u>. You indicated that your clients will respond to interrogatories 4 and 5 within two weeks of our discussion, i.e., by March 10. In addition to those Interrogatories, this topic includes requests for production nos. 30, 31, and 116. We assume that you will also be responding to those requests within a relatively short time frame. Please advise.

5) <u>Document retention policies</u>. You agreed to produce your client's document retention policies including, but not limited to, those relating to electronic storage of documents. Document requests directed to this topic include nos. 63 and 109. We assume that these documents can be produced in relatively short order. Please advise in that regard.

6) <u>Identification of persons, titles, and duties</u>. A number of our requests seek documents that would permit us to identify (by name, title and duties) various persons with knowledge, such as persons involved in the litigation and patent prosecutions at issue, including the decision-makers with respect to such litigations and prosecutions; persons with knowledge of certain prior art; persons with knowledge of your client's channels of trade for Shuffler sales; persons with knowledge of your client's corporate acquisitions (including due diligence), e.g., the acquisition of Shuffler Master by Bally and of Bally by Scientific Games. Document requests in this category include 66-69, 108, 111-114 and 117-118. You asked if we would accept an alternative response, such as a verified interrogatory type response providing the same information. We indicated that we would accept the information in that format. Can

you provide us a date for that response?

7) <u>Product sales</u>. We indicated that we are willing to limit the scope of document requests 28 and 29 to a time period of 15 years and further limit those requests to documents sufficient to show your client's annual sales in dollars and units, including identification of the models, and any documents that show your client's market share with respect to such products. That information can be provided on an annual basis except for 2016, which will necessarily include a period less than a full year.

8) <u>Other narrowed document requests</u>:

RFP 36 – (investigative reports) narrowed to exclude attorney work product;

RFP 52 –limited to market share and market exclusivity;

RFP 53 –narrowed to documents relating to bundled or tied products and package offers involving shufflers and other products, such as proprietary card games;

RFP 64 – limited to documents relating to Shuffle King, USA and Apex Gaming;

RFP 70, 74 – narrowed to sales dollars, margin and profits (or loss) on Shuffler products, further limited to 15 years;

RFP 93-94 –limited to 15 years;

RFP 95 –limited to manuals, performance reports, reviews, and ratings;

8) <u>Other RFPs that stand "as is"</u>. In addition to specific requests already discussed, our requests 32 (relating to strategic planning on Shufflers), and 65 (Apex and Shuffle King) stand "as is." Please advise if you will produce.

9) <u>Awareness of patents and prior art</u>. RFPs 3-4, 8-9, 13-14 seek documents showing your clients' and the named inventors' first awareness of certain prior art including, Block, Roblejo, and Luciano. Your objections seek to limit this request to patent files identified in the complaint. We don't agree to that limitation. Your client's first awareness of this prior art is relevant regardless of how or when that information first

came to your clients' or the named inventors' attention. Please let us know if you will drop this objection.

Please let me know the extent of your agreement or disagreement with my summary. I look forward to discussing these issues with you again on Tuesday. Please provide a time convenient to you.

Another issue we need to discuss is the subpoena response of Winston & Strawn, your clients' reexamination counsel, its current DigiDeal litigation counsel and its former TCS John Huxley and VendingData litigation counsel. W&S' Kimball Anderson objected to 46 of 47 document demands. Because Winston & Strawn's documents are really your client's documents, we have to look to you to provide us a more reasonable response. Accordingly, we ask that you will look into the matter and be prepared to discuss more appropriate responses from Mr. Anderson and Winston & Strawn when we talk next week.

Thanks.

Bob

---

**From:** Joe Presta
**Sent:** Thursday, February 25, 2016 6:22 PM
**To:** 'Jimenez-Ekman, David'; Bob Rowan
**Cc:** Martin, Craig C.; Lindsey, Caroline A.
**Subject:** RE: Shuffle Tech v. Scientific Games -- Rule 408 Agreement

Thank you David.

---

**From:** Jimenez-Ekman, David [mailto:DJimenez-Ekman@jenner.com]
**Sent:** Thursday, February 25, 2016 6:13 PM
**To:** Joe Presta; Bob Rowan
**Cc:** Martin, Craig C.; Lindsey, Caroline A.
**Subject:** RE: Shuffle Tech v. Scientific Games -- Rule 408 Agreement

Joe:

I have countersigned and attached.

Thanks very much.

David

---

**From:** Joe Presta [mailto:jsp@nixonvan.com]
**Sent:** Thursday, February 25, 2016 2:16 PM
**To:** Jimenez-Ekman, David; Bob Rowan
**Cc:** Martin, Craig C.; Lindsey, Caroline A.
**Subject:** RE: Shuffle Tech v. Scientific Games -- Rule 408 Agreement

David:

 Roger asked Derek to have the meeting this Monday, so we have filled in the date and executed the agreement.  Please execute for your side and return.

 Thanks,
 Joe

---

**From:** Jimenez-Ekman, David [mailto:DJimenez-Ekman@jenner.com]
**Sent:** Wednesday, February 24, 2016 10:12 PM
**To:** Joe Presta; Bob Rowan
**Cc:** Martin, Craig C.; Lindsey, Caroline A.
**Subject:** Shuffle Tech v. Scientific Games -- Rule 408 Agreement

Joe and Bob:

Thanks for talking to Caroline and me last week.

Per your request, I had chance to confer about the Rule 408 agreement that was proposed.  We are fine with the form of the agreement, and we are fine with your signing on behalf of the parties in the litigation (on the assumption you have authority to do so).  Since the agreement does not specifically refer to the folks who will be involved, can you please just confirm by reply e-mail that we all intend it to cover conversations between Roger White and Derek Webb?

In response to your earlier note about our call tomorrow regarding discovery issues, we had it down for 4:00 EST, which we can still do.  I have a conflict at 3:30 EST.

Best personal regards.

David

---

## David Jimenez-Ekman

**Jenner & Block LLP**
353 N. Clark Street, Chicago, IL 60654-3456 | jenner.com

+1 312 923 2683 | TEL
+1 312 840 7683 | FAX
DJimenez-Ekman@jenner.com
Download V-Card | View Biography

CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.