**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

Shuffle Tech International, LLC, et al.,

     Plaintiffs,

     v.

Scientific Games Corporation, et al.,

     Defendants.

Civil Action No. 1:15-cv-3702

Honorable Matthew F. Kennelly

---

**DEFENDANTS' MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

---

Craig C. Martin
David Jiménez-Ekman
Timothy J. Barron
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654-3456
Tel: 312.222.9350
Fax: 312.527.0484
cmartin@jenner.com
djimenez-ekman@jenner.com
tbarron@jenner.com

March 24, 2017

### **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................... 1

SUMMARY OF PERTINENT UNDISPUTED FACTS .......................................... 2

     A.     Plaintiffs And Their Agreements With DigiDeal That The Court Found
           Permitted Plaintiffs To Proceed With Their Claim Here. ....................................... 3

     B.     SHFL's Prosecution Of The '982 And '935 Patents Later Asserted Against
           DigiDeal And The Documents Plaintiffs Claim SHFL Failed To Disclose. .......... 4

     C.     The Nevada Court's Ruling That SHFL's Patent Infringement Action
           Against DigiDeal Was Not An "Exceptional Case" Under 35 U.S.C. § 285
           Because It Possessed "Substantive Strength" And SHFL's Litigation
           Methods Were "Reasonable." ................................................................................ 6

ARGUMENT .................................................................................................................... 8

I.     The Court Should Grant Summary Judgment Because Plaintiffs Are Precluded By
      The Nevada Court's Ruling From Making The Required Showing That The
      Nevada DigiShuffle Litigation Was Objectively Baseless. ................................. 8

     A.     Plaintiffs Seek To Relitigate An Issue That Was Conclusively Resolved. ........... 10

     B.     Plaintiffs Are Bound By The Nevada Court's Ruling. ......................................... 12

II.    Independently, The Court Should Also Grant Summary Judgment Because There
      Is No Evidence To Create A Genuine Dispute Of Material Fact By Clear And
      Convincing Evidence Of Specific Intent To Defraud. ....................................... 17

     A.     The High Legal Burden Plaintiffs Face To Show Specific Intent To
           Defraud In Order To Prevail On Their Fraudulent Procurement Claim. .............. 17

     B.     There Is No Evidence To Create A Genuine Dispute Of Material Fact By
           Clear And Convincing Evidence That SHFL Specifically Intended To
           Defraud The PTO When Not Submitting The Documents Plaintiffs Cite. ........... 18

CONCLUSION ................................................................................................................ 25

i

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*1st Media, LLC v. Electronic Arts, Inc.*,
   694 F.3d 1367 (Fed. Cir. 2012)....................................................................................20

*Abbott Labs. v. Dey, L.P*,
   110 F. Supp. 2d 667 (N.D. Ill. 2000) ..................................................................9, 15

*Alvear-Velez v. Mukasey*,
   540 F.3d 672 (7th Cir. 2008) .......................................................................................9

*Amin v. 5757 N. Sheridan Rd. Condo Ass'n*,
   No. 12 C 446, 2012 WL 2049820 (N.D. Ill. June 6, 2012) .....................................14

*Anchor Glass Container Corp. v. Buschmeier*,
   426 F.3d 872 (7th Cir. 2005) ...............................................................................12, 14

*Avery Dennison Corp. v. Cont'l Datalabel, Inc.*,
   No. 10 C 2744, 2010 WL 4932666 (N.D. Ill. Nov. 30, 2010)...........................10, 17

*Blonder-Tongue Labs., Inc. v. Univ. of Illinois Found.*,
   402 U.S. 313 (1971)...................................................................................................12

*Blue Calypso, LLC v. Groupon, Inc.*,
   815 F.3d 1331 (Fed. Cir. 2016).................................................................................23

*Bone Care Int'l LLC v. Pentech Pharmaceuticals, Inc.*,
   No. 08-cv-1083, 2010 WL 3928598 (N.D. Ill. Oct. 1, 2010) ..................................24

*BRK Brands, Inc. v. Nest Labs, Inc.*,
   28 F. Supp. 3d 765 (N.D. Ill. 2014) .........................................................................13

*C.R. Bard, Inc. v. M3 Sys.*,
   157 F.3d 1340 (Fed. Cir. 1998).................................................................................19

*DeGuelle v. Camilli*,
   724 F.3d 933 (7th Cir. 2013) .....................................................................................15

*DeWayne v. First Nat'l Bank of Ariz.*,
   No. 15-CV-14245-IT, 2016 WL 6662678 (D. Mass. Nov. 10, 2016) ......................16

*Dexia Credit Local v. Rogan*,
   629 F.3d 612 (7th Cir. 2010) ................................................................................9, 13

*Dexia Credit Local v. Rogan*,
No. 02 C 8288, 2009 WL 855638 (N.D. Ill. Mar. 30, 2009) ....................................13

*Dippin' Dots, Inc. v. Mosey*,
476 F.3d 1337 (Fed. Cir. 2007)......................................................................17, 19

*DirectBuy, Inc. v. Giacchi*,
No. 2:09CV110- PPS/APR, 2012 WL 2407698 (N.D. Ind. June 25, 2012)..........16

*Exergen Corp. v. Wal-Mart Stores*, *Inc.*,
575 F.3d 1312 (Fed. Cir. 2009)...........................................................................24

*Fed. Sav. and Loan Ins. Corp. v. Ill. Dept. of Revenue*,
650 F. Supp. 1217 (N.D. Ill. 1986) ......................................................................14

*Flir Sys., Inc. v. Motionless Keyboard Co.*,
No. 10-CV-231-BR, 2011 WL 1466394 (D. Or. Apr. 18, 2011)............................15

*Fujitsu Ltd. v. Tellabs Operations, Inc.*,
No. 09 C 4530, 2012 WL 3133548 (N.D. Ill. July 31, 2012) ................................22

*Halliburton Co. v. Schlumberger Tech. Corp.*,
925 F.2d 1435 (Fed. Cir. 1991)...........................................................................23

*In re Davis*,
638 F.3d 549 (7th Cir. 2011) ................................................................................9

*In re Fort Wayne Telsat, Inc.*,
665 F.3d 816 (7th Cir. 2011) ..............................................................................16

*In re Gurley*,
27 F.3d 551 (Fed. Cir. 1994)...............................................................................23

*In re Rosuvastatin Calcium Patent Litig.*,
703 F.d 511 (Fed. Cir. 2012)...............................................................................20

*In re Terazosin Hydrochloride Antitrust Litig.*,
335 F. Supp. 2d 1336 (S.D. Fla. 2004) ..........................................................10, 20

*Intercontinental Great Brands LLC v. Kellog North Am. Co.*,
118 F. Supp. 3d 1022 (N.D. Ill. 2015) ...........................................1-2, 18-20, 24

*Invitrogen Corp. v. Biocrest Mfg., L.P.*,
424 F.3d 1374 (Fed. Cir. 2005)...........................................................................23

*Johnson v. Con-Vey/Keystone, Inc.*,
856 F. Supp. 1443 (D. Or. 1994) ........................................................................10

iii

*Kaiser Found. Health Plan, Inc. v. Abbott Labs., Inc.*,
 552 F.3d 1033 (9th Cir. 2009) ....................................................................................10

*Kemin Foods, L.C. v. Pigmentos Vegetables del Centro S.A. de C.V.*,
 384 F. Supp. 2d 1334 (S.D. Iowa 2005) ......................................................................11

*Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*,
 383 F.3d 1337 (Fed. Cir. 2004)....................................................................................20

*Loeb Indus., Inc. v. Sumitomo Corp.*,
 306 F.3d 469 (7th Cir. 2002) .......................................................................................16

*Matrix IV, Inc. v. American Nat. Bank & Trust Co. of Chicago*,
 649 F.3d 539 (7th Cir. 2011) .........................................................................................9

