# EXHIBIT 20

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| SHUFFLE MASTER, INC., a Minnesota corporation,<br><br>Plaintiff,<br><br>v.<br><br>CASINOS AUSTRIA MARITIME, a Florida corporation; CASINOS AUSTRIA RESEARCH AND DEVELOPMENT (d/b/a CARD), an Austrian corporation; and CASINOS AUSTRIA AG, an Austrian corporation,<br><br>Defendants. | No. CV 02-3633 DWF/SRN<br><br><br>**DECLARATION OF ERNST BLAHA IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT** |

Attached is the declaration of **Ernst Blaha**, Managing Director of Casinos Austria Research and Development ("**CARD**"), in support of Defendants' Motion to Dismiss First Amended Complaint.

Confidential Pursuant to Protective Order

SGC 0000708507

ERNST BLAHA declares:

32. I am the Managing Director of Casinos Austria Research and Development ("CARD"), an Austrian corporation and one of the defendants in this action. I have served in this position since 1992. I make this declaration in support of Defendants' Motion to Dismiss First Amended Complaint. I have personal knowledge of the facts stated in this declaration and, if called as a witness, I could and would testify competently to these facts under oath.

33. I am the same Ernst Blaha that made a declaration in this action on December 20, 2002 [Docket No. 20]. Everything in that declaration remains true as of today, except as described in paragraphs 34–35 below.

34. As described in paragraph 10 of my earlier declaration, attorneys for CARD have inquired about seeking approval for the one2six shuffler by the Nevada Gaming Control Board. (The one2six shuffler is the accused device mentioned in the First Amended Complaint.) I wrote in my earlier declaration, "To date, however, CARD has not had to [provide an example of the one2six shuffler to the Nevada Gaming Control Board]." At the time that statement was accurate, but today it is not. On January 10, 2003, John Huxley USA, Inc., which is located in Las Vegas, provided an example of the one2six shuffler to the Nevada Gaming Control Board on behalf of CARD. To the best of my knowledge, the Nevada Gaming Control Board has not yet approved the one2six shuffler. In all other respects, paragraph 10 of my earlier declaration remains true.

35. I wrote in paragraph 9 of my earlier declaration, "CARD has not . . . imported . . . the one2six shuffler anywhere in the United States." That statement should be qualified in the following respect: CARD has shipped three one2six shufflers into Nevada. First, on or about September 6, 2002, CARD shipped two one2six shufflers to John Huxley USA, Inc. in Las Vegas in preparation for the Las Vegas expo later that month. As described in paragraphs 25 and 30 of my earlier declaration, however, the one2six shuffler was never displayed at the Las Vegas expo because Shuffle Master filed this action on September 13, 2002, just days before the expo. Of those two one2six shufflers, one was returned to CARD in Vienna and the other was

-1-

Confidential Pursuant to Protective Order

SGC 0000708508

presented to the Nevada Gaming Control Board on January 10, 2003, as described above. CARD shipped a third one2six shuffler to Shuffle Master's headquarters in Las Vegas on or about October 24, 2002. As described in paragraph 25 or my earlier declaration, the purpose of this shipment was to show Shuffle Master that the one2six shuffler would not infringe Shuffle Master's patents. Shuffle Master has since returned that one2six shuffler to CARD in Vienna.

36.     I have read the allegation in paragraph 9 of the First Amended Complaint that "Defendants and Shuffle Master operated a venture to develop a 'universal shuffler' over the later part of 1998-1999 . . . ." This allegation and all similar allegations throughout the First Amended Complaint are false. As explained in paragraph 25 and Exhibit F of my earlier declaration, on November 11, 1999, I wrote in an e-mail to Joe Lahti at Shuffle Master, "[W]e are ready to start the development of our new UNIVERSAL-Shuffler(Single- and Multideck). . . . [W]e kindly ask you to give us your inputs for this new development as discussed in Las Vegas but befor[e] that we think we have to finalize our agreement concerning the KING and SHUFFLE STAR." On or about January 8, 2000, CARD and Shuffle Master met in New York to continue the discussions about a possible distribution agreement. At that meeting, everyone agreed to postpone discussion of the "universal" shuffler until after completion of the negotiations concerning the Shuffle Star shuffler. After that meeting, Shuffle Master never showed any interest in developing a new "universal" shuffler, even after I informed Joe Lahti by e-mail on March 21, 2000 that CARD was developing a "universal" shuffler "capable of shuffling one to six decks, in batch or continuous applications." Shuffle Master terminated the negotiations concerning the Shuffle Star shuffler on April 12, 2000. Accordingly, CARD and Shuffle Master never discussed developing a "universal" shuffler, except as described above.

