PX35.1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHUFFLE TECH INTERNATIONAL, LLC, an Illinois limited liability company <br><br> and <br><br> ACES UP GAMING, INC., a Colorado corporation <br><br> and <br><br> POYDRAS-TALRICK HOLDINGS LLC, a Delaware limited liability company <br><br> Plaintiffs <br><br> v. <br><br> SCIENTIFIC GAMES CORPORATION, a Delaware corporation <br><br> and <br><br> BALLY TECHNOLOGIES, INC., d/b/a SHFL Entertainment or Shuffle Master, a Nevada corporation <br><br> and <br><br> BALLY GAMING, INC., d/b/a Bally Gaming and Systems, a Nevada corporation <br><br> Defendants | Civil Action No. 1:15-cv-3702 <br><br> The Honorable Matthew F. Kennelly <br><br><br><br><br><br> JURY TRIAL DEMANDED |

## First Amended Complaint for Damages and Other Relief for Violation of Section 2 of the Sherman Act

### I.    Nature of the case

1.    This is a civil action for violations of Section 2 of the Sherman Act. Plaintiffs' claims are based upon: (a) Defendants' wrongful enforcement of patents that were fraudulently procured, from the U.S. Patent and Trademark Office ("USPTO") and which were known to be unenforceable and invalid; and (b) Defendants' pattern of sham litigation, asserting objectively

2555325

greater reliability, the market response to the DigiShuffle™ was very positive and demand was considerable from the start. DigiDeal's potential customers and the market in general were precluded from realizing these benefits by SHFL's subsequent actions.

25. Recognizing the threat of Shuffle Tech's improved technology and lower prices, SHFL immediately, on October 12, 2012, filed a sham patent infringement lawsuit against DigiDeal. SHFL's suit falsely alleged that the DigiShuffle™ single-deck card shuffling machine built by DigiDeal under license from Shuffle Tech infringed claims 1-3 and 42-46 of SHFL's U.S. patent 6,651,982 ("the '982 patent") and claims 1, 2, 9, 10, 11 and 14 of SHFL's U.S. patent 7,523,935 ("the '935 patent"). The lawsuit was filed as case no. 2:12-cv-1782, in the U.S. District Court for the District of Nevada and has been continued, maintained and ratified by Bally and SGC to date, notwithstanding Bally's and SGC's knowledge of all the prior art and unlawful conduct set out herein demonstrating the sham nature of that litigation and the Defendants' collective and ongoing fraud on the PTO. Moreover, even if the asserted patents had not been obtained by fraud on the USPTO they have nevertheless been invalided by the USPTO upon re-examination, and thus SHFL, Bally, and SGC have had no basis whatsoever for maintaining their sham litigation against DigiDeal.

26. On information and belief, SHFL conducted no reasonable pre-filing investigation of the DigiShuffle™ prior to filing suit in October 2012, or even six months later in March 2013 when SHFL served its initial infringement contentions or, if such investigation was conducted, it was ignored. Prior to filing suit, SHFL, under the leadership of Gavin Isaacs, then CEO of SHFL, and now President and CEO of SGC, declined to schedule a meeting with DigiDeal to inspect the DigiShuffle.™ SHFL couild have inspected DigiShuffle's™ method and structure and quickly determined that it bore no relation to the patented inventions under any reasonable construction of

11

2555325

the claims, but SHFL chose not to do so. Each of the infringement assertions made by SHFL and continued by Bally and SGC, against DigiDeal was objectively baseless. In addition, all of the claims asserted by SHFL were invalid, and have been maintained by Bally and SGC for the purpose of inflicting collateral, anti-competitive injury on DigiDeal and the Plaintiffs, as further detailed below. In addition to the damage to the market, Shuffle Tech, Poydras, and Aces Up suffered substantial damages as a result of SHFL's unlawful activities, including, but not limited to, the loss of profits they otherwise would have made. Shuffle Tech was also forced to expend over $950,000 in legal expenses to defend DigiDeal against SHFL's sham patent infringement claims because it was a competitor and potential competitor of SHFL/Bally/SGC and was the target of the sham litigation strategy initiated by SHFL and continued and maintained by Bally and SGC.

