Robert E. Lyle (Nevada Bar No. 1677)
Marvin W. Murphy (Nevada Bar No. 518)
LYLE & MURPHY LLP
3740 Lakeside Drive, Suite 200
Reno, Nevada 89509
Telephone:     (775) 348-5000
Facsimile:     (775) 348-7370

Robert B. Morrill (Nevada Bar No. 2078)
Theodore W. Chandler (admitted *pro hac vice*)
SIDLEY AUSTIN BROWN & WOOD LLP
555 California Street
San Francisco, California 94104-1715
Telephone:     (415) 772-1200
Facsimile:     (415) 397-4621

*Attorneys for CARD, LLC and CARD-Austria*

### UNITED STATES DISTRICT COURT

### DISTRICT OF NEVADA

| | |
|---|---|
| CARD, LLC, a Nevada company, <br><br> Plaintiff and Counterdefendant, <br><br> vs. <br><br> SHUFFLE MASTER, INC., a Minnesota corporation, <br><br> Defendant and Counterplaintiff. <br><br> SHUFFLE MASTER, INC., a Minnesota corporation, <br><br> Plaintiff and Counterdefendant, <br><br> vs. <br><br> CASINOS AUSTRIA RESEARCH AND DEVELOPMENT, an Austrian corporation, <br><br> Defendant and Counterplaintiff. | No. CV-N-03-0244-ECR-(RAM) <br><br> **DECLARATION OF JOEL S. GREENBERG IN OPPOSITION TO SHUFFLE MASTER'S MOTION FOR PRELIMINARY INJUNCTION** <br><br> Date: November 24, 2003 <br> Time: 10:00 a.m. |

-1-
GREENBERG DECLARATION IN OPPOSITION TO PRELIMINARY INJUNCTION
No. CV-N-03-0244-ECR-(RAM)

PLA00113250

JOEL S. GREENBERG declares:

1.    I make this declaration in support of CARD, LLC and CARD-Austria's Opposition to Shuffle Master's Motion for Preliminary Injunction. I have personal knowledge of the facts stated in this declaration and, if called as a witness, I could and would testify competently to these facts under oath.

2.    I hold a B.E.E. degree from the Polytechnic Institute of Brooklyn, and a M.E.E. degree from Syracuse University and I was a member of the staff of Princeton University's Department of Aerospace and Mechanical Sciences. My experience and background are summarized in my Resume attached as Exhibit A. Since 1980 part of my work has concerned the gaming industry. In particular, I have performed a number of studies, analyses, and computer simulations for the gaming industry, and have provided expert testimony to legislative and administrative bodies concerning gaming, as summarized on pages 3 and 16–17 of my Resume. In addition to the information presented in my Resume, I have also, for Atlantic City casinos, analyzed and simulated proposed card shuffling methods and techniques.

3.    I am also the inventor of the "Monte Verde Playing Card Dispenser" which is a continuous card shuffling device patented in U.S. Patent No. 4,659,082, issued on April 21, 1987. A copy of the '082 patent is attached as Exhibit B. This device was designed to eliminate Blackjack card-counter's statistical advantage over the casinos and to eliminate all playing time delays associated with card shuffling. I made a public disclosure of the Monte Verde Playing Card Dispenser in a paper entitled "Simulation and the Casinos" that was presented at the Sixth National Conference on Gambling and Risk Taking in December, 1984 and published in the proceedings of the Conference in May, 1985.

4.    I began developing my idea for a continuous card shuffler in 1981, and soon after brought the idea to the New Jersey Casino Control Commission and to the management at Bally's Park Place casino in Atlantic City, New Jersey. Bally's provided funding and support for my development, which resulted in the '082 patent. The shuffler was developed in drawings and



PLA00113251

through computer simulations, but Bally's decided not to proceed with development of the shuffler, and no prototype of the '082 patent was ever built. The '082 patent was eventually acquired (purchased) by International Game Technology.

