PX155.1

```
0001
                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF WASHINGTON


    MP GAMES LLC; ALLIANCE GAMING      )
    CORP.; BALLY GAMING, INC.,         )
                                       )
                 Plaintiffs,           )Case No. C05-1017TSZ
                                       )
         vs.                           )
                                       )
    SHUFFLE MASTER, INC.,              )
                                       )
                 Defendant.            )
    _____)
```

                    DEPOSITION UNDER PROTECTIVE ORDER
              VIDEOTAPED DEPOSITION OF ROBERT LUCIANO, JR.
                         LAS VEGAS, NEVADA
                          JUNE 14, 2006

    REPORTED BY:  HOLLY J. PIKE, CCR NO. 680, RPR, CSR
                  LS&T JOB NO. 1-60304

```
0002
```
          DEPOSITION OF ROBERT LUCIANO, JR., taken at
    1640 West Alta Drive, Suite 4, Las Vegas, Nevada, on
    Wednesday, June 14, 2006, at 8:36 A.M., before
    Holly Pike, Certified Court Reporter, in and for the State
    of Nevada.

    APPEARANCES:
    For the Plaintiffs:
              QUINN EMANUEL
              BY:  VICTORIA F. MAROULIS, ESQ.
              555 Twin Dolphin Drive
              Suite 560
              Redwood Shores, California 94065
              (650-801-5000)
              victoriamaroulis@quinnemanuel.com

HIGHLY CONFIDENTIAL

SGC 0000726766

For the Defendant:

KIRKLAND & ELLIS, LLP
BY:  GIANNI CUTRI, ESQ.
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-3372
gcutri@kirkland.com

Also Present:

DUSTIN KITTLESON, Videographer
Litigation Services & Technologies
1640 West Alta Drive
Suite 4
Las Vegas, Nevada 89106
(702) 648-2595

* * * * *

0003

I N D E X

WITNESS:  Robert Luciano, Jr.

EXAMINATION:                                          PAGE

By Mr. Cutri                                            5

INDEX TO EXHIBITS

EXHIBITS                                              MARKED

1    Drawing                                          33

2    Drawing                                          42

3    Letter dated May 22, 1992                        72

4    Letter dated June 22, 1992                       78

5    Letter dated June 30, 1992                       83

6    Proposal                                         83

7    Letter to Randy Hedrick                          88

8    Documents Bates numbered SM-WA003451-3453        89

9    Videotape Script                                 94

10   DVD                                              95

11   Documents Bates numbered SM-WA003454-3462        104

12   IGT Quotation                                    105

13   Documents Bates numbered SM-WA003487-3490        109

14   Drawing                                          133

0004

LAS VEGAS, NEVADA; WEDNESDAY, JUNE 14, 2006

HIGHLY CONFIDENTIAL                                    SGC 0000726767

appreciate that, but it is.

Q. How can I make it easier for you?

A. What aspect would you like some clarification on? I think drawing a picture is not necessary if you were to ask verbally for clarification, functionality and those type of things. I probably shouldn't be giving you advice, but that would be my recommendation to you.

Q. What I prefer to do is, if you're able at all to draw anything what it looks like, if you would just draw it on what I've marked as Deposition Exhibit 1.

A. Fair enough. My objection is not necessarily a legal objection, but an objection of memory.

MS. MAROULIS: I'm going to make it easy. I'm going to instruct you not to draw.

0036

MR. CUTRI: You're instructing the witness not to write --

MS. MAROULIS: I'm going to instruct the witness not to draw because he is not capable of recalling the --

MR. CUTRI: That's not correct. That's not correct. That's not what the witness said. The testimony is completely opposite. The testimony is completely opposite. I asked him that question. I asked him that question. If you're instructing the witness not to provide discoverable information in a particular form, that's not a basis for objecting or instructing the witness not to answer. It's absolutely -- it's not privileged. There's no reason to instruct the witness not to do something.

MS. MAROULIS: Let's go off the record for one minute.

THE VIDEOGRAPHER: Off the record at 9:35.

(A short break was taken.)

THE VIDEOGRAPHER: Back on the record at 9:41.

BY MR. CUTRI:

Q. Mr. Luciano, before the break I was asking you whether you could draw anything with respect to what the shuffler looked like. I believe your testimony was that you could, but you wanted me to be more specific. Do you recall that?

A. I do.

0037

Q. What aspects of the shuffler are you able to draw?

A. Probably the broad perspective of how it fits into the table and, you know, probably a conceptual perspective of operation.

Q. What else are you able to draw?

MS. MAROULIS: Objection. Asked and answered. Vague.

THE WITNESS:  I think getting into real specifics in terms of actual dimensions, electronics, source code, you know, would not be -- at this point would not be an exercise I could do without a lot more research.

BY MR. CUTRI:

Q.  What would you do to do additional research?

MS. MAROULIS:  Objection.  Vague.

THE WITNESS:  You know, get the drawings and some software and so forth from the prototype.

BY MR. CUTRI:

Q.  Do you know where those drawings are?

MS. MAROULIS:  Objection.  Asked and answered.

