**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

Shuffle Tech International, LLC, et al.,

      Plaintiffs,

Scientific Games Corporation, et al.,

      Defendants.

Civil Action No. 1:15-cv-3702

Honorable Matthew F. Kennelly

**DEFENDANTS' RESPONSE TO PLAINTIFFS'
LOCAL RULE 56.1(b)(3)(C) STATEMENT OF ADDITIONAL FACTS**

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, Defendants Scientific Games Corporation, Bally Technologies, Inc., and Bally Gaming, Inc. (collectively, "SHFL"), through their attorneys, respectfully submit the following Responses to Plaintiffs Shuffle Tech International, LLC's ("Shuffle Tech"), Aces Up Gaming, Inc.'s ("Aces Up"), and Poydras-Talrick Holdings LLC's ("Poydras") Local Rule 56.1 Statement of Additional Facts, and state as follows:

1. Mr. Grauzer has been SHFL's lead engineer in charge of shuffler development since 1991 and is the first listed inventor on the '982 and '935 patents (in what Plaintiffs refer to as patent Family D) asserted against DigiDeal ("DD"), and on all of the patents in what Plaintiffs refer to as Families B and C that were asserted against CARD, Vending Data ("VD"), Taiwan Fulgent ("TWF") and/or TCS John Huxley ("TCS"), including U.S. Patent No. 6,588,751 (the "'751 patent"). PX1 ('982 patent); PX2 ('935 patent); PX224.1 ('154 Patent); PX226.1 ('750 patent); PX228.1 ('684 Patent); PX232.1 ('602 patent); PX234.1 ('791 patent); PX242.1 ('096 patent); PX244.1 ('751 patent); PX252.1 ('344 patent); PX254.1 ('576 patent); see also PX1012.18:13-21:5 (Grauzer Dep, explaining his employment with SHFL).

**RESPONSE:** SHFL agrees that the cited materials support Plaintiffs' assertion that Mr. Grauzer was listed as the first inventor on the listed patents, except that the reference to patent Families is nomenclature that Plaintiffs have applied to patents for explanatory purposes and is not supported by the cited materials. SHFL disagrees that the cited materials show that Mr. Grauzer

1

served as SHFL's lead engineer since October 2011 (PX1012.9:21-22 (11/10/16 A. Grauzer

Dep.)), and he has not.

2.      Ms. Farrar has been SHFL's in-house IP counsel since December 1996 and has had primary responsibility for SHFL's shuffler patent portfolio since joining SHFL, and has also assisted SHFL's general counsel with patent issues arising in SHFL's patent litigations. PX1011.11:18 (Farrar Dep, explaining start with SHFL in 1996); *Id.* at 1011.17:15-21:14 (Farrar explaining her involvement with SHFL litigations).

**RESPONSE**:  SHFL does not contest that the cited materials support the assertion in

Plaintiffs' AF 2[1], except the materials do not support the assertion that Ms. Farrar "has primary

responsibility for SHFL's shuffler patent portfolio since joining SHFL."

3.      Mr. Litman was SHFL's outside patent prosecution counsel and assisted with SHFL's shuffler patent portfolio and acted in that capacity for SHFL between approximately 1998 until his termination in May 2012 (during which SHFL's work accounted for about 50% of his practice), as well as assisted SHFL with patent issues arising in SHFL's patent litigations. PX1003.37:2-42:10 (Litman Dep, explaining his employment history at SHFL, his workload for SHFL, and his involvement with SHFL litigations).

**RESPONSE**:  SHFL does not contest that the cited materials support Plaintiffs' assertions

in Plaintiffs' AF 3, except Mr. Litman did not testify that SHFL's work consisted of 50% of his

workload for the referenced time period, only at the time he was terminated.  (PX1003.37:4-38:23

(9/30/16 M. Litman Dep.).)

4.      Ms. Farrar and Mr. Litman had primary responsibility for and were substantively involved in the preparation and prosecution of the applications that resulted in the '982 and '935 patents of Family D asserted against DD, and both individuals had a duty of disclosure, candor and good faith to the PTO in connection with these two patent applications.  PX1003.129:12 - 133:9 (Litman Dep, explaining that he and Farrar were responsible for the '982 and '935 application and owed a duty of disclosure to the PTO); PX1011.40:20-42:8 (Farrar Dep, explaining her role in the '982 and '935 patents and having power of attorney to prosecute the applications).

**RESPONSE**:  SHFL does not contest that the cited materials support Plaintiffs' assertions

that Mr. Litman had primary responsibility for the preparation and prosecution of the applications

---

[1] "AF ___" refers to Plaintiffs' Local Rule 56.1(b)(3)(C) Statement of Additional Facts.

that resulted in the '982 and '935 patents asserted against DigiDeal, except that the reference to patent Families is nomenclature that Plaintiffs have applied to patents for explanatory purposes and is not supported by the cited materials. SHFL disagrees that the cited materials support the assertion that Ms. Farrar had primary responsibility for the preparation and prosecution of the applications that resulted in the '982 and '935 patents. Responding further, Ms. Farrar testified that she did not prepare the applications for the '982 and '935 patents and testified that her role with respect to obtaining those patents was limited to reviewing the draft patent applications. (PX1011.41:5-42:9 (11/8/16 J. Farrar Dep.).) Moreover, Mr. Litman testified that Ms. Farrar's involvement consisted of providing "oversight" or assistance. (PX1003.129:2-15 (9/30/16 M. Litman Dep.).) The remainder of Plaintiffs' AF 4 constitutes improper legal argument and conclusions that are not supported by the materials cited by Plaintiffs.

5.       Ms. Farrar and Mr. Litman had primary responsibility for and/or were substantively involved in the prosecution of the applications that resulted in the patents in Families B and C that were asserted against CARD, VD, TWF and/or TCS by SHFL, including the '751 patent and the '751 patent reexamination, and both individuals had a duty of disclosure, candor and good faith to the PTO in connection with these patent applications and proceedings. PX224.1 (''154 Patent); PX226.1 ('750 patent); PX228.1 ('684 Patent); PX232.1 ('602 patent); PX234.1 ('791 patent); PX242.1 ('096 patent); PX244.1 ('751 patent); PX252.1 ('344 patent); PX254.1 ('576 patent) (all listing Mark Litman on the face of the patents as prosecution counsel); PX445.663 ('751 reexamination file history, showing Mark Litman substantively involved).

**RESPONSE:** SHFL does not contest that the cited materials support Plaintiffs' assertion that Mr. Litman had primary responsibility for the prosecution of the applications that resulted in the patents that were asserted by SHFL against CARD, Vending Data, Taiwan Fulgent, and/or TCS John Huxley, including the '751 patent and the '751 patent reexamination, except that the reference to patent Families is nomenclature that Plaintiffs have applied to patents for explanatory purposes and is not supported by the cited materials. The cited materials do not support Plaintiffs'

assertions concerning Ms. Farrar. The remainder of Plaintiffs' AF 5 constitutes improper legal argument and conclusions that are not supported by the materials cited by Plaintiffs.

6. Mr. Kimball Anderson of Winston & Strawn represented VD against SHFL's patent infringement claims involving a SHFL patent in Family B (US 6,655,684) and after the VD litigation ended, switched to representing SHFL in later patent infringement litigations against TWF and TCS and DD involving patents in Families B, C and/or D. PX800 (Anderson's Pro Hac Vice application to represent VD against SHFL); PX148 (Anderson reporting TCS settlement terms to SHFL); PX47 (TCS Complaint listing Anderson and Shin for SHFL); PX39 (DD Complaint listing Anderson and Shin for SHFL).

**RESPONSE:** SHFL does not contest that the cited materials support the assertions in Plaintiffs' AF 6, except that the reference to patent Families A-D is nomenclature that Plaintiffs have applied to patents for explanatory purposes and is not supported by the cited materials.

7. Mr. Anderson engaged Mr. Alan Fanucci (a registered patent attorney) of Winston & Strawn to act as the lead outside patent counsel in the '982 and '935 reexaminations for SHFL, and Mr. Anderson and Mr. Fanucci were substantively involved in both reexaminations and both owed a duty of disclosure, candor and good faith to the PTO in connection with these reexamination proceedings. PX5.855 ('982 Patent Owner's Statement signed by Fanucci); PX6.812 ('935 Patent Owner's Statement signed by Fanucci); PX1004.143 (Shin Dep, Anderson involved).

**RESPONSE:** SHFL does not contest that the cited materials support Plaintiffs' assertion that Alan Fanucci of Winston & Strawn LLP, who is registered to practice as an attorney before the PTO, acted as the lead outside patent counsel in the '982 and '935 reexaminations for SHFL. The remainder of Plaintiffs' AF 7 constitutes improper legal argument and conclusions that are not supported by the cited materials. For example, in support of their assertion that Mr. Anderson was "substantively involved in both reexaminations," Plaintiffs cite only testimony from Mr. Shin stating that Mr. Anderson had reviewed the information identified by Plaintiffs in the complaint. (PX1004.142:22-143:12 (10/11/16 H. Shin Dep.) (Q: "Now, who is referred to as 'their patent attorneys' have reviewed the information? Who is that referring to by the words 'their patent attorneys? . . . Who within Winston & Strawn is it referring to?" Q: "Starting with me, and then

4

Mr. Fanucci and Mr. Anderson.").) Mr. Shin's statement does not support the assertion that Mr. Anderson was "substantively involved in both reexaminations."

