# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SHUFFLE TECH INT'L, LLC, et al., )<br>)<br>Plaintiffs, )<br>)<br>vs. )<br>)<br>SCIENTIFIC GAMES CORP., et al., )<br>)<br>Defendants. ) | Case No. 15 C 3702 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

The plaintiffs in this case allege that the defendants knowingly attempted to enforce invalid patents to suppress competition in the market for automated playing card shufflers, in violation of section 2 of the Sherman Act. The case is set for trial on May 22, 2018. The defendants have moved to bar testimony by three expert witnesses for the plaintiffs. In this order, the Court rules on two of those motions in their entirety and on part of the third.

As a preface, earlier this month the Court granted a request by the defendants to exceed its usual page limits for motions *in limine*, allowing up to 35 pages per side. Because a motion to bar an expert from testifying is a motion *in limine*, the Court understood defendants to be asking for 35 pages to cover all motions *in limine*, concerning experts or otherwise. Defendants instead took the 35 pages to apply only to motions *in limine* that did not involve experts: they filed an omnibus motion *in limine*

with a 35 page memorandum as well as three motions *in limine* concerning experts, with memoranda totaling 39 pages, for a total of 74 pages. Had the Court known that defendants were intending to draw this artificial barrier between expert-related motions *in limine* and other motions *in limine*, it would not have anywhere close to 74 pages. Regardless, the Court finds the briefing on the expert-related motions sufficient to allow determination of the issues, with the exception of one point on one of the motions.

**1.      Standard**

Federal Rule of Evidence 702, which governs the admissibility of expert testimony, states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Under *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993), the district court plays the role of gatekeeper in determining whether proposed expert testimony meets the standards of Rule 702. This involves determining whether the witness is qualified, whether the witness's applied methodology is reliable, and whether the testimony will assist the trier of fact to understand the evidence or determine a fact in issue. *Myers v. Ill. Cent. R.R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010).

In determining the reliability of an expert's opinion, "[t]he focus ... must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595. "The soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be determined by the [jury]." *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000). An expert, however, must provide a reliable basis for the conclusions he reaches. A expert must "employ[ ] in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). A court may properly exclude "opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

The proponent of expert testimony bears the burden of establishing, by a preponderance of the evidence, that the testimony satisfies the requirements of the Rules of Evidence and *Daubert*. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009). When determining whether the proponent has met that burden, however, a court must be mindful that "[a] Daubert inquiry is not designed to have the district judge take the place of the jury to decide ultimate issues of credibility and accuracy." *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 805 (7th Cir. 2012). If the credibility or accuracy of an expert opinion is in question, the proper remedy is not exclusion of the testimony, but rather testing the opinion before the jury using the traditional tools of "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Daubert*, 509 U.S. at 596.

**2.      Dr. Matthew Lynde**

The first witness in question is Dr. Matthew Lynde, an economist with a Ph.D. from the University of California and 35 years of experience, including at the Brookings Institution, the President's Council on Wage and Price Stability, City University of New York, and Price Waterhouse, and currently as a senior vice president of Cornerstone Research, an economic consulting firm. Plaintiffs intend to elicit testimony from Dr. Lynde on a number of issues, including damages.

Defendants challenge one particular aspect of Dr. Lynde's damages testimony, specifically regarding the amount of plaintiffs' claimed lost profits. Dr. Lynde assesses the total size of the market for automated shufflers and plaintiffs' ability to meet that demand; defendants do not challenge the admissibility of this testimony. They challenge only his testimony regarding the quantity of sales and leases within that market that plaintiffs would have made in the "but-for world" in which defendants' alleged wrongdoing had not occurred. Defendants contend that Dr. Lynde's analysis on this point is based almost exclusively on sales goals that plaintiffs themselves set—an insufficiently reliable basis—and that he did nothing to validate or test this figure.

There is little doubt that this is the softest spot in Dr. Lynde's analysis, but that does not make his opinions inadmissible. Part of the problem here is that plaintiffs' theory is that defendants' wrongful conduct prevented them from getting into the market at all, and thus plaintiffs do not have a proven track record of their own from which to generate an reasonable estimate of lost profits. This sort of uncertainty does not preclude an award of damages: "[t]he most elementary conceptions of justice and public policy require that the wrongdoer shall bear the risk of the uncertainty which his

4

own wrong has created," because "[a]ny other rule . . . would be an inducement to make wrongdoing so effective and complete in every case as to preclude any recovery, by rendering the measure of damages uncertain." *Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251, 264, 265 (1946). *See generally BCS Servs., Inc. v. Heartwood 88, LLC*, 637 F.3d 750, 759 (7th Cir. 2011). Nor does it preclude Dr. Lynde's testimony on the point.

