IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Shuffle Tech International, LLC, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>Scientific Games Corporation, et al.,<br><br>Defendants. | Civil Action No. 1:15-cv-3702<br><br>Honorable Matthew F. Kennelly |

## PLAINTIFFS' OFFER OF PROOF ON OTHER LITIGATION

Plaintiffs offer evidence regarding certain prior SHFL litigations in order to demonstrate SHFL's knowledge of and repeated contact with three prior art references (Luciano shuffler, Nicoletti shuffler, and Roblejo shuffler) that Plaintiffs allege were concealed from the PTO during prosecution of the '935 patent, the re-examinations of the '982 and '935 patents, and during discovery in the DigiDeal litigation. The evidence shows SHFL's repeated awareness of these prior art references during the prosecution of the '935 patent, SHFL's awareness of them prior to filing suit asserting the '982 and '935 patents against DigiDeal, and SHFL's awareness of them during prosecution of the '982 and '935 reexaminations and in post-reexamination proceedings in the DigiDeal litigation. The specific evidence that Plaintiffs intend to present is as follows:

### I. CARD Litigation

1. Mr. Jerome Smith will testify that he had primary responsibility within SHFL for the litigation against CARD, and that Ms. Farrar, the only IP attorney at SHFL during this time period, assisted him with the patent issues arising in the litigation.

2. Mr. Smith will testify that expedited discovery was sought by SHFL in connection with its preliminary injunction motion.

3. Mr. Attila Grauzer, the main inventor listed on the '982 and '935 patents asserted against DigiDeal, will testify that he acted as SHFL's shuffler expert in the CARD litigation and provided a declaration in support of the motion for preliminary injunction in which he explained his views of the infringement of the asserted patents, including the '751, '750, '154, '248 and '014 patents.

4. Mr. Joel Greenberg will testify that he was hired by CARD to act as its expert in the CARD litigation, and that he provided declarations (an original and two supplemental declarations) and claim charts in the litigation in which he gave opinions on the invalidity of the asserted patents based, in part, on the Nicoletti, Roblejo, and Luciano shufflers.

5. Mr. Greenberg will also testify that he relied on a declaration by Mr. Luciano for his understanding of the Luciano shuffler and a declaration by Mr. Gola for his understanding of the Nicoletti and Roblejo shufflers.

6. Mr. Larry Luciano will testify that he was contacted by CARD and asked to provide a declaration describing structure, operation, and marketing of his Luciano shuffler, and that he provided the declaration, including numerous exhibits showing and describing his shuffler, the history of its development, his marketing efforts, and a video showing the Luciano shuffler in operation. Mr. Luciano will testify that this declaration was produced to SHFL.

7. Mr. Steven Gola will testify that he was contacted by CARD to provide a declaration on the Nicoletti shuffler and the Roblejo shuffler, and that he provided a declaration describing the structure and operation of the shufflers and the public use of the Nicoletti shuffler in 1990 at Bally's Casino and the public use of the Roblejo shuffler at the 1997 G2E tradeshow in Las

Vegas, as well as providing some pictures that he had showing the Roblejo shuffler. Mr. Gola will testify that this declaration was produced to SHFL.

8. Mr. Grauzer or Mr. Greenberg will testify that Mr. Grauzer provided a declaration that was filed in the case rebutting Mr. Greenberg's declaration on the invalidity of the claims based on Mr. Grauzer's review and understanding of the information provided on the Nicoletti, Roblejo, and Luciano shufflers, and that one of the main issues in dispute was whether the prior art, including Nicoletti, Roblejo, and Luciano, showed multiple cards in a shuffling compartment.

9. Mr. Greenberg will testify that he was deposed by SHFL on his declaration and invalidity opinions regarding the Nicoletti, Roblejo, and Luciano Shufflers, and that Grauzer, Mark Litman (SHFL's outside prosecution counsel in charge of the '935 prosecution), and Smith attended Mr. Greenburg's deposition, and that Mr. Greenburg explained that the Nicoletti shuffler was built into the table, and that both the Nicoletti and the Roblejo shufflers used a shuffling wheel that held multiple cards per compartment.

10. Mr. Greenberg or Mr. Armitage will testify that the CARD court found that all of the asserted claims were either invalid or not infringed, based in part on the Luciano shuffler – with the exception of claim 2 of the '751 patent. As to that claim, the court found it was likely infringed and found that CARD did not have sufficient evidence to corroborate Mr. Gola's declaration regarding the Roblejo shuffler. Therefore, the Roblejo shuffler could not be used as an invalidating reference, resulting in a preliminary injunction based solely on claim 2 of the '751 patent.

