**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Shuffle Tech International, LLC, et al | Civil Action No. 1:15-cv-3702 |
| Plaintiffs | |
| v. | Honorable Matthew F. Kennelly |
| Scientific Games Corporation, et al | |
| Defendants | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION IN LIMINE
REGARDING DEFENDANTS' INTENDED INFRINGEMENT CONTENTIONS TO
THE JURY IN LIGHT OF THE FEDERAL CIRCUIT'S MAY 2, 2018 DECISION
IN *SHFL ENTERTAINMENT, INC. V. DIGIDEAL CORPORATION***

Robert A. Rowan
Joseph S. Presta
NIXON & VANDERHYE P.C.
901 N. Glebe Road, 11th Floor
Arlington, VA 22203
Tel: 703-816-4000
rar@nixonvan.com
jsp@nixonvan.com

Jeffery M. Cross (IBN 547980)
FREEBORN & PETERS LLP
311 South Wacker Drive
Suite 3000
Chicago, IL 60606
Tel: 312-360-6430
Fax: 312-360-6520
jcross@freeborn.com

May 10, 2018

## TABLE OF CONTENTS

**Page**

I.    Introduction ................................................................................................................. 1

II.   The USPTO Reexamination of the '982 Patent ................................................................ 4

III.  The USPTO Reexamination of the '935 Patent ................................................................ 8

IV.   Conclusion ................................................................................................................. 10

## TABLE OF AUTHORITIES

**Cases**                                                                          **Page(s)**

*Bloom Eng'g Co. v. N. Am. Mfg. Co.,*
    129 F.3d 1247 (Fed. Cir. 1997)........................................................................3-4, 7, 9

*Fed. Trade Comm'n v. Actavis, Inc.,*
    570 U.S. 136 (2013)......................................................................................... 3

*Institut Pasteur & Universite Pierre Et Marie Curie v. Focarino,*
    738 F.3d 1337 (Fed. Cir. 2013)......................................................................... 3

*Laitram Corp. v. NEC Corp.,*
    163 F.3d 1342 (Fed. Cir. 1998)...................................................................... 3, 9

*Westvaco Corp. v. Int'l Paper Co.,*
    991 F.2d 735 (Fed. Cir. 1993)....................................................................1-2, 4


**Other**

35 U.S.C. § 252................................................................................................. 2

35 U.S.C. § 307(b) ........................................................................................... 2

35 U.S.C. § 314(b) ........................................................................................... 2

Fed. R. Evid. 403 ............................................................................................ 10

## I.     Introduction

The Federal Circuit's May 2, 2018 decision, attached as Exhibit A, has no impact on Plaintiffs' motion *in limine* regarding Defendants' intended jury argument regarding alleged infringement other than eliminating issue preclusion and requiring this additional briefing. The essential point of Plaintiffs' motion is that Defendants must be barred from infecting this case with the same frivolous and sham infringement and validity arguments they are pursuing in the Nevada court. Defendants intend to mislead the jury that the PTO reexaminations of the '935 and '982 patents reaffirmed the validity of the claims they asserted against DigiDeal, that the original claim scope still exists, and that the DigiShuffle infringes the reexamined claims. Defendants should be precluded from arguing that the DigiShuffle has infringed any of the original, amended, or new claims of the '982 and '935 patents.

Defendants' validity and infringement arguments require them to completely misrepresent the reexamination file history that conclusively establishes that all originally asserted claims were either cancelled or substantively amended to overcome the prior art rejections raised by the PTO. This false argument merely perpetuates the sham litigation on which this suit is predicated. This point is confirmed by the simple fact that, if the amended and new claims were somehow identical in scope to the original claims, as Defendants assert, the reexamined claims would necessarily be invalid for the same reasons the PTO rejected the original claims in the reexaminations.

Moreover, this issue is a question of law reserved exclusively for the Court, and not an issue appropriately debated in front of a jury. *Westvaco Corp. v. Int'l Paper Co.*, 991 F.2d 735, 741 (Fed. Cir. 1993) ("[W]hether the scope of a reissue claim is identical with the scope of the

1

original claim is a question of law ....").[1] In order to prevent the presentation of such frivolous and sham arguments to the jury in this case, Plaintiffs submit that the jury should be instructed that all of the claims asserted against DigiDeal in both the '982 and '935 patents were found unpatentable in the reexaminations and that no claims emerged with the same scope as the original claims. Plaintiffs have provided a proposed substitute jury instruction on this legal issue as Exhibit N hereto. If Plaintiffs' motion *in limine* on this point is not granted and a proper instruction on the legal implications of the reexaminations is not provided to the jury, this trial will devolve into a presentation of legal falsehoods to the jury to mislead and confuse it.

