# Exhibit 12



Margo Piscevich, Nevada Bar No. 000917
PISCEVICH & FENNER
350 South Center Street, Suite 300
Reno, Nevada 89501
Telephone: (775) 329-0958
Facsimile: (775) 329-2666

Eric R. Lamison (admitted *pro hac vice*)
Benjamin R. Ostapuk (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
333 Bush Street, 26th Floor
San Francisco, California 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

Robert G. Krupka (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
777 South Figueroa Street
Los Angeles, California 90017
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

Attorneys for SHUFFLE MASTER, INC.

U.S. DISTRICT COURT
DISTRICT OF NEVADA
RECEIVED

NOV - 3

CLERK, U.S. DISTRICT COURT

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| CARD, LLC, a Nevada company,<br><br>       Plaintiff-Counterdefendant,<br><br>    v.<br><br>SHUFFLE MASTER, INC., a Minnesota corporation,<br><br>       Defendant-Counterclaimant. | Case No. CV-N-03-0244-ECR-(RAM)<br>(Consolidated Lead Case Number)<br><br>**DECLARATION OF ATTILA GRAUZER IN SUPPORT OF SHUFFLE MASTER'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION** |
| SHUFFLE MASTER, INC., a Minnesota corporation,<br><br>       Plaintiff-Counterdefendant,<br><br>    v.<br><br>CARD AUSTRIA FORSCHUNGS UND ENTWICKLUNGS GmbH, d/b/a CARD CASINO AUSTRIA RESEARCH & DEVELOPMENT, GmbH; d/b/a CARD; and d/b/a CARD AUSTRIA, An Austrian Corporation,<br><br>       Defendants-Counterplaintiff. | Date: November 24, 2003<br>Time: 10:00 a.m.<br>Judge: Hon. Edward C. Reed |



PLA00113471

note that CARD's retained witness, Mr. Joel Greenberg, understood this element of claim 21 to mean exactly what I have just described. In his deposition, Mr. Greenberg asserted that the unsuccessful Luciano prototype -- which uses a carousel having single slots -- meets the relative motion element of claim 21 of my patent because:

A.   The key is relative to each other. One can be stationary, and the other moves. Since the cards are moved from the -- from the stack of cards, they're moved into the carousel, rotating device. So anything that moves the rotating device, moves it relative to the fixed stack of cards.

Q.   Which device is moving --

A.   The carousel is moving.

Q.   How is the carousel moving?

A.   By a motor that drives the wheel.

Q.   And what kind of movement is the wheel doing; is it rotating?

A.   It's rotating.

Greenberg Dep., 139:24-140:11.

<mark>**SHUFFLE MASTER'S PATENTS ARE VALID --
THE PRIOR ART DOES NOT ANTICIPATE**</mark>

**Greenberg And Lorber Do Not Anticipate Claim 2 Of Our '751 Patent**

15.   CARD argues that U.S. Patent Nos. 4,659,082 (Greenberg) and 4,586,712 (Lorber) anticipate the '751 patent. But neither Greenberg nor Lorber discloses a key inventive feature of the '751 patent. A key requirement of the '751 patent is the placing of more than one card in each compartment. This increases speed and efficiency and decreases size by reducing the total number of compartments in a shuffler, which in turn reduces the distance that the compartments must travel in shuffling. In claim 2 of the '751 patent this feature is required by the limitation that states that the second card mover move "*card_s* from a compartment to a second card receiver" (emphasis added). In addition, the specification of the '751 states at col. 6:28-30, 35, that "[t]he second card moving mechanism 34 is operated periodically (upon demand) to empty stacks of cards from compartments, *i.e.*, compartments which have received a compliment of cards or a selectable minimum number of cards."

        

PLA00113476

Thus, the program card may indicate a random order or it may set up each of the hands to have certain desired combinations of cards to facilitate games such as bridge where some hands are "gamegoing" hands designed to win all the tricks. There is no disclosure anywhere in the four corners of Kelley's patent that the program cards included with the deck provide an input for communicating the number of cards to be dealt to each player. This is a fundamental difference. The flexibility provided by our patent and its commercial embodiments are important to the casinos, where it is essential to be able to conveniently vary the number of cards dealt to each player.

**Luciano Does Not Anticipate Claim 21 Of Our '750 Patent**

23. CARD argues that a Luciano prototype shuffler anticipates claim 21 of the '750 patent. It is clear to me that the Luciano shuffler does not anticipate the '750 patent, however. As I discussed above in connection with the '751 patent, a key element of Shuffle Master's shufflers is the placement of more than one card in each compartment and thus reducing the number of compartments. Claim 21 of the '750 patent plainly sets out this element when it states that "each compartment is able to receive more than one card within an opening of the card-receiving compartment." Luciano's own declaration plainly states, however, that the Luciano shuffler is designed to hold only one card per slot. In paragraph 24 of his declaration, Luciano says that his carousel has 312 slots to hold up to six decks of cards (which is one card per slot), and that "[e]ach slot in the wheel corresponds to a particular rank and suit." Luciano Decl. ¶ 27. The reason why Luciano uniquely identifies each slot with one card is that Luciano's device was designed to be a card filing system that tracked each card as it traveled in and out of its slot. This enabled verification of where each card was at any given time.

