# Exhibit 15

Case: 1:15-cv-03702 Document #: 244-15 Filed: 06/05/18 Page 1 of 19 PageID #:16216



Michael D. Hoy (Nevada Bar No. 2723)
BIBLE, HOY & TRACHOK
201 West Liberty Street, Third Floor
Reno, Nevada 89501-2027
Telephone: (775) 786-8000
Facsimile: (775) 786-7426

Robert B. Morrill (Nevada Bar No. 2078)
Theodore W. Chandler (admitted *pro hac vice*)
Peter G. Mikhail (admitted *pro hac vice*)
SIDLEY AUSTIN BROWN & WOOD LLP
555 California Street
San Francisco, California 94104-1715
Telephone: (415) 772-1200
Facsimile: (415) 397-4621

*Attorneys for CARD, LLC and CARD-Austria*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

|  |  |
|---|---|
| CARD, LLC, a Nevada company, | No. CV-N-03-0244-ECR-(RAM) |
| Plaintiff and Counterdefendant, | **CARD, LLC AND CARD-AUSTRIA'S NOTICE OF MOTION AND MOTION FOR LEAVE TO AMEND THEIR PLEADINGS TO ADD ALLEGATIONS OF INEQUITABLE CONDUCT** |
| vs. | |
| SHUFFLE MASTER, INC., a Minnesota corporation, | |
| Defendant and Counterplaintiff. | **LR 15-1; Fed. R. Civ. P. 15(a)** |
| SHUFFLE MASTER, INC., a Minnesota corporation, | |
| Plaintiff and Counterdefendant, | |
| vs. | |
| CASINOS AUSTRIA RESEARCH AND DEVELOPMENT, an Austrian corporation, | |
| Defendant and Counterplaintiff. | |

-i-

CARD, LLC AND CARD-AUSTRIA'S MOTION FOR LEAVE TO AMEND
No. CV-N-03-0244-ECR-(RAM)



PLA00114064

## INTRODUCTION

Two weeks ago, Shuffle Master produced documents that inexplicably had not been produced back in October, when those documents were due. These new documents reveal that Shuffle Master concealed from the Patent Office information material to the patentability of several of the patents-in-suit. According to 37 C.F.R. § 1.56 and the Federal Circuit, Shuffle Master's failure to disclose this information may constitute "inequitable conduct." Accordingly, CARD, LLC and CARD-Austria (collectively "CARD") hereby move for leave to amend their pleadings to add allegations of inequitable conduct based on the documents recently produced by Shuffle Master.

### I. FACTS

On September 26, 2003, CARD, LLC served a document request requiring Shuffle Master to produce all prior art in its files relating to the patents-in-suit. *See* Morrill Decl. ¶ 2 & Ex. A [filed February 13, 2004]. Shuffle Master responded to the document request on October 27, 2003. At that time, however, Shuffle Master did not produce any documents concerning the "Sure-Shuffler," the card shuffler developed by Dr. Roblejo, Mr. Gola, and Mr. Solberg for Casino Concepts. *See id.* ¶ 3.

Two weeks ago, on January 30, 2004 — over four months after CARD, LLC had served its document requests — Shuffle Master sent a letter enclosing documents that inexplicably had not been produced back in October. One of those documents shows that Shuffle Master learned about the "Sure-Shuffler" at the '97 World Gaming Congress & Expo, which was held in Las Vegas, Nevada on or about October 14–16, 1997. *See id.* ¶ 4 & Ex. B at SMI 10395–96. This was the gaming industry's largest and most important trade show of the year. It attracted approximately 20,000 participants from all over the world.

