# Exhibit 25

```
0001
                       UNITED STATES DISTRICT COURT
                       WESTERN DISTRICT OF WASHINGTON

    MP GAMES LLC; ALLIANCE GAMING      )
    CORP.; BALLY GAMING, INC.,         )
                                       )
                  Plaintiffs,          )Case No. C05-1017TSZ
                                       )
           vs.                         )
                                       )
    SHUFFLE MASTER, INC.,              )
                                       )
                  Defendant.           )
    _____)




                   DEPOSITION UNDER PROTECTIVE ORDER
                VIDEOTAPED DEPOSITION OF ROBERT LUCIANO, JR.
                       LAS VEGAS, NEVADA
                         JUNE 14, 2006
```

REPORTED BY:  HOLLY J. PIKE, CCR NO. 680, RPR, CSR
             LS&T JOB NO. 1-60304

```
0002
```

DEPOSITION OF ROBERT LUCIANO, JR., taken at 1640 West Alta Drive, Suite 4, Las Vegas, Nevada, on Wednesday, June 14, 2006, at 8:36 A.M., before Holly Pike, Certified Court Reporter, in and for the State of Nevada.

APPEARANCES:

For the Plaintiffs:

      QUINN EMANUEL
      BY:  VICTORIA F. MAROULIS, ESQ.
      555 Twin Dolphin Drive
      Suite 560
      Redwood Shores, California 94065
      (650-801-5000)
      victoriamaroulis@quinnemanuel.com

HIGHLY CONFIDENTIAL

SGC 0000726766

appreciate that, but it is.

Q.   How can I make it easier for you?

A.   What aspect would you like some clarification on? I think drawing a picture is not necessary if you were to ask verbally for clarification, functionality and those type of things.  I probably shouldn't be giving you advice, but that would be my recommendation to you.

Q.   What I prefer to do is, if you're able at all to draw anything what it looks like, if you would just draw it on what I've marked as Deposition Exhibit 1.

A.   Fair enough.  My objection is not necessarily a legal objection, but an objection of memory.

MS. MAROULIS:  I'm going to make it easy.  I'm going to instruct you not to draw.

0036

MR. CUTRI:  You're instructing the witness not to write --

MS. MAROULIS:  I'm going to instruct the witness not to draw because he is not capable of recalling the --

MR. CUTRI:  That's not correct.  That's not correct.  That's not what the witness said.  The testimony is completely opposite.  The testimony is completely opposite.  I asked him that question.  I asked him that question.  If you're instructing the witness not to provide discoverable information in a particular form, that's not a basis for objecting or instructing the witness not to answer.  It's absolutely -- it's not privileged.  There's no reason to instruct the witness not to do something.

MS. MAROULIS:  Let's go off the record for one minute.

THE VIDEOGRAPHER:  Off the record at 9:35.

(A short break was taken.)

THE VIDEOGRAPHER:  Back on the record at 9:41.

BY MR. CUTRI:

Q.   Mr. Luciano, before the break I was asking you whether you could draw anything with respect to what the shuffler looked like.  I believe your testimony was that you could, but you wanted me to be more specific.  Do you recall that?

A.   I do.

0037

Q.   What aspects of the shuffler are you able to draw?

A.   Probably the broad perspective of how it fits into the table and, you know, probably a conceptual perspective of operation.

Q.   What else are you able to draw?

MS. MAROULIS:  Objection.  Asked and answered. Vague.

HIGHLY CONFIDENTIAL

THE WITNESS: I think getting into real specifics in terms of actual dimensions, electronics, source code, you know, would not be -- at this point would not be an exercise I could do without a lot more research.

BY MR. CUTRI:

Q. What would you do to do additional research?

MS. MAROULIS: Objection. Vague.

THE WITNESS: You know, get the drawings and some software and so forth from the prototype.

BY MR. CUTRI:

Q. Do you know where those drawings are?

MS. MAROULIS: Objection. Asked and answered.

THE WITNESS: I do not. I believe it was a technology package transferred to the CARD attorneys as I said earlier. I have no idea what they did with them.

BY MR. CUTRI:

Q. Do you know where the prototype is, or is it the same answer?

0038

A. That's a compound question.

Q. Do you know where the prototype is?

A. Pieces of it.

Q. Where are pieces of it?

A. There's a piece in Washington state.

Q. Where in Washington state?

A. I believe at the Mind Play office.

Q. How did it get there?

MS. MAROULIS: Objection. Calls for speculation. Lacks foundation.

THE WITNESS: I think via truck. I'm not trying to be --

BY MR. CUTRI:

Q. That's true. Do you know the circumstances -- well, do you know where it came from?

A. Yes.

Q. Where?

A. From the 300 Sierra Manor warehouse in Reno.

Q. 300 Sierra Manor warehouse is -- is that part of SDG?

A. That was SDG and is now -- well, it's a building I own and lease to Bally Technologies.

Q. What part of the shuffler are we talking about?

MS. MAROULIS: Objection. Vague.

THE WITNESS: Table, the basic mechanism. I

0039

believe the electronics are not part of the assembly at this point in time, electronic controller.

BY MR. CUTRI:

HIGHLY CONFIDENTIAL

SGC 0000726786

PX155B.4

0041

A. I don't know. It would have been after my LPT took the technology back from IGT.

Q. What's LPT?

A. Luciano Packaging Technology.

Q. Earlier you said you were able to draw how the shuffler fit in the table and conceptual operation. Would you go ahead and draw on Exhibit 1 how the shuffler fit into the table?

MS. MAROULIS: I maintain my objection that the witness is testifying from memory and this is his best recollection. It may not be representative of the actual device.

MR. CUTRI: Okay.

THE WITNESS: I'm going to draw the table top because a typical table looks something like that and there's a dealer tray for tokens; right? There's a discard bin here and a shoe over here -- I'll put my glasses on -- for dispensing cards and reinserting cards into the bin.

BY MR. CUTRI:

Q. Would you label the bin and the shoe just so on Exhibit 1 we can keep track of where they were?

A. (Witness complies.) There you go.

Q. So we're looking at a top down perspective on Exhibit 1; is that correct? Looking down on top of a table?

A. That's right.

0042

Q. What about with respect to the actual shuffling mechanism? What are you able to draw with respect to that?

MS. MAROULIS: Objection. Vague.

THE WITNESS: The shuffling mechanism was a wheel.

(Deposition Exhibit Number 2 was marked for identification.)

BY MR. CUTRI:

Q. On Exhibit 2 can you draw whatever perspective you think best shows the actual shuffling mechanism?

MS. MAROULIS: Same objection as to witness testifying from memory.

THE WITNESS: It was a wheel. This is not a great pen for drawing. There was a stepper motor in the center, with radial slots, a lot of them. I'm not going to draw all of them. I think this was six or eight decks of cards could fit into the card positions, radial card positions around the wheel. Cards were inserted into the radial positions in the wheel driven by -- I don't recall whether it was a stepper motor or DC motor, a drive mechanism, into there. I believe there was a reject bin, such that cards coming in from the discard bin would be transported into the shuffler

HIGHLY CONFIDENTIAL

SGC 0000726788

PX155B.6