# Exhibit 29

W. WEST ALLEN
Nevada Bar No. 5566
LEWIS & ROCA LLP
Suite 600
3993 Howard Hughes Parkway
Las Vegas, Nevada 89109
Telephone: (702) 949-8200
Facsimile: (702) 949-8398

KIMBALL R. ANDERSON
(admitted *pro hac vice*)
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, Illinois 60601
Telephone: (312) 558-5600
Facsimile: (312) 558-5700

Attorneys for Defendant
VendingData Corporation

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| SHUFFLE MASTER, INC., a Nevada corporation,<br><br>   Plaintiff,<br><br>  v.<br><br>VENDINGDATA CORPORATION, a Nevada corporation;<br><br>   Defendant | Case No. **2:04-CV-1373-BES-(LRL)**<br><br>**VENDINGDATA'S MEMORANDUM IN SUPPORT OF ITS RULE 54 MOTION FOR THE AWARD OF ATTORNEY-FEES AND COSTS UNDER 35 U.S.C. § 285** |

VendingData Corporation ("VendingData"), by counsel, respectfully submits this Memorandum in support of its Motion for the award of attorney-fees pursuant to 35 U.S.C. § 285. An award of attorney-fees is appropriate because the captioned matter qualifies as an "exceptional case" for the following reasons, because Plaintiff Shuffle Master, Inc. ("Shuffle Master"):

1. Brought this case in furtherance of its publicly-acknowledged strategy of using litigation to eliminate competition;

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89109

44403.14444403.1

PLA00093118

2.	Engaged in a vexatious litigation strategy which included:

(a) pursuing a legal theory at odds with its representations to the patent office;

(b) attempting to circumvent the Claim Construction Order;

(c) ignoring Federal Circuit authority and pursing its claims based upon inadmissible and mischaracterized evidence; and

(d) engaging in a pattern of abusive tactics with respect to discovery and motions.

## I.	Attorney-Fees Are Recoverable Under the Patent Code

Under Section 285 of the patent code, "[t]he court in exceptional cases may award reasonable attorneys fees to the prevailing party." 35 U.S.C. § 285. A finding that a case is "exceptional" can be based on "unfairness or bad faith in the conduct of the losing party, or some other equitable consideration of similar force, which makes it grossly unjust that the winner of the particular law suit be left to bear the burden of his counsel fees." *Machinery Corp. of Am. v. Gullfiber AB, et al.*, 774 F.2d 467, 471 (Fed. Cir. 1985). If supported by clear and convincing evidence, such a finding is appropriate under a variety of circumstances, including when the patentee committed litigation misconduct, or engaged in "unjustified, and otherwise bad faith litigation." *See Phonometrics, Inc. v. Westin Hotel Co.*, 350 F.3d 1242, 1246 (Fed. Cir. 2003) *quoting Epcon Gas Sys., Inc. v. Bauer Compressors, Inc.*, 279 F.3d 1022, 1034 (Fed. Cir. 2002); *Beckman Instruments, Inc. v. LKB Produkter AB, et al.*, 892 F.2d 1547, 1551 (Fed. Cir. 1989).

An award of fees is often deemed appropriate for victims of a "vexatious" litigation strategy. *Union Oil Co. of California v. Chevron U.S.A., Inc.*, 34 F. Supp. 2d 1222, 1225 (C.D. Cal. 1998), *aff'd Union Oil Co. of Cal. v. Atlantic Richfield Co.*, 208 F.3d 989 (Fed. Cir. 2000). This includes cases where parties engaged in abusive litigation under the guise of legitimate patent protection. *See e.g., Evident Corp. v. Church & Dwight Co.*, 399 F.3d 1310 (Fed. Cir. 2005); *Bruno Indep. Living Aids v. Acorn Mobility Servs.*, 394 F.3d 1348 (Fed. Cir. 2005); *Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327 (Fed. Cir. 2004). An award is proper when consideration

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89109

44403.14444403.1

PLA00093119

PX75.3

of the totality of the party's actions, taken together, reveal a vexatious litigation strategy even if no one action, viewed individually, constitutes vexatious conduct. *Beckman Instruments*, 892 F.2d at 1551-52.

Ample evidence clearly demonstrates that Shuffle Master willfully engaged in such a strategy here.

**II.      Shuffle Master's Vexatious Litigation Strategy**

A.      Shuffle Master Used Patent Litigation To Eliminate Competition

Shuffle Master has long recognized that the significant legal costs required to defend against aggressive patent litigation weakens the resolve of competitors.  Indeed, the company has unabashedly bragged about this strategy to the press.  In one news article, Shuffle Master's CEO, Mark Yoseloff, explained how he forced the sale of a company with a "terrific product" he coveted:

> "So we had to create a situation where they would be induced to sell," Yoseloff said. "It struck me that one way (to do that) was to sue them (and have them incur) legal fees sufficiently high even for a company the size of the parent."

