# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SHUFFLE TECH INT'L, LLC,. et al., | ) |
| Plaintiffs, | ) |
| vs. | ) Case No. 15 C 3702 |
| SCIENTIFIC GAMES CORP., et al., | ) |
| Defendants. | ) |

## ORDER ON MOTIONS IN LIMINE

MATTHEW F. KENNELLY, District Judge:

In this order, the Court rules on all but two of the parties' motions *in limine*. The order, among other things, memorializes oral rulings made at the various sessions of the final pretrial conference in this case.

### A. Background

As indicated in earlier orders, plaintiffs allege unlawful monopolization in violation of the Sherman Act and the Clayton Act. Plaintiffs are prosecuting the claim based on two separate theories. They are asserting what is commonly called a "Walker Process" antitrust claim, which requires them to establish that the defendants procured one or more patents by intentional fraud on the US Patent and Trademark Office (PTO), as well as all of the other elements of a Sherman Act monopolization claim. *See Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172 (1965). Plaintiffs are also asserting a "sham litigation" claim, which (in general terms) requires them to establish that the defendants pursued an objectively baseless lawsuit as a weapon to stifle competition. *See Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus.,*

*Inc.,* 508 U.S. 49 (1993) ("*PRE*").

As indicated, these are distinct, though related, theories of antitrust liability. As the Federal Circuit has stated:

> *PRE* and *Walker Process* provide alternative legal grounds on which a patentee may be stripped of its immunity from the antitrust laws; both legal theories may be applied to the same conduct. Moreover, we need not find a way to merge these decisions. Each provides its own basis for depriving a patent owner of immunity from the antitrust laws; either or both may be applicable to a particular party's conduct in obtaining and enforcing a patent. The Supreme Court saw no need to merge these separate lines of cases and neither do we.
>
> Consequently, if the above-described elements of *Walker Process* fraud, as well as the other criteria for antitrust liability, are met, such liability can be imposed without the additional sham inquiry required under *PRE*. That is because *Walker Process* antitrust liability is based on the knowing assertion of a patent procured by fraud on the PTO, very specific conduct that is clearly reprehensible. On the other hand, irrespective of the patent applicant's conduct before the PTO, an antitrust claim can also be based on a *PRE* allegation that a suit is baseless; in order to prove that a suit was within *Noerr*'s "sham" exception to immunity, an antitrust plaintiff must prove that the suit was both objectively baseless and subjectively motivated by a desire to impose collateral, anti-competitive injury rather than to obtain a justifiable legal remedy.

*Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1071 (Fed. Cir. 1998).

Similarly:

> Two separate doctrines provide hurdles that a plaintiff must clear when challenging the enforcement of an issued patent on antitrust grounds. First, issued patents are presumed valid pursuant to 35 U.S.C. section 282(a), and "the law recognizes a presumption that the assertion of a duly granted patent is made in good faith." *C.R. Bard, Inc. v. M3 Sys., Inc.,* 157 F.3d 1340, 1369 (Fed. Cir. 1998). Second, the filing of a lawsuit is generally protected by the First Amendment and immunized from antitrust liability under the *Noerr* doctrine. *See E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127 (1961); *see also Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.,* 508 U.S. 49, 60–61 (1993) (hereinafter, "*PRE* "). Thus, enforcement of patents through litigation can constitute exclusionary conduct for Section 2 purposes only where (1) the patentee seeks to enforce a patent obtained through fraud on the USPTO (so-called "*Walker Process* fraud"); or (2) the antitrust

> plaintiff is able to demonstrate that the patent infringement suit comes within *PRE*'s narrow "sham" litigation exception to *Noerr* immunity. *Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.,* 382 U.S. 172 (1965).

*Westlake Servs., LLC v. Credit Acceptance Corp.*, No. CV1507490SJOMRWX, 2015 WL 9948723, at *6 (C.D. Cal. Dec. 7, 2015). *See also Walter Kidde Portable Equip., Inc. v. Universal Sec. Instruments, Inc.*, 669 F. Supp. 2d 895, 898-99 (N.D. Ill. 2009).