*The Medicine Co. v. Mylan Inc.*,
 No. 11-cv-1285, 2014 WL 1758135 (N.D. Ill. May 2, 2004)......................................24

*Montana v. United States*,
 440 U.S. 147 (1979).....................................................................................................12

*Mother's Rest. v. Mama's Pizza, Inc.*,
 723 F.2d 1566 (Fed. Cir. 1983)....................................................................................15

*Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*,
 571 F.3d 299 (3d Cir. 2009).........................................................................................13

*New Hampshire v. Maine*,
 532 U.S. 742 (2001).....................................................................................................14

*Nobelpharma AB v. Implant Innovations, Inc.*,
 141 F.3d 1059 (Fed. Cir. 1998)....................................................................................10

*Optium Corp. v. Emcore Corp.*,
 603 F.3d 1313 (Fed. Cir. 2010)...............................................................................19, 21

*Outside the Box Innovations, LLC v. Travel Caddy, Inc.*,
 695 F.3d 1285 (Fed. Cir. 2012)....................................................................................21

*Richards v. Jefferson Cty.*,
 517 U.S. 793 (1996).....................................................................................................12

*Santarus, Inc. v. Par Pharm., Inc.*,
 694 F.3d 1344 (Fed. Cir. 2012)....................................................................................21

*Schnell v. Peter Eckrich & Sons, Inc.*,
 365 U.S. 260 (1961)......................................................................................................15

*St. Louis Baptist Temple, Inc. v. FDIC,*
    605 F.2d 1169 (10th Cir. 1979) ..........................................................................16

*Taylor v. Sturgell,*
    553 U.S. 880 (2008)....................................................................... 12-13, 15

*Terrell v. DeConna,*
    877 F.2d 1267 (5th Cir. 1989) ..........................................................................14

*Therasense, Inc. v. Becton, Dickinson and Co.,*
    649 F.3d 1276 (Fed. Cir. 2011).................................................................. 1, 17-23

*TransWeb, LLC v. 3M Innovative Properties Co.,*
    812 F.3d 1295 (Fed. Cir. 2016)..........................................................................17

*Tyco Healthcare Group LP v. Mut. Pharm. Co.,*
    762 F.3d 1338 (Fed Cir. 2014)...........................................................................19

*Vita-mix Corp. v. Basic Holding, Inc.,*
    581 F.3d 1317 (Fed. Cir. 2009)..........................................................................19

*Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.,*
    382 U.S. 172 (1965)................................................................................10, 17

**STATUTES**

35 U.S.C. § 102(b) ...................................................................................................22

35 U.S.C. § 271........................................................................................................6

35 U.S.C. § 285................................................................................................ passim

**OTHER AUTHORITIES**

Restatement (Second) of Judgments § 39 (1982) ................................................. 14-15

## INTRODUCTION

SHFL[1] brings this motion for summary judgment because we believe the Court should avoid a trial where the undisputed facts require dismissal. Plaintiffs' claims are barred by issue preclusion, and independently, Plaintiffs have no evidence to meet the high burden of proof they face on specific intent to defraud.

Plaintiffs claim they were damaged by allegedly sham patent litigation in Nevada brought by SHFL against non-party DigiDeal Corporation. Plaintiffs contend that the litigation prevented DigiDeal from paying Plaintiffs royalties and commissions on sales of the "DigiShuffle" automatic card shuffler under Plaintiffs' contracts with DigiDeal. But Plaintiffs cannot as a matter of law prove that SHFL's case against DigiDeal was sham litigation after the Nevada court found that the case was not even "exceptional" under 35 U.S.C. § 285 because it had "substantive strength" and SHFL's litigation methods were "reasonable." Under the doctrine of issue preclusion, those findings prevent Plaintiffs from proving the DigiShuffle litigation was a sham — a higher standard than for an "exceptional" case, as litigation is only sham if it is both "objectively baseless" and brought in subjective bad faith.

Independently, Plaintiffs cannot prove the specific intent to defraud the patent office they must to prevail. Despite asymmetrically expansive, expensive and time consuming discovery from SHFL and its former employees spanning almost 20 years of events, Plaintiffs have no direct evidence of any improper intent by SHFL when prosecuting and enforcing its patents—no

---

[1] We refer to the defendants collectively for convenience as "SHFL," pronounced "Shuffle." The original entity engaged in the invention, manufacture and sale of automatic card shufflers for regulated casinos founded by inventor John Breeding in 1983 was Shuffle Master, Inc. Shuffle Master, Inc. changed its name to SHFL Entertainment, Inc. in 2012. Bally Technologies, Inc. acquired SHFL Entertainment, Inc. in 2013, and Scientific Games Corp. acquired Bally Technologies, Inc. in 2014.

deposition testimony, and no e-mails or other documents. Instead, Plaintiffs offer nothing more remarkable than inferences they will argue from the public records of SHFL's patent prosecutions and the DigiDeal litigation, and the non-privileged content of SHFL's files. Under the strict standards laid down in *Therasense, Inc. v. Becton, Dickinson and Co.* and applied recently by this Court in *Intercontinental Great Brands LLC v. Kellogg North Am. Co.*, a.k.a. the Oreo cookie packaging case, that is not enough to avoid summary judgment.

We make this motion now, as expert discovery is beginning, because it does not depend on, and cannot be countered with, expert testimony. As much as SHFL would like to prove at trial that its success results from its effort and innovation, and from fair and free competition, that trial would further waste resources. Numerous courts (including this one) have resolved these issues as a matter of law. The Court should grant summary judgment for the reasons explained below.

## SUMMARY OF PERTINENT UNDISPUTED FACTS

As this Court stated in its opinion on SHFL's motion to dismiss:

> Plaintiffs' antitrust claims under section 2 of the Sherman Act are premised on [their] allegations that SHFL first fraudulently obtained numerous patents (including the '982 and '935 patents[2]) by failing to disclose crucial prior art and then sought to enforce those patents by knowingly filing meritless infringement lawsuits against competitors in order to force them out of the market . . . plaintiffs contend that SHFL's fraud on the USPTO and subsequent patent enforcement action against DigiDeal was an act of monopolization intended to prevent Shuffle Tech, Poydras, and Aces Up from participating in the casino shuffler market ***through the license agreement*** with DigiDeal.

(Dkt. 48 at 18, 21(emphasis added).) The Court determined that Plaintiffs could proceed at the motion to dismiss stage because "[P]laintiffs allege that SHFL's suit against DigiDeal was filed with the aim of preventing card shufflers ***produced under the license agreement*** from ever making their way into the casino shuffler market." (*Id.* at 24 (emphasis added).) Consequently, in this section, SHFL focuses on a summary of the undisputed facts (laid out in more detail in SHFL's

---

[2] U.S. Patent Nos. 6,651,982 and 7,523,935.

Local Rule 56.1 Statement) relating to the prosecutions of the '982 and '935 patents and their assertion against DigiDeal in the 2012 Nevada patent litigation over the DigiShuffle device (the "Nevada DigiShuffle case"). These facts have emerged after extensive discovery, including 35 depositions and the production of more than 85,000 documents (totaling nearly 1.6 million pages).

### A. Plaintiffs And Their Agreements With DigiDeal That The Court Found Permitted Plaintiffs To Proceed With Their Claim Here.

Plaintiff Shuffle Tech held patents related to automatic card shuffling, and practiced those patents to manufacture and sell automatic card shufflers for home use. In 2012, Shuffle Tech began to develop a version of its card shuffler for casinos—the "DigiShuffle"—by partnering with two entities, non-party DigiDeal and plaintiff Poydras-Talrick. (SUF 14.) DigiDeal designed and manufactured table games for regulated casinos, and Poydras-Talrick was a special purpose entity created by investors to fund the development and production of the shuffler. (SUF 15.)