37.     I have read the allegation in paragraph 10 of the First Amended Complaint that "[t]o enhance the development efforts for the 'universal shuffler' and in accordance with Defendants' earlier requests, Shuffle Master provided prototype samples of its products to the Austrian Defendants under further assurances of confidentiality." This allegation and all similar

-2-

Confidential Pursuant to Protective Order

SGC 0000708509

allegations throughout the First Amended Complaint are false. As explained in paragraph 26 and Exhibits G–J of my earlier declaration, CARD borrowed from Shuffle Master two "BG3" shufflers in 1997 and two "ACE" shufflers in 2000 for purposes of testing the shufflers in casinos operated within Austria by Casinos Austria AG. These shufflers certainly were not prototypes; they were commercial products available for sale. Shuffle Master has never shared any trade secrets with CARD, and CARD has never obtained any trade secrets from Shuffle Master. CARD has never signed a "non-disclosure" agreement or any other type of agreement to preserve confidential information belonging to Shuffle Master.

38.     I have read the allegation in paragraph 17 of the First Amended Complaint that "Defendants have each . . . advertised the sale of the one2six device in Minnesota . . . ." This allegation and all similar allegations throughout the First Amended Complaint are false. Since December 16, 2002, CARD has held the exclusive license to distribute the one2six shuffler within the United States. During this time, CARD has never advertised the one2six shuffler anywhere within the United States. Before December 16, 2002, the exclusive license to distribute the one2six shuffler inside the United Kingdom and outside of Europe was held by John Huxley (Casino Equipment) Limited, a company unrelated to any of the defendants named in the First Amended Complaint. It is my understanding that as part of that license, John Huxley USA, Inc. was given permission to market and sell the one2six shuffler within Nevada. *See* Lindsay Decl. ¶ 7 [Docket No. 19]. It is also my understanding, however, that John Huxley USA, Inc. never obtained a license to sell the one2six shuffler in Nevada or anywhere else in the United States, *see id.* ¶¶ 14–15, and thus never advertised (or sold) the one2six shuffler in Nevada or anywhere else in the United States, *see id.* ¶¶ 7, 21. I am informed by the declaration of Jeffrey P. Lindsay that John Huxley (Casino Equipment) Limited sent two distinct mailings concerning the one2six shuffler to approximately three dozen residents of Minnesota in an effort to promote sales *outside* of the United States. *See id.* ¶¶ 19, 21, 26 & Exs. C–D. The first mailing announced that the one2six shuffler would be displayed at the Global Gaming Expo in Las Vegas, *see id.* Ex. C-3, and the second mailing announced that John Huxley would distribute

-3-

Confidential Pursuant to Protective Order

SGC 0000708510

the one2six shuffler inside the United Kingdom and outside of Europe, *see id.* Ex. C-5, at 3. CARD was not involved in any of these mailings, and it was not until reading the declaration of Jeffrey P. Lindsay that I learned about these mailings.

39.     I have read the allegation in paragraph 20 of the First Amended Complaint that "Defendants have also presented the one2six to Native American gaming establishments." This allegation is false.

40.     I have read the allegation in paragraph 22 of the First Amended Complaint that "[Casinos Austria Maritime] in concert with the other Austrian Defendants has offered to sell the one2six infringing product for a specific price and servicing arrangement to Carnival Cruise Lines and Royal Caribbean Cruise Lines, both incorporated in and having principal places of business in Florida." This allegation is false. The one2six shuffler has never been offered for sale or sold in the United States or to any cruise lines. In 1997, CARD sent a Shuffle Star shuffler to Carnival Cruise Lines, via Casinos Austria Maritime, but that shuffler was quickly returned to CARD. The Shuffle Star shuffler, which debuted in 1996, is completely unlike the new one2six shuffler, which debuted in 2001. As shown in Exhibit B to the original declaration of Paul Herzfeld (Dec. 19, 2002) [Docket No. 18], the Shuffle Star shuffler is a multi-deck shuffler suitable for a limited number of games whereas the one2six shuffler is suitable for many different games, from single-deck games such as Poker up to six-deck games such as Blackjack.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed in Vienna, Austria on April 22, 2003.

_____
ERNST BLAHA

-4-

Confidential Pursuant to Protective Order

SGC 0000708511