27. The '982 patent asserted against DigiDeal was originally issued on November 25, 2003 to named inventors Attila Grauzer, Feraidoon Bourbour, Troy D. Nelson, Paul K. Scheper, James B. Stasson, and Ronald R. Swanson, and was assigned to SHFL Entertainment, Inc. The '982 patent application was filed by SHFL patent attorney Mark Litman as Patent Application Serial No. 10/128,532 on April 23, 2002. It was a continuation-in-part of U.S. Patent Application 09/967,502, now patented as U.S. Patent 6,651,981, also issued on November 25, 2003. Both patents claimed priority to September 28, 2001.

28. The sole point of novelty and basis for allowance of the '982 claims was the "automatically moveable cover" over the card elevator, as opposed to a mere "moveable cover" that was found on most prior art shufflers: "Claims 1, 25, 27, 30, 48, 50, and 55 distinguish over the prior art of record with the limitation of an automatically moveable cover in association with card shuffler and dispenser." Notice of Allowability, p.6, June 13, 2003, Application 10/128,532.

2555325

29. On January 2, 2014, DigiDeal initiated *ex-parte* reexamination of all of the contested claims of the '982 patent. The USPTO found that previously undisclosed prior art raised 136 "Substantial New Questions of Patentability" (for 8 claims; an average of 17 Substantial New Questions of Patentability per claim). SHFL attorney Alan Fanuchi of WINSTON & STRAWN, which has also represented SGC in this litigation as well as SHFL, Bally, and SGC in the Nevada litigation against DigiDeal, and is directed and controlled by SGC, prosecuted the application during reexamination. During *ex parte* reexamination in 2014, the Central Reexamination Unit ("CRU") examiner stated, with respect to independent claims 1 and 42 subject to re-examination: "In the previous examination of the '982 patent the original examiner determined that the prior art failed to disclose or fairly suggest an automatically moveable cover associated with a card shuffler and dispenser as recited in claims 1 and 42. Claims 2 and 3 depend from claim 1 and claims 43-46 depend from claim 42." All '982 claims asserted by SHFL against DigiDeal and subject to reexamination have been rejected as anticipated and/or rendered obvious by prior art. Notice of Non-Final Rejection in Office Action in *Ex parte* Reexamination 90/013,112, p.3, Aug. 15, 2014. Both reexaminations have now been terminated and reexamination certificates have issued. None of the claims asserted against DigiDeal have survived. SHFL, Bally, and SGC are fully aware of these facts but, despite that knowledge, have continued to authorize, prosecute, ratify and maintain the *DigiDeal* sham litigation and the continuing fraud on the USPTO.

30. The '935 patent asserted against DigiDeal was originally issued on April 28, 2009. It identified the same group of inventors listed on the '982 patent and was assigned to SHFL Entertainment Inc. It was filed by SHFL patent attorney Mark Litman on October 15, 2003 as Patent Application Serial No. 10/686,164 and was a divisional of the '982 patent. The earliest possible priority date for the '935 patent is September 28, 2001. The point of novelty and basis for

13

2555325

allowance of the '935 claims was a "card support surface" recessed beneath the top surface of the gaming table, as set out in the last Amendment (Oct. 30, 2008) before the Notice of Allowance.

31.    On January 2, 2014, DigiDeal initiated *ex parte* reexamination of all of the contested claims of the '935 patent. The USPTO found that previously undisclosed prior art raised 86 Substantial New Questions of Patentability (for 6 claims; an average of 14.3 Substantial New Questions of Patentability per claim). SHFL attorney Alan Fanuchi of WINSTON & STRAWN prosecuted the application during reexamination. During re-examination, with respect to independent claims 1 and 9 subject to reexamination, the CRU examiner stated: "In the previous examination of the '935 patent the original examiner determined that the prior art failed to disclose or fairly suggest an automatic card shuffler with a housing mounted to a gaming table surface such that a card receiver for accepting cards to be shuffled is accessible from the gaming table surface; wherein the card receiving area is recessed beneath the top of the gaming table." All '935 claims asserted by SHFL against DigiDeal and subject to reexamination have been rejected as obvious over prior art. Notice of Non-Final Rejection in Office Action in Ex Parte Reexamination, pp. 3, 15, 17 of 20, July 14, 2014, SN 90/013,111. SHFL, Bally, and SGC are fully aware of these facts but, despite that knowledge, have continued to authorize, prosecute, ratify and maintain the sham litigation and continuing fraud on the USPTO.