5.      I have been retained as a consultant by CARD, LLC and CARD-Austria (collectively "CARD") in connection with the motion for a preliminary injunction brought by Shuffle Master. A copy of my consulting agreement is attached as Exhibit C. Specifically, I have been asked to compare certain prior art patents and card shufflers to the four patent claims that Shuffle Master has asserted against CARD in its motion.

6.      Card shuffling and dealing devices have a long history. For example, U.S. Patent No. 1,014,219, issued to Hall in 1912, is an early example of a mechanical card shuffler. A Card Shuffler and Dealer device described in U.S. Patent 2,778,644 issued in January, 1957 to Stephenson 1957 is another example of a mechanical shuffler. The Stephenson patent describes a card shuffler that may be set to deal either two, three, four, five or six hands. U.S. Patent Nos. 3,897,954 (Erickson 1979) and 4,310,160 (Willette 1982) are examples of electro-mechanical card shufflers. A computerized card shuffler is described in U.S. Patent No. 4,497,488 issued in 1985 to Plevyak. U.S. Patent No. 4,770,421 issued in September 1988 to Hoffman, describes a card shuffler that

> has a plurality of vertically stacked mixing pockets for holding cards. A first vertically traveling elevator holding cards to be shuffled distributes cards one at a time in sequence to the mixing pockets in accordance with a first distribution schedule. A second vertically traveling elevator on the opposite side of the mixing pockets from the first elevator picks up all of the cards from each mixing pocket one mixing pocket at a time in sequence according to a second distribution schedule. Cards from the second elevator are transferred to an output reservoir for use by a dealer.

In the following paragraphs a number of patents, specifically selected from the myriad of patents dealing with shuffling devices, are described in detail to show that the specific claims asserted by Shuffle Master (specifically Claim 40 of U.S. Patent No. 6,267,248, Claim 2 of U.S. Patent No. 6,588,751, Claim 39 of U.S. Patent No. 6,149,154 and Claim 21 of U.S. Patent No. 6,588,750) are anticipated by or obvious in light of the prior art.

-3-

           

PLA00113252

## Claim 39 of U.S. Patent No. 6,149,154

7.     Attached as Exhibit D is Shuffle Master's U.S. Patent No. 6,149,154. In my opinion, U.S. Patent No. 4,667,959, issued to Pfeiffer and attached as Exhibit E, contains every element of claim 39 of the '154 patent, and thus anticipates claim 39. A comparison chart that shows the reasons for my conclusion is attached as Exhibit F. I have read the declaration of Arthur Pfeiffer, an inventor of the '959 patent. A copy of his declaration, without exhibits, is attached as Exhibit G. For reasons similar to those in the case of the Pfeiffer '959 patent, it is my opinion that the prototype card shuffling and dealing machine described in Mr. Pfeiffer's declaration also contains every element of claim 39 of the '154 patent, and thus also anticipates claim 39.

8.     One particular element in claim 39 of the '154 patent, the "hand forming compartment", warrants discussion. Shuffle Master defines a "hand forming compartment" as "a compartment *used* to form at least one hand". Grauzer Decl. ¶ 29 (emphasis added). I do not necessarily agree with that definition, and I accept it only for purposes of these claim charts. Under Mr. Grauzer's definition, "hand forming compartment" can include the slots of a carousel inside a card shuffler, and a particular slot need not ever contain an entire hand. Thus, accepting Shuffle Master's definition, each slot in a carousel such as found in the Pfeiffer '959 patent or the Pfeiffer prototype would be a hand forming compartment, since the slots are *used* to form hands in Pfeiffer's output ports. Further, the shufflers shown in the '959 patent and the Pfeiffer prototype have eight output ports, each of which would be a "hand forming compartment", if Shuffle Master's definition is accepted and used.

9.     In addition, it is also my opinion that U. S. Patent No. 5,431,399, issued to Kelley and attached as Exhibit H, contains every element of claim 39 of the '154 patent, and thus also anticipates claim 39. A comparison chart that shows the reasons for my conclusion is attached as Exhibit I. For purposes of the Kelley comparison chart, I accept the definition of "hand forming compartment" used by Shuffle Master but do not necessarily agree with it, as discussed in paragraph 8 above.