THE WITNESS:  I do not.  I believe it was a technology package transferred to the CARD attorneys as I said earlier.  I have no idea what they did with them.

BY MR. CUTRI:

Q.  Do you know where the prototype is, or is it the same answer?

0038

A.  That's a compound question.

Q.  Do you know where the prototype is?

A.  Pieces of it.

Q.  Where are pieces of it?

A.  There's a piece in Washington state.

Q.  Where in Washington state?

A.  I believe at the Mind Play office.

Q.  How did it get there?

MS. MAROULIS:  Objection.  Calls for speculation. Lacks foundation.

THE WITNESS:  I think via truck.  I'm not trying to be --

BY MR. CUTRI:

Q.  That's true.  Do you know the circumstances -- well, do you know where it came from?

A.  Yes.

Q.  Where?

A.  From the 300 Sierra Manor warehouse in Reno.

Q.  300 Sierra Manor warehouse is -- is that part of SDG?

A.  That was SDG and is now -- well, it's a building I own and lease to Bally Technologies.

Q.  What part of the shuffler are we talking about?

MS. MAROULIS:  Objection.  Vague.

THE WITNESS:  Table, the basic mechanism.  I

0039

believe the electronics are not part of the assembly at this point in time, electronic controller.

BY MR. CUTRI:

HIGHLY CONFIDENTIAL

Q. Do you know where the electronics are?

A. I think it was just an off-the-shelf industrial programmable controller.

Q. Do you know where that one is now?

A. I have no idea.

MS. MAROULIS: Objection. Calls for speculation.

BY MR. CUTRI:

Q. When was the last time you saw the prototype that is at the Mind Play offices in Washington state?

A. About a month or so ago.

Q. I guess I'm a little bit confused because I thought you said that the prototype that you were aware of was turned over to attorneys at CARD. Are we talking about more than one prototype?

MS. MAROULIS: Objection. Misstates testimony.

THE WITNESS: First of all, that's compound. Secondly, if you go back through the testimony, I don't believe that's what I said.

BY MR. CUTRI:

Q. Do you understand why I'm confused though?

A. No.

Q. Did you say that there was a prototype that was

0040

turned over to the CARD attorneys?

MS. MAROULIS: Objection. Misstates testimony.

THE WITNESS: I did not.

BY MR. CUTRI:

Q. What, to your knowledge, was turned over to the CARD attorneys as it relates to the shuffler that your dad and brother developed?

MS. MAROULIS: Objection. Lacks foundation. Calls for speculation.

THE WITNESS: I believe I answered that already and explained that was, to the best of my knowledge, some drawings, videotape of operation, and probably some letters and specifications and that type of thing.

BY MR. CUTRI:

Q. When was the last time you saw any part of that collection of materials you just talked about -- the letters, videotape, drawings?

MS. MAROULIS: Objection. Assumes facts not in evidence.

THE WITNESS: I never said that I saw them.

BY MR. CUTRI:

Q. Have you ever seen them?

A. I think I saw the video -- I did see the videotape when it was created.

Q. When was the last time you saw it?

HIGHLY CONFIDENTIAL

SGC 0000726787

PX155.23

0041

A. I don't know. It would have been after my LPT took the technology back from IGT.

Q. What's LPT?

A. Luciano Packaging Technology.

Q. Earlier you said you were able to draw how the shuffler fit in the table and conceptual operation. Would you go ahead and draw on Exhibit 1 how the shuffler fit into the table?

MS. MAROULIS: I maintain my objection that the witness is testifying from memory and this is his best recollection. It may not be representative of the actual device.

MR. CUTRI: Okay.

THE WITNESS: I'm going to draw the table top because a typical table looks something like that and there's a dealer tray for tokens; right? There's a discard bin here and a shoe over here -- I'll put my glasses on -- for dispensing cards and reinserting cards into the bin.

BY MR. CUTRI:

Q. Would you label the bin and the shoe just so on Exhibit 1 we can keep track of where they were?

A. (Witness complies.) There you go.

Q. So we're looking at a top down perspective on Exhibit 1; is that correct? Looking down on top of a table?

A. That's right.

0042

Q. What about with respect to the actual shuffling mechanism? What are you able to draw with respect to that?

MS. MAROULIS: Objection. Vague.

THE WITNESS: The shuffling mechanism was a wheel.

(Deposition Exhibit Number 2 was marked for identification.)

BY MR. CUTRI:

Q. On Exhibit 2 can you draw whatever perspective you think best shows the actual shuffling mechanism?

MS. MAROULIS: Same objection as to witness testifying from memory.

THE WITNESS: It was a wheel. This is not a great pen for drawing. There was a stepper motor in the center, with radial slots, a lot of them. I'm not going to draw all of them. I think this was six or eight decks of cards could fit into the card positions, radial card positions around the wheel. Cards were inserted into the radial positions in the wheel driven by -- I don't recall whether it was a stepper motor or DC motor, a drive mechanism, into there. I believe there was a reject bin, such that cards coming in from the discard bin would be transported into the shuffler

HIGHLY CONFIDENTIAL

SGC 0000726788