8.      Mr. Howard Shin (a registered patent attorney) of Winston & Strawn assisted Mr. Anderson with the TWF, TCS and DD litigations and assisted Mr. Fanucci with the '982 and '935 reexaminations, and owed a duty of disclosure, candor and good faith to the PTO in connection with these reexamination proceedings. PX1004.200:5-212:2 (Shin Dep, explaining his involvement in the '982 and '935 reexaminations, including the Helsen Decs.).

**RESPONSE:** SHFL does not contest that the cited materials support Plaintiffs' assertion that Howard Shin of Winston & Strawn LLP, who is registered to practice as an attorney before the PTO, assisted Mr. Anderson with the Taiwan Fulgent, TCS John Huxley, and DigiDeal litigations, and assisted Mr. Fanucci with the '982 and '935 reexaminations. The remainder of Plaintiffs' AF 8 constitutes improper legal argument and conclusions that are not supported by the materials cited by Plaintiffs.

9.      The Nicoletti Shuffler was publicly disclosed and used on a live table game open to the public in Atlantic City in 1990, and is designed to be flush mounted into a gaming table such that cards to be shuffled are inserted into a card receiver recessed below the table surface, shuffling occurs under the table, and the shuffled cards are delivered to a dealer by an elevator through an opening, having an automatically movable cover in the top of the shuffler. PX17 (Money magazine article on the 1990 public use); Curley Dec. ¶ 14.

**RESPONSE:** SHFL does not contest that the cited materials support Plaintiffs' assertion that a newspaper account states that the Nicoletti prototype was demonstrated at one casino in Atlantic City in 1990. SHFL disagrees that the cited materials are competent, admissible evidence of any facts because they are an unauthenticated newspaper article recounting hearsay and proffered opinions from a putative expert who has no personal knowledge of the underlying factual events. Moreover, even if the Courier-Post Money article cited by Plaintiffs (PX17) was admissible, it reported that Mr. Nicoletti stated that "there was no test." (PX17). The statement that the "Nicoletti Shuffler was publicly disclosed" constitutes an improper legal conclusion that is unsupported by the cited materials. Plaintiffs' description of the Nicoletti prototype is not

supported by the cited material, as paragraph 14 of Mr. Curley's declaration states only that: "When [the Nicoletti prototype] is installed in a gaming table, only the top plate of the shuffler is visible. The shuffling event takes place entirely below the gaming table surface." In addition, the Courier-Post Money article does not describe the Nicoletti prototype except to state that "The system [is] installed under a blackjack table," and that "A sensor in the machine reads the bar codes [printed on the cards], ensuring that no bogus cards are fed into the deck." (PX 17.)

10. The Roblejo Shuffler was demonstrated at the 1997 World Gaming Expo in Las Vegas ("1997 Expo" at which Roblejo Shuffler brochures were distributed) and also uses an elevator to raise the shuffled cards through an opening in the top of the shuffler for delivery to the dealer and an automatically movable cover set flush into the top surface of the shuffler over the elevator that opens and closes in conjunction with the raising and lowering of the elevator. PX99 (Roblejo Shuffler brochure); Curley Dec. ¶ 15.

**RESPONSE:** SHFL disagrees that the cited materials support any of the assertions in Plaintiffs' AF 10. The Roblejo prototype brochure itself supports neither the statement that the Roblejo prototype was demonstrated at the 1997 World Gaming Expo in Las Vegas nor that the Roblejo prototype brochure was distributed at the 1997 World Gaming Expo in Las Vegas. In addition, Mr. Curley does not purport to have any personal knowledge of the 1997 World Gaming Expo, and paragraph 15 of Mr. Curley's declaration does not cite to any materials in support of his statement that the Roblejo prototype was demonstrated and displayed at the 1997 World Gaming Expo in Las Vegas. SHFL also disagrees that the cited materials support the assertions regarding the description of the Roblejo prototype because neither the Roblejo prototype brochure nor Mr. Curley's declaration describe or show how the Roblejo prototype operated.

11. The Nicoletti Shuffler and the Roblejo Shuffler are both prior art to the patents in Families B, C and D under at least 35 U.S.C. §102(a), §102(b), §102(f) or §102(g). Armitage Dec. ¶ 15 (Overview of Nicoletti Shuffler) and ¶ 16 (Overview of Roblejo Shuffler).

**RESPONSE:** SHFL disagrees that the cited materials support the assertions in Plaintiffs' AF 11. Plaintiffs fail to point to factual evidence which supports the predicate facts necessary for

the Roblejo prototype to constitute prior art. Plaintiffs' reliance on Mr. Armitage for those predicate facts is misplaced because Mr. Armitage has no personal knowledge of those facts, and because his testimony is inadmissible for the reasons explained in SHFL's summary judgment reply.

12. The Luciano Shuffler was developed in 1992-1993 and marketed to the gaming industry in 1993 and 1994 using letters and a marketing video. The Luciano Shuffler is mounted flush into a gaming table such that cards are inserted into a card receiver that is recess below the table, shuffling occurs under the table and the shuffled cards are raised to the surface of the table and directly into a dealing shoe. PX109.2-5 (L. Luciano Dec., ¶¶ 4-18); Curley Dec. ¶ 16.

**RESPONSE:** SHFL does not contest that the cited materials support Plaintiffs' assertion that the Luciano prototype was developed in 1992-1993. SHFL disagrees that the cited materials support the remainder of the assertions in Plaintiffs' AF 12. Lawrence Luciano testified in other litigation that Luciano Packaging approached some companies to attempt to further develop a working version of the Luciano prototype for the market by "sen[ding] out a half dozen letters." (Appx. Ex. 16 (8/10/06 L. Luciano Dep.) at 97:1-5.) At that time, the shuffler was still in development. (Appx. Ex. 17 (10/21/03 L. Luciano Decl.) at ¶¶ 12, 21.) Moreover, Lawrence Luciano has identified only three companies that ever received written materials describing the Luciano prototype, and only one of those companies ever received a video of the shuffler. (Appx. Ex. 17 (10/21/03 L. Luciano Decl.) at ¶¶ 4-9, 11-13, 16, 17.) SHFL also disagrees that the cited materials support the assertions regarding the description of the Luciano prototype; neither Mr. Luciano's declaration nor Mr. Curley's declaration describe or show that: (a) the Luciano Shuffler was mounted flush into a gaming table; (b) cards were inserted into a "card receiver" recessed below the table; (c) shuffling occurs below the table; or (d) shuffled cards were "raised" to the surface of a gaming table.

13. The Luciano Shuffler is prior art to the patents in Families B, C and D under at least 35 U.S.C. §102(b) and §102(g), as after it was operational it was "aggressively marketed" to the relevant industry using a freely distributed marketing video and disclosed to third parties

7

for the purpose of selling the shuffler, rather than abandoning, suppressing or concealing the shuffler. Armitage Dec. ¶ 17 (overview of Luciano Shuffler); PX109.4-5 (L. Luciano Dec., ¶¶ 14-18). PX82.25 (2006 L. Luciano Dep, pages 95-97, explaining Luciano's marketing efforts); PX1027.92:7-9 (2017 L. Luciano Dep, agreeing that Luciano Packaging Technologies "publish[ed] the video to the industry to anybody that was interested").

**RESPONSE:** SHFL disagrees that the cited materials support the assertions in Plaintiffs' AF 13. Plaintiffs fail to point to factual evidence which supports the predicate facts necessary for the Luciano prototype to constitute prior art. Plaintiffs' AF 13 constitutes improper legal argument and conclusions that are unsupported by the cited materials. Lawrence Luciano testified in other litigation that Luciano Packaging marketed the Luciano prototype by "sen[ding] out a half dozen letters." (Appx. Ex. 16 (8/10/06 L. Luciano Dep.) at 97:1-5.) Lawrence Luciano has identified only three companies that ever received written materials describing the Luciano prototype, and only one of those companies ever received a video of the shuffler. (Appx. Ex. 17 (10/21/03 L. Luciano Decl.) at ¶¶ 4-9, 11-13, 16, 17.) Mr. Armitage's proffered opinions do not support Plaintiffs' assertions in AF 13 because those opinions are inadmissible for the reasons explained in SHFL's summary judgment reply.

14. The Block patent (US 6,361,044) discloses an automatic card shuffling and dealing system that includes a shuffling device under the gaming table and an elevator that delivers the shuffled cards to the table surface through an opening that is covered by an automatically movable cover over the elevator. PX52 (Block patent); Curley Dec. ¶ 13.

**RESPONSE:** SHFL does not contest that the cited materials support Plaintiffs' assertions in Plaintiffs' AF 14. Responding further, SHFL states that the Block patent discloses a mechanical device that deals cards automatically to a table underneath a transparent dome-shaped cover. (Appx. Ex. 85 (U.S. Patent No. 6,361,044.)) The Block patent did not disclose a shuffler used with a human dealer but rather, as Mr. Curley states, described a device with a "a robotic arm embedded into the center of a casino gaming table [that] deals the cards to the player stations located at the periphery of the gaming table." (Curley Decl. at ¶ 13.)

8

15.     The Block patent is prior art to the patents in Family D under at least 35 U.S.C. §102(e).  Armitage Dec. ¶ 18 (overview of Block).

**RESPONSE:**  SHFL disagrees that the cited material supports the assertions in Plaintiffs' AF 15.  Plaintiffs fail to point to factual evidence which supports the predicate facts necessary for the Block patent to constitute prior art.  Plaintiffs' reliance on Mr. Armitage for those predicate facts is misplaced because Mr. Armitage has no personal knowledge of those facts, and because his testimony is inadmissible for the reasons explained in SHFL's summary judgment reply.