Dr. Lynde does not contend that plaintiffs *actually would have* captured the share of the market that his damages calculation is based upon—how can anyone be completely certain what would have happened in the "but-for world"? Rather, he takes the sales quotas in the agreement in question as an assumption upon which he bases his lost profits determination. *See* Lynde Report at 36 ("[M]y analysis calculates the lost profits from 2013-2017 assuming the sham litigation did not occur and that Plaintiffs sold only 400 units in 2013 and then met just their planned *minimum* sales/lease quota thereafter.") (emphasis in original). It will be for the jury to decide whether plaintiffs' contention regarding the sales they would have made but for defendants' conduct is sufficiently supported by the evidence to serve as a basis for a damage award.

An expert cannot appropriately base his opinion on an assumption that has no reasonable basis in the record. Dr. Lynde, however, adequately supports the proposition that it is reasonable to believe that plaintiffs would have been able to meet the sales quotas. He did not "rote adopt[ ]" these figures as defendants contend, *see* Defs.' Mem. at 8; instead, he explained in detail the thinking behind his opinion that the sales quotas represented a reasonable (or reasonably conservative) estimate of the sales plaintiffs actually would have been able to make. He tested this by reference to

5

initial commitments and feedback that plaintiffs received from potential customers; sales data showing the market share achieved by another automatic card shuffler supplier before it was acquired by defendants; and a study and business plan prepared contemporaneously by an investment and consulting firm retained by one of the plaintiffs. Dr. Lynde did not rely, as defendants contend, on "intuition." *See Zenith Elecs. Corp. v. WH Broad. Corp.*, 395 F.3d 416, 419 (7th Cir. 2005). And defendants have not identified in their motion any data that Dr. Lynde should have used to determine lost sales but did not. Defendants contest the reasonableness of Dr. Lynde's assumptions and opinions, but this is not a basis for excluding his testimony; rather, these points are appropriately challenged by cross-examination and presentation of contrary evidence.

Defendants also contend that Dr. Lynde failed to adequately rule out other explanations for plaintiffs' alleged damages, including technical problems with their automatic shuffler model, problems obtaining funding, and market prices. This argument does not make a great deal of sense as a basis for excluding Dr. Lynde's testimony as opposed to discounting its weight, an issue for the finder of fact. The patent litigation in question led to a stay order that prevented plaintiffs from selling or field-testing their product. Defendants' first two points are in effect arguments that even without the patent litigation that defendants initiated against plaintiffs, plaintiffs would not have been able to get to market or would have sold less. That is likely best characterized as an argument about proximate cause; it is not a basis to exclude Dr. Lynde's opinion. That aside, plaintiffs have evidence that would permit a reasonable jury to find that the funding problems and the unfulfilled need for further development of

6

the product were a result of the patent litigation and thus were not independent of the alleged antitrust violation. And the last factor defendants cite—pricing—is at most a basis to quarrel with Dr. Lynde's figures, not the admissibility of his testimony.

For these reasons, the Court denies defendants' motion to bar damages testimony by Dr. Lynde.

**3.    William Zender**

The second expert witness whose testimony defendants challenge is William Zender, who will provide testimony regarding why casinos prefer machine shuffling of cards to hand shuffling; why casinos are unlikely to use pre-shuffled cards as a substitute for shuffling machines; and why casinos will not substitute electronic table games for games that use decks of playing cards. *See* Pls.' Resp. to Defs.' Mot. to Exclude Testimony of William Zender at 3. Zender is a former enforcement officer with the Nevada Gaming Commission. He has 35 years of experience in the casino industry and has worked as a dealer, pit boss, floor manager, owner, operator, director, and board member at casinos. In addition, he has consulted and lectured extensively on casino table gaming and card shuffling issues and has authored publications and taught courses on these topics. The Court concludes that Zender is sufficiently qualified to testify on the points on which plaintiffs offer him.

Defendants contend that Zender has identified no methodology supporting his opinions and that this is a basis to preclude his testimony. The Court disagrees. Not all experts testify about topics that involve application of scientific or other established methodology, nor is that a requirement of the Federal Rules of Evidence or *Daubert*. As the advisory committee notes to Rule 702 state, "[i]n certain fields, experience is the

predominant, if not sole, basis for a great deal of reliable expert testimony." Fed. R. Evid. 702, 2000 adv. comm. notes. The Supreme Court has also recognized that an expert may appropriately "draw a conclusion from a set of observations based on extensive and specialized experience." *Kumho Tire Co.*, 526 U.S. at 156.

Zender's extensive experience in the casino industry provides a more-than-sufficient basis for him to render opinions on the topics in question. In addition, Zender's report sufficiently explains the basis for his conclusions; he does not simply provide an unsupported "bottom line." Finally, the Court overrules defendants' contention that Zender is doing little more than communicating hearsay. It is true that certain aspects of his opinions are based on what he has learned in the business, and some of that may include matters that he has been told by others. But that does not make his opinions inadmissible. The same likely could be said about *any* expert whose testimony is based on experience rather than science, but as indicated experience-based testimony is admissible if adequately supported (as Zender's is). And to the extent Zender is relying on what he has been told by others during his decades working in the business, the Rules make it clear that an expert may rely on otherwise inadmissible facts or data if experts in his field would reasonably do so (which is the case here), *see* Fed. R. Evid. 703. It may be a different matter whether plaintiffs, as the proponent of Zender's testimony, may communicate any such otherwise inadmissible evidence to the jury, *id.*, but that is an issue for another day.