11. Mr. Greenberg will explain that, within days of the entry of the preliminary injunction, CARD located Mr. Solberg (the engineer who designed and built the Roblejo shuffler

3

based on the Nicoletti shuffler) and attempted to use this new evidence to corroborate Mr. Gola's declaration and overturn the preliminary injunction based on claim 2 of the '751 patent being invalid over the Nicoletti and Roblejo shufflers.

12. Mr. Solberg will testify that he provided a declaration, including design drawings and pictures, confirming the structure and operation of both the Nicoletti shuffler and the Roblejo shuffler, which confirmed that both of these shufflers anticipated claim 2 of the '751 patent on which the preliminary injunction was based. Mr. Solberg will testify that his declaration was produced to SHFL.

13. Mr. Solberg will also explain that SHFL took his deposition for two days, and that he brought the actual Nicoletti shuffler and the Roblejo shuffler to the deposition and answered questions about their structure and operation. Mr. Smith attended both days of Mr. Solberg's deposition, wherein Mr. Solberg showed and explained that the Nicoletti shuffler was built into the table and used a shuffling wheel that held multiple cards per compartment.

14. Mr. Armitage will explain that the litigation records reflect that SHFL's counsel and its expert inspected the Nicoletti and Roblejo shuffler for 20 hours during the CARD litigation.

15. Mr. Solberg will also testify that a video of the Nicoletti shuffler was produced by CARD's attorney, and that Mr. Solberg verified the accuracy of the information shown in the video through a declaration he submitted in the CARD litigation.

16. Mr. Greenberg or Mr. Armitage will testify that CARD filed a request for reconsideration of the preliminary injunction based on the newly discovered evidence from Mr. Solberg, including the video of the Nicoletti shuffler, but the court refused to reconsider the motion, stating that is was too late to provide new evidence. Consequently, the preliminary injunction remained in place.

17. Mr. Armitage will explain that, after denial of the request for reconsideration of the preliminary injunction, SHFL made a late and supplemental document production in which it produced a brochure of the Roblejo shuffler made available at the 1997 trade show and an internal SHFL memorandum detailing shuffling machines seen by SHFL at the 1997 trade show, including the Roblejo shuffler.

18. Mr. Brooke Dunn will testify that Mr. Grauzer was at the 1997 show, and Ms. Farrar will testify that Mr. Grauzer was likely the author of the report.

19. Mr. Armitage will testify that CARD's filed motions indicate that SHFL's late production had prevented CARD from properly defending against the preliminary injunction, and that the information withheld indicated that SHFL (including at least Grauzer and Litman) had not disclosed the Roblejo shuffler brochure or what SHFL learned about the Roblejo shuffler at the 1997 show when prosecuting four of the five asserted patents, including the '751 patent, in violation of their disclosure obligations.

20. Mr. Armitage will testify that CARD filed a motion to amend its Answer to add detailed allegations of inequitable conduct, specifically accusing at least Grauzer and Litman of defrauding the PTO by concealing the Roblejo shuffler when prosecuting four out of five of the asserted patents, including the '751 patent.

21. Mr. Armitage will testify that CARD promptly served further discovery requests directed to the 1997 show requesting information on who from SHFL attended the show, who saw the Roblejo shuffler, and who obtained the brochure and wrote the report on shuffler competition. He will also testify that the earlier discovery request for prior art and SHFL's responses thereto indicate that it would produce prior art that it possessed in accordance with the request.

22.   Ms. Jennifer Farrar, SHFL's in-house attorney in charge of the '935 prosecution, will testify that she attended the 1997 trade show in order to monitor shuffler competition and saw the Roblejo shuffler at the show, and that, throughout the CARD litigation, she had files that had not been produced to CARD that she maintained on prior art collected at trade shows, including the brochure on the Roblejo shuffler from the 1997 trade show. She will testify that SHFL had numerous copies of the brochure and report in various files maintained by the company, including in Mr. Grauzer's personal files (which he will confirm in his testimony).

23.   Mr. Gola will testify about a memorandum he wrote just after the 1997 show explaining how representatives from SHFL had throughout the entire show looked at the Roblejo shuffler. He will also testify about other contemporaneous business records that indicate that SHFL had previously inspected the Nicoletti shuffler as well.

24.   Mr. Solberg will testify that the Roblejo shuffler was provided with transparent sidewalls at the show so that the public could see inside the machine in order to demonstrate the operation of the shuffling wheel that held multiple cards per compartment.