It is undisputed that DigiDeal and Plaintiffs ceased all activity relating to the DigiShuffle in accordance with the Nevada court's stay Order of April 17, 2014. By the time the reexamination certificates for the '982 and '935 patents were issued in July and August 2015, respectively, and the stay was lifted in December 2015, the rights to the technology underlying the DigiShuffle had been sold to a third party, thereby precluding even the possibility of any post-reexamination infringing acts by DigiDeal. Accordingly, any post-reexamination allegations of infringement are completely moot and the jury should be so instructed.

Prior to May 2, issue preclusion based on the Nevada court's March 30, 2016 summary judgment order was merely one reason to prevent Defendants from dragging the jury into hypothetical infringement arguments over claims lost in reexamination. However, the Federal Circuit's remand to the district court does not in any way diminish the conclusive effect of the underlying PTO reexamination determinations that *every* patent claim asserted by Defendants against DigiDeal was *invalid* over the prior art, including the concealed Block patent. Nor does the Federal Circuit's decision cast any doubt on the obvious and substantial differences between

---

[1] The doctrine of absolute intervening rights, originally applied to patents modified during reissue, now applies to reexaminations as well. *See* 35 U.S.C. §§ 252, 307(b), 314(b).

the claims rejected by the PTO and the much narrower claims that emerged from reexamination; the Federal Circuit merely required the district court to formally perform that analysis in the first instance.

Specifically, the Federal Circuit held that: (a) "The district court correctly found the case moot as to the cancelled claims of the '935 patent," but it should have dismissed for lack of jurisdiction, rather than by summary judgment; and (b) the court was required to explain why the new and amended claims of both patents are not "substantially identical" to the invalid asserted claims – the only way the new or amended claims could be applied retroactively to the shufflers that DigiDeal ceased making well before the reexaminations concluded. Exh. A at 2, 6, 9-10; *see also Bloom Eng'g Co. v. N. Am. Mfg. Co.,* 129 F.3d 1247, 1250 (Fed. Cir. 1997) (Under the doctrine of absolute intervening rights, "[u]nless a claim granted or confirmed upon reexamination is *identical* to an original claim, the patent cannot be enforced against infringing activity that occurred before issuance of the reexamination certificate") (emphasis supplied); *see also Laitram Corp. v. NEC Corp.,* 163 F.3d 1342, 1348 (Fed. Cir. 1998) ("[I]t is difficult to conceive of many situations in which the scope of a rejected claim that became allowable when amended is not substantively changed by the amendment.").

Defendants' originally asserted claims have all been determined to be invalid and are therefore of no force and effect since an invalid patent claim cannot be infringed. *See, e.g., Fed. Trade Comm'n v. Actavis, Inc.,* 570 U.S. 136, 147 (2013). Indeed, when a patentee makes substantive amendments in response to a rejection in reexamination, there is "an irrebuttable presumption that the original claims were materially flawed." *Institut Pasteur & Universite Pierre Et Marie Curie v. Focarino,* 738 F.3d 1337, 1343 (Fed. Cir. 2013); *Bloom Eng'g Co.,* 129 F.3d at 1249 (same; statute precludes liability on original claims). Therefore, any "infringement"

3

analysis based on the rejected claims of the '982 or '935 patents is completely improper. Moreover, since claim construction and absolute intervening rights are matters of law, they are the sole province of the Court and cannot be presented to the jury for resolution. *Westvaco Corp. v. Int'l Paper Co.*, 991 F.2d at 741.