24. Luciano's documents further confirm that his prototype was designed to have only a single card in each slot and that it would not function correctly if two cards were somehow shoved into one slot. For example, Luciano's 9/11/92 letter describing his prototype states that:

- "The core of the machines is the central filing system. It is composed of a vertical rotatable filing drum (9) that contains a plurality of radial slots with each slot being suitably sized to accept *one individual card or ticket.*" (Emphases added.)

- Verification - In order for the central computer to know and retain the address slot of

8



PLA00113479

each card or ticket in the system, it is necessary to exactly identify each card, or ticket, as it either enters or leaves the filing drum.

- "The data obtained from the Verification module is important to, and enables the correct operation of, the overall machine system. It absolutely identifies each card and communicates this information, almost instantaneously, to the central computer. . . ."

25. Similarly, the transcript of Luciano's video states that "[t]he central component in the unit is the black circular drum in the center. This is the card filing system. It contains 312 separate, individually identified slots (6 decks). Each card, in each deck is given an individual dedicated address in the drum."

26. Luciano says in paragraph 27 of his declaration that because "[a] card is approximately 0.01 inch thick" his slots could hold more than one card. But this doesn't mean that his shuffler could actually be used with more than one card per slot, but rather that one could take it apart and jam more than one card in each slot, consequently rendering the machine unable to shuffle. The entire purpose of Luciano's device would be defeated if one jammed more than a card into the slot. Luciano does not teach one of ordinary skill in the art to put more than one card in each compartment of a shuffler -- in fact he teaches the opposite.

### Roblejo Does Not Anticipate Claim 21 Of Our '750 Patent

27. The Roblejo patent lacks the same feature of having multiple cards in a compartment. I have read the Roblejo patent, which describes a batch sorter that can sort cards into new deck order. The only way the device described in the Roblejo patent could do this is by having one card per compartment. And indeed, I note that the file history to the Roblejo patent states that the invention puts only one card in each compartment, and that the Specification for the Roblejo patent at 3:48 specifies that it uses a pusher that is adapted for moving "a card" out of the compartment not multiple cards. *See* Ex. D at 5 [Feb. 9, 1999 Amendment A from Roblejo file history].

28. Moreover, the Roblejo patent lacks a critical feature of claim 21 of the '750 patent. A crucial part of the innovative design of my patents is the ability to insert more than one card per

         

PLA00113480

compartment, as I have discussed above. To successfully perform this function without jamming, the '750 patent contains the feature that the separator between the compartments has an edge that alters the card's angle relative to a direction of movement when cards are inserted into card-receiving compartments. Each card is inserted so that it hits the angled separator edge, which then guides the card to lay on top of cards already in a compartment (or, it may be implemented to guide cards up to slide under cards already in a compartment). Claim 21 recites this feature:

> there is an edge of the separator that a card moved into card-receiving compartments contacts before that card is fully inserted into a card-receiving compartment and wherein separators are able to alter the card's angle relative to a direction of card movement when cards are inserted into card-receiving compartments.

29. Roblejo's patent does not teach an edge that alters the angle of the card upon insertion into the compartment. Instead the figure in Roblejo's patent showing card insertion shows the card's angle relative to its direction of movement staying completely straight and unaltered by any edge of the separator that it may contact. Roblejo, Fig. 1.; Ex. E. The Roblejo patent does not anticipate the '750 patent.

30. As for the alleged Roblejo "prototype," if the prototype is an embodiment of the Roblejo patent, as Mr. Gola states it is in his declaration, then I believe it would have one card per compartment. We have not been provided the device or meaningful physical evidence as to its features to evaluate. Regardless, the Roblejo prototype also does not disclose the separator edge of the compartment that alters the angle of the card upon insertion into the compartment. According to Gola's declaration, the Roblejo prototype uses a leaf spring, not an angled edge of the separator, to change direction of the card as it is inserted. Gola Decl. ¶ 11. This is not the feature shown in the '750 patent. We are relying upon the edge of the separator, not another structure. I note that CARD is doing the same thing that we have claimed and that CARD is not using leaf springs in each of its compartments.

31. CARD also argues that U.S. Patent No. 4,659,082 (Greenberg) renders the '750 patent obvious. The Greenberg patent cannot be anticipatory because it, too, only discloses one card per slot, as Mr. Greenberg confirmed in his deposition. Greenberg Dep. 82:10-13. Moreover, the Greenberg patent only shows a chamfered edge on the output tray, which is not an edge of the

10

         

PLA00113481