Not only did Shuffle Master learn about the "Sure-Shuffler" at the '97 World Gaming Congress & Expo, it took a sales brochure for the "Sure-Shuffler" and circulated that brochure along with a "Report on Shuffler Competition" to various people within Shuffle Master. *See id.* Ex. B at SMI 10395–401. The sales brochure that Shuffle Master circulated within its company is identical



PLA00114066

**Shuffler Art-Tab 25**                                                         **PX125.4**

to the brochure that was attached as Exhibit H to the Solberg declaration in this case, filed on December 22, 2003. *See* Docket No. 162. In that declaration, Mr. Solberg provides a detailed description of the Sure-Shuffler, which he referred to as the "production prototype." Mr. Solberg's description makes it clear that the Sure-Shuffler anticipates and/or renders obvious many of the claims in Shuffle Master's patents-in-suit. *See generally* CARD's Motion for Reconsideration of the Order Granting a Preliminary Injunction [Docket No. 162]. During prosecution of its patents, however, Shuffle Master never disclosed to the Patent Office what it had learned at the '97 World Gaming Expo.

## II.     ARGUMENT

Every person substantively involved in the preparation or prosecution of a patent application owes a duty of disclosure, candor, and good faith to the Patent Office. This duty of disclosure is codified at 37 C.F.R. § 1.56 and is described in more detail in Chapter 2000 of the Manual of Patent Examining Procedure ("MPEP"), *available at* Morrill Decl. Ex. C [filed February 13, 2004]. According to both 37 C.F.R. § 1.56 and the Federal Circuit, *all* information material to patentability *must* be disclosed to the Patent Office. *See generally* 6 Donald S. Chisum, *Chisum on Patents* § 19.03 (1978 & Supp. 2003). As explained by the MPEP, information material to patentability may include information learned from "co-workers, *trade shows, communications from or with competitors*, potential infringers, or other third parties." *See* Morrill Decl. Ex. C at 2000-5 (emphasis added).

Shuffle Master was not candid with the Patent Office. Rather than disclose what it had learned at the '97 World Gaming Congress & Expo, Shuffle Master remained silent. Such silence in the face of a duty to disclose may constitute inequitable conduct, as numerous cases have held. *See, e.g., Bristol-Myers Squib Co. v. Rhone-Poulenc Rorer, Inc.*, 326 F.3d 1226, 1233–42 (Fed. Cir. 2003) (affirming finding of inequitable conduct based on applicant's failure to disclose material information); *GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268, 1273–75 (Fed. Cir. 2001) (same); *Li Second Family Ltd. P'ship v. Toshiba Corp.*, 231 F.3d 1373, 1378–81 (Fed. Cir. 2000) (same);



PLA00114067

*PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc.*, 225 F.3d 1315, 1318–23 (Fed. Cir. 2000) (same); *Semiconductor Energy Lab. Co. v. Samsung Elecs. Co.*, 204 F.3d 1368, 1373–78 (Fed. Cir. 2000) (same); *Elk Corp. of Dallas v. GAF Bldg. Materials Corp.*, 168 F.3d 28, 30–32 (Fed. Cir. 1999) (same); *Baxter Int'l, Inc. v. McGaw, Inc.*, 149 F.3d 1321, 1327–30 (Fed. Cir. 1998) (same); *Refac Int'l, Ltd. v. Lotus Dev. Corp.*, 81 F.3d 1576, 1581–85 (Fed. Cir. 1996) (same); *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1179–82 (Fed. Cir. 1995) (same); *see also Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253, 1255–59 (Fed. Cir. 1997) (reversing finding of no inequitable conduct).

Based on this new information, CARD has brought this motion for leave to amend its pleadings to add allegations of inequitable conduct. The new allegations of inequitable conduct can be found in CARD, LLC's Eleventh Affirmative Defense and paragraphs 37–49 of CARD, LLC's compulsory counterclaim, *see* Ex. A at 11–14, 20–23, and in CARD-Austria's Twelfth Affirmative Defense and paragraphs 37–49 of CARD-Austria's compulsory counterclaim, *see* Ex. B at 8–11, 17–20.