(Ex. 1, *Investor's Business Daily*, November 15, 2004, at A3).

Shuffle Master's appetite for litigation is reflected in the large number of matters in which it has been a party over the past several years.  *See* VendingData's Response to Shuffle Master's Motion for Protective Order Preventing Depositions of Mark Yoseloff and Paul Meyer, May 21, 2007, Dkt. No. 155, at Ex. 2.  By 2004, when it brought the instant matter, Shuffle Master had driven all competitors but VendingData from the marketplace.  *See* VendingData's Response In Opposition to Shuffle Master's  Motion for Preliminary Injunction, Nov. 12, 2004, Dkt. No. 20.

This case presents a classic example of Shuffle Master's tactics in this regard.  More poignantly, it demonstrates how successful they can be.  For years, Shuffle Master has pursued the Random Ejection Shuffler™ ("RES") technology possessed by VendingData and its predecessor

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada  89109

44403.14444403.1

companies. Blad Decl., ¶¶ 9-15 (submitted in support of VendingData's Opposition to Shuffle Master's Motion for a Preliminary Injunction, Nov. 12, 2004, Dkt. No. 20). In keeping with its publicly-acknowledged strategy, Shuffle Master bluntly told VendingData that if it would not sell the technology, Shuffle Master was prepared to sue — repeatedly. *Id.* at ¶ 15. In fact, it has done just that, filing multiple suits in a variety of venues. *Id.* at ¶ 18.

Shuffle Master brought this action <u>one day</u> after VendingData, which had invested millions of dollars in the PokerOne, announced the product's availability. Shuffle Master's Motion for a Preliminary Injunction, October 14, 2004, Dkt. No. 6, at 1:12-13. Its motivation was clear. In a sworn deceleration, Shuffle Master's President evidenced his fear that VendingData's competitive new product would erode Shuffle Master's share of the market. Yoseloff Decl., ¶¶ 24-25 (submitted in support of Shuffle Master's Motion for a Preliminary Injunction, October 14, 2004, Dkt. No. 6). Shuffle Master was determined to stop it.

Shuffle Master, expansively representing the scope of its patent claims, obtained a preliminary injunction against VendingData barring it from selling the PokerOne. *Shuffle Master, Inc. v. VendingData Corp.*, No. CV-S-04-1373-JCM (LRL) (D. Nev. Dec. 7, 2004). Since then, however, every key ruling in the ensuing litigation has gone in VendingData's favor.

The Federal Circuit first stayed,[1] and then vacated the injunction, ruling that construction of Shuffle Master's patent claims was necessary. *Shuffle Master, Inc. v. VendingData Corp.*, 163 Fed. Appx. 864 (Fed. Cir. 2005). Although Shuffle Master had argued that it was "likely to succeed on the merits regardless of which claim construction is ultimately adopted," *id.* at 868, the Federal Circuit refused to accept the "argument that the dispute over claim construction is immaterial to the outcome of this case." *Id.* Presciently, the court observed that if the claim construction proposed by VendingData was adopted, "it appears likely that the PokerOne device would not infringe." *Id.*

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada  89109

44403.14444403.1

PLA00093121

Magistrate Judge Leavitt recommended such a construction,[2] concluding that the term "set" means "a hand or part of a hand." Report at 15. Thus, the Report rejected Shuffle Master's construction of "set" in claim 20 as "a number of cards" (Report at 12) that can fluctuate at any time and need not serve any function. This Court subsequently adopted the recommendation without modification. *See* Summary Judgment Order, Feb. 1, 2008, Dkt. No. 201 ("SJ Order"), at 5, nt. 3.

The Federal Circuit ruling prompted a respite from the litigation. Shuffle Master returned to its "acquisition" strategy, approaching VendingData about a possible sale of the company. (Ex. 2, Newburg Decl., ¶ 3). Under financial pressure, VendingData was willing to entertain discussions and opened up its books for Shuffle Master's analysis. *Id.* The parties agreed to stay the litigation. Dkt. No. 107.

Shuffle Master wasted no time making its position clear. During a lunch meeting on May 18, 2006, Paul Meyer, Shuffle Master's Chief Operating Officer ("C.O.O."), met with Mark Newburg, VendingData's President. Newburg Decl., ¶ 3, Dkt. No. 155-3 (attached as Ex. 3 to VendingData's Response to Shuffle Master's Motion for Protective Order, Dkt. No. 155). Mr. Meyer delivered a chilling — but familiar — message and explained that Shuffle Master planned to continue litigating against VendingData in order "to cause VendingData to spend funds on legal representation." *Id.* On June 6, 2006, Messrs. Meyer and Newburg met again. *Id.*, ¶ 4. This time, Meyer explained that Shuffle Master referred to its most recent suits against VendingData as VendingData 1 and 2 and that Shuffle Master was prepared to file 10, 20, or even 30 more law suits against VendingData in the future. *Id.* Against this backdrop, it should come as no surprise that Shuffle Master never made a serious offer to acquire VendingData. (Ex. 2, Newburg Decl., ¶ 5).