In this case, plaintiffs contend that defendants' filing and prosecution of a lawsuit against DigiDeal Corp., entitled *SHFL Entertainment, Inc. v. DigiDeal Corp.*, No. 2:12-cv-1782 (D. Nev.), gives rise to a monopolization claim under both the *Walker Process* and sham litigation theories.

With this background in mind, the Court turns to the parties' motions *in limine*.

**B.     Plaintiffs' motions in limine**

1.     Plaintiffs ask the Court to bar evidence and argument that it or DigiDeal could have or should have designed around defendants' patents. The Court ruled this irrelevant in excluding proposed expert testimony by defendants on this point, and defendants have acknowledged that the ruling applies beyond simply the testimony of the expert. The Court grants plaintiffs' motion.

2.     Plaintiffs ask the Court to preclude evidence or argument that the DigiShuffle devices infringe on defendants' '982 or '935 patents, arguing that this issue was concluded by the entry of judgment adverse to the defendants in the Nevada DigiDeal lawsuit and cannot be litigated or relitigated here. There are at least three problems with this argument. First, the Nevada federal court made no infringement findings; it entered judgment against defendants on other grounds. Second, even if one might consider the Nevada judgment as having somehow implicitly determined the

infringement issue, the judgment has now been vacated on appeal. And third, given plaintiffs' assertion of a "sham litigation" antitrust claim, defendants must be permitted to present evidence regarding their basis for filing suit against DigiDeal, which necessarily involves explaining why they believed DigiDeal's device infringed the '982 and '935 patents. That does not warrant a full-blown infringement trial (unless, of course, plaintiffs contest the proposition that defendants believed in good faith that infringement had taken place), but the Court will permit defendants to offer evidence explaining their belief in this regard.

      3.      The Court will need to hear further argument on plaintiffs' motion seeking to exclude the district judge's ruling on DigiDeal's request for attorney's fees in the Nevada patent litigation. In particular, the Court wishes to hear argument regarding the effect on that ruling of the Federal Circuit's ruling vacating the underlying judgment.

      4.      Plaintiffs ask the Court to preclude defendants from offering evidence of what they refer to as "any special meaning for any claim term of the '982 or '935 patents." Pls.' Mots. In Limine at 5. They contend that defendants took the position in the Nevada DigiDeal litigation that all claim terms have their "ordinary meaning" and that defendants should be bound to that position here. Plaintiffs also contend that defendants have not disclosed any proposed definition for any claim term other than the term's ordinary meaning. Defendants, in response, dispute the latter point and deflect the former point.

On the disclosure issue, plaintiffs have not cited any discovery request that would have required defendants to disclose their proposed construction of any claim term. In addition, neither party sought to apply this district's Local Patent Rules to this case

4

(rules that would have required advance disclosure of proposed claim term definitions). For these reasons, the Court sees no basis to issue any preclusion or *in limine* ruling based on nondisclosure. Indeed, the report of defendants' patent / technical expert, Kevin Lynch, discloses that he has relied on and applied the constructions argued by each party in the DigiDeal suit and on "preliminary claim constructions" offered by the judge in that case. *See* Defs.' Resp. to Pls.' Mots. In Limine, Ex. M ¶ 35. The Court concludes that defendants have, via Lynch's report, adequately disclosed the claim construction(s) upon which they intend to rely.

The Court also notes that although claim construction is a matter that is determined by the court in a patent infringement case, *see Teva Pharmaceuticals USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 837 (2015); *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996), this is not a patent infringement case. Rather, the patent-related inquiries involve, in general terms, whether defendants pursued objectively baseless patent infringement litigation and whether they committed a fraud on the PTO. Particular constructions of particular claim terms may underlie the parties' respective contentions on these points, but neither side has asked the Court to adopt any particular construction of any relevant claim term. <u>The parties would be well advised to give a good deal of thought as to the Court's role, if any, in addressing, or communicating to the jury, matters relating to construction of the terms in the '982 and '935 patents, and the Court will expect them to address this at the next hearing in this case.</u> Whether or not one side or another feels any particular need or desire to disclose elements of its trial strategy in advance, the Court does not intend to plunge blindly into the trial without knowing the parties' contentions on this and other key points.