In September 2012, the parties signed a Master Agreement under which Shuffle Tech licensed its patents in exchange for royalties; Poydras-Talrick contributed funding of up to about $1 million in exchange for royalties; and DigiDeal contributed engineering, production, marketing and sales of the DigiShuffle in exchange for sales revenue. (SUF 14-15.) The parties amended the agreement in July 2013, keeping the same basic role for each party. (SUF 16.) Separately, in September 2013, DigiDeal entered into a Marketing Agreement in which it subcontracted the marketing and sales of the DigiShuffle to plaintiff Aces Up in exchange for a commission to Aces Up. (SUF 17.) All of the revenue for all of the parties under both agreements would come from the development, manufacture and sale by DigiDeal of the DigiShuffle—*i.e.*, all revenue was derivative of the DigiShuffle's performance. (SUF 18.) Figure 2 in the Appendix is a demonstrative showing the relationship between Plaintiffs and DigiDeal.

In its ruling in this case on SHFL's June 2015 motion to dismiss, this Court cited Plaintiffs'

relationships under these agreements when it allowed Plaintiffs to avoid dismissal of their *Walker Process* claim. (*See generally* Dkt. 48.) SHFL's motion to dismiss argued that the Plaintiffs were not proper parties to pursue a claim for an antitrust injury where Defendants had only sued DigiDeal. (Dkt. 33 at 5-7.) Plaintiffs responded that they were proper plaintiffs because of DigiDeal's assignment of damages to Plaintiffs, their relationship with DigiDeal, DigiDeal's exclusive role as the manufacturer of the DigiShuffle, and the fact that without DigiDeal, they "ha[d] no business." (Dkt. 43 at 7.) On October 12, 2015, this Court granted the motion to dismiss all of Plaintiffs' claims except the *Walker Process* claim. (Dkt. 48 at 35.) In doing so, the Court noted Plaintiffs' allegation "that SHFL's suit against DigiDeal was filed with the aim of preventing card shufflers produced **under the license agreement** from ever making their way into the casino shuffler market." (Dkt. 48 at 24 (emphasis added).)

### B. SHFL's Prosecution Of The '982 And '935 Patents Later Asserted Against DigiDeal And The Documents Plaintiffs Claim SHFL Failed To Disclose.

The company that became SHFL began in 1983 when John Breeding, a truck driver with a high school diploma, came up with the idea for a machine that shuffled cards automatically. (SUF 11.) Breeding's invention found success, and over the next two decades, SHFL continued to innovate, with new shufflers and improvements on old designs. (SUF 13; Appendix Figure 1, Selection of SHFL's Automatic Card Shufflers Over Time.) As it innovated, SHFL protected the shufflers it invented with patents, including the two patents mainly at issue here, the '982 and '935 patents.

The 2002 SHFL patent application that became the '982 patent and the 2003 SHFL application that became the '935 patent were based on the design of a SHFL model called the Deck Mate®, invented by SHFL's in-house card shuffler engineers. (SUF 45, 52.) Both patents focus on the way that cards are received from and returned to the dealer. (SUF 47, 53.) SHFL disclosed

72 patents in the prosecution of the '982 patent and 120 patents in the prosecution of the '935 patent.  (SUF 48, 54.)  SHFL cited in both prosecutions U.S. Patent No. 5,989,122 to Roblejo ("the Roblejo '122 patent"), and U.S. Patent No. 4,659,082 to Greenberg ("the Greenberg '082 patent").  (SUF 48, 54.)  Plaintiffs contend that, during the prosecutions of the '982 and '935 patents, SHFL should have provided to the PTO certain non-patent documents relating to prototypes by two different inventor groups, referred to in the litigation as the "Roblejo prototypes" and the "Luciano prototype."  (Dkt. 50 at ¶¶ 32-46.)

Regarding the Roblejo prototypes, SHFL's files contain a brochure for that device, called a "Sure-Shuffler" in the brochure.  (SUF 25.)  That brochure was likely obtained by an unknown person in October 1997 during a trade show for the gaming industry, the "World Gaming Expo," during which Casino Concepts demonstrated the Sure-Shuffler at its booth.  (SUF 19, 21, 23-25, 27.)  No person to whom the duty of candor attached in prosecuting the '982 or '935 patents saw the Sure-Shuffler operating at the World Gaming Expo.  (SUF 23(c)-(d), 27.)  Two Roblejo prototype developers, Hal Solberg and Steven Gola, testified, in prior litigation and in depositions in this case (for which Plaintiffs paid them), that the Roblejo '122 patent SHFL cited in prosecutions of both the '982 and '935 patents, and in particular its Figure 1, "describes," "depicts" and "embodies" the Roblejo prototypes.  (SUF 56.)  Solberg and Gola also testified that the '122 patent and its figures specifically disclosed an automatically moveable cover.  (SUF 56(a).)

The Luciano prototype was a shuffler developed by members of the Luciano family that was never successfully commercialized.  (SUF 28, 29.)  The Luciano prototype was asserted as invalidating "prior art" against several different SHFL patents by SHFL's opponent, CARD, in litigation between 2002 and June 1, 2004, when the case settled.  (SUF 40.)  Other than the Greenberg '082 patent (which SHFL cited to the PTO in both the '982 and '935 patent

prosecutions), the Luciano prototype and materials related to it were not the subject of a patent, described in a printed publication, accessible to the public, or commercially exploited.  (SUF 30, 48, 54.)  One of the prototype's designers, Lawrence Luciano, testified that the Greenberg '082 patent "closely resembled" the Luciano shuffler.  (SUF 32.)  His father, who had the idea for the shuffler, admitted in a letter that the Greenberg '082 patent "covers our design pretty well if you read the claims."  (SUF 31.)  At the conclusion of the *CARD* litigation, SHFL's outside litigation counsel provided to its in-house patent lawyer Jennifer Farrar discs labeled "Shuffler Art" with electronic copies of certain documents related to the alleged "prior art" relevant to the product accused in the suit, the one2six shuffler.  (SUF 43.)

C. **The Nevada Court's Ruling That SHFL's Patent Infringement Action Against DigiDeal Was Not An "Exceptional Case" Under 35 U.S.C. § 285 Because It Possessed "Substantive Strength" And SHFL's Litigation Methods Were "Reasonable."**

In October 2012, SHFL sued DigiDeal for patent infringement under 35 U.S.C. § 271, in the District of Nevada, before Judge Navarro, after DigiDeal displayed the DigiShuffle at the October 2012 gaming trade show, the "G2E."  (SUF 57, 61.)  In October 2013, Judge Navarro held a *Markman* hearing and stated her inclination to adopt the majority of SHFL's proposed constructions of the claim terms and to reject all of DigiDeal's interpretations, while taking one claim term under advisement.  (SUF 69.)  Judge Navarro did not enter a written claim construction order because on January 2, 2014, DigiDeal initiated reexamination proceedings before the PTO for the '982 and '935 patents and sought a stay in the district court.  (SUF 70, 71.)  The parties later entered into an agreed "Stipulation and Order to Stay," under which DigiDeal agreed to stop producing and selling the DigiShuffle while the reexaminations proceeded and SHFL agreed to stay the litigation pending the results of the reexaminations.  (SUF 71.)

Among other things, in the reexams, DigiDeal contended that the '982 and '935 patents

were invalid based on combinations of references including U.S. Patent No. 6,361,044 to Block and the Roblejo '122 patent. (SUF 72-73, 78-79.) Block discloses a mechanical device that deals cards automatically to a table underneath a transparent dome-shaped cover. (SUF 74.) During the '982 reexam, the examiner agreed with SHFL that the Block patent *taught away* from the claimed invention because it prevented the user from physically touching the cards, a key feature of the claimed shuffler. (SUF 76.) SHFL amended the claims of the '982 patent, and the examiner agreed that the proposed amended claims overcame the earlier rejections based on the Roblejo '122 patent and the Block patent, and confirmed that the claims as amended were patentable. (SUF 75-777.)