32.    However, SHFL's files also contained invaliding prior art that was even more damaging to SHFL's patentability arguments (unbeknownst to DigiDeal at the time of its reexamination requests) which SHFL had failed to produce to the USPTO or to DigiDeal during discovery. Multiple prior art references, known to SHFL as early as October 1997, but not disclosed by SHFL, in bad faith and with deceptive intent, to the USPTO during prosecution or reexamination, support a *prima facie* case of anticipation and/or obviousness against all '982 and

14

2555325

'935 claims asserted against DigiDeal. These references include the Roblejo Prototypes which were known to SHFL as early as October 1997, and the Luciano Prototypes which were known to SHFL at least as early as September 2003 and, on information and belief, years earlier, and which are described in detail below. None of the claims asserted against DigiDeal would have issued if this art had been presented. In addition, U.S. 6,361,044 to Block ("the Block '044 patent") was withheld from the examiner during prosecution of the '982 patent, and while nominally disclosed in the '935 application, the card shuffler taught in the Block '044 patent was "buried" among irrelevant prior art not properly brought to the examiner's attention in the '935 application. SHFL made no attempt to advise the '935 examiner that Block's card shuffler was mounted below the gaming table, a critical but not immediately apparent fact. The importance of these facts is evidenced by the opinion of the CRU examiner during reexamination of the '982 and '935 patents. These acts and omissions by SHFL, now under the direction and control of SGC, can only be characterized as affirmative acts of egregious misconduct which were part of a deliberately planned and carefully executed scheme to defraud the USPTO and gain allowance of claims that would not have otherwise been allowed. SHFL knew that the '982 and '935 patents were invalid and unenforceable at the time it sued Shuffle Tech's sub-licensee DigiDeal. SGC is aware of these facts, but nevertheless has continued the fraud and maintained the sham action against DigiDeal.

33. The first group of still undisclosed prior art references, the Roblejo Prototypes, and in particular the second iteration prototype, were developed by CASINO CONCEPTS, INC. ("Casino Concepts") between 1995-1997 and were marketed as the "Sure Shuffler" in sales brochures distributed to potential customers. These prototypes were known to SHFL since at least October 1997. SHFL had received sales brochures from Casino Concepts and a business card from Dr. Conrad Roblejo, its founder and principal inventor, at the World Gaming Expo in Las Vegas,

15

2555325

Nevada on October 14-16, 1997. These brochures were also included in an internal SHFL report titled: "97 World Expo: Report on Shuffler Competition" which SHFL produced as belated, supplementary discovery in its case against CARD, LLC (see below) on January 30, 2004. Letter of Jan. 30, 2004 from SHFL to CARD attorneys (Ex. B to Morrill Declaration, Dkt. 193, *CARD, LLC v Shuffle Master, Inc.,* No. CV-N-03-244 (D. Nev.) ("*CARD* litigation").

34. The first iteration of the Roblejo Prototypes was constructed between 1991-1995 and demonstrated to at least Bally's Casino in Atlantic City, New Jersey in 1995. Gola Decl., ¶6, Oct. 23, 2003, *CARD* litigation, (D. Nev.). It was obtained by CARD in December 2003 from Casino Concepts engineer Hal Solberg and demonstrated by CARD attorney Robert Morrill in a 16-minute video made in December 2003. The Morrill declaration and video were filed as evidence in the *CARD* case to demonstrate that several features of this prior art anticipated and invalidated the SHFL patents asserted against CARD.

35. SHFL disclosed CARD's evidence of the Roblejo Prototypes in certain USPTO Information Disclosure Statements ("IDS") filed in more than twenty subsequent unrelated patent applications after January 2004, but SHFL failed to disclose, in bad faith and with deceptive intent, these prototypes in the application that resulted in the '935 patent or in any continuations-in-part ("C-I-P") or divisionals of the '981/'982 patents. SHFL's inequitable conduct in the '982 and '935 patent prosecution bears an immediate and necessary relation to these additional applications, as further detailed below, and that conduct thus infected and tainted those subsequent or co-pending applications as well, rendering each of the resultant patents unenforceable.

36. A verbatim transcript of the Roblejo Prototype demonstration video was presented in the *CARD* litigation via the Declaration of Robert Morrill in Support of CARD's Motion to Stay Injunction Pending Review [Dkt. 179, pages 14-21]. Additional corroborating evidence of the

16

several Roblejo prototypes built and marketed between 1995-1997 was included in the Gola Declaration and the Solberg Declaration in that case. (¶¶ 15, 17, 23) (Dec. 18, 2003, *CARD* litigation).