-4-
GREENBERG DECLARATION IN OPPOSITION TO PRELIMINARY INJUNCTION
No. CV-N-03-0244-ECR-(RAM)



PLA00113253

### Claim 40 of U.S. Patent No. 6,267,248

10.    Attached as Exhibit J is Shuffle Master's U.S. Patent No. 6,267,248. In my opinion, U.S. Patent No. 4,667,959, issued to Pfeiffer and attached as Exhibit E, contains every element of claim 40 of the '248 patent, and thus anticipates claim 40. A comparison chart that shows the reasons for my conclusion is attached as Exhibit K.

11.    One particular element in claim 40 of the '248 patent, "changing direction of movement of the storage device during shuffling", warrants discussion. The storage device in the Pfeiffer '959 patent is a carousel. The Pfeiffer '959 patent does not explicitly state that the carousel changes direction during movement, but the specification of the '959 patent contains information which would lead one of ordinary skill in the art to conclude that it does indeed change direction while in operation shuffling and dealing cards. The '959 specification states that "Polarity and pulse-width modulated voltage to the motor are commanded by control board 52 and derived from current position, desired position, previous position and external factors, such as varying moment of inertia due to the presence or absence of cards." Col. 7, ll. 31–35. As is well known to those of ordinary skill in the art, the polarity of the electrical current determines the direction of rotation of the motor, and thus the direction of rotation of the carousel. The '959 patent also states that the carousel is turned and positioned "so that cards are injected or ejected in a fast and efficient manner", col. 7, ll. 39–41, and that one of the objects of the invention is to provide a card game apparatus that "operates quickly", col. 2, ll. 11–12. One of ordinary skill in the art would understand that the microprocessor, by controlling the polarity of the electrical current to the motor, would cause carousel 48 to turn in whatever direction would maximize the speed of operation of the shuffling device. The changing of the direction of movement during shuffling would most quickly align the chosen slot in the carousel with the injector or ejector. Thus, in the Pfeiffer '959 shuffler, if the next desired carousel slot were 15 slots clockwise of the current position, the microprocessor would direct the carousel to move 15 slots counterclockwise. But if the next desired slot were 20 slots counterclockwise, the carousel would be directed to move 20 slots clockwise. One of ordinary

         

PLA00113254

skill in the art would understand this operation from the information in the Pfeiffer '959 specification.

12. Mr. Pfeiffer's declaration, discussed in paragraph 7 above and attached as Exhibit G, confirms that the carousel of the prototype machine on which the '959 patent is based in fact turned in two directions, as described in paragraph 11 above. In my opinion, the prototype card shuffling and dealing machine described in Mr. Pfeiffer's declaration also contains every element of claim 40 of the '248 patent, and thus also anticipates claim 40.

### Claim 21 of U.S. Patent No. 6,588,750

13. Attached as Exhibit L is Shuffle Master's U.S. Patent No. 6,588,750. Also attached as Exhibit M is the declaration of Lawrence Luciano, describing a card shuffler developed by Luciano Packaging beginning in 1992. In my opinion, the prototype card shufflers described in paragraph 14 of Mr. Luciano's declaration contain every element of claim 21 of the '750 patent, and thus anticipate claim 21. A comparison chart that shows the reasons for my conclusion is attached as Exhibit N.

14. It is further my opinion that U.S. Patent No. 5,989,122, issued to Roblejo and attached as Exhibit O, contains every element of claim 21 of the '750 patent, and thus anticipates claim 21. A comparison chart that shows the reasons for my conclusion is attached as Exhibit P. I have also read the declaration Steve Gola, attached as Exhibit Q and, for similar reasons, it is my opinion that the prototype Roblejo card shuffling and dealing machine described in Mr. Gola's declaration also contains every element of claim 21 of the ''750 patent, and thus also anticipates claim 21. A comparison chart that shows the reasons for my conclusion is attached as Exhibit R.