16.     Mr. Breeding and Mr. Grauzer analyzed and considered acquiring the Nicoletti Shuffler (or a similar Shuffler) around the mid-1990s and learned that "it was so big it was built under the table and cards would go down inside", resulting in Mr. Breeding deciding not to purchase the shuffler.  PX856.96-98 (Breeding Dep, explaining SHFL's review of a prior art shuffler and its characteristics).

**RESPONSE:**  SHFL disagrees that the cited material supports the assertions in Plaintiffs' AF 16 in their entirety.  (PX856.96:20-97:15 (3/5/03 J. Breeding Dep.) (Q: "Do you recall what other companies were producing shufflers?" A: "When I got close to the marketplace, Peripheral Dynamics.  Steven Wynn of -- I'm sure you know who Mr. Wynn is." Q: "Yes." A: "He actually financed the development of a shuffler that was used in the Mirage and the Golden Nugget until it was discovered that you could track it. . . . The two that come to mind -- there were other efforts, but those are the two that I recall clearly being in the marketplace. There was one -- I didn't see it, but there was one in Atlantic City. It was so big it was built under the table and cards would go down inside. It lasted a few months and then it was gone. It was huge." Q: "Do you don't know what company -- " A: "No. A guy out of New Jersey had a patent on it, I think. He called me, wanted to sell me his technology. Passed.").)  In addition, Mr. Grauzer testified that he was unaware of the existence of the Nicoletti shuffler. (Appx. Ex. 90 (11/10/16 A. Grauzer Dep.) at 266:13-19; 267:13-268:14.)  The cited material therefore does not support the assertion that the

9

shuffler Mr. Breeding discussed is the Nicoletti prototype or a similar shuffler, or any involvement by Mr. Grauzer in any analysis of the shuffler.

17. Ms. Farrar and Mr. Grauzer were instructed by management to attend the 1997 Expo in Las Vegas. PX762.16 (memo from SHFL management instructing Grauzer and Farrar to attend 1997 Expo).

**RESPONSE:** SHFL does not contest that the cited materials support Plaintiffs' assertion that SHFL management requested that Ms. Farrar and Mr. Gauzer, along with other SHFL personnel, attend the 1997 Expo in Las Vegas.

18. Mr. Gola of Casino Concepts wrote a memo following the 1997 Expo stating that "during the entire show people from Shuffle Master looked at our equipment [i.e., the Roblejo Shuffler]." PX90 (Casino Concepts memo stating that SHFL representatives saw demos of the Roblejo Shuffler at the 1997 Expo).

**RESPONSE:** SHFL does not contest that the cited materials support Plaintiffs' assertion that Mr. Gola of Casino Concepts wrote a memorandum dated October 27, 1997 to Dr. C. Roblejo stating, among other things, that "during the entire show people from shufflemaster [sic] looked at our equipment." SHFL disagrees that the cited material supports the assertion that "SHFL representatives saw demos of the Roblejo Shuffler at the 1997 Expo."

19. Mr. Grauzer drafted a "Report on Shuffler Competition" in which he detailed five shufflers seen at the 1997 Expo, including the Roblejo Shuffler, and attached a brochure on the Roblejo Shuffler (referred to as the "Sure Shuffler") to his report, and kept a copy of his report in his files at SHFL. PX511 (Grauzer's 1995 Expo Report on Shuffler Competition); PX9 (1997 Report on Shuffler Competition from Mr. Grauzer's files); PX1022.18:7-16, 187:9-188:22 (former SHFL executive, Mr. Barnett, Dep, stating that Grauzer wrote 1997 Expo Report); PX1021.33:5-17 (former SHFL employee, Mr. Pietrosanto, Dep, stating that Grauzer wrote 1997 Expo Report); PX1011.95:21-96:11 (Farrar Dep, stating that Grauzer wrote the 1997 Expo report).

**RESPONSE:** SHFL does not contest that the cited materials support Plaintiffs' assertion that some person affiliated with SHFL prepared a short report that mentions the Sure-Shuffler as one of five instances of "Shuffler Competition" observed at the 1997 Expo and that the report attaches a brochure of the Roblejo prototype. SHFL disagrees that the cited materials support the

10

assertion that Mr. Grauzer drafted the report, kept a copy of the report in his files at SHFL, or that Mr. Barnett, Mr. Pietrosanto, or Ms. Farrar testified that they knew that Mr. Grauzer wrote the report. The report is unattributed and Mr. Grauzer testified that he did not write the report. (Appx. Ex. 9 (11/10/16 A. Grauzer Dep.) at 10:20-107:6, 109:4-16.) Ms. Farrar testified that the report was found in SHFL's legal department's files (Appx. Ex. 89 (11/8/16 J. Farrar Dep.) at 95:16-19) and that she could "only guess" who wrote the report. (*Id.* at 95:21-24).[2] Mr. Barnett testified that "I don't know who wrote this document. Just having worked there for the period of time and knowing everyone's functions, from sales to service to engineer and competitive analysis, I believe Attila [Grauzer] would have written this document." (PX1022.188:11-17 (1/13/17 D. Barnett Dep.).) Mr. Pietrosanto testified that he "would assume that it would be Attila that wrote this report." (PX1021.33:16-17 (1/12/17 R. Pietrosanto Dep.).) To create a genuine dispute of material fact, a witness must be competent to testify from personal knowledge under Federal Rule of Evidence 602 as to a particular fact, and none of the cited witnesses possessed such competence as to the author of the report almost two decades ago. *See, e.g.*, *Visser v. Packer Eng'g Assoc., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991).

20. Ms. Farrar was in charge of maintaining folders organized by year on prior art shufflers seen by SHFL employees at tradeshows, including the 1997 Expo, which to this day includes a copy of the Roblejo Shuffler brochure obtained at the 1997 Expo. PX1011.86:22-89:5 (Farrar Dep, admitting to maintaining 1997 Expo file containing shuffler prior art and Roblejo Shuffler brochure).

**RESPONSE:** SHFL does not contest that the cited materials support Plaintiffs' assertion that a copy of the Roblejo prototype brochure was found in SHFL's legal department's files. SHFL disagrees that the cited material supports the remainder of the assertions in Plaintiffs' AF 20. Ms.

---

[2] PX1011 does not include pages 95 and 96, relied on by Plaintiffs to support AF 19. For the Court's convenience, SHFL has attached pages 95 and 96 of Jennifer Farrar's deposition transcript here as Appendix Exhibit 89.

11

Farrar did not testify in the cited materials or elsewhere that she personally maintained folders organized by year on prior art shufflers seen by SHFL employees at tradeshows. Ms. Farrar testified that "every year whoever went to the shows would collect information" that was compiled in a "file folder" maintained by SHFL's legal department. (PX1011.85:15-24, 87:11-19 (11/8/16 J. Farrar Dep.).) The 1997 Expo file included a preliminary program for the Las Vegas show. (*Id.* at 84:24-85:1.)

21. Ms. Farrar, Mr. Litman and Mr. Grauzer actively participated in the patent infringement and validity aspects of the CARD litigation, in which CARD defended against a motion for preliminary injunction ("PI") by alleging, among other things, that SHFL's asserted patent claims were invalid over the Nicoletti, Roblejo and/or Luciano Shufflers. PX106.6-7 (CARD's expert, Greenberg, Dec. ¶¶ 13-15, opposing PI asserting Nicoletti/Roblejo and Luciano Shufflers invalidate); PX110.9-11 (Grauzer Dec. ¶¶ 23-30, rebutting Greenberg re Luciano and Roblejo Shuffler); PX128.2 (Greenberg Dep, with Mr. Litman and Mr. Grauzer in attendance); PX191 (CARD discovery response with claim charts verified by Farrar); PX113.10-12 (Supp. Greenberg Dec, pages 10-12, invalidity of '751 patent over Roblejo Shuffler); PX120.7-12, 81-92 (Solberg Dec. ¶25-41, Exhibits I & J, invalidity of '751 patent over Roblejo Shuffler).

**RESPONSE:** SHFL does not contest that the cited materials support Plaintiffs' assertion that the *CARD* litigation included a claim by CARD that the several pieces of "prior art," including the Nicoletti, Roblejo, and Luciano prototypes, invalidated the claims of SHFL's '751 patent related to a compartment-based shuffling method. SHFL disagrees that the cited materials support the assertion that Ms. Farrar, Mr. Litman, or Mr. Grauzer "actively participated in the patent infringement and validity aspects of the CARD litigation." The cited materials support the assertions that Mr. Grauzer submitted a declaration concerning the compartment-based shuffling method, Ms. Farrar verified one discovery response, and Mr. Litman and Mr. Grauzer attended one deposition. Ms. Farrar testified that she was involved only in pre-filing activities related to the *CARD* litigation and that generally her "primary function was to narrow down the claim possibilities for outside counsel, and then outside would do their own prefiling investigation, including validity and invalidity." (PX1011.19:11-15, 21:5-10 (11/8/16 J. Farrar Dep.).)