For these reasons, the Court denies defendants' motion to preclude Zender's testimony.

### 4. Charles Curley

The third expert whose testimony defendants ask the Court to bar is Charles Curley, who has degrees in mechanical and electrical engineering as well as a great deal of relevant experience (defendants do not challenge his qualifications). Curley's ultimate opinion—or at least the opinion that defendants challenge—is that the two key patents that defendants sought to enforce are invalid because certain materials that the applicants failed to submit to the patent office during prosecution of the patent anticipated the invention within the meaning of 35 U.S.C. § 102 or made it obvious within the meaning of 35 U.S.C. § 103.

Defendants challenge the admissibility of Curley's opinions on four points. The first is that he has not provided a construction of the relevant patent claim terms. The Court will need to hear further argument on this point at the final pretrial conference.

Second, defendants contend that in rendering his opinion regarding anticipation, Curley improperly relied on more than one prior art reference. In order to establish that a patent is invalid as anticipated, each and every element in the claim must be found either expressly or inherently in a single prior art reference. *See, e.g., Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 21 (Fed. Cir. 2012). Defendants say that Curley ran afoul of this basic precept by citing multiple sources to support his opinion regarding anticipation. The Court disagrees. As plaintiffs argue, Curley does not cite prior art references that are separate from the Roblejo and Nicoletti prototypes and their public use or demonstration; rather, he cites several items of evidence concerning the features of those prototypes and their public use. This is not an inappropriate means to determine anticipation.

Defendants also contend that Curley's analysis of the issue of obviousness is deficient and therefore inadmissible. A claimed invention is unpatentable under section 103 "if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious" to a person with ordinary skill in the field of the invention. 35 U.S.C. § 103. In determining obviousness, consideration is given to the scope and content of the prior art; differences between the prior art and the patent claims at issue; the level of ordinary skill in the relevant field; and any objective indicia of non-obviousness—sometimes called "secondary considerations." *See, e.g., Intercontinental Great Brands LLC v. Kellogg N. Am. Co.*, 869 F.3d 1336, 1343 (Fed. Cir. 2017). Another consideration involves "whether the relevant skilled artisan had a motivation to combine pieces of prior art in the way eventually claimed in the patent at issue." *Id.*

Defendants argue that Curley's obviousness analysis is incomplete because it omits discussion of the question of motivation to combine items of prior art and of relevant secondary considerations. The Court disagrees. First, Curley's report adequately discusses motivation to combine. Defendants characterize his analysis as consisting of "limited explanations." Defs.' Mem. in Support of Mot. to Exclude testimony of Charley M. Curley at 9. But, as plaintiffs argue, Curley has identified specific combinations of elements in prior art references along with explanation of why a person with ordinary skill in the field would have combined them. This is sufficient to render the opinions admissible; defendants' points involve the weight to be given to Curley's opinion, not its admissibility.

On the question of secondary considerations, Curley's report makes it clear that

he took them into account and concluded that they did not outweigh what he considered to be strong evidence of obviousness. The law is clear that secondary considerations are not necessarily dispositive. *See, e.g., Pfizer, Inc. v . Apotex, Inc.*, 480 F.3d 1348, 1372 (Fed. Cir. 2007) ("Although secondary considerations must be taken into account, they do not necessarily control the obviousness conclusion.").

Defendants' fourth point concerning Curley is that his opinions that the Roblejo and Nicoletti prototypes constituted public uses under 35 U.S.C. § 102 is insufficiently supported in the record. Defendants' argument largely consists of picking at particular items of evidence that Curley has marshaled in support of his opinions on this point and trying to show why his opinions will not carry the day on the anticipation issue. *See* Defs.' Mem. in Support of Mot. to Exclude testimony of Charley M. Curley at 13-15. These contentions may appropriately be used on cross examination or otherwise to diminish the weight to be given to Curley's opinions, but they do not impact its admissibility. Curley's report reflects that he relied on evidence, including a sworn affidavit and deposition testimony, that provide sufficient support for his opinions on the public use question.

In sum, the Court needs to hear argument on the first of defendants' four points regarding Curley but overrules the other three as bases for excluding his testimony.

**Conclusion**

For the reasons stated above, the Court denies defendants' motion to exclude testimony by Matthew Lynde [dkt. no. 206] and their motion to exclude testimony by William Zender [dkt. no. 203] and defers ruling on their motion to exclude testimony by

Charles Curley [dkt. no. 200] pending further argument as described in this decision.

Date: April 28, 2018

_____
MATTHEW F. KENNELLY
United States District Judge