25.   Mr. Armitage will testify that allegations of inequitable conduct are taken very seriously by a company and its legal department, and that a thorough investigation would typically be conducted to get to the bottom of the issue to avoid exposing the company to such allegations again in the future, and that the review would typically involve the in-house and outside prosecution counsels and anyone else potentially involved with the allegation, including the inventors on the application.

26.   Mr. Armitage will testify how, if the inequitable conduct allegations turned out to be true, it could have adverse consequences for SHFL's shuffler patent portfolio, as the involved patents were in three of its main shuffler patent families.

27. Mr. Armitage will testify that the litigation records show that CARD was seeking the depositions of Mr. Roblejo and Mr. Gola to further explore its inequitable conduct allegations against SHFL.

28. Mr. Armitage will testify that, shortly after the inequitable conduct motion, SHFL purchased CARD. He will testify that SHFL entered into a Letter of Intent to purchase CARD and agreed to a standstill of the litigation within about a week after the motion. Mr. Armitage will testify that the approximately $50 million purchase of CARD by SHFL was completed shortly thereafter.

29. Ms. Farrar and Mr. Armitage will testify that, shortly after the CARD litigation was dismissed, Ms. Farrar and Mr. Litman received "Shuffler Art" discs from SHFL's litigation counsel which included all of the information (including the shuffler videos) obtained in the CARD litigation on the Nicoletti, Roblejo, and Luciano shufflers. The purpose of the Shuffler Art discs was for disclosing the prior art to the PTO in SHFL's pending shuffler patent applications over which Ms. Farrar and Mr. Litman had responsibility.

30. Ms. Farrar and Mr. Litman will testify as to their roles in selecting the cases in which they would disclose the Shuffler Art discs, and their filing of notices to the PTO explaining that they were conducting a detailed study of the information on the discs in connection with their duty of disclosure at the PTO.

31. Ms. Farrar will testify that she kept copies of the Shuffler Art disks in her assistant's desk drawer.

32. Mr. Armitage will testify as to the disclosure of the Shuffler Art discs in various pending shuffler applications, including in dozens of applications during the pendency of the '935 application, but not in the '935 application.

7

33. Mr. Armitage will also testify about the timing of the CARD litigation relative to the '935 prosecution and how various statements regarding the state of the prior art were made by Ms. Farrar and Mr. Litman in order to obtain allowance of the '935 claims, even though those statements contradicted the information they possessed on the prior art contained on the Shuffler Art discs.

34. Mr. Armitage will testify that, through the acquisition of CARD by SHFL, CARD ceased doing business as an independent manufacturer of automatic card shufflers and that SHFL acquired CARD's one2six shuffler in the acquisition.

## II. MindPlay Litigations

1. Ms. Farrar will testify that the MindPlay litigations took place after the CARD litigation and during the period of time that the '935 patent (listing Grauzer as an inventor) was pending at the PTO.

2. Ms. Farrar and Mr. Litman will testify that they were responsible for and worked together on prosecuting the '935 application.

3. Correspondence between Ms. Farrar and Mr. Litman will show that they were both substantively involved in the MindPlay litigations.

4. Ms. Farrar will testify that she provided a declaration in support of that litigation, and that both Litman and Grauzer gave depositions.

5. Ms. Farrar or Mr. Armitage will testify that the Luciano shuffler was used by SHFL as an invalidity defense to the allegations of patent infringement asserted by MindPlay against SHFL.

6. Larry Luciano will testify that SHFL took his deposition on the details of his Luciano shuffler, including the development, features, and marketing of the Luciano shuffler.

7. Larry Luciano will testify that, during his deposition, he explained his prior involvement in the CARD litigation and the fact that he provided a declaration and numerous exhibits detailing the structure and operation of his Luciano shuffler, as well as provided a video of his Luciano shuffler.

8. Larry Luciano will testify that SHFL also deposed his brother, Robert Luciano, on the development, features, and marketing of the Luciano shuffler.

9. Larry Luciano will also testify that SHFL's counsel inspected the Luciano shuffler.

10. Mr. Armitage will testify about the timing of the MindPlay litigations relative to the '935 prosecution, SHFL's invalidity contentions based on the Luciano shuffler, and the arguments Ms. Farrar and Mr. Litman made to the PTO during prosecution of the '935 patent regarding the state of the prior art.

11. Mr. Greenberg (CARD's expert in the CARD litigation) will testify that he was hired by SHFL to be its expert on prior art in the MindPlay litigations.