## II.    The USPTO Reexamination of the '982 Patent

Reexamination of the '982 patent resulted in an initial rejection of all the claims asserted against DigiDeal as invalid over the Block patent and other art.[2]  *See* Exh. D at PX5.1111-26.  In response, Defendants proffered multiple amendments to the asserted claims to avoid the cited prior art including Block.  *See* Exh. E at PX5.1139-50.  Those amendments ultimately resulted in the modified claims of the '982 Reexamination Certificate attached as Exhibit I.  Amended independent claims 1 and 42 of the '982 patent[3] are duplicated below (additions in bold and italics, deletions in bold and bracketed):

> 1.     A **[device]** *playing card shuffler mounted flush with a gaming table surface* for forming a random set of playing cards comprising:
>
> a top surface *flush with the surface of the gaming table*, and *a* bottom surface **[of said device]**;
>
> a card receiving area *with a support surface recessed beneath the top of the gaming table surface*, for receiving an initial set of playing cards *manually placed into the playing card shuffler by a dealer*;
>
> a randomizing system for randomizing the order of an initial set of playing cards;
>
> a collection surface in a card collection area for receiving randomized playing cards, the collection surface receiving cards so that all cards are received below the top surface of the device;

---

[2]  The '982 patent is attached as Exhibit B.  Defendants asserted claims 1-3, 42-44, and 46 of that patent against DigiDeal.

[3]  New claims 52 and 53 contain essentially the same new elements discussed in this section, which were not in the original claims.  *See* Exh. I at PX5.1477.

4

Case: 1:15-cv-03702 Document #: 237 Filed: 05/11/18 Page 8 of 15 PageID #:15658

an elevator for raising the collection surface so that at least some randomized cards are elevated at least to the top surface of the **[device]** *playing card shuffler to enable the dealer to manually remove all randomized playing cards at one time from proximate the gaming table surface*; and

an automatically moveable cover *set flush into the top surface of the playing card shuffler* over the elevator.

42.     An automatic card shuffler on a gaming table having a gaming table surface, having an upper surface *mounted flush with the gaming table surface* and a lower surface, comprising:

a card infeed tray **[mounted]** *accessible from the card shuffler upper surface, having a support surface recessed beneath the top of the gaming table surface*, to *enable a dealer to manually* insert *playing cards* **[from the upper surface of]** *into* the card shuffler;

a shuffled card delivery tray mounted on an elevator *to deliver shuffled playing cards to a dealer*; and

at least one automatically moveable cover *set flush into the upper surface of the card shuffler* over **[at least one of]** the card infeed tray and the shuffled card delivery tray, wherein an opening to the card infeed tray is located proximate **[an elevation of a]** *the* gaming table surface and the shuffled card delivery tray can be elevated from below the gaming table surface to an elevation at the gaming table surface to raise **[at least some]** *the* cards on the shuffled card delivery tray that were below the gaming table surface to an elevation above the gaming table surface *to enable the dealer to manually remove all of the shuffled playing cards at one time from proximate the gaming table surface*.

Exh. I at PX5.1476-77 (emphasis added).

The substantiality of these amendments is obvious, yet Defendants continue to assert to both the Nevada court and this Court that these amendments were merely cosmetic. Moreover, Defendants told a much different story to the Examiner during reexamination, explaining the significance of these amendments as follows:

- "Claim 1, as amended, is directed to a playing card shuffler mounted *[flush with the surface of a gaming table]* . . . comprising ... a card receiving area *with a support surface recessed beneath the top of the gaming table surface,* for

5

receiving an initial set of playing cards *manually placed into the playing card shuffler by a dealer".*

- "There is simply is no way for a dealer to manually insert or manually remove playing cards from the Block device [prior art cited as warranting rejection], *but it is a critical requirement for Claim 1."*

- "Also, Block does not disclose, teach, or suggest a 'playing card shuffler *mounted flush with a gaming table surface,'* with a 'top surface *flush with the surface of the gaming table.'* Instead, ... the playing card shuffler . . . of Block is buried deep under the table, completely inaccessible from the table. ... Thus, Block in no way discloses, teaches, or suggests having a playing card shuffler with 'a top surface *flush with the surface of the gaming table.'"*

- "Claim 42 [as amended] is directed to an automatic card shuffler on a gaming table . . . having an upper surface mounted *flush with the gaming table surface* ... comprising ... a card infeed tray *accessible from the card shuffler upper surface, having a support surface recessed beneath the top of the gaming table surface,* to *enable a dealer to manually* insert *playing* cards *into* the card shuffler ...; and at least one automatically moveable cover *set flush into the upper surface of the card shuffler* over the card infeed tray and the shuffled card delivery tray, wherein an opening to the card infeed tray is located proximate *the* gaming table surface and the shuffled card delivery tray can be elevated from below the gaming table surface to an elevation at the gaming table surface to raise *the* cards on the shuffled card delivery tray that were below the gaming table surface to an elevation above the gaming table surface *to enable the dealer to manually remove all of the shuffled playing cards at one time from proximate the gaming table surface.'"*

- "Block does not disclose, teach, or suggest 'a card infeed tray mounted in the card shuffler upper surface to enable a dealer to manually insert playing cards into the shuffler' as required by Claim 42."