Although this is a patent case, a motion for leave to amend does not relate to issues unique to the jurisdiction of the Federal Circuit, so this Court must apply the law of the Ninth Circuit to decide this motion. *See, e.g., Regents of Univ. of N.M. v. Knight*, 321 F.3d 1111, 1123 (Fed. Cir.), *cert. denied*, 124 S. Ct. 104 (2003). In the Ninth Circuit, Rule 15(a) is "to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (per curiam) (internal quotation marks omitted) (reversing dismissal).

> In the absence of any apparent or declared reason — such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. — the leave sought should, as the rules require, be "freely given."

*Id.* at 1052 (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).



PLA00114068

This motion is not the result of undue delay, bad faith or a dilatory motive by CARD. Indeed, CARD could not have brought this motion at an earlier date. According to the Federal Circuit and a majority of lower courts, inequitable conduct must be plead with particularity in accordance with Rule 9(b). *See, e.g., Ferguson Beauregard/Logic Controls, Div. of Dover Res., Inc. v. Mega Sys., LLC*, 350 F.3d 1327, 1344 (Fed. Cir. 2003) (applying Fifth Circuit law); *Systemation, Inc. v. Engel Indus., Inc.*, 183 F.R.D. 49 (D. Mass. 1998); *Chiron Corp. v. Abbott Labs.*, 156 F.R.D. 219 (N.D. Cal. 1994). *See generally* 6 Donald S. Chisum, *Chisum on Patents* § 19.03[6][b][ii] (1978 & Supp. 2003) (collecting cases). Until Shuffle Master's latest production of documents, CARD did not know that Shuffle Master had seen the Sure-Shuffler in 1997 and had circulated a report about the Sure-Shuffler within its company. Thus it was not until Shuffle Master's latest production of documents that CARD had a basis for pleading inequitable conduct with particularity.

To be sure, this motion may be late according to the discovery plan in this case, *see* LR 26-1; Docket No. 76, but that is entirely the fault of Shuffle Master, which withheld the evidence of its inequitable conduct until just two weeks ago. Thus CARD should not be punished for Shuffle Master's delay, nor can Shuffle Master claim undue prejudice as a result of its own delay. Finally, Shuffle Master should not be allowed to avoid the consequences of withholding information from the Patent Office simply by committing the same offense in this Court. Just as Shuffle Master had a duty to disclose information to the Patent Office, Shuffle Master had a duty to produce documents in response to CARD, LLC's discovery requests, which Shuffle Master did not do until two weeks ago.

         

PLA00114069

## CONCLUSION

For the reasons above, CARD, LLC and CARD-Austria's motion for leave to amend their pleadings to add allegations of inequitable conduct should be GRANTED.

Dated: February 12, 2004

SIDLEY AUSTIN BROWN & WOOD LLP

By: _____

Michael D. Hoy
BIBLE, HOY & TRACHOK

Robert B. Morrill
Theodore W. Chandler
Peter G. Mikhail
SIDLEY AUSTIN BROWN & WOOD LLP

*Attorneys for*
*CARD, LLC and CARD-Austria*

-5-
CARD, LLC AND CARD-AUSTRIA'S MOTION FOR LEAVE TO AMEND
No. CV-N-03-0244-ECR-(RAM)

F1 1386977_1.doc

         

PLA00114070

Michael D. Hoy (Nevada Bar No. 2723)
BIBLE, HOY & TRACHOK
201 West Liberty Street, Third Floor
Reno, Nevada 89501-2027
Telephone: (775) 786-8000
Facsimile: (775) 786-7426

Robert B. Morrill (Nevada Bar No. 2078)
Theodore W. Chandler (admitted *pro hac vice*)
Peter G. Mikhail (admitted *pro hac vice*)
SIDLEY AUSTIN BROWN & WOOD LLP
555 California Street
San Francisco, California 94104-1715
Telephone: (415) 772-1200
Facsimile: (415) 397-4621