---

[1] *Shuffle Master Inc. v. VendingData Corp.*, No. 05-1203 (Fed. Cir. March 3, 2005).

[2] *See* Magistrate's Report and Recommendation on Claim Construction, Sept. 26, 2005, Dkt. No. 94 ("Report").

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89109

44403.14444403.1

PLA00093122

Following expiration of the stay, Shuffle Master launched a blitzkrieg of pleadings and discovery demands.  From November 2006 through May 2007, Shuffle Master filed 34 separate pleadings and discovery demands.  Some 33 of these were filed during the months of April and May 2007.  *See* Dkt. Nos. 96-162.  It is noteworthy that by this point, VendingData had suffered so much damage that Shuffle Master no longer considered it much of a threat.  In contrast to its pleadings at the start of this litigation, Shuffle Master represented to this Court that the PokerOne was "doomed for failure" commercially and that its market presence was "insignificant."  Shuffle Master's Motion to Exonerate the Rule 65(c) Bond, Apr. 5, 2007, Dkt. No. 117, at 4.  Indeed, Shuffle Master understood well, as a result of the access VendingData provided in connected with the supposed acquisition effort, that VendingData was in dire straits.  By the end of 2006, the company had lost most of its personnel and ceased actively marketing the PokerOne product.  (Ex. 2, Newburg Decl., ¶ 7).

Judge Leavitt stopped the onslaught by granting a protective order staying discovery pending resolution of VendingData's motion for summary judgment.  Order Granting Motion for Protective Order to Limit Discovery, May 23, 2007, Dkt. 156.  Although Shuffle Master vehemently opposed it, the Order remained in place.  This Court granted VendingData's motion for summary judgment and denied Shuffle Master's cross-motion.  In doing so, the Court found that Shuffle Master's arguments reduced to its "characterization" of the operation of the PokerOne.  SJ Order at 6.  The characterization was precisely the same one that the Federal Circuit had rejected almost two years before.

Shuffle Master initiated this case in furtherance of a strategy to eliminate competitors from the market place.  Its case at the end was the same it began with — a mischaracterization of the PokerOne that no reasonable jury could accept.  It, no doubt, spent millions on the litigation.  It lost on the merits, but it achieved its objective.  VendingData no longer is a competitor.  The

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada  89109

44403.14444403.1

PLA00093123

"exceptional case" provisions of the patent code were intended to deter exactly this kind of situation. *See Am. Standard, Inc. v. York Int'l. Corp.*, 244 F. Supp. 2d 990, 997 (W.D. Wis. 2002) (holding that fee award appropriate where "plaintiffs' motivation for bringing claims of infringement of the '560 patent was to substantially inconvenience and thwart the defendants").

> ### B.    Shuffle Master's Vexatious Pursuit of a Baseless Claim

Pleadings, transcripts of depositions and hearings, and correspondence between counsel easily approach, if not exceed, 100,000 pages.  Yet, there are (and never were) any disputes concerning the operation of the PokerOne.  SJ Order at 6.  In considering whether the case was ripe for summary judgment, this Court observed that there were no genuine issues of material fact and "the relative simplicity of the PokerOne obviates the need for expert testimony." *Id.*  The same relative simplicity should have obviated the necessity for this litigation long ago.

However, the case endured as a means for Shuffle Master to achieve its goal of driving VendingData from the marketplace.  Like the merits of the case itself, this too can be determined with "relative simplicity" based upon a host of factors, including the following:

> 1.    Shuffle Master based its infringement argument on a claim construction inconsistent with its representations concerning the scope of the claims before the Patent Office.

Determining whether patent infringement exists involves two steps:  1) "the proper construction of the asserted claim"; and 2) "a determination as to whether the accused method or product infringes the asserted claim as properly construed."  Report at 4, *citing Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1581-82 (Fed. Cir. 1996).  Shuffle Master accused VendingData of infringing claim 20 of the '684 patent based upon a claim construction that was plainly at odds with its representations concerning the scope of the claims before the Patent Office.

Before this Court, Shuffle Master asserted that the claim 20 limitation of "forming at least one set of cards" within the apparatus "refers to providing a number of cards from the deck of

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada  89109

44403.14444403.1

PLA00093124

PX75.8

playing cards to an area within the apparatus." Shuffle Master's Opening Claim Construction Br., Apr. 13, 2005, Dkt. No. 69, at 3. Thus, the accumulation of <u>any</u> number of cards internally falls within the scope of its claim. The record shows, however, that Shuffle Master presented a different explanation to the Patent Office.