Turning the more substantive side of plaintiffs' argument, it is arguably a bit odd for defendants—who, after all, are trying to defeat in the present case a contention that they acted in bad faith vis-à-vis the PTO or in filing and pursuing the DigiDeal suit—to rely on a claim construction that differs from whatever they advanced before the PTO or in the DigiDeal suit. That, however, is a matter for cross-examination and argument, not a basis to hold defendants to a particular construction.

5. Plaintiffs ask the Court to exclude a draft arbitration demand prepared by attorney Marie Kerr, who evidently jointly represented Shuffle Tech (one of the plaintiffs in this case) and DigiDeal. Kerr claimed in the draft demand that Shuffle Tech had represented that there was a fund available to defend the DigiDeal suit but that the money was used for other purposes and Shuffle Tech failed to pay fees that were due. In the demand, Kerr accused Shuffle Tech and its principal of breach of contract and fraud.

The parties dispute the relevance of the demand, but the Court need not resolve that dispute. Plaintiffs contend it is inadmissible hearsay. Indeed it is. Defendants argue that it is admissible against Shuffle Tech because Kerr was its agent and the demand includes statements made in the scope of the agency. This argument is a non-starter. In asserting a claim against Shuffle Tech, Kerr was acting adversely to the principal, not within the scope of her agency. (Defendants also argue that Kerr was acting within the scope of her agency relationship with DigiDeal and that Shuffle Tech is asserting its claim, in part, as an assignee of DigiDeal. But again, Kerr was acting on her own behalf in demanding payment of attorney's fees, not as an agent for one or both of her clients.)

6

Defendants also contend that they are not offering the draft arbitration demand for the truth of the matters asserted in the demand, but rather "as evidence of the inter-company feuding and breaches of obligations between and among Plaintiffs and DigiDeal that contradict and therefore cripple Plaintiffs' causation theory." Defs.' Resp. to Pls.' Mots. In Limine at 19. But this warrants admission only of the *fact* of the dispute over nonpayment of attorney's fees, not the contents of Kerr's arbitration demand, which is the equivalent of a complaint in a lawsuit. The contents are hearsay, and because defendants have shown no applicable hearsay exception, the demand is inadmissible.

The Court also notes that the arbitration demand was never filed; it is a draft. In addition, Kerr's accusations of misrepresentation by Shuffle Tech's principal are entirely unrelated to the present dispute. Litigating the particulars of this would cause an unwarranted diversion from the issues presented in the case that would significantly outweigh the virtually nonexistent probative value of Kerr's unfiled allegations. *See* Fed. R. Evid. 403.

For these reasons, the Court excludes Kerr's draft arbitration demand.

6. Finally, plaintiffs ask the Court to bar evidence regarding any claimed breach of a 2016 settlement agreement between plaintiffs and DigiDeal. Here is the background. DigiDeal sued two of the plaintiffs for (perhaps among other things) non-payment of legal fees related to defendants' patent litigation against DigiDeal. The lawsuit was settled in August 2016. The settlement agreement required Shuffle Tech to pay $225,000 as reimbursement for attorney's fees incurred in the Nevada patent suit