In the '935 reexam, SHFL similarly overcame rejections based on the Roblejo '122 and Block patents, both of which had been disclosed in the original prosecution. (SUF 79, 83.) SHFL added a new claim 15 to the '935 patent to cover a preferred embodiment of the invention and cancelled the original claims "to expedite the issuance of a reexamination certificate." (SUF 82.) The examiner concluded that the '935 patent was distinct from Roblejo, Block and other art, and was thus patentable. (SUF 79, 81, 83.)

Before the reexam certificates for the '982 and '935 patents issued, in June 2015, SHFL filed in the PTO a Notification of Concurrent Proceedings, disclosing Plaintiffs' antitrust allegations in *this* case, and attaching Plaintiffs' Complaint. (SUF 84.) The '982 and '935 patents both emerged from reexam with certificates issued on July 7 and August 19, 2015. (SUF 77, 83.)

On January 8, 2016, DigiDeal moved for summary judgment in the Nevada DigiShuffle litigation. (SUF 87.) On March 30, 2016, the court granted DigiDeal's motion for summary judgment in a six-page opinion based on changes to the language of the asserted patents during the reexams. (SUF 88.) In April 2016, after the summary judgment ruling, DigiDeal sought attorney's

fees on the basis that the action was an "exceptional case" under 35 U.S.C. § 285. (SUF 90.) The magistrate judge, on June 29, 2016, recommended a finding that the DigiShuffle litigation was not an "exceptional case," determining that (1) "SHFL's claims possessed substantive strength" and (2) "SHFL[] used reasonable litigation methods." (SUF 91.) DigiDeal did not object, and the district court judge adopted the recommendation on September 19, 2016. (SUF 92.) SHFL has appealed the court's summary judgment ruling to the Federal Circuit. (SUF 89.) DigiDeal did not cross-appeal the finding that SHFL's case was not exceptional because it possessed substantive strength. (SUF 89, 93.) In the appellate court, DigiDeal has failed to defend the judgment and forfeited its right to brief the issues. (SUF 89.)

Although DigiDeal was the only named defendant in the Nevada DigiShuffle case, Plaintiffs Shuffle Tech and Poydras were involved in the defense. (SUF 65-66.) First, under the parties' agreements, Shuffle Tech agreed to "defend" DigiDeal for certain infringement claims, though the parties later agreed that the obligation did not extend to the Nevada DigiShuffle case. (SUF 66(a).) Second, Shuffle Tech agreed to pay DigiDeal's defense costs for the Nevada DigiShuffle case. (SUF 66(c).) Third, an investor in Poydras, Stephen Crystal, found the attorney who represented DigiDeal for most of the DigiShuffle litigation, Marie Kerr. (SUF 66(e).) Fourth, Ms. Kerr represented Shuffle Tech and Poydras for purposes of the DigiShuffle litigation as co-clients at least until April 2014, and the parties engaged in strategy calls and correspondence, over which Plaintiffs have asserted the attorney-client privilege in this litigation. (SUF 66(f), 66(h).)

## ARGUMENT

I. **THE COURT SHOULD GRANT SUMMARY JUDGMENT BECAUSE PLAINTIFFS ARE PRECLUDED BY THE NEVADA COURT'S RULING FROM MAKING THE REQUIRED SHOWING THAT THE NEVADA DIGISHUFFLE LITIGATION WAS OBJECTIVELY BASELESS.**

In denying SHFL's motion to dismiss Plaintiffs as improper plaintiffs, this Court cited their

contracts with DigiDeal.  But DigiDeal already litigated its argument that the Nevada DigiShuffle litigation was a sham, with its Section 285 exceptional case motion—and lost.  Plaintiffs cannot use their relationships with DigiDeal to get into the courthouse door but disavow those same relationships when they foreclose Plaintiffs' claims.  Issue preclusion prevents Plaintiffs from showing, as they must to prevail, that the Nevada DigiShuffle litigation was "objectively baseless," because the Nevada court already rejected DigiDeal's exceptional case motion, ruling that SHFL's claim against DigiDeal had "substantive strength" and that SHFL's litigation conduct was "reasonable."

"The doctrine of issue preclusion compels a court to honor the first actual decision of a matter that has been litigated." *Abbott Labs. v. Dey, L.P*, 110 F. Supp. 2d 667, 669 (N.D. Ill. 2000) (Kennelly, J.).  For collateral estoppel to apply "(1) the issue sought to be precluded must be the same as that involved in the prior litigation, (2) the issue must have been actually litigated, (3) the determination of the issue must have been essential to the final judgment, and (4) the party against whom estoppel is invoked must be fully represented in the prior action."  *Matrix IV, Inc. v. Am. Nat. Bank & Trust Co. of Chicago*, 649 F.3d 539, 547 (7th Cir. 2011).  Application of the issue preclusion doctrine is a question of law for the Court and, on appeal, it is reviewed *de novo* by the Seventh Circuit.  *Alvear-Velez v. Mukasey*, 540 F.3d 672, 675 n.1 (7th Cir. 2008); *see also In re Davis*, 638 F.3d 549, 553 (7th Cir. 2011) ("Whether the issue of intent was litigated and resolved in the state court action, as required for application of collateral estoppel, is question of law" reviewed *de novo*); *Dexia Credit Local v. Rogan*, 629 F.3d 612, 628 (7th Cir. 2010) ("[W]e review determinations regarding the application of issue preclusion de novo.").

The second and third requirements (an issue that was actually litigated and essential to the final judgment that DigiDeal was not entitled to attorneys' fees) are plainly met; and as shown

below, the first and fourth requirements are met as well.

### A.    Plaintiffs Seek To Relitigate An Issue That Was Conclusively Resolved.

The District of Nevada decided the central question in this case.  Plaintiffs cannot establish here that the Nevada DigiShuffle case was sham litigation when the Nevada court already ruled that "SHFL's claims possessed substantive strength" and (2) "SHFL[] used reasonable litigation methods."  Plaintiffs assert a single count here, monopolization in violation of Section 2 of the Sherman Act, by alleging that in sham litigation SHFL asserted fraudulently obtained patents, which is a claim under *Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172 (1965).  As Plaintiffs have conceded, to prove "sham litigation," "an antitrust plaintiff must prove that the suit was both ***objectively*** baseless and ***subjectively*** motivated by a desire to impose collateral, anti-competitive injury rather than to obtain a justifiable legal remedy."  *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1071 (Fed. Cir. 1998); *accord Avery Dennison Corp. v. Cont'l Datalabel, Inc.*, No. 10 C 2744, 2010 WL 4932666, at *4-5 (N.D. Ill. Nov. 30, 2010) (Kennelly, J.) (emphasis added); Dkt. 111-1 at 3-4.

Plaintiffs cannot establish their *Walker Process* claim without relitigating the final, non-appealable findings from the Nevada DigiShuffle case.  The Nevada court held that the DigiShuffle litigation was not a Section 285 exceptional case and, therefore, Plaintiffs cannot show here that it was sham litigation.  Numerous courts have held that once a party loses its Section 285 exceptional case motion, it cannot later assert that the same litigation was sham litigation for antitrust purposes.  *See*, *e.g.*, *Johnson v. Con-Vey/Keystone, Inc.*, 856 F. Supp. 1443, 1448 (D. Or. 1994) ("[T]his court found that the claims of Con-Vey in its patent infringement case were not frivolous for the purpose of awarding attorney fees.  Therefore, this court has already determined that Con-Vey's patent infringement case was not objectively baseless.  The court finds here that Con-Vey's patent infringement case was not sham litigation[.]"); *In re Terazosin Hydrochloride Antitrust Litig.*, 335

- 10 -

F. Supp. 2d 1336, 1358-59 (S.D. Fla. 2004) (concluding that earlier terazosin patent infringement lawsuit against competitor was not objectively baseless, and therefore could not give rise to antitrust liability where court in previous case had denied motion for attorney's fees); *Kaiser Found. Health Plan, Inc. v. Abbott Labs., Inc.*, 552 F.3d 1033, 1046-47 (9th Cir. 2009) (same); *Kemin Foods, L.C. v. Pigmentos Vegetables del Centro S.A. de C.V.*, 384 F. Supp. 2d 1334, 1349, 1353 (S.D. Iowa 2005) ("finding of no bad faith under section 285 precludes any claim of sham litigation").