37. The Roblejo Prototypes and the sales brochures featuring the Roblejo Prototype shufflers mounted to gaming tables anticipate every claim of both the '982 and '935 patents, and render those claims invalid and unenforceable. In particular, the several 1995-1995 Roblejo Prototypes feature, *inter alia*, the "automatically moveable cover" over a card elevator which raises cards above the top surface of the device, which was the sole point of novelty over the cited prior art that resulted in the allowance of the asserted '982 claims. The Casino Concepts brochures also display the Roblejo Prototype mounted in a gaming table such that the card receiver has a support surface for receiving cards below the top surface of the gaming table and an elevator for raising the cards so that the entire shuffled deck of cards can be manually removed from an area proximate the surface of the gaming table, which was the sole point of novelty over the cited prior art that resulted in allowance of the asserted '935 claims.

38. SHFL, its applicants, and attorney, Mark Litman, failed to disclose, in bad faith and with deceptive intent, the Casino Concepts brochure and SHFL's other records of the Roblejo Prototypes to the USPTO during the prosecution of either the '982 or '935 patents.

39. SHFL, its applicants, and attorney, Alan Fanucci, failed to disclose in bad faith and with deceptive intent, the Casino Concepts brochure and SHFL's other records of the Roblejo Prototypes to the USPTO during the 2014 *ex parte* re-examination of the '982 or '935 patents. Upon information and belief, Mr. Fanucci reports to and/or has reported to Bally's former General Counsel, Kathryn Lever, and to SGC's current General Counsel, David Smail, and ultimately SGC's President and CEO, Gavin Isaacs. Upon information and belief, Mr. Fanucci, and certainly

17

2555325

his firm, have also advised Messrs. Isaacs and Smail, and Ms. Lever, with respect to the '982 and '935 patent prosecutions and reexaminations, the *DigiDeal* sham litigation, and this action.

40.     SHFL and its attorneys failed to produce, in bad faith and with deceptive intent, the Casino Concepts brochure and its other records of the Roblejo Prototypes to DigiDeal in response to DigiDeal's document discovery requests, further engaging in litigation misconduct.

41.     The second of the undisclosed prior art references was the Luciano Automatic Card Shuffler ("ACS") Prototype.  The Luciano ACS was made known to SHFL and its predecessors-in-interest, including PROGRESSIVE GAMES INTERNATIONAL ("PGI") as early as late 1993, when Luciano Packaging was marketing its engineering services and prototype to nearly every gaming company, including PGI, as evidenced by an October 13, 1994 Letter.  Luciano Declaration,  d 14, 15, Oct. 4, 2003, *CARD* litigation.  The Luciano ACS was also fully disclosed to SHFL during the *CARD* litigation in November 2003.  October 4, 2003 Declaration of Lawrence Luciano, and a video demonstration of the 1992 Luciano Automatic Card Shuffler (ACS) filed as Exhibit K to the Lawrence Luciano Declaration.

42.     Not only was SHFL fully aware of the Luciano ACS, but SHFL actually cited the Luciano ACS as evidence of invalidating prior art for other patents asserted against SHFL in the 2005 lawsuit, *MP Games LLC, et. al. v. Shuffle Master, Inc.,* No. 2:05-cv-01017 (W.D. Wash.).  A deposition of Robert Luciano[5] was taken in that case and filed under seal at Dkt. 69-5 on July 7, 2006.  As evident from the extensive mechanical drawings attached as exhibits in the *CARD*

---

[5] Robert Luciano and Lawrence Luciano are brothers, and owners of LUCIANO PACKAGING, the developer and owner of the Luciano ACS.  Robert Luciano was also the Founder of SIERRA DESIGN GROUP, which was acquired by Bally Technologies (then Alliance Gaming) in 2004, at which time Robert Luciano became Executive Vice President and Chief Technology Officer for Bally Technologies.  Upon information and belief, Bally Technologies also received prototypes and records related to the Luciano ACS prototypes.

18

2555325

litigation and the video demonstration filed as Exhibit K with the Lawrence Luciano Declaration, the Luciano ACS Prototype was an automatic card shuffler integrated into the top surface of a gaming table, such that the card receiver was below the surface of the gaming table and the shuffled cards were delivered on a card elevator to a point proximate the surface of the gaming table. Luciano anticipated at least '935 claim 1 and rendered obvious all other claims of the '982 and '935 patents that were asserted against DigiDeal. The Luciano Prototypes also bear an immediate and necessary relation to, but were not disclosed in, the prosecution of other progeny of the '982 and '935 applications or their parent applications, thus spreading the infectious unenforceability created by SHFL's inequitable conduct in the '982 and '935 applications to those other patent applications.