15. One of the elements claimed in claim 21 of the '750 patent is a "separator" that contacts a card before it is inserted into a card-receiving compartment. My prior art '082 patent, attached as Exhibit B, shows such a separator. The '082 patent states "The leading edge **91** of the surface **82** is chamfered so that a card from a compartment **30** can be slid under the stack of cards in the output hopper **60** that are waiting to be dealt, as shown in FIG. **6**. The chamfer edge **90** permits a

-6-
GREENBERG DECLARATION IN OPPOSITION TO PRELIMINARY INJUNCTION
No. CV-N-03-0244-ECR-(RAM)



card to be projected just below the leading edges of the stack of cards in the output hopper **60**." The chamfered edge is shown in FIG. 6. A card moving into the output hopper in my '082 patent would contact an edge of the chamfered surface, and alter its angle relative to the direction of card movement, before being fully inserted into the hopper. The language from my '082 patent quoted above would suggest and make obvious to one of ordinary skill in the art to use the chamfered edge disclosed in my '082 patent in any situation where it is desired to slide or insert a card on the bottom or top of a stack of cards, such as in the pocket of a card-receiving compartment, in combination with a shuffler such as the Roblejo or Luciano shufflers. Such a combination, in my opinion, makes claim 21 of the '750 patent obvious.

### Claim 2 of U.S. Patent No. 6,588,751

16. Attached as Exhibit S is Shuffle Master's U.S. Patent No. 6,588,751. In my opinion, U.S. Patent No. 4,586,712, issued to Lorber and attached as Exhibit T, contains every element of claim 2 of the '751 patent, and thus anticipates claim 2. A comparison chart that shows the reasons for my conclusions is attached as Exhibit U.

17. It is further my opinion that my own '082 patent, attached as Exhibit B, contains every element of claim 2 of the '751 patent, and also anticipates claim 2. A comparison chart that shows the reasons for my conclusion is attached as Exhibit V.

### Definition of "One of Ordinary Skill in the Art"

18. In paragraphs 11 and 15 above, I have referred to "one of ordinary skill in the art". The art in question is that of designing card shuffling, sorting and dealing machines. I understand that the following factors may be considered in determining the level of ordinary skill in the art: (1) the educational level of the inventor; (2) type of problems encountered in the art; (3) prior art solutions to those problems; (4) rapidity with which innovations are made; (5) sophistication of the technology; and (6) educational level of active workers in the field. I also understand that the level of ordinary skill in the art should be determined as of the filing dates of the respective patents, which

         

PLA00113256

is from 1998 to 2000. Although I am not familiar with the backgrounds of all inventors named on the asserted patents or the prior art patents, those with which I am familiar come from a variety of backgrounds. There was a burst of innovation in the card shuffler field after computers were developed which might be employed with shufflers, sorters or dealers, beginning with U.S. Patent No. 4,497,488 issued to Plevyak in 1985. Since then, the rapidity of innovation has not been great. The technology is not highly sophisticated. What the inventors have in common is the knowledge of some problem in casino card playing, or in the playing of some non-casino card game, which might be solved by a card shuffling/sorting/dealing machine. The inventors also possess basic electrical, mechanical and computer skills and knowledge (such as knowledge of the fact that reversing the polarity of an electric motor will change its direction, or that a card can be more easily inserted into a receptacle with a chamfered edge, as discussed above), and an ability to read and understand technical documents such as the patents discussed above and patents from other areas that might be relevant and the ability to direct those with more specialized skills. Thus, based on information presently available to me, I would define a person of ordinary skill in the art of card shuffling, sorting and dealing machines as a person with knowledge of casino or other card games and the problems therein, who possesses through training or experience basic electrical, mechanical and

///

///

///

///

///

///

-8-

         

PLA00113257

computer skills, including the ability to read and understand technical documents in the shuffler field and other relevant fields, such as issued patents, and the ability to direct those with more specialized skills.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed in Princeton, New Jersey on October 23, 2003.

JOEL S. GREENBERG

-9-
GREENBERG DECLARATION IN OPPOSITION TO PRELIMINARY INJUNCTION

         

PLA00113258