12

Responding further, SHFL states that the reasons alleged by CARD for the invalidity of the '751 patent over the Roblejo and Luciano prototypes related to compartment-method shuffling and are different than the reasons Plaintiffs here assert the unrelated '982 and '935 patents are invalidated by the Roblejo and Luciano prototypes.  In the *CARD* litigation, CARD alleged that the prototypes were invalidating as to the '751 patent because they disclosed "a carousel that could turn in both directions during shuffling; the compartments in the carousel could each hold multiple cards at a time; the edges of the compartments were angled and cards deflected off the angled edges so that they would not bump into existing cards in the compartments; cards were inserted from an input stack one at a time into a randomly selected compartment in the carousel, such that a selected number of cards was inserted into a selected number of compartments; all of the cards in a given compartment were ejected simultaneously from the carousel onto an output stack; and both the injection and ejection of cards were controlled on demand, either by the dealer, a sensor, or automatically."  (Appx. Ex. 28 (Proposed 11th Affirmative Defense in *CARD*) at 22.)  In this case, in contrast, Plaintiffs allege that the prototypes are alleged to invalidate the '982 and '935 patents because they disclosed "an automatic card shuffler integrated into the top surface of a gaming table, such that the card receiver was below the surface of the gaming table and the shuffled cards were delivered on a card elevator to a point proximate the surface of the gaming table."  (Am. Compl. ¶ 42; *see also* Am. Compl. ¶ 37.)

22.    Mr. Grauzer acted as SHFL's expert and submitted declarations disputing the invalidity arguments raised by CARD's expert based on the Nicoletti, Roblejo and Luciano Shufflers, and Mr. Grauzer (as well as Mr. Litman) attended the deposition of CARD's expert, Mr. Greenberg, directed to the structure and operation of the Nicoletti, Roblejo and Luciano Shufflers.  See evidence identified in Paragraph 21 above, incorporated herein by reference.

**RESPONSE:**  SHFL does not contest that the cited materials support Plaintiffs' assertions that: (1) Mr. Grauzer submitted a declaration concerning the invalidity arguments raised by CARD's expert based on the Nicoletti, Roblejo, and Luciano prototypes regarding the

compartment-based shuffling method; and (2) Messrs. Grauzer and Litman attended the deposition of CARD's expert, Mr. Greenberg, at which the expert testified concerning the compartment-based method of shuffling. Responding further, SHFL states that the cited materials do not support any contention that any aspect of the operations of the Nicoletti, Roblejo, or Luciano prototypes relevant to Plaintiffs' fraudulent omission claims here was discussed at the deposition.

23. In granting the PI, the court in the CARD litigation determined that the Gola declaration on the Nicoletti and Roblejo Shufflers was not sufficiently reliable because it was not corroborated and could not by itself invalidate the '751 patent, even though, unbeknownst to CARD and the court, SHFL was withholding corroborating evidence on the Roblejo Shuffler which it had obtained at the 1997 Expo. PX117.28-30 (PI decision transcript explaining that Roblejo Shuffler information was not corroborated); PX1011.86:22-89:5 (Farrar Dep, admitting to maintaining 1997 Expo file containing Roblejo Shuffler brochure).

**RESPONSE:** SHFL disagrees that the cited materials support any of the assertions in Plaintiffs' AF 23. The Nevada court granted Shuffle Master's motion for preliminary injunction against CARD for numerous reasons, including because: (1) Shuffle Master had made a "clear showing" that the '751 patent was infringed by CARD's shuffler; (2) "CARD failed to raise a substantial question of invalidity"; (3) Shuffle Master showed that monetary damages would not be adequate and that it would be irreparably harmed if the injunction was not issued; (4) the balance of hardship tipped in Shuffle Master's favor; and (5) the public's interest favored granting the injunction. (Appx. Ex. 23 (12/8/03 Order Granting Preliminary Injunction, Case No. 03-cv-00244 (D. Nev.) at 2.) In its oral order, the Nevada court held that, among other things, the picture of the Roblejo prototype presented to the court did not show "a second card mover for removing cards from compartment to a second card receiver on demand," which was attested to in Greenberg's Second Supplemental Declaration. (PX117.28:25-29:5.) Accordingly, the Court held that CARD's "evidence [was] not sufficiently persuasive for [the Court] to conclude that the Roblejo prototype contains this feature and is therefore prior art in support of anticipation. (*Id.* at 29:4-10.)

14

The remainder of Plaintiffs' AF 23 constitutes improper legal argument and conclusions that are not supported by the cited materials.

24.     After CARD moved to add invalidity and inequitable conduct (IC) counterclaims upon learning of the withheld evidence and the case settled, Ms. Farrar and Mr. Litman obtained the Shuffler Art discs containing the prior art and inequitable conduct allegations in the CARD litigation and advised the PTO that "they were in the time-consuming process of reviewing" the information.  PX248.371 (Litman advising PTO of the "time-consuming" review by him and Farrar); PX125.1, 10, 29-30 (CARD's IC motion and counterclaim); PX763 (emails with Farrar and Litman re "[Shuffler Art] DVD and CD content"); PX100 (index to Shuffler Art discs); Armitage Dec. ¶ 20 (showing content of the Shuffler Art discs), Ex. 1 ¶¶ 276-279.

**RESPONSE:**  SHFL does not contest that the cited materials support Plaintiffs' assertions that: (1) following issuance of the preliminary injunction, CARD sought leave in February 2004 to amend its pleadings to add allegations of invalidity based on alleged inequitable conduct; (2) in June 2004, the parties to the CARD litigation voluntarily dismissed the litigation prior to resolution of CARD's new allegations; (3) Kirkland & Ellis, which represented SHFL in the CARD litigation, prepared a disc containing materials related to the CARD litigation, including the alleged prior art and CARD's motion for leave to amend its pleadings to add allegations of invalidity based on inequitable conduct; (4) Ms. Farrar and Mr. Litman eventually received the disc; and (5) Mr. Litman submitted a preliminary amendment to the PTO in July 2004 reporting that "corporate counsel and IP counsel for Shuffle Master, Inc., as well as outside litigation counsel and outside IP prosecution counsel" were "in the time-consuming process of reviewing documents, including affidavits, declarations, depositions and the like that are the result of litigation between Shuffle Master, Inc. and third parties."  SHFL disagrees that the cited materials support the assertions that Ms. Farrar advised the PTO that she was reviewing any materials, or that Ms. Farrar or Mr. Litman had any detailed knowledge regarding the materials on the Shuffler Art disc.  (Appx. Ex. 103, (9/30/16 M. Litman Dep.) at 81:3-9, 84:2-25, 85:1-90:1; Appx. Ex. 89 (11/8/16 J. Farrar Dep.) at 144:23-145:19.)

15

25. After their "time-consuming" review, between 2004 and 2008, Ms. Farrar and Mr. Litman filed Information Disclosure Statements ("IDSs") disclosing the Shuffler Art discs in dozens of pending applications in its shuffler patent Families A, B, C and E while the '935 application was pending, but together decided not to file the prior art information in any application in shuffler patent Family D, including the applications that resulted in the '982 and '935 patents. PX1011.186 (Farrar Dep, stating that she and Litman decided in what cases to file the IDSs); Armitage Dec. ¶ 32 (showing Shuffler Art disc IDS filings by Family) & ¶ 24 (Showing Shuffler Art IDSs during pendency of '935), Ex. 1 ¶¶ 290-296.

**RESPONSE:** SHFL does not contest that the cited materials support Plaintiffs' assertion

that SHFL filed the Shuffler Art discs in certain pending prosecutions but not others, and that

SHFL did not file an IDS with the Shuffler Art disc in the prosecution of the application that

became the '935 patent. SHFL also does not contest that the cited materials support Plaintiffs'

assertion that Mr. Litman and Ms. Farrar were the persons who decided in which applications to

submit the Shuffler Art disc and which not to. SHFL disagrees that the cited materials support any

other assertions in Plaintiffs' AF 25, including without limitation the assertion that a decision was

made not to cite the Shuffler Art disc during the prosecution of the '982 patent, since that patent

issued in November 2003, before the Shuffler Art disc was obtained by SHFL. Mr. Armitage's

proffered opinions do not support Plaintiffs' assertions in this AF paragraph because those

opinions are inadmissible for the reasons explained in SHFL's summary judgment reply.

26. VD issued discovery requests to SHFL that covered the 1997 Expo materials and the Shuffler Art discs, but SHFL concealed relevant information from VD including the inequitable conduct materials from the CARD case, thereby preventing VD from raising the same inequitable conduct defense that CARD had raised (with VD's counsel, Mr. Anderson, being unaware of that defense at the time). PX153.6-7 (VD's document Requests 2 & 11); PX787.3, 8 (SHFL's Response to Requests 2 & 11); Armitage Dec. Ex. 1 ¶¶ 320-329.

**RESPONSE:** SHFL does not contest that the cited materials support Plaintiffs' assertion

that VD issued discovery requests to SHFL in the *Vending Data* litigation. SHFL disagrees that

the cited materials support any of the other assertions in Plaintiffs' AF 26. In particular, the

document requests and responses, with no percipient witness testimony from the lawyers involved,

fail to show what, if any, negotiations or discussions may have been had between the lawyers

16

concerning the scope of production, and Mr. Armitage's proffered opinion on these issues is inadmissible for the reasons explained in SHFL's summary judgment reply.

27. During his representation of VD, Mr. Anderson concluded that SHFL was engaging in illegal anticompetitive conduct including "patent abuse and other violations of the antitrust laws" and made clear to SHFL that he was considering filing an antitrust claim against SHFL prior to his switching representation and becoming SHFL's lawyer. PX157 (Anderson letter to SHFL re antitrust violations); PX76.1 (Anderson email to SHFL accusing it of a decade of frivolous patent litigations and illegal monopolistic behavior); Armitage Dec. Ex. 1 ¶¶ 331-340.