### III. <u>Vending Data Litigation</u>

1. Mr. Kimball Anderson will testify that he represented Vending Data against SHFL in this litigation, and that the asserted patent was the '684 patent, which is a child of the '750 patent asserted against CARD.

2. Documents filed by Mr. Anderson in the litigation will show that Mr. Anderson reviewed the CARD litigation in connection with his representation of Vending Data, which involved the Nicoletti, Roblejo, and Luciano shufflers, and CARD's allegation of inequitable conduct by SHFL for failing to disclose the Roblejo shuffler in the '751, '750, and other patents asserted against CARD.

3. Mr. Armitage will testify that it is standard practice to review litigation involving a parent patent (here the '750) as part of the defense to an allegation of infringement of a child patent (here the '684), since the prior art developed during prior litigations (particularly when allegations of inequitable conduct were raised against the parent patent) could provide a defense against an allegation of infringement of the child patent.

4. Mr. Armitage will testify that SHFL produced to Vending Data in discovery information SHFL obtained in the CARD litigation on the Nicoletti shuffler, the Roblejo shuffler, and the Luciano shuffler, but did not produce the inequitable conduct motion by CARD in the CARD litigation.

5. Mr. Anderson will testify that he filed various pleadings and correspondence where he accused SHFL of engaging in sham litigation and antitrust violations through its patent litigations.

6. Mr. Anderson will testify that he filed pleadings in the Vending Data litigation in which he accused SHFL of being engaged in an illegal monopolistic scheme to sue SHFL's competitors until they "succumb to the pressure to sell out."

7. Mr. Anderson will testify that he filed a pleading in the Vending Data litigation in which referred to a declaration from his client, Vending Data President Mark Newberg, that stated that SHFL's President, Paul Meyer, advised Newberg that SHFL would repeatedly litigate against Vending Data to exhaust Vending Data's funds on legal representation.

8. Mr. Anderson will testify, and the documents will show, that he asserted SHFL was engaged in anticompetitive conduct through the filing of frivolous litigations against its competitors in order to either force them out of the market or acquire them.

9. Mr. Anderson will testify that Vending Data ultimately prevailed in the litigation, but its funds were depleted.

10. Mr. Anderson will further testify that Vending Data's business was shut down and its assets sold to SHFL.

11. Mr. Anderson will testify that, after the Vending Data litigation, SHFL's general counsel approached him and asked him to represent SHFL in connection with its patent litigations.

12. Mr. Anderson will testify that he accepted the offer and later represented SHFL in several litigations, including patent infringement litigations against Taiwan Fugent, TCS Huxley, and DigiDeal, as discussed below.

## IV. Taiwan Fugent ("TWF") Litigation

1. Mr. Eric Abbott, SHFL's in-house litigation counsel, and Ms. Farrar will testify that Ms. Farrar, Mr. Grauzer, and Mr. Litman were involved in the prefiling investigation of the TWF litigation.

2. Mr. Anderson will testify that the complaint in the TWF litigation asserted infringement of the '751 patent (previously asserted in the CARD litigation), as well as two child patents based off the '751 patent.

3. Mr. Anderson will testify that TWF accused SHFL of not performing a proper prefiling investigation.

4. Mr. Anderson will testify that he responded to TWF stating that he reviewed the prefiling investigation and was satisfied that it was done properly.

5. Mr. Armitage will testify that a proper prefiling investigation in this litigation would include review of any prior litigations in which the '751 patent was previously litigated

(including the CARD litigation) to consider prior art, invalidity, and inequitable conduct allegations that were raised in prior litigations, including the issues raised in CARD regarding the Nicoletti, Roblejo, and Luciano shufflers.

6. Documentary evidence, including emails, will show that at least Mr. Anderson, Ms. Farrar, and Mr. Shin where substantively involved with the TWF litigation and corresponded regarding the case and settlement issues.

7. Mr. Armitage will testify regarding evidence from the TWF litigation records, and SHFL's internal documents, that show the involvement of Farrar, Litman, Anderson, Shin, and Grauzer in this litigation.

8. Mr. Anderson will testify that the TWF case settled under terms that required TWF to exit the U.S. market with its shuffler.

9. Mr. Armitage will testify that, after the TWF litigation settled, TWF filed a reexamination of the '751 patent based on the Roblejo Patent, and that Ms. Farrar and Mr. Litman were substantively involved with the '751 reexamination.