- "Nor does Block 'enable the dealer to manually remove the shuffled playing cards from proximate the gaming table surface' as required by Claim 42. There simply is no way for a dealer to manually insert or manually remove playing cards from the Block device, *but it is a critical requirement for Claim 42."*

6

- "Block in no way discloses, teaches, or suggests having a playing card shuffler with '*a top surface flush with the surface of the gaming table.*'"

- "Watanabe does not have an 'automatically moveable cover set flush into the upper surface of the card shuffler over the card infeed tray and shuffled card delivery,' as required by Claim 42."

- "Neither Albrecht nor Block, alone or in combination, disclose '*a playing card shuffler mounted flush with a gaming table surface*' with 'a *top surface flush with the surface of the gaming table.*'"

*See* Exh. E at PX5.1164-65, PX5.1169-70, PX5.1192, PX5.1203 (emphasis added). These changes were obviously neither cosmetic nor insignificant. They were substantive and critical to overcoming the cited Block, Watanabe, and Albrecht prior art. *See Bloom Eng'g Co.*, 129 F.3d at 1251 (narrowing amendments in view of newly cited art are "substantive change[s]"). Emphasizing this point, the Examiner refused to accept these substantive changes without a corresponding amendment to the patent drawings to illustrate "the cover set flush into the top surface of the shuffler," stating that this new feature "must be shown or the feature(s) canceled from the claim(s)." Exh. F at PX5.1337, PX5.1343. Only after Defendants submitted a revised drawing explicitly showing the requisite flushness did the Examiner allow the reexamination certificate to issue. Exh. G at PX5.1398-1401; Exh. H at PX5.1410-12. The Examiner made explicitly clear that the claims were allowed over the prior art only because of the newly added features, including the "flush" features in the amended and new claims. Exh. H at PX5.1411-12.

Yet, Defendants still argue that they should be permitted to represent to the jury that the original claims asserted against DigiDeal emerged from reexamination in "substantially identical" form, with no change in scope, and could therefore be applied retroactively to

7

DigiDeal's pre-reexamination activities. This obvious falsehood cannot be permitted to unfairly prejudice and confuse the jury.

## III. The USPTO Reexamination of the '935 Patent

This reexamination was equally contentious, but handled with a broader brush as the Defendants ultimately canceled *all* of the asserted '935 claims and added a single new claim 15 with new and previously unclaimed features in order to overcome the prior art rejections.[4] *See, e.g.,* Exh. J at PX6.1249-79, PX6.1284; Exh. K at PX6.1290-94; Exh. M at PX6.1433. The single new claim that emerged from the '935 reexamination is as follows:

> 15. A playing card shuffler comprising:
>
> a housing mounted to a casino gaming table having a ***top surface flush with*** and surrounded by the surface of ***the casino gaming table***;
>
> the top surface including ***a shuffler control*** to control an operation of the shuffler and ***a display panel to display shuffler status information***;
>
> a playing card infeed tray set into the top surface of the shuffler for accepting playing cards that have been stacked in face to back orientation to form a single group of playing cards to be shuffled;
>
> a randomizing system for randomizing the order of an initial set of playing cards inserted into the playing card infeed tray;
>
> a collection surface for receiving randomized playing cards and holding below the top surface of the shuffler a complete deck of playing cards that have been randomized by the randomizing system;
>
> ***an elevator for raising the collection surface*** holding the complete deck of playing cards to a position ***above the level of the gaming table surface when a shuffler control is activated to enable a dealer to manually remove*** the complete deck of all randomized playing cards at one time
>
> ***a flip-up cover set into the top surface of the shuffler*** enclosing both the playing card infeed tray and the collection surface; and

---

[4] A copy of the '935 patent is attached as Exhibit C. Defendants asserted claims 1, 2, 9-11, and 14 of the '935 patent against DigiDeal.

a microprocessor for controlling the operation of the playing card shuffler.