*Attorneys for CARD, LLC and CARD-Austria*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| CARD, LLC, a Nevada company,<br><br>      Plaintiff and Counterdefendant,<br><br>vs.<br><br>SHUFFLE MASTER, INC., a Minnesota corporation,<br><br>      Defendant and Counterplaintiff.<br><br>SHUFFLE MASTER, INC., a Minnesota corporation,<br><br>      Plaintiff and Counterdefendant,<br><br>vs.<br><br>CASINOS AUSTRIA RESEARCH AND DEVELOPMENT, an Austrian corporation,<br><br>      Defendant and Counterplaintiff. | No. CV-N-03-0244-ECR-(RAM)<br><br>**CARD, LLC'S AMENDED ANSWER AND COMPULSORY COUNTERCLAIM IN REPLY TO SHUFFLE MASTER'S AMENDED COUNTERCLAIMS**<br><br>**DEMAND FOR JURY TRIAL** |

-1-

CARD, LLC'S AMENDED ANSWER AND COMPULSORY COUNTERCLAIM IN REPLY

No. CV-N-03-0244-ECR-(RAM)

which is material to patentability as defined in Title 37, Code of Federal Regulations, § 1.56 . . . ."

*Id.* at 30. The declaration filed by Johnson and Piacun was materially false and misleading: it intentionally failed to name Rudd as an inventor and at the very least intentionally failed to acknowledge that Rudd might be an inventor, a fact that any reasonable examiner would consider material to patentability under 35 U.S.C. § 102(f).

Thus, the '248 patent is unenforceable due to inequitable conduct by Johnson and Piacun.

### ELEVENTH AFFIRMATIVE DEFENSE

On information and belief, U.S. Patent Nos. 6,149,154; 6,267,248; 6,588,750; and 6,588,751 are unenforceable due to inequitable conduct.

During prosecution of the '154, '248, '750, and '751 patents, one or more people substantively involved in the preparation and/or prosecution of those patents withheld material information from the Patent Office with an intent to deceive, as explained in more detail below.

Shuffle Master, Inc. is the assignee of the '154, '248, '750, and '751 patents. Accordingly, pursuant to 37 C.F.R. § 1.56, everyone at Shuffle Master substantively involved in the preparation or prosecution of the '154, '248, '750, and '751 patents — especially the named inventors working at Shuffle Master — had a duty to disclose to the Patent Office information material to the patentability of the inventions claimed in those patents.

Mark Litman was the principal patent attorney responsible for prosecution of the '154, '248, '750, and '751 patents. Accordingly, pursuant to 37 C.F.R. § 1.56, Mark Litman had a duty to disclose to the Patent Office information material to the patentability of the inventions claimed in the '154, '248, '750, and '751 patents.

Attila Grauzer is one of the named inventors of the '154, '750, and '751 patents. He is also the Director of Product Development for Shuffle Master, and thus on information and belief, he was also substantively involved in the prosecution of the '248 patent. Accordingly, pursuant to 37 C.F.R.

-11-



PLA00114024

§ 1.56, Attila Grauzer had a duty to disclose to the Patent Office information material to the patentability of the inventions claimed in the '154, '248, '750, and '751 patents.

On or about October 14–16, 1997, the '97 World Gaming Congress & Expo was held in Las Vegas, Nevada. This was the gaming industry's largest and most important trade show of the year. It attracted approximately 20,000 participants from all over the world.

Shuffle Master had a booth at the '97 World Gaming Congress & Expo. On information and belief, Attila Grauzer and other people substantively involved in the preparation or prosecution of the '154, '248, '750, and '751 patents — including other named inventors working at Shuffle Master — attended the expo on behalf of Shuffle Master.

Casino Concepts, Inc. also had a booth at the '97 World Gaming Congress & Expo. On information and belief, Dr. Conrad Roblejo, Mr. Stephen Gola, and Mr. Hal Solberg attended the expo on behalf of Casino Concepts. Dr. Roblejo and Mr. Gola were principals at Casino Concepts, which had developed a new card shuffler called the "Sure-Shuffler." Mr. Solberg was the mechanical engineer who helped design and build the "Sure-Shuffler." Dr. Roblejo filed a patent application on the Sure-Shuffler in January of 1997, which is earlier than the effective filing dates for the '154, '248, '750, and '751 patents. Dr. Roblejo's patent application matured into U.S. Patent No. 5,989,122. The Sure-Shuffler is the same card shuffler described in the declarations by Gola and Solberg in this case. *See* Docket Nos. 89, 162.