The Patent Examiner rejected original claim 20 under 35 U.S.C. § 102(b) as being anticipated by Patent No. 5,431,399 ("Kelley"). In response, Shuffle Master amended claim 20 to add many of the terms now at issue and advanced an argument to the Patent Examiner of why the claim, as amended, was not anticipated by Kelly. This argument included repeated discussions of what constituted a "set":

> The [Kelley] apparatus deals out cards into multiple receptor trays (13) at the same time (one card at a time). The present claim 20 excludes this required function of the Kelley system by requiring sets of cards to be formed within the apparatus and then individual hands formed in a delivery tray from the sets of cards *(either with one set of cards being a complete hand or by sets of cards being combined to form a complete hand.)* . . . .

> The present claim 20 requires at least one set of cards to be formed in the apparatus and then a first individual set to be delivered to a delivery tray from the sets of cards *(either with one set of cards being a complete hand or by more than one set of cards being combined to form a complete hand)*, subsequent removal of the first individual hand, and the forming of a second individual hand on that delivery tray. This method is impossible with the system and method of Kelley. . . .

> The present claims require that sets of cards be formed inside the apparatus and then that individual sets of cards be provided to a delivery tray from the sets of cards *(either with one set of cards being a complete hand or by sets of cards being combined to form a complete hand)* and that subsequent hands be provided to the delivery tray after an earlier hand has been removed, providing a second individual hand into the delivery tray *(either with one set of cards being a complete hand or sets of cards being combined to form a complete hand)*. This method is impossible to perform with the Kelley apparatus. It is practiced in the present invention, for example, by the formation of the complete or partial hands within the apparatus, then delivery of the complete hands or partial hands plus cards to complete the partial hands, into the delivery tray. In

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89109

44403.14444403.1

PLA00093125

> this way, complete hands are provided to the dealer (in the delivery tray) to be delivered, one-hand-at-a-time. This is a unique method and incapable of being performed by the shown Kelly apparatus.

VendingData's Response to Shuffle Master's Objections to Report and Recommendations Regarding Claim Construction, Nov. 1, 2005, Dkt. No. 96, Ex. C at 14-15 (emphases added); *see also* Report at 13-14.

Having consistently and unmistakably defined "set" as a hand or part of a hand to the Patent Examiner, accepted principles of patent law prohibited Shuffle Master from abandoning its prior representations to the Patent Examiner. *Voice Techs. Group, Inc. v. VMC Sys. Inc.*, 164 F.3d 605, 615 (Fed. Cir. 1999) ("[T]he inventor cannot by later testimony change the invention and the claims from their meaning at the time the patent was drafted and granted."); *Vehicular Techs. Corp. v. Titan Wheel Int'l, Inc.*, 141 F.3d 1084, 1091 (Fed. Cir. 1998) ("[O]ther players in the marketplace are entitled to rely on the record made in the Patent Office in determining the meaning and scope of the patent.") (quoting *Lemelson v. General Mills, Inc.*, 968 F.2d 1202, 1208 (Fed. Cir. 1992)). Nonetheless, by asserting that claim 20 covered <u>any</u> number of cards accumulated internally, rather than formation of discrete hands (or discrete parts of hands), Shuffle Master did just that.

Shuffle Master began this lawsuit based upon the unfounded premise that the creation of an undifferentiated stack of cards inside the PokerOne was the same as creating multiple hands of cards. Judge Leavitt rejected this argument, concluding that Shuffle Master's construction of its claim was not consistent with "the patentee's statements during prosecution" of the patent. Report at 15. The Federal Circuit also rejected the proposition, *Shuffle Master, Inc. v. VendingData Corp.*, 163 Fed. Appx. at 868, as did this Court by accepting the claim construction recommended in the Report.

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89109

44403.14444403.1

Shuffle Master's contumacious pursuit of the same discredited theory persisted to the very end. This Court resolved the matter at summary judgment.[3] However, had Shuffle Master remained true to the claims it presented to the Patent Office, none of the above would have been necessary.

> 2.  Shuffle Master refused to accept the claim construction adopted by this Court.

Shuffle Master's opposition and cross-motion were supposedly premised on its assertion that the PokerOne infringed under the claim construction adopted by this Court. However, Shuffle Master's argument have studiously avoided applying that construction.

This Court determined that the second limitation of claim 20 required "creating one or more discrete hands or discrete parts of hands within the apparatus from at least one deck of playing cards." Order on Claim Construction, Feb. 28, 2007, Dkt. No. 115, at 2; Report at 15; SJ Order at 6 (emphasis added). The import of the term discrete is clear, because it requires that the hands be distinguishable.

Shuffle Master's infringement claim was based upon *ignoring* the term "discrete." Its argument is that the internal *stack of cards* formed within the PokerOne is actually a stack of *hands*. While its paid experts and loyal employees may claim they "see hands," no objective observer could reasonably say that they perceived discrete hands.[4] There is only an undifferentiated stack of cards *waiting to be separated*. As this Court noted, "the fact remains that for a hand of cards to exist, it must be separated in some manner from those other cards that will ultimately be played." SJ Order at 7. In the PokerOne, discrete *hands* are formed only in the exterior delivery tray.