instituted by defendants[1] in two installments due 15 and 30 days after the agreement's execution. In return, DigiDeal "reaffirm[ed] its prior assignment to Shuffle Tech" of DigiDeal's claims against the defendants in the present case. DigiDeal also agreed to cooperate with plaintiffs in the present case. The agreement included a confession of judgment clause for the $225,000. *See* Defs.' Resp. to Pls.' Mots. In Limine, Ex. I. Plaintiffs did not make the initial payment. After getting a notice of default, and while still within the cure period under the agreement, Shuffle Tech received a demand from DigiDeal's principal secured creditor, demanding that Shuffle Tech pay the money to the creditor, not DigiDeal. DigiDeal filed for bankruptcy in February 2017. Shuffle Tech filed an interpleader case as part of the bankruptcy, contending that there was a dispute between DigiDeal and its principal creditor over entitlement to the $225,000. The bankruptcy court permitted Shuffle Tech to deposit the $225,000 and dismissed Shuffle Tech from the case. The court found that there was a legitimate dispute over who was entitled to the $225,000 and that Shuffle Tech had filed the interpleader request in good faith. The court also found the settlement agreement valid and released Shuffle Tech from any claims covered by the agreement. *Id.*, Exs. R, T.

Defendants contend that the settlement agreement and deposition testimony by a principal of DigiDeal that Shuffle Tech breached the agreement are relevant and admissible. In support, they reference plaintiffs' damages claim: but for defendants' actions, plaintiffs would have continued their arrangement with DigiDeal and would have brought their shufflers to the market. Defendants contend that "[t]he fact that DigiDeal

---

[1] The Court is using the term "defendants" to describe them and their predecessor entities. This includes the entity the parties typically call "SHFL" in their filings.

sued its former partners, settled, and then accused them of breaching the settlement agreement . . . demonstrates the extent to which cooperation had broken down" between plaintiffs and DigiDeal and tends to show that they would not have stayed together long enough to commercialize their shuffler. Defs.' Resp. to Pls.' Mots. In Limine at 24.

Plaintiffs' ability to recover compensatory damages depends, at least to a significant extent, on persuading a jury that they would have been able to bring the DigiDeal shuffler to market. This required plaintiffs and DigiDeal to work as a team. Thus there is a straight-faced basis for defendants to contend that if plaintiffs and DigiDeal could not work as a team, they would have been unable to bring their shuffler to market. The real question, though, is whether the breach-of-agreement evidence tends to show they were unable to work as a team. As defendants have pointed out elsewhere, plaintiffs' damages theory depends on what likely would have happened in the "but-for world" in which the alleged patent litigation against DigiDeal had never taken place. Thus disputes between DigiDeal and plaintiffs that almost by definition arose out of the patent litigation would not appear to have much of a bearing on what would have happened in the but-for world. The alleged falling out between the plaintiffs and DigiDeal postdated the filing of the Nevada litigation, and it is difficult to escape an inference that the institution of the patent infringement had an impact on what happened between DigiDeal and the plaintiffs after that—including the falling(s) out and the settlement.

In addition, the limited probative value of the breach-of-agreement evidence is tempered by the fact that were the Court to admit it, it would also have to admit

9

evidence regarding the interpleader complaint, the apparent interests of DigiDeal's secured creditor, and how the bankruptcy court ultimately ruled. This would require an extended detour away from issues the jury legitimately has to decide in this case.

Given these considerations, the Court concludes that the limited probative value of the breach-of-settlement-agreement evidence is significantly outweighed by the danger of wasting time and confusing the issues.[2] That said, it is not the Court's intention to preclude all evidence regarding DigiDeal's bankruptcy; that is a legitimate and relevant consideration in the jury's assessment of damages.

**C.    Defendants' motions in limine**

1A.    The Court ruled on summary judgment that plaintiffs had not provided evidence from which a reasonable jury could find that defendants were aware of the Nicoletti or Luciano prior art references during prosecution of the '982 patent or from which a reasonable jury could find that defendants deliberately omitted, with fraudulent intent, mention of the Roblejo reference in connection with the same patent prosecution. Defendants they ask the Court to preclude evidence or argument that defendants fraudulently procured the '982 patent on these bases. Plaintiffs concede this point but argue that they should be able to offer these references in support of their *Walker Process* sham litigation theory and in support of their contention that defendants fraudulently procured the '935 patent by omitting these references. The Court agrees;

---

[2] Defendants also argue that the breach-of-agreement evidence admissible to show the bias of DigiDeal's principal Tyler Kuhn, whose testimony will be presented by deposition. That argument, which defendants do not really explain, lacks merit. If anything, this evidence would tend to show Kuhn's bias *against* plaintiffs, which does not provide *defendants* with a good faith basis to introduce the evidence.

these are separate bases for which evidence regarding the Nicoletti, Luciano, and Roblejo prior art references are appropriately admissible.