Indeed, the Nevada court made specific findings that foreclose Plaintiffs' claims in this case. The required finding Plaintiffs seek here for sham litigation—that the litigation was "objectively baseless"—cannot co-exist with the already-determined fact that the litigation had "substantive strength." The Nevada court also found:

- SHFL was "entitled to presume the validity of its patent and engage in a good-faith effort to enforce its perceived rights under the patent";

- DigiDeal did not show that "no reasonable litigant could realistically [have] expect[ed] success on the merits";

- "SHFL's success at the claims construction hearing . . . suggests that SHFL conducted an adequate investigation prior to filing this lawsuit"; and

- "It was . . . reasonable for SHFL to bring this infringement action and defend against Digideal's counterclaims, despite the U.S. Patent Office's subsequent alteration of SHFL's original claims." (SUF 91.)

Thus, to prevail here, Plaintiffs must relitigate a specific factual issue that was already decided, which they cannot do.

### B.      Plaintiffs Are Bound By The Nevada Court's Ruling.

The Nevada judgment binds Plaintiffs because they were in privity with DigiDeal and their claims are derivative of DigiDeal's rights.  As Plaintiffs conceded in arguing against SHFL's motion to dismiss, Plaintiffs were permitted to proceed with this case "by virtue of their manufacturing, distribution and selling license and indemnification with DigiDeal" and by virtue of "DigiDeal's assignment of its rights against SHFL to collect any fees or damages against SHFL arising out of the underlying sham litigation[.]"  (Dkt. 43 at 7.)  This Court accepted Plaintiffs' argument, ruling that Plaintiffs had alleged standing and antitrust injury because of their contractual partnership with DigiDeal to produce DigiShuffles.  (Dkt. 48 at 24-25.)  In fact, it is that partnership—giving rise to a royalty and commissions—that is the basis for Plaintiffs' alleged injury and damages; without that, they are not even in court.  Thus, each of the Plaintiffs was in privity with DigiDeal such that issue preclusion applies.

It is a "fundamental precept of common-law adjudication" that a right "determined by a court of competent jurisdiction … cannot be disputed in a subsequent suit between the same parties or their privies." *Montana v. United States,* 440 U.S. 147, 153 (1979) (quoting *Southern Pac. R.R. v. United States,* 168 U.S. 1, 48 (1897)).  Thus, "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action."  *Id.*  Courts have recognized that the term "privity" "should be flexible enough to acknowledge the realities of the parties' relationships." *Anchor Glass Container Corp. v. Buschmeier,* 426 F.3d 872, 879 (7th Cir. 2005) (quoting *Myers v. Kim,* 55 Pa. D. & C.4th 93, 101 (Com. Pl. 2001)); *accord Richards v. Jefferson Cty.*, 517 U.S. 793, 798 (1996) ("the term 'privity' is now used to describe various relationships between litigants that would not have come within the traditional definition of that term.").  A determination of privity is ultimately one that calls upon "the trial courts' sense of justice and equity." *Blonder-Tongue Labs., Inc. v. Univ. of Illinois Found.*, 402 U.S. 313, 334 (1971).  Issue

preclusion applies against non-parties under a variety of "recognized exceptions" outlined in *Taylor v. Sturgell*, 553 U.S. 880, 893-95 (2008), two of which apply here: (1) a substantive legal relationship existed between the person to be bound and a party to the judgment; and (2) the nonparty assumed control over the litigation in which the judgment was issued. These two exceptions, and certainly the totality of the circumstances, justify precluding Plaintiffs here.

*First*, multiple substantive legal relationships existed between DigiDeal and Plaintiffs here that require preclusion. "[N]onparty preclusion may be justified based on a variety of pre-existing 'substantive legal relationship[s]' between the person to be bound and a party to the judgment." *Taylor*, 553 U.S. at 894; *accord Dexia Credit Local v. Rogan*, No. 02 C 8288, 2009 WL 855638, at *10 (N.D. Ill. Mar. 30, 2009) (Kennelly, J.), *aff'd*, 629 F.3d 612 (7th Cir. 2010). "[P]rivity has traditionally been understood as referring to the existence of a substantive legal relationship, such as by contract, from which it was deemed appropriate to bind one of the contracting parties to the results of the other party's participation in litigation." *Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.,* 571 F.3d 299, 310–11 (3d Cir. 2009) (citing *Taylor,* 553 U.S. at 894 n.8). Licensor/licensee relationships are one type of relationship that gives rise to nonparty preclusion: for instance, if a patentee grants an exclusive license of the patent to a party who later pursues infringement litigation, "the (nominal) patentee and the exclusive licensee would be in privity and so subject to collateral estoppel." *BRK Brands, Inc. v. Nest Labs, Inc.*, 28 F. Supp. 3d 765, 768 (N.D. Ill. 2014).

Here, each of the Plaintiffs had a contractual relationship with DigiDeal via the license agreements and the Aces Up marketing agreement, and thus a substantive legal relationship. (SUF 14-17.) Plaintiff Shuffle Tech licensed its shuffler patents to Poydras and ultimately to DigiDeal, a license which authorized DigiDeal to design, manufacture and sell its accused

- 13 -

DigiShuffle device. (SUF 14-15.) DigiDeal, in turn, licensed Aces Up to market and sell the DigiShuffle. (SUF 17.) Indeed, it was those relationships that this Court referred to when denying SHFL's motion to dismiss: "SHFL's suit against DigiDeal was filed with the aim of preventing card shufflers produced *under the license agreement* from ever making their way into the casino shuffler market." (Dkt. 48 at 24 (emphasis added).) Plaintiffs cannot assert the primacy of their contractual relationship with DigiDeal to get past SHFL's challenges to standing and antitrust injury, and then shed that relationship to avoid a finding of privity here. *Cf. New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (a party who prevails on an argument in one phase of a case cannot then rely on a contradictory argument to prevail in another phase). *See, e.g., Terrell v. DeConna*, 877 F.2d 1267, 1272 (5th Cir. 1989) (where successive parties had a close relationship, and claim in second suit was derivative of claim in first suit, it was appropriate to apply issue preclusion); *Anchor Glass Container Corp.,* 426 F.3d at 879.

**Second**, independently requiring a finding of privity, Plaintiffs assumed control of the Nevada DigiShuffle litigation for a time, which included Shuffle Tech's CEO reviewing discovery responses and court filings such as DigiDeal's *Markman* briefs, instructing the attorneys concerning the reexamination papers, and attending hearings in the case. (SUF 66.) When a non-party to an action has control over the conduct of litigation, it is in privity with the party it controls and is bound by the results of the litigation. *Fed. Sav. and Loan Ins. Corp. v. Ill. Dept. of Revenue,* 650 F. Supp. 1217, 1223 (N.D. Ill. 1986). Assuming control of a litigation indicates that a party's "interest is substantially equivalent to that of the party on whose behalf he appears," and that the party should be bound by the result. Restatement (Second) of Judgments § 39 cmt. a (1982); *accord Amin v. 5757 N. Sheridan Rd. Condo Ass'n*, No. 12 C 446, 2012 WL 2049820, at *3 n.4 (N.D. Ill. June 6, 2012). For example, where a manufacturer defends a retailer against claims of

patent infringement, a judgment against the retailer is also preclusive against the manufacturer. Restatement (Second) of Judgments § 39 cmt. a, Illustration 1; *accord Schnell v. Peter Eckrich & Sons, Inc.*, 365 U.S. 260, 261-62 & n. 4 (1961); *Mother's Rest. v. Mama's Pizza, Inc.*, 723 F.2d 1566, 1569, 1572-73 (Fed. Cir. 1983); *Flir Sys., Inc. v. Motionless Keyboard Co.*, No. 10-CV-231-BR, 2011 WL 1466394, at *2, 7-9 (D. Or. Apr. 18, 2011).