43.     SHFL and its attorney Mark Litman failed to disclose, in bad faith and with deceptive intent, the Luciano ACS Prototype and its other records thereof to the USPTO during the prosecution of either the '982 or '935 patents.

44.     SHFL and its attorney Alan Fanucci failed to disclose, in bad faith and with deceptive intent, the Luciano ACS Prototype and its other records thereof to the USPTO during the 2014 *ex parte* re-examination of the '982 or '935 patents. Upon information and belief, SGC, its General Counsel and CEO, were aware of or became aware of this deliberate deception of the USPTO, but nevertheless authorized and instructed Mr. Fanucci and his firm to maintain the sham litigation against DigiDeal.

45.     SHFL and its attorneys failed to produce, in bad faith and with deceptive intent, the Luciano ACS Prototype and its other records in response to DigiDeal's document discovery requests, further engaging in litigation misconduct.

46.     SHFL failed to disclose, in bad faith and with deceptive intent, the Block '044 patent during prosecution of '982 and it was not available or considered by the '982 examiner prior to

19

2555325

allowance. SHFL subsequently disclosed the Block '044 patent in an IDS for subsequent C-I-Ps and divisionals of '982, including CIP application 10/261,166, and divisional application 10/686,164, but did not disclose the Roblejo and Luciano Prototypes in each of those C-I-Ps and divisionals.

47. SHFL knew about the Block '044 patent at least five months before the '982 patent issued in November 2003 as shown by the facts that: (1) SHFL filed an unrelated patent application, serial number PCT/2005/009561 A2, titled "Smart Discard Rack For Playing Cards," on July 17, 2003, naming Attila Grauzer and other inventors named in the '982 and '935 patents as its inventors, which included a description of the Block '044 patent in its written specification, at page 8, ln. 4-14; and (2) SHFL filed an IDS citing the Block '044 patent as material prior art to SHFL's disclosed invention on October 28, 2003 in CIP application 10/261,166, which issued as U.S. Patent 7,036,818 ("the '818 patent").

48. The Block '044 patent teaches and claims a computerized, automated gaming table that uses physical playing cards (as opposed to digital, on-screen cards that are common in automated gaming tables). An automatic card shuffler is inherently necessary to the operation of an automated gaming table that uses physical playing cards, although it was not a point of novelty in Block's claimed invention. Block did not make reference to the automatic card shuffler of his automated gaming table in his title, his abstract, or his summary of his invention. However, an automatic card shuffler was fully described in the detailed description of his invention. Although SHFL identified the Block '044 patent as material to their claimed automatic card shuffler, it did not notify the examiner of its relevance, which the examiner would have only discovered if he read the entire specification, a very unlikely occurrence given SHFL's deceitful silence on this issue and the multitude of other, much less relevant prior art concurrently dumped on the examiner.

20

2555325

49.     The Block '044 patent anticipates and/or renders obvious all claims of '935 and '982 patents, as found by the CRU examiner during ex-parte reexamination in 2014.

50.     SHFL and its patent attorney, Mark Litman, failed to disclose, in bad faith and with deceptive intent, the Block '044 patent to the USPTO, although it was in SHFL's possession no later than July 2003.  SHFL and Mark Litman, in bad faith and with deceptive intent, failed to exercise their duty of candor and good faith regarding the Block '044 patent during prosecution of the '935 and '982 patents.

51.     SHFL's patent infringement lawsuit against DigiDeal was a sham, with no objective likelihood of success on the merits.  SHFL held in its records evidence of no less than three prior art references that anticipated and/or rendered obvious every '982 and '935 claim asserted against DigiDeal but effectively withheld those prior art references from multiple patent examiners while arguing that no such teaching existed in the prior art.  Because some of those same references had been the basis for inequitable conduct counterclaims against SHFL in prior litigations, causing SHFL to settle those cases and to pay large sums of money to those counterclaimants, SHFL could not have reasonably believed that the '982 and '935 patent claims asserted against DigiDeal were valid and enforceable.  Upon information and belief, these facts were known to SGC and in particular, Ms. Lever and Mr. Isaacs, who, on behalf of SGC, have authorized and maintained the sham litigation against DigiDeal.