**RESPONSE:** SHFL does not contest that the cited materials support the assertion that VD, through its attorney, accused SHFL of "patent abuse and other violations of the antitrust laws." SHFL disagrees that the cited materials support any other assertion in Plaintiffs' AF 27. Mr. Anderson testified that his communications with SHFL's counsel did not reflect his personal beliefs, but instead represented his client's assertions in connection with settlement negotiations. (*See* PX76.1 ("Vending Data perceives that Shuffle Master has been engaged, for many years, in an anti-competitive practice . . . ."); Appx. Ex. 104 (11/4/16 K. Anderson Dep.) at 69:1-70:9, 71:22-24 ("[T]hat was my client's view and -- and I was writing as an advocate of my client's view.").) Mr. Armitage's proffered opinions do not support Plaintiffs' assertions in this AF paragraph because those opinions are inadmissible for the reasons explained in SHFL's summary judgment reply.

28. In June 2006, during the pendency of the '935 application, SHFL, with the assistance of Ms. Farrar, Mr. Litman and Mr. Grauzer, defended against a patent infringement case brought by MP Games by asserting that the Luciano Shuffler was invalidating prior art, including deposing both Mr. Robert Luciano and Mr. Larry Luciano and physically inspecting the Luciano Shuffler. PX487 (SHFL's Notice of Prior Art citing Luciano Shuffler); PX155.20-23 (R. Luciano Dep, re Luciano Shuffler); PX82.39 (L. Luciano Dep, page 152, confirming SHFL's inspection of Luciano Shuffler); PX519.1 (Grauzer Dep.); PX835.1 (Litman Dep.); PX193 (Farrar Dec. re discovery compliance).

**RESPONSE:** SHFL does not contest that the cited materials support Plaintiffs' assertion that that in June 2006, in response to a patent infringement case concerning a shuffling verification

system brought by MP Games LLC, Alliance Gaming Corp., and Bally Gaming, Inc., Shuffle Master: (1) filed an Amended Notice of Prior Art References identifying the "Luciano shuffler/verification system" as prior art; and (2) deposed Robert Luciano, Jr. and Lawrence Luciano. SHFL disagrees that the cited materials support the remaining assertions in Plaintiffs' AF 28, including that SHFL inspected the Luciano prototype or that Ms. Farrar, Mr. Litman, or Mr. Grauzer provided "assistance" with the litigation or the extent of that assistance. For example, in support of this statement, Plaintiffs' cite to the first page of Mr. Litman's and Mr. Grauzer's deposition testimony in the litigation (PX82.39, PX519.1); however, the fact that Mr. Litman and Mr. Grauzer were deposed by the plaintiffs in the litigation does not support the statement that they assisted the SHFL litigation counsel with the litigation.

29. In November 2009, SHFL sued Taiwan Fulgent (TWF) for alleged infringement of several patents in Family C, including the '751 patent that was previously shown by CARD to be invalid over the Roblejo Shuffler and obtained through inequitable conduct by concealing the Roblejo Shuffler. PX42.4 (Complaint in TWF litigation identifying '751 patent); PX113.10-12 (Supp. Greenberg Dec, pages 10-12, invalidity of '751 patent over Roblejo Shuffler); PX120.7-10, 12, 81-92 (Solberg Dec. ¶25-41, Exhibits I & J, invalidity of '751 patent over Roblejo Shuffler); PX1011.86:22-89:5 (Farrar Dep, admitting to maintaining 1997 Expo file containing Roblejo Shuffler brochure).

**RESPONSE:** SHFL does not contest that the cited materials support Plaintiffs' assertion that in November 2009, SHFL sued Taiwan Fulgent for patent infringement of several patents, including the '751 patent. SHFL disagrees that the cited materials support the remaining assertions in Plaintiffs' AF 29. In particular, the parties to the *CARD* litigation voluntarily dismissed the litigation prior to any resolution of CARD's allegations that the '751 was invalid or obtained through inequitable conduct. (Appx. Ex. 29 (Stipulation and Order of Dismissal, Case No. 03-cv-00244 (D. Nev.)).)

30. Ms. Farrar, Mr. Litman and Mr. Grauzer were involved with the pre-filing investigation, and Mr. Anderson assisted with the litigation and stated to TWF that he had reviewed the pre-filing investigation performed by SHFL (which involved reviewing the prior art on the Shuffler Art discs from the CARD litigation, including the Nicoletti, Roblejo and Luciano

18

Shufflers) and that he was "completely satisfied" that it was conducted appropriately. PX1013.32:1-22, 53:9-18) (Abbott Dep, identifying Farrar, Grauzer and Litman re pre-filing investigation); PX44.2 (Anderson email stating he reviewed SHFL's pre-filing investigation and is "completely satisfied" that it was properly performed); PX1013.49:12-52:18 (Abbott Dep, stating that prior litigations would have been reviewed as part of the pre-filing investigation).

**RESPONSE:** SHFL does not contest that the cited materials support Plaintiffs' assertion that Mr. Anderson sent a letter stating that he was "completely satisfied" that the Taiwan Fulgent pre-filing investigation was conducted appropriately. SHFL disagrees that the cited materials support the remaining assertions in Plaintiffs' AF 30. By way of example, the cited materials do not support the statements that Mr. Grauzer was involved in SHFL's pre-filing investigation related to the Taiwan Fulgent litigation (PX1013.32:17-33:1 (11/15/16 E. Abbott Dep.) ("I'm just saying it could have been him.")), and that pre-filing investigation performed by SHFL in the Taiwan Fulgent litigation "involved reviewing the prior art on the Shuffler Art discs form the CARD litigation, including the Nicoletti, Roblejo and Luciano Shufflers" (PX1013.52:11-18 (11/15/16 E. Abbott Dep.) (stating only that "[t]he prior litigation would be looked at by somebody").)

31.     TWF filed a request for *inter partes* reexamination of the '751 patent, in which Ms. Farrar and Mr. Litman were substantively involved, and again concealed the Roblejo Shuffler, as well as the Nicoletti and Luciano Shufflers on the Shuffler Art discs, resulting in claims being confirmed in the '751 reexamination certificate that are anticipated by that concealed prior art. PX445.663 ('751 reexamination file history, showing Mark Litman substantively involved); PX1003.221:4-24 (Litman Dep, admitting the he and Farrar were involved in '751 reexamination); Curley Dec ¶¶ 76-79 (showing '751 reexam claims are invalid over withheld Roblejo and Luciano Shufflers).

**RESPONSE:** SHFL does not contest that the cited materials support Plaintiffs' assertion that Taiwan Fulgent filed a request for *inter partes* reexamination of the '751 patent, and that the patent was reissued. SHFL disagrees that the cited materials support the remaining assertions in Plaintiffs' AF 31. None of the cited materials support any contention regarding the concealment of prior art.

32. In September 2012, SHFL sued TCS for infringement of several patents in Family B and C, again including the '751 patent that was previously shown by CARD to be invalid and obtained by inequitable conduct and that was, at the time of the TCS complaint, the subject of continued inequitable conduct in the '751 reexamination. PX47.2-3 (Complaint in TCS litigation identifying '751 patent); see evidence cited in Paragraph 29 above.

**RESPONSE:** SHFL does not contest that the cited materials support Plaintiffs' assertion that in September 2012, SHFL sued TCS John Huxley for patent infringement of several patents, including the '751 patent. SHFL disagrees that the cited materials support the remainder of the assertions in Plaintiffs' AF 32, which constitutes improper legal argument and conclusions rather than a fair statement of factual materials. Responding further, the parties to the *CARD* litigation voluntarily dismissed the litigation prior to any resolution of CARD's allegations that the '751 was invalid or obtained through inequitable conduct. (Appx. Ex. 29 (Stipulation and Order of Dismissal, Case No. 03-cv-00244 (D. Nev.)).)

33. Mr. Anderson and Mr. Shin represented SHFL and, along with assistance from Ms. Farrar, conducted the pre-filing investigation, which included reviewing the prior art on the Shuffler Art discs containing the Nicoletti, Roblejo and Luciano Shufflers. PX47.1 (Complaint in TCS litigation identifying Anderson and Shin); PX1011.219:7-220:19 (Farrar admitting that review of the Shuffler Art discs would have been part of pre-filing investigation, and that she would assist with such investigations).

**RESPONSE:** SHFL does not contest that the cited materials support Plaintiffs' assertions that: (1) Mr. Anderson and Mr. Shin represented SHFL in the TCS John Huxley litigation; (2) Mr. Anderson and Mr. Shin conducted a pre-filing investigation as a part of the litigation; and (3) that it was a part of Ms. Farrar's "normal duties" to participate in pre-filing investigations (PX1011.220:15-19 (11/8/16 J. Farrar Dep.)). SHFL disagrees that the cited materials support the assertions that the pre-filing investigation for the TCS John Huxley litigation involved "reviewing the prior art on the Shuffler Art discs containing the Nicoletti, Roblejo, and Luciano Shufflers" or that Farrar "admit[ted] that review of the Shuffler Art discs would have been part of [the] pre-filing investigation." (*See* PX1011.219:18-220:1 (11/8/16 J. Farrar Dep.) (Q: "Would there have

20

been somebody that was responsible for reviewing the content of those discs before bringing the DigiDeal litigation?" A: "That, I believe would be part of any -- well, I can only talk about it in general terms, but it would be part of the prefiling investigation of outside counsel to verify a patent claim was assertible [sic], including whether it was valid and enforceable.").)

34.    On October 10, 2012, within a month of filing the TCS litigation, SHFL sued DD asserting infringement of the '982 and '935 patents of Family D, in which Mr. Anderson and Mr. Shin (with assistance from Ms. Farrar) conducted the pre-filing investigation including review of the prior art on the Shuffler Art discs. PX39 (Complaint in DD litigation identifying Anderson and Shin); PX1010.173:16-174:24 (Anderson Dep, identifying Farrar as being involved); PX1011.219:7-220:19 (Farrar admitting that review of the Shuffler Art discs would have been part of pre-filing investigation, and that she would assist with such investigations).