10. Mr. Armitage will testify that numerous claims, including claim 2 of the '751 patent on which the preliminary injunction in CARD was based, were found to be unpatentable by the PTO over the Roblejo Patent which, as Mr. Gola will testify, is related to the Roblejo prototype.

11. Mr. Armitage will testify as to the evidence of selective disclosure by Farrar and Litman, who disclosed the Roblejo Patent in various patent applications they were handling while the '751 patent was pending, but did not disclose the Roblejo patent in the '751 patent application.

12. Mr. Armitage will further testify that Farrar and Litman did not disclose Shuffler Art discs or any of the information thereon relating to the Nicoletti, Roblejo, and Luciano shufflers to the PTO in the '751 reexamination.

13. Mr. Curley will testify that the claims that survived the '751 reexamination are invalid over the prior art on the Shuffler Art discs, including the Roblejo, Nicoletti, and Luciano shufflers.

14. Mr. Armitage will testify that the '751 reexamination was still pending and being prosecuted when SHFL filed the DigiDeal litigation.

V. **TCS Huxley Litigation**

1. Mr. Abbott will testify that Mr. Anderson, Mr. Shin, Ms. Farrar, and Mr. Helsen were involved with the prefiling investigation for this litigation.

2. Mr. Anderson will testify that the complaint included an assertion of infringement of the '751 patent (previous asserted in the CARD and TWF litigations), as well as patents related to the '750 patent asserted against CARD and the parent patent of the '751 patent (the '096 patent).

3. Mr. Armitage will testify that, like the '751 patent, none of the Roblejo Patent, Roblejo shuffler, the Nicoletti shuffler, or the Luciano shuffler were disclosed in the '096 patent asserted against Huxley.

4. Mr. Anderson and Mr. Shin will testify that the Huxley prefiling investigation and the filing of the Huxley complaint occurred one month prior to the filing of the litigation against DigiDeal and involved the same people that conducted the prefiling investigation in the DigiDeal litigation.

13

5. Mr. Armitage will testify that a prefiling investigation in the Huxley litigation would have included review of any prior litigations in which the '751 patent was previously litigated (including the CARD litigation) to consider prior art, invalidity, and inequitable conduct allegations that were raised in prior litigations, including the issues raised in CARD regarding the Nicoletti, Roblejo, and Luciano shufflers.

6. Mr. Armitage will also testify that a prefiling investigation would also include a review of the then-pending '751 reexamination to consider the prior art and invalidity issues raised in the '751 reexamination, including the invalidity issues raised regarding the Roblejo patent.

7. Documentary evidence, including SHFL emails, will show that at least Anderson, Farrar, and Shin were substantively involved with the Huxley litigation and corresponded regarding the case and settlement issues.

8. Mr. Armitage will testify regarding evidence from the litigation records and SHFL's internal documents which shows the involvement of Farrar, Litman, Anderson, Shin, and Helsen in the Huxley litigation.

9. Mr. Anderson will also testify that the Huxley case settled under terms that required Huxley to exit the U.S. market with its shuffler.

10. Mr. Helsen will testify that, after the Huxley litigation, he provided declarations in support of patentability in the '982 and '935 reexaminations.

11. Mr. Armitage will testify that the Helsen declarations are contrary to the prior art developed in the CARD litigation, including the Nicoletti and Luciano shufflers.

Dated: May 3, 2018                    Respectfully submitted,


                                      By:/s/ *Jeffery M. Cross*
                                           One of Plaintiffs' Attorneys

                                      Robert A. Rowan (*pro hac vice*)
                                      rar@nixonvan.com
                                      Joseph S. Presta (*pro hac vice*)
                                      jsp@nixonvan.com
                                      NIXON & VANDERHYE P.C.
                                      901 N. Glebe Road
                                      Arlington, VA 22203
                                      Phone:  (703) 816-4000
                                      Fax:    (703) 816-4100

                                      Jeffery M. Cross (IBN 547980)
                                      jcross@freeborn.com
                                      FREEBORN & PETERS LLP
                                      311 S. Wacker Drive, Suite 3000
                                      Chicago, IL 60606
                                      Phone:  (312) 360-6000
                                      Fax:    (312) 360-6520

                                      *Attorneys for Plaintiffs*
                                      SHUFFLE TECH INTERNATIONAL, LLC,
                                      ACES UP GAMING, INC., *and*
                                      POYDRAS-TALRICK HOLDINGS LLC

## **CERTIFICATE OF SERVICE**

I certify that on May 3, 2018, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will then send a Notification of Electronic Filing (NEF) to all counsel of record.

/s/ *Jeffery M. Cross*

4424006v2