Exh. M at PX6.1433 (emphasis added).

*None* of the highlighted limitations of the above claim existed in the two original, cancelled independent claims of the '935 patent. The claim limitations "top surface flush with … the casino gaming table," "a shuffler control," "a display panel to display shuffler status information," "an elevator for raising the collection surface … above the level of the gaming table surface," "when a shuffler control is activated to enable a dealer to manually remove," and a "flip-up cover set into the top surface of the shuffler" are *all* new and highly substantive. As with the '982 patent, the Examiner required Defendants to provide a corresponding amendment to the patent drawings or else cancel the new, non-illustrated features from claim 15. *See* Exh. J at PX6.1265.

It cannot be seriously argued that these multiple changes, requiring extremely specific additions to the original claims, do not alter their scope – especially when they were added to avoid rejections over the prior art. *See Bloom Eng'g Co.*, 129 F.3d at 251; *Laitram*, 163 F. 3d at 1348 ("[I]t is difficult to conceive of many situations in which the scope of a rejected claim that became allowable when amended is not substantively changed by the amendment"). This is particularly so here, where the Examiner made clear in his reasons for allowance that it was the newly added features in the claims that overcame his prior art rejections. Exh. L at PX6.1422-23.

Again, Defendants' intended arguments are exposed by the fact that, if the claims were not substantively amended, as Defendants misrepresent, they would necessarily be invalid for the same reasons asserted by the Examiner in rejecting the original claims. Defendants should be barred from arguing that these obviously significant changes were "insubstantial" and that the claims asserted against DigiDeal emerged from reexamination in "substantially identical" form,

9

thereby allowing them to be applied retroactively to DigiDeal's pre-reexamination activities. Such frivolous and sham arguments should not be permitted to infect this case, as they have done in the Nevada case. Defendants' clearly erroneous legal theories would only serve to unfairly prejudice and confuse the jury.

## IV.    Conclusion

For all of the above reasons, Defendants should not be permitted to falsely assert to the jury that DigiDeal infringed any claim, new or old, of the '982 or '935 patents, or that the asserted claims of those patents emerged from reexamination without substantial changes. These assertions are both untrue and highly prejudicial and should not be allowed under FRE 403. Instead, the jury should be properly instructed on the legal effect of the reexaminations, *i.e.*, that the PTO determined that all claims of the '982 and '935 patents asserted against DigiDeal were unpatentable as originally issued and that substantive new limitations were added to the claims in order to overcome the cited prior art, thereby precluding retroactive infringement allegations against a product no longer sold or offered for sale.

10

Dated:  May 10, 2018                    Respectfully submitted,


                                        By: */s / Jeffery M. Cross*
                                        One of Plaintiffs' Attorneys

                                        Robert A. Rowan (*pro hac vice*)
                                        rar@nixonvan.com
                                        Joseph S. Presta (*pro hac vice*)
                                        jsp@nixonvan.com
                                        NIXON & VANDERHYE P.C.
                                        901 North Glebe Rd.
                                        Arlington, Virginia 22203
                                        Phone:  703-816-4000
                                        Fax:    703-816-4100

                                        Jeffery M. Cross (IBN 547980)
                                        jcross@freeborn.com
                                        FREEBORN & PETERS LLP
                                        311 South Wacker Drive, Suite 3000
                                        Chicago, IL 60606
                                        Phone:  312-360-6430
                                        Fax:    312-360-6520

                                        *Attorneys for Plaintiffs*
                                        *SHUFFLE TECH INTERNATIONAL, LLC,*
                                        *ACES UP GAMING, INC., and*
                                        *POYDRAS-TALRICK HOLDINGS LLC*

11

## CERTIFICATE OF SERVICE

I certify that on May 10, 2018, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will then send a Notification of Electronic Filing (NEF) to all counsel of record.

/s/ Jeffery M. Cross
Jeffery M. Cross (IBN 547980)
jcross@freeborn.com
FREEBORN & PETERS LLP
311 South Wacker Drive, Suite 3000
Chicago, IL 60606
Phone: 312-360-6430
Fax:    312-360-6520

4431037v1/30432-0001