The Sure-Shuffler displayed by Casino Concepts on October 14–16, 1997, at the '97 World Gaming Congress & Expo had transparent, plastic sides so that anyone could see inside the machine during operation. Thus, on information and belief, anyone looking at the machine could see that it had a carousel that could turn in both directions during shuffling; the compartments in the carousel could each hold multiple cards at a time; the edges of the compartments were angled and cards deflected off the angled edges so that they would not bump into existing cards in the compartments; cards were inserted from an input stack one at a time into a randomly selected compartment in the carousel, such that a selected number of cards was inserted into a selected number of compartments;

-12-

PLA00114025

all of the cards in a given compartment were ejected simultaneously from the carousel onto an output stack; and both the injection and ejection of cards were controlled on demand, either by the dealer, a sensor, or automatically. In addition, Casino Concepts handed out sales brochures explaining the operation and advantages of the Sure-Shuffler. *See* Solberg Decl. Ex. H [Docket No. 162].

On information and belief, one or more people from Shuffle Master substantively involved in the preparation or prosecution of the '154, '248, '750, and '751 patents, including Attila Grauzer and other named inventors, observed the Sure-Shuffler in operation at the '97 World Gaming Congress & Expo and also took a sales brochure from Casino Concepts. Shortly after the expo concluded on October 16, 1997, one of those people at Shuffle Master circulated a document titled "97 World Gaming Expo: Report on Shuffler Competition." *See* SMI 10395–96. The report provided a description of the Sure-Shuffler shown at the expo and included the sales brochure for the Sure-Shuffler, along with a business card from Dr. Roblejo. *See* SMI 10396–401. The report also included descriptions and information about four other competing card shufflers displayed at the expo, including the Quick Draw shuffler and CARD's Shuffle Star shuffler. On information and belief, this report and the attached sales brochure were read by one or more people from Shuffle Master substantively involved in the preparation or prosecution of the '154, '248, '750, and '751 patents, including Attila Grauzer and other named inventors working at Shuffle Master. Indeed, Shuffle Master only had 125 employees at the time, approximately 8 of whom were named as inventors on the '154, '750, and '751 patents.

On information and belief, one or more people from Shuffle Master substantively involved in the preparation or prosecution of the '154, '248, '750, and '751 patents, including Mark Litman, Attila Grauzer, and other named inventors working at Shuffle Master, withheld from the Patent Office, with an intent to deceive, information about the Sure-Shuffler and the other competing card shufflers displayed at the '97 World Gaming Congress & Expo. The information was material because it established, either by itself or in combination with other information, a prima facie case of unpatentability under 35 U.S.C. § 102–103 with respect to the inventions claimed in the '154, '248,

-13-



PLA00114026

'750, and '751 patents. At the very least, any reasonable examiner would have considered the Sure-Shuffler and the other competing card shufflers displayed at the '97 World Gaming Congress & Expo material to the patentability of the inventions claimed in the '154, '248, '750, and '751 patents. Indeed, the Patent Office guidelines specifically state that information material to patentability may include information learned from "co-workers, *trade shows, communications from or with competitors*, potential infringers, or other third parties." *See* Manual of Patent Examining Procedure § 2001.06 (8th ed. Aug. 2001) (emphasis added).

The '154, '248, '750, and '751 patents are thus unenforceable due to inequitable conduct.

CARD, LLC'S AMENDED ANSWER AND COMPULSORY COUNTERCLAIM IN REPLY

PLA00114027

33. Johnson, Piacun, and Rudd together filed Australian Patent Application No. PM 5504 on May 9, 1994. That application concerned a device that shuffles cards using a carousel. The application was abandoned one year later.