---

[3]  *See e.g.*, SJ Order at 13 (rejecting Shuffle Master's doctrine of equivalence claim that "creation of a randomized stack of cards inside the PokerOne's internal chamber is equivalent to the creation of discrete hands").

[4]  There are no discrete "sets" comprised of partial hands either. There is simply a single stack of undifferentiated cards.

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada  89109

44403.14444403.1

Only by *eliminating* "discrete" from the claim construction can Shuffle Master point to any "number of cards" randomly deposited, into a constantly changing and undifferentiated stack, and assert it "sees hands." This is the construction of its patent that Shuffle Master sought at the outset and the same argument it pressed at summary judgment. This is well illustrated by the Court's rejection of Shuffle Master's doctrine of equivalence claim:

> Like in the case of literal infringement, application of the second claim limitation to the PokerOne is critical under the doctrine of equivalents. And in this case, no reasonable jury could conclude that the creation of a randomized stack of cards inside the PokerOne's internal chamber is equivalent to the creation of hands. The absence of physical separation of the cards is not an insubstantial distinction; it changes the entire character of what is being created internally. *To conclude otherwise would vitiate the second claim limitation entirely.*

SJ Order at 13 (emphasis added). The inclusion of the word "discrete" in the claim construction is designed to preserve the scope of the second claim limitation. Shuffle Master's refusal to be bound by the terms of the claim construction, is, as the Court recognized, a barefaced effort to vitiate the bounds of its patent.

It has been recognized that the award of fees is appropriate where a party's "litigation tactics and arguments throughout the liability phase of trial reflected attempts to circumvent this Court's claim construction Order." *Chevron U.S.A., Inc.*, 34 F. Supp. 2d at 1224-25. What makes Shuffle Master's intentional circumvention particularly obvious in this case is that it fully understood the meaning and the import of the term "discrete" as it pertains to the construction of claim 20.

In its cross-motion, Shuffle Master evidenced no confusion over the meaning of the term. It cited to the Merriam-Webster and American Heritage Dictionaries for the proposition that "discrete" meant "individually distinct" or constituting a "separate entity" or "separate thing." Shuffle Master's Opposition to Defendant VendingData Corporation's Motion for Summary Judgment of Non-Infringement And Cross-Motion for Summary Judgment Of Infringement, filed

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89109

44403.14444403.1

PLA00093128

PX75.12

under seal May 31, 2007, at 17:14-16 ("Shuffle Master's Cross-Motion for SJ").[5]  Based on this definition, Shuffle Master claimed that "discrete hands" are formed inside the PokerOne because the device "stagger-stack[s]…hands on top of each other."  Shuffle Master's Cross-Motion for SJ, at 4:2; *id.* at 19:18-21.  By "stagger-stacking," Shuffle Master argued that the PokerOne forms discrete or separately discernable hands within the device.  *Id.*  This argument fails because it is based upon a misreading of VendingData's *patent*.  *See* VendingData's Opposition to Shuffle Master's Cross-Motion for Summary Judgment Of Infringement And Reply to Shuffle Master's Opposition to VendingData's Motion for Summary Judgment, June 29, 2007, Dkt. No. 185, at 10.  It is uncontroverted that the PokerOne device does not stagger-stack hands.  *Id.*; Dickinson Declaration, ¶ 7 (attached as Ex. C to VendingData's Opposition to Shuffle Master's Cross-Motion for Summary Judgment Of Infringement And Reply to Shuffle Master's Opposition to VendingData's Motion for Summary Judgment, June 29, 2007, Dkt. No. 185); VendingData's Motion for Summary Judgment, Apr. 27, 2007, Dkt. No. 129, at 4, ¶¶ 3-4.  In its reply, Shuffle Master fled from its substantive error, claiming that the argument was "not essential."  Shuffle Master's Reply In Support of Cross-Motion for Summary Judgment Of Infringement, filed under seal July 19, 2007, at 14.  The disclosure of its tactics, however, should not so easily be forgotten.

Giving effect to Shuffle Master's definition of the term "discrete" makes clear that the PokerOne does not infringe.  The PokerOne does not create "individually distinct" or "separate" hands within the PokerOne.  Indeed, when effect is given to *all* the terms of the claim construction, "no reasonable jury" could find that the PokerOne infringes.  SJ Order at 13.  It is obvious, that Shuffle Master understood this.  Refusing to be bound by the claim construction, Shuffle Master proceeded by distorting it.

---

[5]  These very same dictionaries also define the terms as "consisting of *unconnected* distinct parts," "*not continuous,*" and "distinct or *unconnected* elements."  Ostapuk Decl., Exs. 47-48 (submitted in support of Shuffle Master's Cross-Motion for SJ, filed under seal May 31, 2007).