1B and 2-7. In their motions *in limine*, defendants asked the Court to preclude most, if not all, of the evidence that plaintiffs want to introduce regarding other automated-shuffler patent litigation involving defendants. There are five cases: *CARD v. Shuffle Master*, *MP Games v. Shuffle Master*, *Shuffle Master v. VendingData*, *Shuffle Master v. Taiwan Fulgent*, and *Shuffle Master v. TCS Huxley*.

In their response to the motion, plaintiffs contended that they wanted to offer evidence about the other lawsuits to show knowledge of the prior art; intent to deceive the PTO; and conduct to monopolize the shuffler market; as well as "motive and a common scheme or plan to eliminate competition through litigation using fraudulently obtained patents and discovery abuse." Pls.' Resp. to Defs.' Mots. In Limine at 4. At the initial pretrial conference session, the Court asked plaintiffs to submit a written proffer describing with particularity the evidence regarding the other lawsuits that they proposed to offer. In their proffer, plaintiffs abandoned the "common scheme or plan" theory, saying only that they propose to offer evidence regarding the other lawsuits for the following purpose:

> Plaintiffs offer evidence regarding certain prior SHFL litigation in order to demonstrate SHFL's knowledge of and repeated contact with three prior art references (Luciano shuffler, Nicoletti shuffler, and Roblejo shuffler) that Plaintiffs allege were concealed from the PTO during prosecution of the '935 patent, the re-examinations of the '982 and '935 patents, and during discovery in the DigiDeal litigation. The evidence shows SHFL's repeated awareness of these prior art references during the prosecution of the '935 patent, SHFL's awareness of them prior to filing suit asserting the '982 and '935 patents against DigiDeal, and SHFL's awareness of them during prosecution of the '982 and '935 reexaminations and in post-reexamination proceedings in the DigiDeal litigation.

11

Pls.' Offer of Proof on Other Litigation at 1.

Plaintiffs are entitled to offer evidence to show that defendants were aware of the prior art and its features, specifically the Nicoletti, Roblejo, and Luciano shufflers. But that does not mean—as defendants essentially argued at the most recent session of the pretrial conference—that plaintiffs are limited to offering evidence that a CD containing the prior art was produced to defendants in an earlier lawsuit, and nothing more. As the Court noted at the time, and as plaintiffs argue in their post-hearing submission, plaintiffs are entitled to offer evidence that "explains the significance of what is on the discs . . ., essential context explaining how it fits into both the prior litigation as well as this litigation, and why SHFL employees and agents would have been paying attention to it." Pls.' Reply to Defs.' Resp. to Pls.' Offer of Proof at 1. Such evidence is probative to show intent in connection with the procurement and attempts to enforce the patents at issue in this case. Plaintiffs, like virtually every other litigant attempting to prove intent, are entitled to attempt to prove it using circumstantial evidence. As they argue, "the context in which the prior art came to the attention of the relevant people charged with fraud and sham in this case," *id.* at 3, provides circumstantial evidence of intent. In addition, the fact that the other lawsuits involved patents other than the '982 and '935 patents bears on the weight to be given this evidence, but not its admissibility. If the prior art references came to defendants' attention in a way likely to impress upon them its importance in connection with patents from the same or related families, that tends to make it more likely that (among other things) defendants knew of the significance of the prior art with regard to the patents at issue.

With this general background in mind, the Court turns to the particular items of

evidence cited in plaintiffs' proffer.  The Court notes that any exclusions are, of course, subject to later review if defendants open the door by way of their examination of witnesses or introduction of exhibits.