Under the Master Agreement, Shuffle Tech had an obligation to "defend" DigiDeal against certain patent claims. Shuffle Tech apparently denied that the provision applied to the Nevada DigiShuffle litigation, but as this Court noted in resolving SHFL's motion to dismiss (Dkt. 48), under the Amendment to the Master Agreement, Shuffle Tech agreed to fund the defense. Shuffle Tech paid for a substantial portion of the litigation; Poydras selected the lawyer that represented DigiDeal for a substantial portion of the DigiShuffle case; and that lawyer reported jointly to DigiDeal and the Plaintiffs until approximately April 2014. (SUF 66.) The fact that Plaintiffs exercised significant control over the DigiShuffle case, even if their relationships ultimately soured and Shuffle Tech chose not to exercise its right to control the DigiShuffle Litigation by not paying fees as promised, independently warrants their being precluded from contradicting the Nevada court's findings here. Restatement (Second) of Judgments § 39 ("A person who is not a party to an action but who controls or substantially participates in the control of the presentation on behalf of a party is bound by the determination of issues decided as though he were a party.").

At bottom, whether a prior finding precludes a person who was not an actual party to the prior suit turns on whether it would be fair for that person to be bound when he did not have his "day in court." *Taylor*, 553 U.S. at 893 (quotation marks omitted); *accord DeGuelle v. Camilli*, 724 F.3d 933, 935 (7th Cir. 2013). As this Court held, "determining whether or not application of [issue preclusion] is fair depends upon a case by case analysis, and that courts should be sensitive

- 15 -

to the practical realities which surround the parties." *Abbott Labs.*, 110 F. Supp. 2d at 670 (Kennelly, J.) (quotation marks omitted). Here, the totality of the circumstances makes it only fair that Plaintiffs cannot relitigate the propriety of SHFL's bringing the Nevada DigiShuffle case. Plaintiffs' putative claims spring from it; there was no daylight between Plaintiffs' interests and DigiDeal's; Plaintiffs voluntarily contracted to obtain assignment of any antitrust claims DigiDeal may have had against SHFL; and Plaintiffs exercised joint control over the case at least until they breached their contract and failed to pay for the defense. There is no evidence that SHFL directed any conduct specifically at Plaintiffs or even knew of their involvement in DigiDeal's activities. Plaintiffs here cannot obtain relief for conduct directed at DigiDeal when a court has already determined that the conduct against DigiDeal was not improper. It is only fair to prevent Plaintiffs from relitigating an issue DigiDeal already lost.

Plaintiffs' inability to establish that the Nevada DigiShuffle litigation was sham litigation entitles SHFL to judgment as a matter of law on Plaintiffs' only remaining claim, under Section 2 of the Sherman Act. We recognize that Plaintiffs' complaint and interrogatory answers make allegations concerning other conduct by SHFL, including SHFL's patent prosecutions and litigations against other non-parties. But Plaintiffs must have actual damages to proceed past summary judgment with their claim, *Loeb Indus., Inc. v. Sumitomo Corp.*, 306 F.3d 469, 485-86 (7th Cir. 2002), and the only conduct by SHFL that even plausibly caused damages to Plaintiffs (as opposed to the adverse parties in other litigations) was the DigiDeal Nevada litigation. [3]

---

[3] Finally, independently, at the very least, Plaintiffs' claim based on the putative assignment by DigiDeal of its damages is barred. Any recovery of damages that DigiDeal allegedly suffered is barred by the rule against relitigation by proxy. *See, e.g. In re Fort Wayne Telsat, Inc.*, 665 F.3d 816, 820 (7th Cir. 2011) (assignee of claim is in privity with assignor for purposes of *res judicata* and claim preclusion); *DirectBuy, Inc. v. Giacchi*, No. 2:09CV110- PPS/APR, 2012 WL 2407698, at *3 (N.D. Ind. June 25, 2012) (same); *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1175-76 (10th Cir. 1979); *DeWayne v. First Nat'l Bank of Ariz.,* No. 15-CV-14245-IT, 2016 WL

- 16 -

## II. INDEPENDENTLY, THE COURT SHOULD ALSO GRANT SUMMARY JUDGMENT BECAUSE THERE IS NO EVIDENCE TO CREATE A GENUINE DISPUTE OF MATERIAL FACT BY CLEAR AND CONVINCING EVIDENCE OF SPECIFIC INTENT TO DEFRAUD.

### A. The High Legal Burden Plaintiffs Face To Show Specific Intent To Defraud In Order To Prevail On Their Fraudulent Procurement Claim.

Plaintiffs assert that SHFL should have, but did not, submit the Block patent and certain non-patent materials relating to the Roblejo and Luciano prototypes during the prosecutions of the '982 and '935 patents asserted against DigiDeal. (Dkt. 50 at ¶¶ 32-51.) The high burden that Plaintiffs' fraudulent prosecution claims must satisfy is governed by two cases from the Federal Circuit, *Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276 (Fed. Cir. 2011) (en banc) and *Dippin' Dots, Inc. v. Mosey*, 476 F.3d 1337 (Fed. Cir. 2007). The *Therasense* case addressed the "plague" of "inequitable conduct" allegations and laid down a rigorous legal standard on prosecution omission claims requiring proof by clear and convincing evidence. *Therasense*, 649 F.3d at 1289. "To prevail on a claim of inequitable conduct, the accused infringer must prove that the patentee acted with the specific intent to deceive the PTO . . . In a case involving nondisclosure of information, clear and convincing evidence must show that the applicant made a deliberate decision to withhold a known material reference. In other words, the accused infringer must prove by clear and convincing evidence that the applicant knew of the reference, knew that it was material, and made a deliberate decision to withhold it." *Id.* at 1290 (citations and internal quotes omitted). And under *Therasense*, to establish that a reference was "material," the proponent of an inequitable conduct claim must show "the PTO would not have allowed a claim had it been aware of the undisclosed prior art." *Id.* at 1291.[4] The *Therasense* court then created specific evidentiary

---

6662678, at *2 (D. Mass. Nov. 10, 2016) ("[a]n assignee is usually considered in privity with the assignor" for *res judicata* purposes).

[4] Under *Dippin' Dots*, Plaintiffs' burden of proving fraudulent procurement in this antitrust case based on undisclosed prior art is at least as rigorous as that laid down in *Therasense* (which was

rules to govern the practical application of the rigorous intent element.

      **First:** ***No Inference Of Intent From Materiality.*** "[A] district court may not infer intent solely from materiality. Instead, a court must weigh the evidence of intent to deceive independent of its analysis of materiality. Proving that the applicant knew of a reference, should have known of its materiality, and decided not to submit it to the PTO does not prove specific intent to deceive." *Id.* at 1290.

      **Second:** ***No Intent When Alternate Reasonable Explanations Exist.*** "[T]he specific intent to deceive must be the single most reasonable inference able to be drawn from the evidence. . . . Hence, when there are multiple reasonable inferences that may be drawn, intent to deceive ***cannot be found***." *Id.* at 1290-91 (emphasis added, citations and quotation marks omitted); *accord Intercontinental Great Brands LLC v. Kellogg North Am. Co.*, 118 F. Supp. 3d 1022, 1044 (N.D. Ill. 2015) (Kennelly, J.) (same).