52.     In addition to the invalidity and unenforceability of the '982 and '935 patent claims asserted against DigiDeal, DigiShuffle's™ shuffling method and structure are fundamentally different from the shuffling method and structures disclosed and claimed in the '982 and '935 patents and clearly could not infringe either of those patents even if they were valid.  The DigiShuffle™ shares only three common characteristics with the asserted patent claims, all of

21

2555325

**B.     Specific instances of SHFL's use of sham litigation to monopolize the relevant shuffler market**

**1)     *CARD Austria v. Shuffle Master Inc.* (2003-04)**

70.     On May 6, 2003, CASINO AUSTRIA RESEARCH AND DEVELOPMENT IN VIENNA and its U.S. subsidiary CARD, LLC (collectively "CARD") filed suit seeking declaratory judgment of non-infringement of U.S. Patents 6,149,154; 6,267,248; 6,139,014; and 6,588,750 by CARD's one2six shuffler.  Complaint, May 6, 2003, *CARD* litigation.  SHFL counterclaimed on August, 25, 2003, seeking a finding of infringement of those and additional patents.  *Id.*, Dkt. 10.

71.     On September 26, 2003, CARD served SHFL with its First Set of Production Requests.  Document Request 22 required SHFL to produce all prior art in its files relating to the patents-in-suit.  Morrill Declaration at Dkt. 193, ¶2.  SHFL responded to CARD's First Set of Production Requests on October 27, 2003.  However, SHFL failed to produce any of the documents in its possession concerning the "Sure Shuffler" developed for Casinos Concepts by Dr. Conrad Roblejo, Mr. Steven Gola, and Mr. Hal Solberg, which would later become the "smoking guns" in that case.  *Id,* para. 3.

72.     Instead, SHFL sought, and unjustly obtained on December 8, 2003, a preliminary injunction preventing CARD from making, using, or selling, or even submitting its one2six device for regulatory testing.  Preliminary Injunction, *CARD* litigation, paragraph bridging pages 2-3, Dec. 8, 2003, Dkt. 153.

73.     CARD continued to investigate the prior art, and in particular the Roblejo shuffler device developed by Casino Concepts.  On December 13, 2003, CARD Attorney Brian Ogonowsky met with Hal Solberg, the engineer who had developed the Second Roblejo Prototype between 1996-1997.  Ogonowsky Declaration, ¶2, Dec. 23, 2002, *CARD* litigation, Dkt. 169.  On December 18, 2003, CARD obtained a declaration from Mr. Solberg, along with numerous

29

2555325

exhibits, establishing the engineering and design of the First Roblejo Prototype beginning in 1995 and the construction of the Second Roblejo Prototype in 1996-1997. Solberg Declaration, ¶¶ 15, 17, 23, Dec. 18, 2003, *CARD* litigation.

74. On December 22, 2003, CARD filed a motion to dissolve the preliminary injunction entered against it based on the newly discovered evidence that the patents asserted against CARD, which formed the basis for the preliminary injunction, were invalid. Dkt. 162. Five weeks later on January 30, 2004, SHFL inexplicably produced the "smoking gun" Roblejo documents that had been requested more than four months earlier and prior to the preliminary injunction having been ordered by the Court.

75. One of the documents was a "Report on Shuffler Competition" from the " '97 World Expo," which highlighted that Casino Concepts (run by Dr. Roblejo and Mr. Gola) had displayed its "Sure Shuffler" at the October 1997 Expo. Exhibit B at SMI 10395-96, from Dkt. 193, Morrill Decl. Attached to the report was a sales brochure for the Sure Shuffler (*Id.*, at 10397-401)*,* along with a business card from Dr. Roblejo (pp. 2-5 of 5, at SMI 010397-99, 10401).

76. On information and belief, the sales brochure attached to the "Shuffler Competition" report was the same as the sales brochure attached to Exhibit H to the Solberg Declaration (*CARD* litigation, Dkt. 162), in which Mr. Solberg provided a detailed description of the Sure Shuffler "production prototype". Mr. Solberg's description made clear that the Sure Shuffler anticipated and/or rendered obvious many of the claims of SHFL's patents-in-suit against CARD.

77. During prosecution of the patents, however, SHFL, in bad faith and with deceptive intent, never disclosed to the USPTO what it had learned at the '97 World Gaming Expo. Morrill Declaration, ¶4. Sept. 26, 2003 *CARD* litigation, Dkt. 193. On February 4-5, 2004, Mr. Solberg

2555325