**RESPONSE:**  SHFL does not contest that the cited materials support Plaintiffs' assertions that on October 10, 2012, SHFL sued DigiDeal asserting infringement of the '982 and '935 patents and that Mr. Anderson and Mr. Shin conducted a pre-filing investigation prior to filing the lawsuit with which Ms. Farrar assisted. SHFL disagrees that the cited materials support the remaining assertions in Plaintiffs' AF 34, as the cited materials do not support the assertion that the pre-filing investigation for the DigiDeal litigation involved "reviewing the prior art on the Shuffler Art discs containing the Nicoletti, Roblejo, and Luciano Shufflers" or that Farrar "admit[ed] that review of the Shuffler Art discs would have been part of [the] pre-filing investigation." (*See* PX1011.219:18-220:1 (11/8/16 J. Farrar Dep.) (Q: "Would there have been somebody that was responsible for reviewing the content of those discs before bringing the DigiDeal litigation?" A: "That, I believe would be part of any -- well, I can only talk about it in general terms, but it would be part of the prefiling investigation of outside counsel to verify a patent claim was assertible [sic], including whether it was valid and enforceable.").)

35.    DigiDeal served document requests that clearly covered the prior art information on the Shuffler Art discs, including the Nicoletti, Roblejo and Luciano Shufflers, but SHFL objected to the request as being "unduly burdensome", notwithstanding that Ms. Farrar had copies of the Shuffler Art discs in her assistant's desk drawer that she used for filing IDSs. PX139.35 (DD document Request 57 covering prior art shufflers on Shuffler Art discs);

21

PX139.35 (SHFL's objection saying "unduly burdensome"); Armitage Dec. Ex. 1 ¶¶ 517-518; PX1011.193:13-25 (Farrar Dep, stating that she keep copies of the Shuffler Art discs in her assistant, Susan Levin's, desk).

**RESPONSE:** SHFL does not contest that the cited materials support Plaintiffs' assertions that DigiDeal served document requests and that SHFL objected to them. SHFL disagrees that the cited materials support the remaining assertions in Plaintiffs' AF 35, which are improper legal arguments and conclusions instead of a fair summary of factual materials. DigiDeal's Document Request No. 57 requested "All documents concerning public disclosures of automatic card shufflers made, used, sold or offered for sale by persons other than [SHFL] dated January 1, 1980 to September 28, 2001." (PX139.35.) SHFL objected to the request as "vague and ambiguous to the extent that the phrase 'concerning public disclosures of automatic card shufflers' is not defined or explained, such that SHFL is required to speculate as to its meaning and purpose. SHFL also objects that the requested time period 'dated prior to January 1, 1980 to September 28, 2001' is overly broad, unduly burdensome, and seeks documents beyond the time frame relevant to this litigation." (*Id.*) Mr. Armitage's proffered opinions do not support Plaintiffs' assertions in this AF paragraph because those opinions are inadmissible for the reasons explained in SHFL's summary judgment reply.

36.     After DD filed reexaminations on the '982 and '935 patents (without the benefit of the withheld prior art), a stay order was issued that stayed the litigation pending the reexaminations, and required DigiDeal to cease selling its DigiShuffle shuffler and to recall its previous shuffler placements. PX142 (Stay Order); Armitage Dec. Ex. 1 ¶ 521.

**RESPONSE:** SHFL does not contest that the cited materials support Plaintiffs' assertion that DigiDeal initiated reexamination proceedings before the PTO of the '982 and '935 patents in January 2014 and that in April 2014 the parties entered into a Stipulation and Order to Stay under which DigiDeal agreed not to sell and to recall any previously placed DigiShuffles and, in return, SHFL agreed to stay the DigiDeal litigation pending the reexamination proceedings. SHFL

22

disagrees that the cited materials support any other assertion in Plaintiffs' AF 36, including that any prior art was "withheld" from DigiDeal. Responding further, Tyler Kuhn, DigiDeal's Vice President, testified that he was familiar with the Roblejo and Luciano prototypes, the prior art Plaintiffs assert was withheld, before DigiDeal filed the reexamination proceedings before the PTO. (Appx. Ex. 41 (2/1/17 T. Kuhn Dep.) at 164:24-165:25, 175:3-176:8.) Mr. Armitage's proffered opinions do not support Plaintiffs' assertions in this AF paragraph because those opinions are inadmissible for the reasons explained in SHFL's summary judgment reply.

37. After the reexaminations were filed, DD's counsel learned from Mr. Luciano that SHFL was concealing the Luciano Shuffler and, after demanding the information from SHFL and advising Mr. Anderson that the Luciano Shuffler anticipated the asserted claims, SHFL continued to conceal the requested information about the Luciano Shuffler that existed on the Shuffler Art discs, calling DD's counsel's attempts to get this discovery a "frolic and detour". PX167 (Kerr letter demanding production of Luciano information); PX141.2 (Anderson saying Kerr's request is a "frolic and detour" and the information is irrelevant); PX141.1 (Kerr stating the information invalidating the asserted patents has been improperly withheld for over a year and that SHFL also concealed it from the PTO); PX141 (Anderson maintains it is irrelevant and says Kerr is wasting his time); Armitage Dec. ¶ 25, Ex. 1 ¶¶ 522-529.

**RESPONSE:** SHFL does not contest that the cited materials support Plaintiffs' assertion that an exchange of correspondence occurred between SHFL's counsel and DigiDeal's counsel or the content of that correspondence. SHFL disagrees that the cited materials support any other assertions in Plaintiffs' AF 37, including that SHFL concealed from DigiDeal the Luciano prototype or any information about the Luciano prototype. Tyler Kuhn, DigiDeal's Vice President, testified that he was familiar with the Luciano prototype before DigiDeal filed the reexamination proceedings before the PTO. (Appx. Ex. 41 (2/1/17 T. Kuhn Dep.) at 164:24-165:25, 175:3-176:8.) Moreover, SHFL produced to DigiDeal Lawrence Luciano's deposition transcript from the MP Games litigation. (PX141.3.) Mr. Armitage's proffered opinions do not support Plaintiffs' assertions in this AF paragraph because those opinions are inadmissible for the reasons explained in SHFL's summary judgment reply.

23

38.     Plaintiffs filed the instant antitrust Complaint on April 28, 2015 while the '982 and '935 reexaminations were still pending, which notified SHFL that it had withheld the invalidating prior art shufflers in the original '982 and '935 prosecution and that SHFL and its attorneys, including Mr. Fanucci, were currently concealing the Nicoletti, Roblejo and Luciano Shufflers in the reexaminations.  PX35 (Amended Complaint ¶¶ 25-50).

**RESPONSE:**  SHFL does not contest that the cited materials support Plaintiffs' assertion that Plaintiffs filed the antitrust Complaint in this action on April 28, 2015, while the '982 and '935 reexamination proceedings were pending, and that the Complaint contains allegations that SHFL withheld and was withholding alleged prior art.

39.     After admitting to the PTO that Ms. Farrar, Mr. Fanucci and Mr. Shin reviewed the withheld prior art identified in the Complaint, SHFL and its attorneys (including Ms. Farrar, Mr. Anderson, Mr. Fanucci and Mr. Shin) together made the conscious decision to continue to conceal the prior art from the PTO in order to obtain reexamined claims it could use to maintain the litigation against DigiDeal.  PX5.1423 & PX6.1328 (NCPs admitting that "patent owner [Farrar] and its patent attorneys [Fanucci and Shin] have reviewed the information in the Complaint" but decided not to disclose the prior art to the PTO).

**RESPONSE:** SHFL disagrees that the cited materials support the assertions in Plaintiffs' AF 39.  The cited materials do not identify what SHFL personnel or outside counsel reviewed the alleged prior art or who made any decisions regarding the alleged prior art.  (*See generally* PX5.1424.)  SHFL did not conceal anything but provided Plaintiffs' entire complaint to the PTO, and also volunteered to submit the information cited in the Complaint "[s]hould the Examiner deem it necessary or desirable to review the information." (PX5.1424; Docket. No. 141 (Plaintiffs' Response to SHFL's 56.1 Statement) at ¶ 85.)  The examiner did not ask SHFL to submit any additional material, with the exception of an amended drawing.  (*See generally* Appx. Ex. 61A-G (U.S. Patent No. 6,651,982 Reexamination File Excerpt); App. Ex. 62A-G (U.S. Patent No. 7,523,935 Reexamination File Excerpts); Docket. No. 141 (Plaintiffs' Response to SHFL's 56.1 Statement) at ¶ 86.)

40.     The stay was lifted in December 2015 and SHFL immediately pressured DigiDeal to settle the litigation on terms that required DigiDeal to admit that the original and reexamined claims were valid and infringed, pay $250,000 to SHFL, and release SHFL from any claims that

24

DigiDeal may have as a result of the litigation.  PX172 (Anderson settlement demand letter after reexamination); Armitage Dec. Ex. 1 ¶¶ 654-655.