34. On March 13, 1997, Johnson and Piacun together filed Australian Patent Application No. PO 5640. This application concerned a card shuffler very similar to the card shuffler disclosed in the earlier application that Johnson and Piacun filed with Rudd, but on information and belief, Johnson and Piacun intentionally omitted Rudd's name from this second application so that they would not have to share any money with Rudd.

35. The '248 patent takes priority from Australian Patent Application No. PO 5640. *See* '248 Prosecution History at 5, 30 [Docket No. 92]. On September 10, 1999, both Johnson and Piacun declared to the Patent Office under penalty of perjury that "I believe I am an original, first and joint inventor of the subject matter which is claimed . . . . I acknowledge the duty to disclose information which is material to patentability as defined in Title 37, Code of Federal Regulations, § 1.56 . . . ." *Id.* at 30. The declaration filed by Johnson and Piacun was materially false and misleading: it intentionally failed to name Rudd as an inventor and at the very least intentionally failed to acknowledge that Rudd might be an inventor, a fact that any reasonable examiner would consider material to patentability under 35 U.S.C. § 102(f).

36. Thus, the '248 patent is unenforceable due to inequitable conduct by Johnson and Piacun.

**COUNT TWELVE**

**Declaratory Judgment of Unenforceability of U.S. Patent Nos. 6,149,154; 6,267,248; 6,588,750; and 6,588,751**

37. CARD, LLC repeats and incorporates by reference all of the allegations set forth in paragraphs 1–9.

38. On information and belief, U.S. Patent Nos. 6,149,154; 6,267,248; 6,588,750; and 6,588,751 are unenforceable due to inequitable conduct.

-20-

PLA00114033

39. ==During prosecution of the '154, '248, '750, and '751 patents, one or more people substantively involved in the preparation and/or prosecution of those patents withheld material information from the Patent Office with an intent to deceive, as explained in more detail below.==

40. Shuffle Master, Inc. is the assignee of the '154, '248, '750, and '751 patents. Accordingly, pursuant to 37 C.F.R. § 1.56, everyone at Shuffle Master substantively involved in the preparation or prosecution of the '154, '248, '750, and '751 patents — especially the named inventors working at Shuffle Master — had a duty to disclose to the Patent Office information material to the patentability of the inventions claimed in those patents.

41. ==Mark Litman== was the principal patent attorney responsible for prosecution of the '154, '248, '750, and '751 patents. Accordingly, pursuant to 37 C.F.R. § 1.56, Mark Litman had a duty to disclose to the Patent Office information material to the patentability of the inventions claimed in the '154, '248, '750, and '751 patents.

42. ==Attila Grauzer== is one of the named inventors of the '154, '750, and '751 patents. He is also the Director of Product Development for Shuffle Master, and thus on information and belief, he was also substantively involved in the prosecution of the '248 patent. Accordingly, pursuant to 37 C.F.R. § 1.56, Attila Grauzer had a duty to disclose to the Patent Office information material to the patentability of the inventions claimed in the '154, '248, '750, and '751 patents.

43. On or about October 14–16, 1997, the '97 World Gaming Congress & Expo was held in Las Vegas, Nevada. This was the gaming industry's largest and most important trade show of the year. It attracted approximately 20,000 participants from all over the world.

44. Shuffle Master had a booth at the '97 World Gaming Congress & Expo. On information and belief, Attila Grauzer and other people substantively involved in the preparation or prosecution of the '154, '248, '750, and '751 patents — including other named inventors working at Shuffle Master — attended the expo on behalf of Shuffle Master.