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada  89109

44403.14444403.1

3.      Shuffle Master ignored adverse legal rulings and recklessly proceeded based upon incompetent evidence.

The Federal Circuit previously resolved the very argument that Shuffle Master presented to this Court in the following manner:

> Seizing on the fact that the dealing process in the PokerOne device begins as soon as the internal stack contains the number of cards needed for two hands, Shuffle Master contends the PokerOne therefore operates in accordance with claim 20, even under Vending Data's proposed claim construction, because the PokerOne 'forms two hands of cards within the apparatus as the source for the delivery of the first and second hands of cards to the tray.' In other words, Shuffle Master argues that the PokerOne device infringes even under VendingData's proposed claim construction. . . . That, however, does not appear likely to be the case.
>
> [U]nder VendingData's proposed construction, the PokerOne likely does not infringe because no hand or hands are actually formed within the apparatus; the accumulation of a number of cards equal to two hands is not the same as the formation of a hand or hands within the device.

*Shuffle Master, Inc. v. VendingData Corp.*, 163 Fed. App. at 868.

Shuffle Master had no basis to believe any different outcome was called for here.  The Court adopted the same claim construction that caused the Federal Circuit to opine that the PokerOne "would not infringe."  Moreover, Shuffle Master presented no evidence that could possibly warrant a different result.

In substantial part, Shuffle Master's opposition and cross-motion relied upon the declarations of experts that were based on VendingData's patent, rather than the operation of the PokerOne.  SJ Order at 9 -10.  If the Court had relied upon these opinions, it would have violated a basic fundamental of patent law.  *Martin v. Barber*, 755 F.2d 1564, 1567 n.2 (Fed. Cir. 1985) ("The claims in suit must be compared with the accused device itself.").  Shuffle Master is represented by experienced counsel.  Urging the Court to follow such a path is inexcusable.

What makes this tactic even more offensive here is that the PokerOne shuffler was made available to counsel for Shuffle Master on numerous occasions, including as recently as May 17,

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada  89109

44403.14444403.1

2007. *See* Ostapuk Decl., Ex. 41 at 42:24-43:16 (submitted in support of Shuffle Master's Cross-Motion for SJ, filed under seal May 31, 2007); *see also id.*, Ex. 41 at 90:13-16 (counsel for Shuffle Master introducing — as an exhibit at the deposition of K. Dickinson — picture of the PokerOne taken "quite some time ago" during a meeting between Shuffle Master's counsel and VendingData's counsel); *id.*, Ex. 25 at 45, 53 (counsel for VendingData demonstrating operation of the PokerOne at the preliminary injunction hearing); *id.*, Ex. 28 at 29 (noting that Shuffle Master "had the opportunity to examine the [PokerOne] in advance of the [preliminary] injunction hearing"); Dickinson Declaration, ¶¶ 8 9 (attached as Ex. C to VendingData's Opposition to Shuffle Master's Cross-Motion for Summary Judgment Of Infringement And Reply to Shuffle Master's Opposition to VendingData's Motion for Summary Judgment, June 29, 2007, Dkt. No. 185) (stating that PokerOne was available for demonstration at the deposition of Ken Dickinson, but Mr. Dickinson was never asked to demonstrate the shuffler)). Shuffle Master *chose* to have its experts rely on the patent rather than the device.

The remainder of Shuffle Master's evidence is no better. The "ultimate opinion" declarations submitted by paid experts and loyal employees is not admissible. SJ Order at 10 -11. And its tactic of relying on partial and misleading quotations from documents is similarly unprincipled.

In *Phonometrics, Inc. v. Westin Hotel Co.*, 350 F.3d 1242, 1245 (Fed. Cir. 2003), the Federal Circuit upheld the award of fees in a case where the plaintiff proceeded heedless of countervailing Federal Circuit authority. While the Federal Circuit's ruling here was not a final judgment on infringement, the determination that the PokerOne would *not* infringe was central to the court's resolution of the appeal. Shuffle Master's heedless pursuit of the case in the face of that ruling is further evidence of vexatious nature of its litigation strategy.

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada  89109

44403.14444403.1

PLA00093131

4.     Shuffle Master Engaged in Unreasonable Discovery and Pleading Tactics.

Shuffle Master's tactics with respect to discovery and motion practice need to be considered in light of the nature of the case. *Before* Shuffle Master filed this suit in 2004, it was fully aware of the manner in which the PokerOne was designed to operate. Ostapuk Decl. Ex. 25 at 45, 53 (submitted in support of Shuffle Master's Cross-Motion for SJ, filed under seal May 31, 2007) (counsel for VendingData demonstrating operation of the PokerOne at the preliminary injunction hearing); *id.*, Ex. 28 at 29 (noting that Shuffle Master "had the opportunity to examine the [PokerOne] in advance of the [preliminary] injunction hearing"). As this Court noted, "the relative simplicity" of the PokerOne enabled laypersons to easily understand the operation. SJ Order at 6. The nature of Shuffle Master's infringement case, therefore, concerned the mere "characterization" of the operation.