*CARD case.*  With regard to the *CARD* lawsuit, and tracking the items of evidence as listed in plaintiffs' proffer, the Court excludes evidence regarding findings made by the court in connection with a motion for preliminary injunction and the filing of a motion to reconsider the denial.  That evidence gets too far into the weeds of the *CARD* lawsuit in a way that is unnecessary to explain the context of the disclosure and use of the prior art in that case.  The Court also excludes evidence regarding the claim of inequitable conduct made against defendants in that case.  The claim of inequitable conduct did not involve the features of the '982 or '935 patents that plaintiffs contend are present in the prior art.  Admitting this evidence would require the parties to present evidence explaining the significance of an inequitable conduct claim generally and would require defendants to offer a significant amount of otherwise immaterial evidence in order to refute the particular claim of inequitable conduct asserted in the *CARD* litigation.  Finally, the Court excludes certain other evidence as unduly repetitive or providing unnecessary detail.

The Court notes its disagreement with defendants' contention that admission of evidence of the 1997 tradeshow (regarding the Roblejo shuffler) somehow violates the Court's summary judgment ruling.  That ruling concerned plaintiffs' *Walker Process* claim regarding the '982 patent; the Court did not, expressly or even impliedly, exclude the 1997 tradeshow evidence for all purposes.  The evidence is relevant for the reasons described in plaintiffs' submission.

13

Specifically, the Court excludes the following items in plaintiffs' proffer: 2 (preliminary injunction; unnecessary detail); 10 (findings on preliminary injunction); 11 (unnecessary detail); 15 (unduly cumulative); 16 (preliminary injunction); 17 in part (the reference to denial of the motion to reconsider); 19 (discussion of preliminary injunction); 20, 25, 26 & 27 (inequitable conduct claim); 28 & 34 (defendants' purchase of CARD irrelevant to show notice of prior art[3]). This evidence is excluded under Federal Rule of Evidence 403 and also, for some of the evidence, as irrelevant. The rest of the items listed by plaintiffs are admissible.

*MP Games case.* Items 1 through 10 listed in plaintiffs' proffer regarding the *MP Games* case are admissible; they tend to establish defendants' awareness of the Luciano shuffler during the period that the application for the '935 patent was pending before the PTO. Item 11, regarding the fact that defendants hired CARD's expert, is inadmissible as irrelevant and under Rule 403.

*Vending Data* case. The actions of attorney Kimball Anderson—who later represented defendants in patent litigation, including the DigiDeal case—when he was representing defendants' opponent Vending Data is barely relevant if at all, and the danger for unfair prejudice to defendants outweighs its quite limited probative value. In addition, the fact that Vending Data (through Anderson) accused defendants of sham litigation and antitrust violations is not properly admissible to establish notice of relevant prior art, the only purpose for the other-lawsuits evidence cited by plaintiffs in their proffer or their reply in support of the proffer. For these reasons, the Court excludes

---

[3] This ruling is not intended to preclude plaintiffs from relying on evidence regarding the sale of *CARD* for other purposes, such as to establish damages. *See* Pls.' Reply to Defs.' Resp. to Pls.' Offer of Proof at 7.

14

items 1 through 3 and 5 through 8. Items 9 and 10, concerning the outcome and aftermath of the *Vending Data* case, are irrelevant and also inadmissible under Rule 403.

The fact that Anderson represented a litigation opponent of defendants and was later hired by defendants (referenced in items 11 and 12) is admissible for background purposes, but plaintiffs may not argue that this was in any way untoward. The only item of evidence cited by plaintiffs in their proffer that is admissible is part of item 4, specifically, testimony that defendants produced information regarding the Nicoletti, Roblejo, and Luciano shufflers in the *Vending Data* case. Defendants' non-production of the *CARD* inequitable conduct motion (also part of item 4) is irrelevant or, alternatively, inadmissible under Rule 403.