      **Third:** ***No Burden On Patentee Until Challenger Meets Burden.*** "[T]he patentee need not offer any good faith explanation unless the accused infringer first . . . prove[s] a threshold level of intent to deceive by clear and convincing evidence." *Therasense*, 649 F.3d at 1291.

Plaintiffs cannot meet their rigorous burden here.

    **B.    There Is No Evidence To Create A Genuine Dispute Of Material Fact By Clear And Convincing Evidence That SHFL Specifically Intended To Defraud The PTO When Not Submitting The Documents Plaintiffs Cite.**

      There is no direct evidence—no e-mails, deposition testimony, or other documents—that

---

an inequitable conduct case). *Dippin' Dots*, 476 F.3d at 1345. *See also TransWeb, LLC v. 3M Innovative Properties Co.*, 812 F.3d 1295, 1307 (Fed. Cir. 2016) (noting similarity between *Walker Process* and inequitable conduct intent standards post-*Therasense*); *Avery Dennison Corp. v. Cont'l Datalabel, Inc.*, No. 10 C 2744, 2010 WL 4932666, at *4 (N.D. Ill. Nov. 30, 2010) (Kennelly, J.) ("[A] party that fails to prove inequitable conduct cannot establish a *Walker Process* violation that is premised on such conduct.").

any person involved in the prosecutions of the '982 or '935 patent intended to deceive the PTO. If the patents were not fraudulently obtained, the litigation cannot be a sham, and Plaintiffs' claim fails. Indeed, Plaintiffs have scoured more than 20 years of prosecutions and litigations looking for omissions to villainize, without success. But "it is notable that in the usual course of patent prosecution many choices are made, recognizing the complexity of inventions, the virtually unlimited sources of information, and the burdens of patent examination." *C.R. Bard, Inc. v. M3 Sys.,* 157 F.3d 1340, 1365 (Fed. Cir. 1998). To prevent just the kind of improper retrospective challenges Plaintiffs attempt here, the Court is required to decide the issue as a matter of law unless Plaintiffs meet their initial burden of submitting evidence to create a genuine dispute of material fact by clear and convincing evidence that those involved in the prosecutions of the '982 and '935 patents specifically intended to defraud the PTO and that there are no other reasonable explanations. *See, e.g., Dippin' Dots,* 476 F.3d at 1348 (reversing jury verdict finding fraudulent procurement due to insufficient evidence of intent as a matter of law); *C.R. Bard, Inc.,* 157 F.3d at 1353 (same); *Tyco Healthcare Group LP v. Mut. Pharm. Co.*, 762 F.3d 1338, 1350 (Fed Cir. 2014) (affirming summary judgment); *Vita-mix Corp. v. Basic Holding, Inc.,* 581 F.3d 1317, 1332 (Fed. Cir. 2009) (same); *Optium Corp. v. Emcore Corp.*, 603 F.3d 1313, 1322 (Fed. Cir. 2010) (same).

This Court's recent opinion in *Intercontinental Great Brands* shows the application of *Therasense* to eliminate meritless fraudulent procurement claims on summary judgment in the absence of evidence compelling—not just permitting—a finding of fraudulent intent. In that case, IGB sued Kellogg for infringement of certain food packaging patents. In response, Kellogg contended, among other things, that the inventor at IGB had committed inequitable conduct. A Kraft employee in Germany obtained purportedly relevant art, the Fuji Package, at a 2001 trade show in Europe and sent an e-mail about the package to another German Kraft employee named

Ron Exner shortly thereafter. The inventor of the asserted patent contacted Exner to ask about prior art before applying for the patent in 2003. Kellogg contended that Exner had a duty to share his knowledge of the Fuji Package with the inventor. But in granting summary judgment, this Court stated:

> [W]hen there are multiple reasonable inferences that may be drawn, intent to deceive cannot be found. Here, there are many alternative reasonable inferences that can be drawn—that Exner did not see the e-mail, that he forgot about the e-mail, or that he did not recognize the technology as the Fuji Package because it was described by another name.

*Intercontinental Great Brands LLC*, 118 F. Supp. 3d at 1045 (internal citation omitted); *see also In re Rosuvastatin Calcium Patent Litig.*, 703 F.3d 511, 522 (Fed. Cir. 2012) ("[r]ecognizing the complexity of patent prosecution" even gross negligence is insufficient). Here, the same methodology requires summary judgment for four reasons.

***First***, there is no direct evidence of specific intent. Plaintiffs fail to identify any direct evidence of specific intent in their interrogatory answers, amended as recently as two weeks ago, or deposition testimony. To prevent an even more expensive and abusive expansion of discovery, SHFL asserted the attorney-client and work product privileges, and Plaintiffs elected not to attempt to pierce them. SHFL's assertion of its undisputedly legitimate privileges cannot give rise to any adverse inference as a matter of law. *See, e.g.*, *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1344–45 (Fed. Cir. 2004) (en banc); *In re Terazosin Hydrochloride Antitrust Litig.*, 335 F. Supp. 2d 1336, 1365 (S.D. Fla. 2004) ("[N]o such negative inference can arise from the assertion of the privilege and, even if it did, such a negative inference cannot substitute for the requisite clear and affirmative evidence of bad faith" required for a *Walker Process* claim). In short, there is no direct evidence of specific intent to defraud.

***Second***, the facts that the non-patent documents regarding the Roblejo and Luciano prototypes were in SHFL's files and SHFL did not cite them to the PTO in prosecution or

reexamination are insufficient to permit an inference of specific intent as a matter of law. That is a central holding of *Therasense*: "Proving that the applicant knew of a reference, should have known of its materiality, and decided not to submit it to the PTO does not prove specific intent to deceive." 649 F.3d at 1290. And the Federal Circuit applied the *Therasense* holding more recently in *1st Media, LLC v. Electronic Arts, Inc.*, 694 F.3d 1367 (Fed. Cir. 2012), where it rejected the district court's credibility determination that neither the inventor nor prosecutor had a good faith explanation for their actions because the circumstantial inferences drawn from the record could not satisfy this requirement as a matter of law. *Id.* at 1376-77; *accord Optium Corp.*, 603 F.3d at 1322 (summary judgment without intent evidence apart from materiality); *Santarus, Inc. v. Par Pharm., Inc.*, 694 F.3d 1344, 1349 (Fed. Cir. 2012) (no intent to deceive even where district court found that patentee's explanation of why test was not provided to PTO "strained credibility"); *Outside the Box Innovations, LLC v. Travel Caddy, Inc.*, 695 F.3d 1285, 1291-92 (Fed. Cir. 2012) (no intent to deceive in failing to disclose related litigation absent evidence of deliberate action).

***Third***, there is no clear and convincing evidence that those prosecuting the claims of the '982 and '935 patents, either in the original prosecution or in the reexamination, "knew that [the documents Plaintiffs say were improperly omitted were] material." *Therasense*, 649 F.3d at 1290. Plaintiffs assert certain non-patent documents relating to the Roblejo and Luciano prototypes, as well as the Block patent, were fraudulently omitted during the prosecutions and reexaminations of the '982 and '935 patents. The undisputed facts permit the reasonable inference that SHFL's prosecution teams believed that the omitted documents were not but-for material because they were cumulative, not prior art, or taught away from the claimed inventions.

<u>Roblejo</u>. SHFL identified the Roblejo '122 patent and the two Plevyak patents (with which the Roblejo inventors marked their prototype) in the prosecutions of both the '982 and '935 patents.