**RESPONSE:**  SHFL does not contest that the cited materials support Plaintiffs' assertion that the stipulated stay was lifted in December 2015 and that SHFL's outside counsel, Mr. Anderson, sent a letter to DigiDeal's counsel, James Boyle, in March 2016 proposing that: (1) DigiDeal agree to a stipulated permanent injunction enjoining it from selling or distributing the DigiShuffle devise or any similar card shuffling device; (2) DigiDeal admit that SHFL's original and reexamined patent claims were valid and infringed by DigiDeal; (3) DigiDeal pay SHFL $250,000.00; (4) both parties dismiss their claims and counterclaims; and (5) both parties exchange mutual general releases and covenants not to sue.  (PX172.1-2.)  SHFL disagrees that the cited materials support the remaining assertions in Plaintiffs' AF 40.  Responding further, SHFL's March 2016 letter was a counteroffer to a settlement demand made by DigiDeal in February 2016, in which DigiDeal, among other things, proposed a stipulated permanent injunction.  (PX172.1 ("Thanks for your February 16, 2016 letter. . . . Here is SHFL's counteroffer:"); *see also* Appx. Ex. 105 (11/16/16 J. Boyle Dep.) at 81:10-23 ("[W]e apparently sent a letter to Winston & Strawn somewhere after the new year, and I don't frankly recall what the proposal looked like, but he clearly is responding to that . . . ."); Appx. Ex 106 (2/16/16 Email from J. Boyle) ("I have attached a letter of today's date regarding my client's proposal to resolve the litigation with SHFL entertainment Inc. I look forward to your word on the proposal and to discussion a framework for agreement on settling the case.").)  Mr. Armitage's proffered opinions do not support Plaintiffs' assertions in this AF paragraph because those opinions are inadmissible for the reasons explained in SHFL's summary judgment reply.

41.    After the stay was lifted, SHFL continued to conceal from DigiDeal the Shuffler Art discs, including all of the information in its possession on the withheld Nicoletti, Roblejo and Luciano Shufflers that invalidated the amended and new claims issued from the reexaminations. PX 1016.196-219, 223-231, 236-237, 241-251, 254-255 (Marie Kerr Dep denying receipt of

25

evidence of the Roblejo and Luciano Shufflers); Curley Dec. ¶¶ 57-75 (showing invalidity of the reexamined claimed over the concealed references).

**RESPONSE:** SHFL disagrees that the cited materials support the assertions in Plaintiffs' AF 41. Tyler Kuhn, DigiDeal's Vice President, testified that he was familiar with the Luciano prototype before DigiDeal filed for re-examination proceedings before the PTO. (Appx. Ex. 41 (2/1/17 T. Kuhn Dep.) at 164:24-165:25, 175:3-176:8.) Likewise, SHFL produced Lawrence Luciano's deposition transcript from the MP Games litigation. (PX141.3.) The cited testimony by Ms. Kerr only shows that there was a discovery dispute between the parties and Ms. Kerr never moved to compel on behalf of DigiDeal.

42. DigiDeal then moved for attorney fees and costs with no knowledge of the fact that SHFL had been concealing the prior art on the Shuffler Art discs from DD and the PTO. PX821 (motion for costs); PX822 (motion for fees); PX1014.19, 106 (Boyle Dep).

**RESPONSE:** SHFL does not contest that the cited materials support Plaintiffs' assertion that DigiDeal filed its Motion for Attorneys' Fees (PX822) on April 13, 2016. SHFL disagrees that the cited materials support any remaining assertions in Plaintiffs' AF 42. Responding further, James Boyle, counsel for DigiDeal who filed the Motion for Attorneys' fees, testified that he was aware of the Complaint in this action, including from communications with Plaintiffs' counsel in this case in the spring of 2015. (Appx. Ex. 105 (11/16/16 J. Boyle Dep.) at 10:2-12:3.) Moreover, Mr. Boyle testified that, in early 2015, "it was communicated to me that there may be some resources available for examination of the prior art and the patents in issue and the accused device in Nevada [sic] that we might be able to utilize. And I remember making a note of that, and that was the end of that because I never—we never did anything with it." (Appx. Ex. 105 (11/16/16 J. Boyle Dep.) at 14:1-15:4.)

43. In SHFL's May 2 Opposition to DigiDeal's Motion for Attorneys' Fees, Mr. Anderson and Mr. Shin falsely represented to the Nevada court that SHFL "disclosed *all* material prior art of which it was aware" to the PTO and that "SHFL fully complied with its discovery obligations." PX823.16, 18 (SHFL's opposition to fee motion stating "SHFL disclosed

all material prior art" in the reexaminations and "fully complied" with its discovery obligations); PX 1016.196-219, 223-231, 236-237, 241-251, 254-255 (Marie Kerr Dep, denying receipt of evidence of the Roblejo and Luciano Shufflers).

**RESPONSE:** SHFL does not contest that the cited materials support Plaintiffs' assertion that SHFL stated, in its May 2, 2016 Opposition to DigiDeal's Motion for Attorneys' Fees, that it "disclosed *all* material prior art of which it was aware, including all the rejection references on which the reexaminations were based" (PX823 at 16), and that it "fully complied with its discovery obligations, and strictly adhered to every Court order and Local Rule." (*Id.* at 18.) SHFL further noted that "DigiDeal filed no motions to compel or for sanctions or alleged any other misconduct during discovery." (*Id.*) SHFL disagrees that the cited materials support any remaining assertions in Plaintiffs' AF 43, including that any of these representations by SHFL were false.

44. The court denied the fee motion without any knowledge of the fact that SHFL had the prior art since at least 1997 and had concealed it from DigiDeal, the courts, and the PTO. PX158 (denial of fee motion). See also AF42, 43, 45 and 47.

**RESPONSE:** SHFL does not contest that the cited materials support Plaintiffs' assertion that the Nevada court denied DigiDeal's Motion for Attorneys' Fees for the reasons stated in the court's order. The remainder of Plaintiffs' AF 44 constitutes improper legal argument and conclusions that are unsupported by the cited materials.

45. As a result of SHFL's concealment (see AF37, 41-44), DigiDeal did not assert *Walker Process* fraud or *PRE* sham litigation in its §285 motion or assert any inequitable conduct allegations in its answer, counterclaim, or affirmative defenses. PX873 (DigiDeal Answer); PX822 (motion for fees); PX 1016.196-219, 223-231, 236-237, 241-251, 254-255 (Marie Kerr Dep, denying receipt of evidence of the Roblejo and Luciano Shufflers); PX1014.19, 106 (Boyle Dep).

**RESPONSE:** SHFL does not contest that the cited materials support Plaintiffs' assertion that DigiDeal did not assert claims concerning *Walker Process* fraud or *PRE* sham litigation in its Motion for Attorneys' Fees, and SHFL does not dispute that DigiDeal did not assert any inequitable conduct allegations in its answer, counterclaim, or affirmative defenses. The

27

remainder of Plaintiffs' AF 45 constitutes improper legal argument and conclusions that are unsupported by the cited materials. Plaintiffs have not cited any materials that reveal, identify, or explain why DigiDeal did not assert any inequitable conduct or sham litigation claims at any stage of the Nevada DigiShuffle litigation. The cited portions of Ms. Kerr's deposition testimony concern discovery disputes between DigiDeal and SHFL and her descriptions of documents presented to her as deposition exhibits. Mr. Boyle, DigiDeal's attorney in the Nevada litigation, testified that he knew "there may be some resources available for examination of the prior art and the patents in issue and the accused device in Nevada [sic] that we might be able to utilize" but that "I never—we never did anything with it." (Appx. Ex. 105 (11/16/16 J. Boyle Dep.) at 14:1-15:4.)

46.     SHFL specifically noted and argued the absence of any inequitable conduct allegations by DigiDeal in SHFL's Opposition to DigiDeal's §285 motion. PX823.14 (SHFL's Opp. to motion for fees, p. 9, fn. 3).

**RESPONSE:**  SHFL does not contest that the cited materials support Plaintiffs' assertion that in its Opposition to DigiDeal's Motion for Attorneys' Fees, SHFL accurately noted that "DigiDeal did not plead that SHFL improperly failed to disclose to the USPTO material prior art during the prosecution of either SHFL patent or assert the affirmative defense of inequitable conduct." (PX823 at 9, n.3.)  SHFL also argued that "This theory consequently cannot reflect any substantive weakness in the litigation." (*Id.*)

47.     As a further result of SHFL's concealment, (see AF37, 41-44) neither DigiDeal's §285 Motion nor its Reply Brief discussed the Nicoletti Shuffler, the Roblejo Shuffler or the Luciano shufflers at the core of Plaintiffs' antitrust case other than the mention of the Luciano shuffler in the emails comprising Exhibit F to its Reply brief (PX874.79-83) showing SHFL's refusal to produce such information in discovery. See AF 37, 41-45; PX 1016.196-219, 223-231, 236-237, 241-251, 254-255 (Marie Kerr Dep, denying receipt of evidence of the Roblejo and Luciano Shufflers); PX1014.19, 106 (Boyle Dep).

**RESPONSE:**  SHFL does not contest that the cited materials support Plaintiffs' assertion that DigiDeal's briefings on its Motion for Attorneys' Fees do not discuss, identify, or refer to the

28

Nicoletti prototype, the Roblejo prototype, or the Luciano prototype. The remainder of Plaintiffs' AF 47 constitutes improper legal argument and conclusions that are unsupported by the cited materials. Plaintiffs have not cited any materials that reveal, identify, or explain why DigiDeal did not assert any inequitable conduct or sham litigation claims at any stage of the Nevada litigation. The cited portions of Ms. Kerr's deposition testimony concern discovery disputes between DigiDeal and SHFL and her descriptions of documents presented to her as deposition exhibits. DigiDeal's attorney testified that "there may be some resources available for examination of the prior art and the patents in issue and the accused device in Nevada [sic] that we might be able to utilize," but that he "never … did anything with it." (Appx. Ex. 105 (11/16/16 J. Boyle Dep.) at 14:1-15:4.)