45. Casino Concepts, Inc. also had a booth at the '97 World Gaming Congress & Expo. On information and belief, Dr. Conrad Roblejo, Mr. Stephen Gola, and Mr. Hal Solberg attended the

-21-



PLA00114034

expo on behalf of Casino Concepts. Dr. Roblejo and Mr. Gola were principals at Casino Concepts, which had developed a new card shuffler called the "Sure-Shuffler." Mr. Solberg was the mechanical engineer who helped design and build the "Sure-Shuffler." Dr. Roblejo filed a patent application on the Sure-Shuffler in January of 1997, which is earlier than the effective filing dates for the '154, '248, '750, and '751 patents. Dr. Roblejo's patent application matured into U.S. Patent No. 5,989,122. The Sure-Shuffler is the same card shuffler described in the declarations by Gola and Solberg in this case. *See* Docket Nos. 89, 162.

46. The Sure-Shuffler displayed by Casino Concepts on October 14–16, 1997, at the '97 World Gaming Congress & Expo had transparent, plastic sides so that anyone could see inside the machine during operation. Thus, on information and belief, anyone looking at the machine could see that it had a carousel that could turn in both directions during shuffling; the compartments in the carousel could each hold multiple cards at a time; the edges of the compartments were angled and cards deflected off the angled edges so that they would not bump into existing cards in the compartments; cards were inserted from an input stack one at a time into a randomly selected compartment in the carousel, such that a selected number of cards was inserted into a selected number of compartments; all of the cards in a given compartment were ejected simultaneously from the carousel onto an output stack; and both the injection and ejection of cards were controlled on demand, either by the dealer, a sensor, or automatically. In addition, Casino Concepts handed out sales brochures explaining the operation and advantages of the Sure-Shuffler. *See* Solberg Decl. Ex. H [Docket No. 162].

47. On information and belief, one or more people from Shuffle Master substantively involved in the preparation or prosecution of the '154, '248, '750, and '751 patents, including Attila Grauzer and other named inventors, observed the Sure-Shuffler in operation at the '97 World Gaming Congress & Expo and also took a sales brochure from Casino Concepts. Shortly after the expo concluded on October 16, 1997, one of those people at Shuffle Master circulated a document titled "97 World Gaming Expo: Report on Shuffler Competition." *See* SMI 10395–96. The report

-22-



provided a description of the Sure-Shuffler shown at the expo and included the sales brochure for the Sure-Shuffler, along with a business card from Dr. Roblejo. *See* SMI 10396–401. The report also included descriptions and information about four other competing card shufflers displayed at the expo, including the Quick Draw shuffler and CARD's Shuffle Star shuffler. On information and belief, this report and the attached sales brochure were read by one or more people from Shuffle Master substantively involved in the preparation or prosecution of the '154, '248, '750, and '751 patents, including Attila Grauzer and other named inventors working at Shuffle Master. Indeed, Shuffle Master only had 125 employees at the time, approximately 8 of whom were named as inventors on the '154, '750, and '751 patents.

48.     On information and belief, one or more people from Shuffle Master substantively involved in the preparation or prosecution of the '154, '248, '750, and '751 patents, including Mark Litman, Attila Grauzer, and other named inventors working at Shuffle Master, withheld from the Patent Office, with an intent to deceive, information about the Sure-Shuffler and the other competing card shufflers displayed at the '97 World Gaming Congress & Expo. The information was material because it established, either by itself or in combination with other information, a prima facie case of unpatentability under 35 U.S.C. § 102–103 with respect to the inventions claimed in the '154, '248, '750, and '751 patents. At the very least, any reasonable examiner would have considered the Sure-Shuffler and the other competing card shufflers displayed at the '97 World Gaming Congress & Expo material to the patentability of the inventions claimed in the '154, '248, '750, and '751 patents. Indeed, the Patent Office guidelines specifically state that information material to patentability may include information learned from "co-workers, *trade shows, communications from or with competitors*, potential infringers, or other third parties." *See* Manual of Patent Examining Procedure § 2001.06 (8th ed. Aug. 2001) (emphasis added).