Nonetheless, Shuffle Master's action has resulted in more than 200 pleadings filed with this court alone, excluding the thousands of pages in discovery requests, responses and proceedings before the U.S. Court of Appeals for the Federal Circuit. VendingData produced over 20,000 pages of documents, answered many interrogatories, and produced six (6) of its present and former employees for deposition.

Shuffle Master still served a blizzard of motions, discovery requests (127 document requests and approximately 50 interrogatories, counting all subparts), and demanded at least 17 depositions, with at least one in China. *See* Ex. 3, Stein Decl. (originally submitted as Exhibit B to VendingData's Objection to Shuffle Master's Motion to Reconsider Order Staying Discovery, Dkt. No. 188).[6] Complying with Shuffle Master's discovery requests required VendingData, which at the time had only a handful of employees remaining, to virtually shut down its

---

[6] The exhibits originally attached to the Stein Declaration have not been included with this memorandum. *See* Exhibit B to VendingData's Objection to Shuffle Master's Motion to Reconsider Order Staying Discovery, Dkt. No. 188 (including A-Z exhibits).

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada  89109

44403.14444403.1

accounting, engineering, and sales functions. Galassi Decl., ¶ 14 (attached as Exhibit A to VendingData's Objection to Shuffle Master's Motion to Reconsider Order Staying Discovery, Dkt. No. 188). All of this discovery was demanded by Shuffle Master in a case where VendingData sold and leased only a few PokerOne devices in the United States, and then stopped manufacturing them altogether in early 2006.

The nature of Shuffle Master's tactics are well illustrated by its action contesting the stay of discovery VendingData sought after it moved for summary judgment. Judge Leavitt granted the request and issued a Stay Order. Shuffle Master vehemently contested the motion and then, just as aggressively, tried to overturn it. First, Shuffle Master filed Objections (totaling nearly 200 pages) with this Court, urgently maintaining its required discovery on "all issues before the Court, including damages, willfulness, and infringement under the doctrine of equivalents, in addition to literal infringement." Shuffle Master's Objections to Magistrate Leavitt's Order Staying Discovery, June 6, 2007, Dkt. No. 178, at 11. Shuffle Master represented that unless the stay was lifted, it would be unable to "finally 'have its day in court.'" *Id.* at 4. Not content with this submission, it also moved for Judge Leavitt to reconsider his ruling a week later (a modest 59 page filing). Shuffle Master's Motion for Magistrate Judge to Reconsider Magistrate Judge Order re Order On Motion for Protective Order, June 15, 2007, Dkt. No. 183. Shuffle Master's replies to VendingData's response to these filings consumed a staggering total of *more than 500 pages.*[7]

Notwithstanding its fervor for more discovery, Shuffle Master contemporaneously cross-moved for summary judgment on both literal infringement and infringement under the doctrine of equivalents. Shuffle Master's Cross-Motion for SJ, filed under seal May 31, 2007, at 17, 21, 23-

---

[7] Shuffle Master filed a 25-page Reply in Support of its Objections that included another 4-page declaration from Bregenzer and 107 more pages of exhibits. Shuffle Master's Reply in Support of Objections to Magistrate Judge Leavitt's Order Staying Discovery, July 6, 2007, Dkt. No. 189. It also submitted a 23-page Reply in Support of its Motion to Reconsider, along with yet another four-page Bregenzer declaration that had 272 pages of exhibits, a 5-page declaration of Paul Myer and a 4-page declaration of attorney Ben Ostapuk with its 83 pages of exhibits. Shuffle Master's Reply in Support of Its Motion to Reconsider Magistrate Judge Leavitt's May 23, 2007 Order Staying Discovery, July 18, 2007, Dkt. No. 191.

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89109

44403.14444403.1

24, 26-27. Thus, while fiercely contesting a stay of discovery, Shuffle Master unabashedly maintained that no undisputed material facts existed and summary resolution was appropriate.

Shuffle Master's tactics were obviously designed, as its C.O.O., Mr. Meyer, freely admitted, "to cause VendingData to spend funds on legal representation." Newburg Decl., ¶ 3, Dkt. No. 155-3. Certainly, the effort expended was disproportionate to whatever benefit Shuffle Master hoped to glean from additional discovery, given that Shuffle Master believed that infringement, *in toto*, was ripe for summary resolution. The logical conclusion is that Shuffle Master's tactics were merely part of its avowed scheme to eliminate VendingData as a competitor. Shuffle Master's actions are perfect exemplar of the vexatious litigation that the fee-shifting provisions of the patent code are intended to deter.