*Taiwan Fulgent case.* Items 1 through 7 listed in plaintiffs' proffer regarding the *Taiwan Fulgent* case are admissible for the purpose of showing notice of prior art, discussed in more detail earlier. Item 8, regarding the terms under which the *Taiwan Fulgent* case settled, is irrelevant or, alternatively, inadmissible under Rule 403. Items 9 through 14, regarding reexamination proceedings on the '751 patent, are inadmissible under Rule 403, because their admission would require an extended detour into the particulars of that proceeding. It may be, as plaintiffs note, that a claim in the '751 patent was rejected on reexamination on the basis that it was anticipated by the Roblejo patent, but there is plenty of other evidence of defendants' awareness of the Roblejo reference, so the probative value of this particular incident is limited and significantly outweighed by the risk of waste of time.

*TCS Huxley case.* As described by plaintiffs in their proffer, what they intend to

15

prove via evidence about the *TCS Huxley* case is, for the most part, that the case involved a patent that was obtained without disclosing the same prior art at issue in this case: Roblejo, Nicoletti, and Luciano. *See* Proffer TCS Huxley Items 2-6. This, of course, does not tend to prove notice of those items of prior art. It would appear that plaintiffs are attempting to introduce this evidence to show a pattern of behavior. The Court excludes this evidence (items 2-6) under Federal Rule of Evidence 404(b); plaintiffs have failed to establish its admissibility for a proper non-propensity purpose under that rule. The outcome of the Huxley case (item 9) is inadmissible to establish notice of prior art. Evidence of the involvement of various persons in the *TCS Huxley* case (items 1, 7, and 8) is excluded given the Court's sustaining of defendants' objection to the remainder of the *TCS Huxley* evidence.

Plaintiffs may, however, introduce evidence relating to declarations submitted in the reexaminations of the two patents at issue in the DigiDeal litigation (items 10 and 11)—the '982 and '935 patents—because that evidence is directly relevant to the issues in the present case. It is not clear why plaintiffs listed this evidence under the *TCS Huxley* heading, as it does not seem to have much, if anything, to do with that case.

8. Evidence regarding defendants' alleged failure to produce, in the DigiDeal suit, evidence of allegedly invalidating prior art is relevant and admissible to help establish plaintiffs' sham litigation theory of liability, which directly concerns the DigiDeal case. The Court finds unpersuasive defendants' contention that the probative value of this evidence, which is considerable, is significantly outweighed by the purported need for a "mini-trial" of this episode. Any "mini-trial" would be short and to the point and highly unlikely to divert the attention of the jury away from the issues in the case.

9. The Court excludes, as inadmissible hearsay, news articles attributing statements to defendants' former CEO Mark Yoseloff. Statements by Yoseloff would not be hearsay if introduced directly by plaintiffs, *see* Fed. R. Evid. 801(d)(2), but the reporting of purported statements of Yoseloff is hearsay, not subject to any exception, as the Court ruled at the May 2, 2018 pretrial conference.

10. The Court overrules defendants' request to exclude articles regarding the Nicoletti prior art prototype. Contrary to defendants' argument, this evidence is not hearsay; its significance is that articles describing the invention exist. Under 35 U.S.C. § 102(b), a patent cannot be granted if the invention was, among other things, "described in a printed publication . . . or in public use" more than one year before the date of the patent application. Plaintiffs are entitled to offer this evidence (including photographs, which aren't hearsay anyway) because it shows what was described in a printed publication.

11. Defendants seek to exclude an affidavit submitted by Mark Newburg, the president of VendingData, an entity sued by defendants for patent infringement, in which Newburg says that Shuffle Master's president Paul Meyer made statements to him to the effect that his company was prepared to file multiple lawsuits against VendingData. Meyer's alleged statements are not hearsay; they concern Shuffle Master's intention regarding future conduct, and in any event if offered by plaintiffs in this case they are a statement by an opposing party admissible under Rule 801(d)(2). But Newburg's out-of-court statement regarding what Meyer told him *is* hearsay; it is offered to prove that Meyer said what Newburg attributes to him. Plaintiffs cite no applicable exception to the hearsay rule, so the Court sustains defendants' motion to

exclude it.