(SUF 48, 54.)    The Roblejo inventors testified the submitted '122 patent "describe[d],"
"depict[ed]" and "embodie[d]" their invention.  (SUF 56.)  Plaintiffs' own paid witnesses testified
that the Roblejo '122 patent, which was before the PTO, also taught an automatically moveable
cover—the element Plaintiffs contend the Roblejo prototypes disclosed but was missing from the
'122 patent.  (SUF 56(a).)  In light of these undisputed facts, those prosecuting the '982 and '935
patents could have reasonably believed that additional documents depicting the Roblejo
prototype—namely, the Casino Concepts brochure from the 1997 exposition and certain litigation
materials for the '982 and '935 patents—were not but-for material because they were cumulative
of the submitted patents.  *Fujitsu Ltd. v. Tellabs Operations, Inc.*, No. 09 C 4530, 2012 WL
3133548, at *2 (N.D. Ill. July 31, 2012) (citing *Therasense*, 649 F.3d at 1291).  The undisputed
facts also at least permit the reasonable inferences that SHFL's prosecuting team did not see the
Roblejo prototype demonstrated at the 1997 convention or forgot that brief demonstration before
the applications that became the '982 and '935 patents were filed more than 4 and 5 years later.

Luciano.  The Luciano declaration indicates that the Luciano video and other documents
associated with the shuffler Plaintiffs assert SHFL improperly omitted were sent to at most three
companies (including one run by Robert Luciano's son); the device and materials were not shown
publicly at a trade show or in a trade journal; and no completed Luciano shuffler was ever sold or
offered for sale, as the product was still in development when it was cancelled.  (SUF 28-30.)
Inventor Robert Luciano admitted in a letter that the Greenberg '082 patent—which SHFL
submitted in both the '982 and '935 prosecutions—"covers our design pretty well if you read the
claims."  (SUF 31.)  And his son Lawrence, an engineer also involved in the design and
development of the Luciano shuffler, testified that the Greenberg '082 patent "closely resembled"
the Luciano shuffler.  (SUF 32.)  Given these undisputed facts, it was reasonable to think the

- 22 -

omitted Luciano-related documents were not material, both because they were not prior art under applicable pre-AIA law,[5] and because they were cumulative of the submitted Greenberg '082 patent.

Block.  Plaintiffs' complaint that SHFL did not disclose the Block patent during the prosecution of the '982 patent (it was disclosed during the later '935 patent prosecution) is foreclosed by the examiner's conclusion that Block taught away from the '982 patent during the 2014-15 reexam.  During reexamination, the examiner "agree[d]" with SHFL that Block "[taught] away" from the claimed invention because Block prevented anyone from physically touching the playing cards—the opposite of SHFL's shuffler—and did not have a top surface mounted flush with the gaming table surface.  (SUF 76.)  Prior art teaches away from the claims when it suggests developments flowing from its disclosures are unlikely to produce the objective of the claimed invention, and cannot be but-for material.  *See In re Gurley*, 27 F.3d 551, 553 (Fed. Cir. 1994); *Halliburton Co. v. Schlumberger Tech. Corp.,* 925 F.2d 1435, 1441-42 (Fed. Cir. 1991).  Thus, the SHFL prosecution team for the '982 patent could reasonably have believed Block was not relevant prior art or material to the claims.[6]

In addressing the evidence regarding materiality, we are ***not*** asking the Court to determine

---

[5] Under pre-AIA 35 U.S.C. §102(b), which applies to the '982 and '935 patents, an invention is prior art only if it "was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States."  A "printed publication" must be disseminated or otherwise made available to the extent that persons interested and ordinarily skilled in the subject matter or art, exercising reasonable diligence, can locate it.  *Blue Calypso, LLC v. Groupon, Inc.*, 815 F.3d 1331, 1348 (Fed. Cir. 2016) (internal citations omitted).  And, "[t]he proper test for the public use prong of the § 102(b) statutory bar is whether the purported use: (1) was accessible to the public; or (2) was commercially exploited."  *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1380 (Fed. Cir. 2005).

[6] The fact that SHFL submitted Block in the prosecution of the '935 patent, with similar claims, further shows SHFL had no intent to deceive.

that the omitted documents were in fact not material, as that is unnecessary to dispose of Plaintiffs'

claim. Rather, the issue on the intent element is whether the undisputed facts permit the reasonable

inference that those prosecuting the '982 and '935 did not know that the omitted documents were

but-for material and did not intend to defraud the PTO. *Therasense*, 649 F.3d at 1290. Here, they

do: the Roblejo and Luciano inventors testified that patents SHFL submitted to the PTO disclosed,

described or covered their inventions, and the examiner concluded that the Block patent taught

away from the claimed invention. No additional evidence, even expert testimony, can eliminate

the reasonable inference that the prosecuting team did not know the omitted documents were but-

for material given the undisputed facts already of record and did not intend to defraud the PTO.

*See*, *e.g.*, *The Medicine Co. v. Mylan Inc.*, No. 11-cv-1285, 2014 WL 1758135, at *5-6 (N.D. Ill.

May 2, 2014) ("Patent experts may not testify that they know the patentee's intent to hide or lie

about certain information during the patent prosecution process 'because they are not mind-

readers.'"); *Bone Care Int'l, LLC v. Pentech Pharmaceuticals, Inc.,* No. 08-CV-1083, 2010 WL

3928598, at *9-10, 14-15 (N.D. Ill. Oct. 1, 2010) (granting motion in limine on expert evidence of

intent to deceive PTO). *Cf. Intercontinental Great Brands LLC*, 118 F. Supp. 3d at 1036-38 (expert

opinion on obviousness insufficient to create factual dispute).[7]

> **Fourth**, that SHFL included the "Shuffler Art discs" (containing litigation materials

relating to both the Roblejo and Luciano prototypes) and the Block patent in some prosecutions

and not in others is also insufficient to permit an inference of specific intent as a matter of law.

"The mere fact that an applicant disclosed a reference during prosecution of one application, but

---

[7]In the reexam, the fact that SHFL took the step of filing Notices of Concurrent Proceedings, attaching the Complaint in this action and detailing the substance of Plaintiffs' allegations here, also supports a reasonable inference of no intent to deceive. (SUF 84-85.) These filings demonstrate SHFL had no intent to conceal any information about the documents Plaintiffs rely on in this case.

did not disclose it during prosecution of a related application, is insufficient to meet the threshold level of deceptive intent required to support an allegation of inequitable conduct." *Exergen Corp. v. Wal-Mart Stores*, *Inc.*, 575 F.3d 1312, 1331 (Fed. Cir. 2009). Here, in particular, the materials on the "Shuffler Art discs" related to shufflers that used a "compartment" method to randomize cards, *i.e.*, during shuffling, cards entered into discrete compartments. (SUF 43-44.) Certain claims of the '982 and '935 patents, and the actual product on which they were based, specified a particular method of randomization that was not a compartment method. (SUF 46-47, 52-53, 63-64.)

## CONCLUSION

For the foregoing reasons, the Court should grant summary judgment in favor of SHFL on Plaintiffs' Sherman Act claim.


Dated: March 24, 2017                           Respectfully submitted,

                                                By: *Craig C. Martin*
                                                    One of the Attorneys for Defendants

                                                    Craig C. Martin
                                                    David Jimenez-Ekman
                                                    Timothy J. Barron
                                                    JENNER & BLOCK LLP
                                                    353 N. Clark Street
                                                    Chicago, IL 60654-3456
                                                    Tel: 312.222.9350

                                                    *Attorney for Defendants Scientific*
                                                    *Games Corporation, Bally Technologies,*
                                                    *Inc., and Bally Gaming, Inc.*

## CERTIFICATE OF SERVICE

I certify that on March 24, 2017, I electronically filed the foregoing DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT with the Clerk of Court using the CM/ECF system, which will then send a Notice of Electronic Filing to all counsel of record.

/s/ David Jimenez-Ekman