48.     SHFL moved to strike any new evidence or arguments submitted in DigiDeal's §285 Reply Brief, arguing that any such submissions not included in DigiDeal's initial §285 brief were improper and that any reliance on them had been waived. PX24 (SHFL Mot. to Strike).

**RESPONSE:** SHFL does not contest that the cited materials support Plaintiffs' assertion in Plaintiffs' AF 48.

49.     DigiDeal contractually assigned its claim for damages and attorney's fees to Shuffle Tech on July 22, 2013 (PX729.10, First Amendment) and reaffirmed that assignment in the settlement of the Eastern District of Washington breach of contract lawsuit brought by DigiDeal against Shuffle Tech and Poydras. PX26.2-4 (Washington Settlement).

**RESPONSE:** SHFL disagrees that the cited materials support the assertions in Plaintiffs' AF 49. SHFL does not contest that the cited materials support the assertion that pursuant to the "First Amendment to Patent and Technology License and Sublicense Agreement," dated July 22, 2013, DigiDeal and Poydras-Talrick agreed that Shuffle Tech "shall be entitled to any reimbursement for fees and expenses and/or other damages resulting from the present patent infringement litigation payable by SHFL to any of the Parties; the Parties shall cooperate with Licensor as required to pursue reimbursement of fees and other damages against SHFL." (PX729

at 10.) For the reasons explained in SHFL's summary judgment reply brief, this is not an assignment under applicable Arizona law. SHFL also does not contest that the cited materials support the assertion that the "Settlement Agreement, Assignment of Claim, and Mutual General Release" ("Settlement Agreement") executed among Shuffle Tech, Richard Schultz, Poydras-Talrick, and DigiDeal provided that DigiDeal reaffirmed the purported assignment "of all of DigiDeal's right, title and interest in and to all claims of any kind DigiDeal against Scientific Games Corporation, Bally Gaming Inc., and/or SHFL Entertainment, Inc. … resulting from the Nevada Litigation including, but not limited to, the claims set forth in Shuffle Tech's Amended Complaint against Scientific in the Illinois Litigation, as well as the right to recover the $225,000 paid pursuant to the above-recited contractual provisions and this Settlement Agreement." (PX26 at 4.) The Settlement Agreement, however, excludes from the purported assignment the then-pending motion for attorneys' fees, and costs awarded to DigiDeal in the Nevada Litigation and "any future award to DigiDeal for recovery of attorneys [sic] fees related to any appeal in the Nevada Litigation that has been directly incurred by DigiDeal and not paid for or reimbursed by Shuffle Tech or Poydras-Talrick." (*Id.*) The remainder of Plaintiffs' AF 49 constitutes improper legal argument and conclusions that are not supported by the cited materials.

50. Although DigiDeal's attorney, James Boyle was completely unaware of the above assignment at the time he filed the §285 motion, Defendants were aware of the assignment but did not notify the Nevada court per Local Rule 7-2.1 (PX880) or seek to join Shuffle Tech under Fed. R. Civ. P. 19. PX1014.102-103, 105-106, 163-165 (Boyle Dep); see also D.E. 43 (Pl. Opp. to Mot. to Dismiss at pp. 3, n. 3, pp. 5, 7, Exh. B, p. 10); D.E. 46 (Def. Reply ISO Mot. To Dismiss, p. 3); D.E. 50 (Am. Complaint at ¶26, n. 3); D.E. 133 (Def. Memo. ISO SJ at p. 4, citing "Dkt [D.E.] 43 at 7").

**RESPONSE:** SHFL disagrees that the cited materials support the assertions in Plaintiffs' AF 50. For the reasons explained in SHFL's summary judgment reply and above, DigiDeal had not assigned its rights to bring a Section 285 motion before doing so. James Boyle, DigiDeal's

attorney, testified that he had "no idea what the underlying contractual obligations were for the payment of fees" as between DigiDeal and Shuffle Tech. (PX1014 at 106:9-11.)

51. By the time DigiDeal's attorney's fee motion was filed, DigiDeal had sued Shuffle Tech and Poydras in the Eastern District of Washington for breach of their licensing agreements arising out of their DigiShuffle business venture, which had been irreparably disrupted by SHFL's suit against DigiDeal (PX732, Washington Complaint) making the Plaintiffs adversaries, not allies, with DigiDeal who had previously instructed its former attorneys, the Kerr Group, not to talk to Plaintiffs about the Nevada case. (PX872, M. Kuhn email instructing Marie Kerr to cease communications with parties outside DigiDeal).

**RESPONSE:** SHFL does not contest that the cited materials support Plaintiffs' assertion that on April 13, 2016, DigiDeal had already filed its Complaint in the Washington Litigation, or that on October 16, 2013, Mike Kuhn sent an email to Marie Kerr, copying Matthew Dickson, Peter Macy, Daniel Davila, Steve Crystal, Dave Barrick, Rick Schultz, and Tyler Kuhn, stating that, "Effective immediately, please keep all communications regarding the Shuffle Entertainment's [sic] lawsuit against DigiDeal confidential to Michael or Tyler Kuhn and DigiDeal Corporation." (PX872.) The remainder of Plaintiffs' AF 51 constitutes improper legal argument and conclusions that are unsupported by the cited materials.

52. James Boyle, who replaced Marie Kerr as DigiDeal's attorney in the Nevada litigation brought by SHFL (PX811, Substitution of Counsel), did not represent any of the Plaintiffs in that litigation, or in the Washington breach of conduct litigation, and had no communications with Shuffle Tech or its CEO, Richard Schultz, or anyone else affiliated with Shuffle Tech about DigiDeal's §285 motion. PX1014.19, 106 (Boyle Dep).

**RESPONSE:** SHFL does not contest that the cited materials support Plaintiffs' assertion that James Boyle replaced Marie Kerr as DigiDeal's attorney in the Nevada Litigation, that he did not represent any of the Plaintiffs in this action in the Nevada Litigation or in the Washington Litigation, and that Mr. Boyle was not aware of having any communications with Richard Schultz. (PX1014 at 19:9-24.) Responding further, Mr. Boyle communicated with counsel for Shuffle Tech, Mr. Presta, on a number of occasions, in the spring of 2015 and the fall of 2016. (Appx. Ex. 105 (11/16/16 J. Boyle Dep.) at 10:9-17:8.) Moreover, in early 2015, "it was communicated

to [Mr. Boyle] that there may be some resources available for examination of the prior art and the patents in issue and the accused device in Nevada [sic] that we might be able to utilize. And I remember making a note of that, and that was the end of that because I never—we never did anything with it." (Appx. Ex. 105 (11/16/16 J. Boyle Dep.) at 14:1-15:4.)

53. DigiDeal, which was only seeking attorney's fees, not damages and had only two weeks to prepare its §285 attorneys' fee motion (PX822) following the court's grant of summary judgment (PX149), while this case has already taken over two years to prepare and has required the review of over one million pages of documents and nearly 40 depositions all over the United States, requiring time and financial resources that DigiDeal did not have. See D.E. #119, 122 (status reports re document productions and depositions); AF54.

**RESPONSE:** SHFL does not contest that the cited materials support Plaintiffs' assertions that DigiDeal sought attorneys' fees and costs in the Nevada DigiShuffle litigation, but did not seek damages, and that the time to seek fees under Section 285 is two weeks from the entry of final judgment. The remainder of Plaintiffs' AF 53 constitutes improper legal argument and conclusions that are unsupported by the cited materials.

54. DigiDeal's attorney, James Boyle, withdrew from his representation of DigiDeal for lack of payment shortly after the Nevada Court's denial of his motion for attorneys' fees. (PX878 (Motion to Withdraw and Boyle Dec), and DigiDeal was subsequently forced into bankruptcy. See PX879 (E.D. Wash. Bktcy filing).

**RESPONSE:** SHFL does not contest that the cited materials support Plaintiffs' assertion that James Boyle moved to withdraw his representation of DigiDeal on September 22, 2016, stating that his firm "cannot adequately represent DigiDeal with regard to an appeal of this Court's summary judgment order—or any subsequent litigation of this action—in light of DigiDeal's failure to fulfill its financial obligations to" Mr. Boyle's law firm. (PX878 at 2.) SHFL does not contest that the cited materials support Plaintiffs' assertion that DigiDeal filed a Voluntary Petition for Non-Individuals Filing for Bankruptcy in the United States Bankruptcy Court for the Eastern District of Washington. (PX879.) The remainder of Plaintiffs' AF 54 constitutes improper legal argument and conclusions that are unsupported by the cited materials.

32

Dated:  June 14, 2017

Respectfully submitted,

By:  /s/ *Craig C. Martin*
     One of the Attorneys for Defendants

     Craig C. Martin
     David Jimenez-Ekman
     Timothy J. Barron
     JENNER & BLOCK LLP
     353 N. Clark Street
     Chicago, IL 60654-3456
     Tel: 312.222.9350
     Fax: 312.527.0484
     cmartin@jenner.com
     djimenez-ekman@jenner.com
     tbarron@jenner.com
     *Attorneys for Defendants Scientific*
     *Games Corporation, Bally Technologies,*
     *Inc., and Bally Gaming, Inc.*

33

## CERTIFICATE OF SERVICE

I certify that on June 14, 2017 I electronically filed the foregoing DEFENDANTS' RESPONSE TO PLAINTIFFS' LOCAL RULE 56.1(b)(3)(C) STATEMENT OF ADDITIONAL FACTS with the Clerk of Court using the CM/ECF system, which will then send a Notice of Electronic Filing to all counsel of record.

/s/ *David Jimenez-Ekman*