49.     The '154, '248, '750, and '751 patents are thus unenforceable due to inequitable conduct.

CARD, LLC'S AMENDED ANSWER AND COMPULSORY COUNTERCLAIM IN REPLY

PLA00114036

## PRAYER FOR RELIEF

WHEREFORE, CARD, LLC prays for relief as follows:

    A.    For a judgment declaring that CARD, LLC is not and will not be infringing any claim of U.S. Patent No. 6,149,154, and will neither induce nor contribute to such infringement, by importing, making, using, offering to sell, and/or selling the one2six or Pre-Shuffler shufflers or related devices or methods.

    B.    For a judgment declaring that each and every claim of U.S. Patent No. 6,149,154 is invalid.

    C.    For a judgment declaring that CARD, LLC is not and will not be infringing any claim of U.S. Patent No. 6,267,248, and will neither induce nor contribute to such infringement, by importing, making, using, offering to sell, and/or selling the one2six or Pre-Shuffler shufflers or related devices or methods.

    D.    For a judgment declaring that each and every claim of U.S. Patent No. 6,267,248 is invalid.

    E.    For a judgment declaring that CARD, LLC is not and will not be infringing any claim of U.S. Patent No. 6,139,014, and will neither induce nor contribute to such infringement, by importing, making, using, offering to sell, and/or selling the one2six or Pre-Shuffler shufflers or related devices or methods.

    F.    For a judgment declaring that each and every claim of U.S. Patent No. 6,139,014 is invalid.

    G.    For a judgment declaring that CARD, LLC is not and will not be infringing any claim of U.S. Patent No. 6,588,750, and will neither induce nor contribute to such infringement, by importing, making, using, offering to sell, and/or selling the one2six or Pre-Shuffler shufflers or related devices or methods.

    H.    For a judgment declaring that each and every claim of U.S. Patent No. 6,588,750 is invalid.

PLA00114037

I.  For a judgment declaring that CARD, LLC is not and will not be infringing any claim of U.S. Patent No. 6,588,751, and will neither induce nor contribute to such infringement, by importing, making, using, offering to sell, and/or selling the one2six or Pre-Shuffler shufflers or related devices or methods.

J.  For a judgment declaring that each and every claim of U.S. Patent No. 6,588,751 is invalid.

K.  For a judgment declaring that U.S. Patent No. 6,149,154 is unenforceable.

L.  For a judgment declaring that U.S. Patent No. 6,267,248 is unenforceable.

M.  For a judgment declaring that U.S. Patent No. 6,588,750 is unenforceable.

N.  For a judgment declaring that U.S. Patent No. 6,588,751 is unenforceable.

O.  For a judgment declaring that this case is exceptional and awarding CARD, LLC its expenses, costs, and attorneys' fees under 35 U.S.C. § 285.

P.  For such other and further relief as the Court deems just and proper.

Dated: February 12, 2004                    SIDLEY AUSTIN BROWN & WOOD LLP

                                            By: _____

                                            Michael D. Hoy
                                            BIBLE, HOY & TRACHOK

                                            Robert B. Morrill
                                            Theodore W. Chandler
                                            Peter G. Mikhail
                                            SIDLEY AUSTIN BROWN & WOOD LLP

                                            *Attorneys for*
                                            *CARD, LLC and CARD-Austria*

-25-
CARD, LLC'S AMENDED ANSWER AND COMPULSORY COUNTERCLAIM IN REPLY

PLA00114038

Shuffler Art-Tab 25                                                                PX125.35

## DEMAND FOR JURY TRIAL

CARD, LLC demands a trial by jury of all issues so triable in this action.

Dated: February 1٢, 2004                SIDLEY AUSTIN BROWN & WOOD LLP

By: _____

Michael D. Hoy
BIBLE, HOY & TRACHOK

Robert B. Morrill
Theodore W. Chandler
Peter G. Mikhail
SIDLEY AUSTIN BROWN & WOOD LLP

*Attorneys for*
*CARD, LLC and CARD-Austria*

-26-
CARD, LLC'S AMENDED ANSWER AND COMPULSORY COUNTERCLAIM IN REPLY
No. CV-N-03-02 ECR-(RAM)



PLA00114039