### III.   Shuffle Master's Tactics Parallel Those In The Recently Decided *Medtronics* Decision

In a recently decided case, the U.S. District Court for the District of Colorado found tactics of the same ilk grounds for requiring the plaintiff (under 35 U.S.C. § 285) *and* its attorneys (under 28 U.S.C. § 1297) to pay the victim's legal fees. *Medtronic Navigation, Inc., et. al. v. BrainLAB Medizinische Computer Systems GMbH, et. al.*, C.A. No. 98-cv-01072-RPM (D. Col. Feb. 12, 2008) (slip op.). There, although the "claims construction rulings had eviscerated the plaintiffs' case," the plaintiff proceeded to press for infringement. *Id.* at 9.

The court observed that after receiving the claim construction, the plaintiff "had a duty to reexamine this litigation and make an objective assessment of the validity of Medtronic's claims that BrainLAB's products infringed the patent claims as construed." *Id.* However, rather than accept the rulings, the plaintiff embarked upon a strategy of proceeding with its case and attempting to distort the claim construction. *Id.* at 10.

The court found that such action constituted vexatious litigation, which includes conduct that seeks to "obfuscate[] the legal issues and complicate[] the defendants' and the court's task of

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada  89109

44403.14444403.1

PLA00093134

PX75.18

sorting them out." *Id.* (citing *Shackelford v. Courtesy Ford, Inc.*, 96 F. Supp. 2d 1140, 1144 (D. Colo. 2000) (citing *Braley v. Campbell*, 832 F.2d 1504, 1509 (10th Cir. 1987)); *Id.* at 11. Consequently, the court assessed fees against both the plaintiff under 35 U.S.C. § 285 and the attorneys under 28 U.S.C. § 1927. *Medtronics*, slip. op. at 18 – 21.

The parallels between *Medtronics* and this case are readily apparent. Shuffle Master initiated this suit, as promised, to block VendingData from selling its PokerOne product. Shuffle Master's infringement claim was based on a construction at odds with its representations to the Patent Office. The Federal Circuit presaged the outcome of this case by admonishing that if the claim construction advanced by VendingData was adopted, the PokerOne would likely not infringe. This Court adopted that construction.

There has never been a dispute regarding the actual operation of the PokerOne. From the day the claim construction was issued, Shuffle Master had the ability to apply the terms of that construction to the *physical* operation of the PokerOne. Undoubtedly it did so. Just as surely it must have concluded, as did this Court, that "no reasonable jury" would find that the PokerOne infringed. It proceeded nonetheless, distorting the claim construction by ignoring key elements, relying on expert opinions based upon the patent rather than the device, and building a house of cards based upon mischaracterizations and ultimate opinion testimony of witnesses it controlled.

Like the plaintiff in *Medtronics*, when "faced with adverse court rulings, [Shuffle Master] proceed[ed] undeterred, with only superficial observance" of the courts determinations. *Medtronics*, slip. op. at 10. Along the way, it wreaked havoc with abusive discovery and the shadow it cast over Vending Data's chances to compete fairly for a share of the marketplace Shuffle Master has so long dominated. This case is exceptional. And an award of fees under 35 U.S.C. § 285 is warranted.

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89109

44403.14444403.1

**CONCLUSION**

For the foregoing reasons, VendingData requests that it be awarded fees pursuant to 35 U.S.C. § 285.

Respectfully submitted,

**VENDINGDATA CORPORATION**

Dated:  February 15, 2008          By:          /s/
                                        One of their attorneys

West Allen (Nevada Bar No. 5566)
Michael McCue (Nevada Bar No. 6055)
LEWIS & ROCA LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89109
(702) 949-8200 - telephone
(702) 949-8398 - facsimile


Kimball R. Anderson
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois  60601
(312) 558-5600 - telephone
(312) 558-5700 - facsimile

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada  89109

44403.14444403.1

PLA00093136

PX75.20

**CERTIFICATE OF SERVICE**

Pursuant to Fed. R. Civ. P. 5(b), I hereby certify that service of **VENDINGDATA'S MEMORANDUM IN SUPPORT OF ITS RULE 54 MOTION FOR THE AWARD OF ATTORNEY-FEES AND COSTS UNDER 35 U.S.C. § 285** was made this date by hand delivery to the following:

DONALD J. CAMPBELL
J. COLBY WILLIAMS
CAMPBELL & WILLIAMS
700 South Seventh Street
Las Vegas, NV 89101

and by depositing a copy for mailing, first class mail, postage prepaid, at Las Vegas, Nevada, to the following:

ERIC R. LAMISON
BENJAMIN R. OSTAPUK
KIRKLAND & ELLIS, LLP
555 California Street
San Francisco, CA 94104

BARRY F. IRWIN
KIRKLAND & ELLIS, LLP
200 E. Randolph Drive
Chicago, IL 60601

DATED this 15th day of February, 2008.

_____/s/_____
Jennifer Bryan

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89109

44403.14444403.1

PLA00093137