12. Defendants ask the Court to bar plaintiffs from displaying exhibits that contain the legends "Redacted" or "Privileged." The Court has a hard time seeing why this cannot and should not be worked out by agreement. In general terms, the Court does not believe it appropriate to show or give the jury a document that includes a legend saying that part of it is privileged, because this implies something about its contents. In equally general terms, the Court does not have a problem showing or giving the jury an exhibit that has redactions or that *says* it has redactions. This is easily explained to the jury by the Court. There may be exceptions, of course, to both of these general statements. The Court directs the parties to make good faith efforts to resolve these disputes and then present the Court with only those limited issues they cannot resolve on their own. As a disincentive for taking unreasonable positions, the Court advises that it will charge trial time (based on the amount of time needed to present the dispute to the Court and for the Court to rule on it) to the party that loses on any such dispute presented to the Court.

13. At the May 2, 2018 pretrial conference, the Court granted defendants' motion to bar evidence that judges in other cases were critical of various aspect of the testimony of two defense experts, Christine Meyer and James Malackowski. Were the Court to admit the comments by the judges in the other cases, they would have to be put into context, which would result in the experts' testimony descending into a series of mini-trials regarding the contents of their testimony in the other cases. This detrimental effect on the trial significantly outweighs the probative value of this testimony. *See* Fed. R. Evid. 403.

14. The Court granted, at the May 2, 2018 pretrial conference, defendants' motion to exclude a statement by a judge in another case regarding the credibility of Todd Dickinson, one of defendants' experts. The case is *Ashgari-Kamrani v. United Servs. Automobile Ass'n*, No. 2:15-cv-478 (E.D. Va.), dkt. 380 at 33-34. The Court's ruling is based on Federal Rule of Evidence 403. Among other things, as the Court noted at the pretrial conference, one cannot determine from the material submitted here exactly what the judge in the *Ashgari-Kamrani* case found to lack credibility.

15. The Court overrules defendants' motion to preclude all evidence relating to DigiDeal's bankruptcy. The fact of DigiDeal's demise is a relevant and significant aspect of plaintiffs' claims regarding defendants' alleged monopolization of the market for automatic card shufflers, as it tends to show the success of defendants' claimed efforts. Defendant argues that DigiDeal was already in financial distress before defendants' conduct, but that goes to the weight to be given to the evidence of bankruptcy, not its admissibility. The Court is unpersuaded to the need to introduce evidence to explain the company's financial distress outweighs the probative value of the evidence.

16. Finally, defendants ask the Court to exclude evidence that defendants submitted to the PTO in connection with other patent applications the prior art that they allegedly withheld in prosecuting the '982 and '935 patents. This is not, as defendants contend, evidence of a subsequent remedial measure barred under Federal Rule of Evidence 407. The disclosure in connection with later, and different, patent applications would not have "made an earlier injury or harm"—specifically, the alleged wrongful issuance of the '982 and '935 patent—less likely to occur. And it is offered to show

defendants' awareness of the prior art and its significance.  Nor is this evidence *unfairly* prejudicial.  If defendants have an explanation for disclosing the prior art in later applications but not on the earlier ones, they are free to offer it in evidence through an appropriate witness.

**Conclusion**

The case is set for a further hearing on June 29, 2018 at 10:30 a.m.  The Court needs to hear further argument regarding plaintiffs' motion *in limine* 4 (regarding the fee decision in the Nevada litigation) and plaintiffs' more recently filed motion in limine regarding the effect of the Federal Circuit's decision in the *SHFL Entertainment v. DigiDeal Corp.* lawsuit.  The parties should also be prepared to address the point made by the Court at page 5 of this order.

Date:  June 25, 2018

```
                                       _____
                                              MATTHEW F. KENNELLY
                                              United States District Judge
```