**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

Shuffle Tech International, LLC, et al.,

Plaintiffs,

v.

Scientific Games Corporation, et al.,

Defendants.

Civil Action No. 1:15-cv-3702
Honorable Matthew F. Kennelly

---

**DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW**

---

Craig C. Martin
David Jiménez-Ekman
Timothy J. Barron
Rachel S. Morse
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654-3456
Tel: 312.222.9350

Attorneys for Defendants

August 1, 2018

## TABLE OF CONTENTS

I. PLAINTIFFS HAVE NOT PRESENTED A PRIMA FACIE CASE OF LIABILITY. ..... 1

A. Plaintiffs Have Not Proved Fraudulent Patent Procurement. ..... 1

1. Plaintiffs Have Not Proved Defendants Failed to Disclose Prior Art. ..... 2

2. None of the Omitted References Was "But For" Material. ..... 5

3. No Individual Substantively Involved in the Patent Applications Knew of an Omitted Reference's Materiality. ..... 6

4. There Is No Evidence of Specific Intent to Defraud the Patent Office. ..... 7

5. There Is No Evidence that Any SHFL Decision-Maker Knew of Any Fraudulent Procurement when SHFL Sued DigiDeal. ..... 9

B. Plaintiffs have not proved sham litigation. ..... 9

1. SHFL's Suit Against DigiDeal Was Not Objectively Baseless. ..... 9

2. SHFL Did Not Sue DigiDeal Solely with the Subjective Intent to Harm DigiDeal Through Misuse of Litigation. ..... 10

II. PLAINTIFFS HAVE NOT PROVED THEIR CLAIMED DAMAGES. ..... 11

III. PLAINTIFFS HAVE NOT PROVED ANTITRUST STANDING OR THAT CARD SHUFFLERS ARE A RELEVANT ANTITRUST MARKET. ..... 13

A. Plaintiffs Failed to Prove Antitrust Standing. ..... 13

B. Casino-Grade Automatic Card Shufflers Are Not a Relevant Market. ..... 15

Defendants (collectively, "SHFL") respectfully move for judgment as a matter of law because "a reasonable jury would not have a legally sufficient evidentiary basis to find" for Plaintiffs, even when viewing the evidence in the light most favorable them. *See* Fed. R. Civ. P. 50(a)(1); *Zimmerman v. Chi. Bd. of Trade*, 360 F.3d 612, 623 (7th Cir. 2004).

## I. PLAINTIFFS HAVE NOT PRESENTED A PRIMA FACIE CASE OF LIABILITY

### A. Plaintiffs Have Not Proved Fraudulent Patent Procurement.

In denying the motion for summary judgment, this Court permitted Plaintiffs to go forward with their claim that Defendants (1) failed to disclose the Block Patent in connection with the '982 Patent and (2) failed to disclose information from the Disk in connection with the '935 Patent. This Court applied the Federal Circuit's standard for a *Walker Process* claim, which requires that "the omission alleged to be fraudulent must evidence a clear intent to deceive the examiner." It is the plaintiff's obligation to "provide independent and clear evidence of deceptive intent." Dkt. 165 at 27-28. The Court noted this standard was "largely the same" as for inequitable conduct under *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276 (Fed. Cir. 2011), Dkt. 165 at 27, in which the court elaborated that the plaintiff must "prove by clear and convincing evidence that the applicant knew of the reference, knew that it was material, and made a deliberate decision to withhold it." *Therasense*, 649 F.3d at 1290. As this Court has explained in its preliminary instruction to the jury, "[i]nformation is material if it would have resulted in the denial of a patent" had the patent office known of it. The *Therasense* court held there can be no inference of intent from materiality. The court must weigh evidence of intent to deceive independent of its analysis of materiality. "Proving that the applicant knew of a reference, should have known of its materiality, and decided not to submit it to the PTO does not prove specific intent to deceive." *Id.*

No reasonable jury could find Plaintiffs proved their *Walker Process* fraud theory by clear and convincing evidence. Plaintiffs failed to present a prima facie case.

### 1. <u>Plaintiffs Have Not Proved Defendants Failed to Disclose Prior Art.</u>

No reasonable jury could find Plaintiffs proved by clear and convincing evidence that any omitted reference is a "material" omission because it does not qualify as prior art. In relevant part, an invention is prior art under the applicable pre-AIA version of 35 U.S.C. § 102 only if: "(a) the invention was *[publicly] known or used* by others in this country, or patented or described in a *printed publication* ... , before the invention thereof by the applicant for the patent, or (b) the invention was patented or described in a printed publication ... more than one year prior to the date of the application for patent [or] (g)(1) ... the invention was made in this country by another inventor *who had not abandoned, suppressed, or concealed it*." 35 U.S.C. § 102 (2002) (emph. added). Each feature of any prior art must be independently corroborated by an anticipating reference; testamentary evidence will not suffice. *See Juicy Whip Inc. v. Orange Bang, Inc.*, 292 F.3d 728, 737-38 (Fed. Cir. 2002); *Black & Decker Inc. v. Robert Bosch Tool Corp.*, 476 F. Supp. 2d 887, 894 (N.D. Ill. 2007).

To be a public use under § 102(a) or (b), a reference must be either "accessible to the public" or "commercially exploited." *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1380 (Fed. Cir. 2005); *Blue Calypso, LLC v. Groupon, Inc.*, 815 F.3d 1331, 1348-51 (Fed. Cir. 2016). To be a printed publication, a reference must be publicly available such that "persons interested and ordinarily skilled in the subject matter or art exercising reasonable diligence" can locate it, and must also be enabling, such that one of ordinary skill in the art could practice the invention without undue experimentation. *SRI Int'l, Inc. v. Internet Sec. Sys., Inc.*, 511 F.3d 1186, 1192–94 (Fed. Cir. 2008). To meet § 102(g), the device cannot have been abandoned or relinquished prior to the date of the patent application. An abandoned reference does not constitute prior art. Judged by these legal standards, Plaintiffs have failed to present proof of prior art.

***Nicoletti.*** Plaintiffs have not proved a public use of the Nicoletti prototype. First, Plaintiffs

cannot establish the date of the alleged public use—Steven Gola testified he does not remember the exact date, despite testifying "dates are very important" because prototypes "have an evolution" and change features over time, and his testimony offers dates from 1990 to 1995. (Tr. 645-46.) Second, the photo on which Plaintiffs rely, PX 17, was not taken at a casino where it was publicly used, but rather somewhere not open to the public, and the shuffler shown "never saw the light of day again." (Tr. 651.) Third, Plaintiffs have not corroborated the Nicoletti shuffler's features at the alleged public use—the only arguably contemporaneous article does not describe the claimed features. (PX17.) Fourth, Plaintiffs have not refuted that the alleged public use was "experimental"—the "test" failed. (PX17; Tr. 647-48.) *See EZ Dock, Inc. v. Schafer Sys., Inc.*, 276 F.3d 1347, 1353 (Fed. Cir. 2002) ("experimentation negates a bar when the inventor tests claimed features of the invention").

Plaintiffs likewise have not proven the newspaper articles regarding the Nicoletti prototype were reasonably accessible to persons interested in shufflers—the articles appeared in a local newspaper in New Jersey, and Plaintiffs present no evidence of that newspaper's reach. (Tr. 609.) More importantly, the articles are not an "enabling" disclosure—they do not describe the invention claimed in SHFL's patents in sufficient detail to enable a person of ordinary skill in the art to carry it out. For example, the photo (PX17) does not show a cover, an elevator, or the shuffling mechanism—the features Plaintiffs contend were present in the prototype. (Tr. 653-54.) Finally, the prototype does not qualify under § 102(g) because the Plaintiffs did not show that the device was not subsequently abandoned, suppressed, or concealed. In fact, there was testimony that the prototype was abandoned—it never saw the light of day after its failed test. (*See* Tr. 651.)

***Roblejo.*** No reasonable jury could accept Plaintiffs' contention that the Roblejo prototype is prior art under § 102. First, Plaintiffs have not established the date of the alleged prior public use. (*Compare* PX120 (trade show in 1998) *with* PX1005 at 126:9-127:1 (same show occurred in

1997).) Second, Plaintiffs do not corroborate with documentary proof the features the Roblejo shuffler had at the alleged public use. The Casino Concepts brochure (PX99) does not describe the claimed features included in the Roblejo shuffler, and the video (PX 96) is undated with no indicia of when it was created. As for "printed publication," the Casino Concepts brochure did not provide an "enabling" disclosure—it does not describe the invention claimed in the '982 or '935 patents in sufficient detail to enable a person of ordinary skill in the art to carry it out. *See CNET Networks, Inc. v. Etilize, Inc.*, 584 F. Supp. 2d 1260, 1274–75 (N.D. Cal. 2008). As for § 102(g), Plaintiffs have not proved the Roblejo prototype was not abandoned. It "[s]at in [Mr. Gola's] garage for many years" and was disposed of. (Tr. 666.)

***Luciano.*** A reasonable jury could not find that the Luciano prototype is prior art under § 102(g). First, Plaintiffs have not established by clear and convincing evidence that the Luciano prototype disclosed the invention of the '935 claims. Mr. Luciano and contemporaneous documents establish the prototype was still under development. (Tr. 551-61.) Every document in the Luciano declaration describes that device as not final and needing further development, *i.e.*, not reduced to practice. (Tr. 554-55.) *See Cummins-Allison Corp. v. Glory, Ltd.*, 2007 WL 487564, at *5 (N.D. Ill. Feb. 12, 2007) (existence of machine does not show invention was reduced to practice). Second, Plaintiffs have not established the Luciano prototype was operable—Mr. Luciano admitted it had never had its randomness tested. (Tr. 555-57.) Third, Plaintiffs have failed to establish by clear and convincing evidence that the Luciano prototype was not abandoned, suppressed, or concealed. Mr. Luciano admitted he did not seek a patent for the device, the device was not displayed publicly, that it was abandoned, and that he "lost track of it." (Tr. 562-66.) Further, a reasonable jury could not find public use of the Luciano prototype. Plaintiffs contend that materials describing the device were sent selectively to industry participants, but even such a disclosure would not constitute *public* use. *See Minnesota Mining & Mfg. Co. v. Chemque, Inc.*,

303 F.3d 1294, 1307 (Fed. Cir. 2002) ("evidence in the record that samples . . . were sent to various corporations" insufficient to invalidate by prior use).

### 2. **None of the Omitted References Was "But For" Material.**

Plaintiffs must prove that omitted prior art was material, meaning the patents would not have issued "but for" the omitted reference. *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1364-66 (Fed. Cir. 1998). An omitted reference is cumulative, and thus not material, where the reference has the same "relative degree of materiality with respect to the claimed invention," even if the "precise structural arrangements of the devices disclosed by [the omitted and disclosed] references differ." *Litton Indus. Prods., Inc. v. Solid State Sys. Corp.*, 755 F.2d 158, 167 (Fed. Cir. 1985); *Avery Dennison Corp. v. Cont'l Datalabel, Inc.*, 2010 WL 4932666, at *2-4 (N.D. Ill. Nov. 30, 2010) (J. Kennelly). Here, no reasonable jury could conclude that any omitted reference is "but for" material. Plaintiffs offer only the conclusory testimony of their expert, Mr. Curley, but such conclusory testimony is insufficient to establish that the alleged prior art renders invalid the claims of the '982 and '935 patent. *Black & Decker*, 476 F. Supp. 2d at 894-95.

***Nicoletti and Roblejo.*** References to the Nicoletti (sometimes called the "early Roblejo") and the Roblejo prototypes (collectively, the "Roblejo Prototypes") are cumulative of the Plevyak-Nicoletti '342 and '488 patents and the Roblejo '122 patent, which were disclosed. (PX1.2, PX2.2.) The Casino Concepts brochure for the Roblejo prototype identifies the '488 and '342 patents as well as a patent pending, which became the '122 patent. (PX99.4; Tr. 837-38.) Plaintiffs nonetheless contend that other references to the Roblejo Prototypes disclosed an element that the '122 patent did not—an automatically moveable cover. But a Roblejo prototype developer, Steven Gola, testified the Roblejo '122 patent, specifically its Figure 1, describes, depicts, and embodies the Roblejo Prototypes, including an automatically moveable cover. (Tr. 667-69; PX108.)

***Luciano.*** References to the Luciano prototype are cumulative of the Greenberg '082 and

Lorber ’712 patents, which were disclosed. (PX1.2, PX2.2.) Lawrence Luciano testified the Greenberg patent “shares characteristics and traits with” his prototype. (Tr. 564.) He also testified that IGT, the company who “patent[ed] everything,” purchased the Greenberg patent instead of getting its own patent to cover the Luciano prototype. (Tr. 563-64.) Luciano’s father thought and wrote that Greenberg “covers our design pretty well if you read the claims.” (Tr. 565; PX109-N.) The Lorber patent shows a similar carousel compartment shuffler. (Tr. 1083.)

***Block.*** The Block patent was cited in the ’935 patent. (PX2.2.) During the ’982 reexam, the examiner agreed with SHFL that the Block patent taught away from the claimed invention because Block prevented anyone from physically touching the playing cards—the opposite of SHFL’s shuffler—and did not have a shuffler with a top surface mounted flush with the gaming table surface. (PX5I.6; Tr. 1165-66.) Prior art that teaches away from the claimed invention cannot be “but-for” material. *Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1259 (Fed. Cir. 2000); *Allergan, Inc. v. Sandoz, Inc.*, 796 F.3d 1293 (Fed. Cir. 2015).

The omitted references are further shown to be immaterial by the fact that the PTO issued the reexam certificates even after SHFL filed its Notices of Concurrent Proceedings which attached Plaintiffs’ Complaint with all their assertions of materiality. (PX5N; PX5O; Tr. 1575.) In addition, SHFL has now obtained patents in other gripper family applications, including one so close to the ’982 patent that it almost did not issue due to double patenting. (Tr. 1150-59.) *See Speedplay*, 211 F.3d at 1259 (prior art was immaterial because “some of the art taught away from the claimed invention [and] similar patents had issued over the prior art”). No reasonable jury could conclude that Plaintiffs proved by clear and convincing evidence that any omitted reference was non-cumulative and “but-for” material.

### 3. No Individual Substantively Involved in the Patent Applications Knew of an Omitted Reference’s Materiality.

Plaintiffs must prove by clear and convincing evidence that an individual substantively involved in the ’935 or ’982 patent prosecutions or reexaminations actually knew a piece of omitted prior art was material and non-cumulative. MPEP §§ 2001.01, 2001.04; 37 C.F.R. § 1.56; *Therasense*, 649 F.3d at 1296. Evidence that an individual possessed and “generally knew that a reference existed” is insufficient to prove that the individual “also knew of the specific material information contained in that reference.” *See Giuliano v. SanDisk LLC*, 705 Fed. App’x 957, 962 (Fed. Cir. 2017). Evidence that the individual cited the references in a previous patent prosecution is also insufficient to show knowledge of materiality. *Id.* at 961–62. The duty to disclose only “applies to contemporaneously or presently known information. The fact that information was known years ago does not mean that it was recognized that the information is material to the present application.” MPEP § 2001.04.

Plaintiffs face a monumental burden—to show by clear and convincing evidence that someone substantively involved *actually knew at that time*: (1) that an omitted reference existed; (2) it was non-cumulative; and (3) that the undisclosed element was “but-for” material to patentability or validity. *See Speedplay*, 211 F.3d at 1259. No reasonable jury could so conclude.

Plaintiffs have presented no evidence that any individual substantively involved in the prosecution of the ’982 or ’935 patents saw the Roblejo prototype at the 1997 convention and thought it was material when applying for the patents years later. Nor have they proved that a relevant individual knew that the Casino Concepts brochure, the Nicoletti articles, a reference to the Luciano prototype, or the Block patent existed and was non-cumulative and material to patentability or invalidated any of the claims.

**4. <u>There Is No Evidence of Specific Intent to Defraud the Patent Office.</u>**

To prove a fraud on the PTO by omission Plaintiffs must also show by clear and convincing evidence that an individual substantively involved in the prosecution “*made a deliberate decision*

to withhold a *known* material reference." *1st Media, LLC v. Elec. Arts, Inc.*, 694 F.3d 1367, 1374 (Fed. Cir. 2012) (emph. in original). Fraudulent intent may not be inferred from the omission itself, particularly where there are other explanations for the omission, such as negligence or a good-faith belief that disclosure was unnecessary. *Dippin' Dots, Inc. v. Mosey*, 476 F.3d 1337, 1347 (Fed. Cir. 2007). Even the absence of a good-faith explanation cannot support a finding of deliberate intent to deceive without affirmative evidence of deceit. *1st Media*, 694 F.3d at 1375.

Plaintiffs' evidence regarding non-disclosure is precisely the type of evidence the Federal Circuit has held to be legally insufficient to support an inference of fraudulent intent. Plaintiffs have presented no evidence of deceit or lack of good faith. *See Dippin' Dots*, 476 F.3d at 1347–48. Nor have Plaintiffs excluded negligence as an explanation, *see Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, 2017 WL 3493799 at *6 (N.D. Ill. Aug. 14, 2017) (no deliberate intent to deceive where inventors relied on experience and memory alone to guide their disclosures).

There is no evidence that anyone intended to deceive the PTO by hiding references to the Nicoletti, Roblejo, or Luciano prototypes. To the contrary, SHFL cited the Plevyak-Nicoletti '342 and '488 patents, the Roblejo '122 patent, and the Greenberg '082 patent which fully disclosed those inventions. (PX1.2, PX2.2, Tr. 1065-77, 1079-89.) Likewise, the examiner's statement during re-examination of the '935 patent that the Block patent "[taught] away" from the claimed invention (Tr. 1165-66, DTX2633-400) suggests that SHFL had a good-faith basis to believe that it was not material, and Plaintiffs have not offered evidence to the contrary.

As to the remainder of the disc, SHFL routinely disclosed the disc in compartment family applications, but not gripper family applications. (Tr. 1148-49.) While Plaintiffs dispute that the '982 patent is in the gripper family based on use of the word "carousel," Plaintiffs presented no evidence that anyone involved in prosecuting the '935 patent believed that patent was in a compartment family. And the evidence is to the contrary—the patent plainly contemplates a

carousel-shaped *gripper* shuffler. (PX1.19; Tr. 1202-04.) No reasonable jury could conclude by clear and convincing evidence that SHFL engaged in "careful and selective manipulation" of disclosures with specific intent to deceive. *1st Media*, 694 F.3d at 1375.

**5. There Is No Evidence that Any SHFL Decision-Maker Knew of Any Fraudulent Procurement when SHFL Sued DigiDeal.**

A *Walker Process* fraud plaintiff must prove that the defendant knew its patent was procured by fraud when it sued to enforce the patent. *See Tyco Healthcare Grp. LP v. Mut. Pharm. Co.*, 762 F.3d 1338, 1349-50 (Fed. Cir. 2014). Here, Plaintiffs have failed to present evidence that any SHFL decision-maker knew of the alleged fraud on the PTO when SHFL sued DigiDeal. SHFL CEO Gavin Isaacs made the decision to sue. Plaintiffs presented no evidence that Isaacs knew of any alleged fraudulent procurement before initiating litigation, or any other time. Isaacs cannot be charged with the knowledge of the prosecution attorneys or inventors. *See* Restatement (2nd) of Agency § 275, cmt. b (2010) (principal cannot be charged with knowledge of agents in a transaction in which agents played no role). Accordingly, Plaintiffs have failed as a matter of law to show SHFL's knowledge of fraudulent procurement. *See Tyco*, 762 F.3d at 1349-50.

**B. Plaintiffs have not proved sham litigation.**

A showing of sham litigation requires proof of two elements: (1) an objectively baseless lawsuit, in the sense that no reasonable litigant could realistically expect success on the merits, and (2) subjectively, the lawsuit is an attempt to interfere with a competitor through the governmental process—as opposed to the outcome of that process. *Prof'l Real Estate Inv., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60-61 (1993). Plaintiffs have shown neither.

**1. SHFL's Suit Against DigiDeal Was Not Objectively Baseless.**

Plaintiffs have failed to prove objective baselessness by clear and convincing evidence. Plaintiffs must prove that no reasonable litigant could realistically have expected to win the

*DigiDeal* action. *Prof'l Real Estate*, 508 U.S. at 60. Because Plaintiffs do not contest that SHFL believed in good faith that DigiDeal infringed on SHFL's patents (5/22/18 Tr. 29), they must overcome the presumption of patent validity and prove that SHFL's patents were invalid to such an extent that no reasonable litigant would seek to enforce them. *See C.R. Bard*, 157 F.3d at 1369.

As demonstrated above, Plaintiffs failed to prove fraudulent procurement such that there was no basis for the litigation. The record of the *DigiDeal* suit demonstrates it was not objectively baseless. As the magistrate judge and district judge found in the Nevada litigation, there was a good faith basis to believe the patents were valid, and its lawsuit had "substantive strength." (DTX2668.) The Federal Circuit reversed the summary judgment DigiDeal had obtained (DTX3690), and the suit was not terminated favorably to DigiDeal. *Invictus Records, Inc. v. American Broadcasting Companies, Inc.*, 98 F.R.D. 419, 431-32 (E.D. Mich. 1982) (summary judgment granted in absence of evidence that suit had terminated favorably to plaintiffs). In light of this evidence of objective reasonableness, no reasonable jury could find, by clear and convincing evidence, that SHFL's lawsuit against DigiDeal was "objectively baseless."

Nor does DigiDeal's conduct in the litigation support the conclusion that the lawsuit was baseless. DigiDeal argued for convoluted claims constructions, so that its product would not infringe SHFL's patents. (DTX490.) The court rejected that argument. (DTX197.) DigiDeal tried to invalidate SHFL's patents by initiating a reexamination. (DTX2057-003.) DigiDeal lost there, too—the patents remain valid. (DTX2096-003.) DigiDeal sought attorneys' fees in a Section 285 motion. (DTX2137.) DigiDeal lost that motion—Judge Navarro ruled that SHFL had a good faith basis to believe its litigation position was strong. (DTX2157.) Even if the Court does not accept this statement as preclusive, it is compelling evidence of Defendants' objective basis.

### 2. SHFL Did Not Sue DigiDeal Solely with the Subjective Intent to Harm DigiDeal Through Misuse of Litigation.

To prove sham litigation, Plaintiffs must also prove, by clear and convincing evidence, that SHFL sued DigiDeal with the subjective intent that the process of litigation, rather than its outcome, would cause anti-competitive injury. *See Prof'l Real Estate*, 508 U.S. at 60–61; *ERBE Elektromedizin GmbH v. Canady Tech. LLC*, 629 F.3d 1278, 1292 (Fed. Cir. 2010). Intent to injure a competitor through litigation is insufficient to strip a defendant of antitrust immunity if the suit was genuinely aimed at influencing government action. *Havoco of Am., Ltd. v. Hollobow*, 702 F.2d 643, 650 (7th Cir. 1983).

Plaintiffs offered no evidence of any subjective intent of SHFL in filing suit against DigiDeal, let alone proved that the sole intent was to harass DigiDeal and stifle their business through abuse of the litigation process. There is a complete failure of proof—Plaintiffs did not call SHFL CEO Gavin Isaacs in their case. The only testimony potentially relating to motivation for the suit describes the DigiShuffle's infringement. (Tr. 1351-53; 1429-34.)

## II. PLAINTIFFS HAVE NOT PROVED THEIR CLAIMED DAMAGES.

Each Plaintiff must prove its damages with reasonable certainty. *Grip-Pak, Inc. v. Ill. Tool Works, Inc.*, 651 F. Supp. 1482, 1501, 1505 (N.D. Ill. 1986) (summary judgment: plaintiff failed to show ability to achieve commercial success). Damages may not be based on speculation, and the danger of speculative damages is severe where the plaintiff is "a small, inexperienced firm." *Olympia Equip. Leasing Co. v. W. Union Tel. Co.*, 797 F.2d 370, 383 (7th Cir. 1986) (directing entry of judgment as a matter of law).

**First**, Plaintiffs' lost profit damages rest on Plaintiffs' internal demand projections, which are hopes, rather than rigorous market analysis. *Zenith Elec. Corp. v. WH-TV Broadcasting Corp.*, 395 F.3d 416, 420 (7th Cir. 2005). While this Court did not grant defendants' motion in limine to exclude Dr. Lynde's lost profits opinion on this ground, trial testimony has confirmed that Plaintiffs' damages claim is based on Plaintiffs' demand assumption contained in the master

agreement. Dr. Lynde did not perform any procedures on his "data" or otherwise explain how he extrapolated from these materials to the 17,200 unit demand assumption he made. Under established law, the entire lost profits analysis is based on speculation. *See, e.g.*, *Zenith*, 395 F.3d at 420; *Fail-Safe, L.L.C. v. A.O. Smith Corp.*, 744 F. Supp. 2d 870, 891-99 (E.D. Wis. 2010).

**Second**, Plaintiffs' damage evidence is insufficient because Plaintiffs failed to disaggregate losses attributable to non-actionable causes. Expert testimony concerning a litigant's damages is insufficient where the expert fails to consider alternative explanations for the litigant's alleged damages. *See, e.g.*, *Victory Records, Inc. v. Virgin Records Am., Inc.*, 2011 WL 382743, at *4-5 (N.D. Ill. Feb. 3, 2011) (expert "failed to consider alternative explanations for the alleged drop in sales . . . ."). "[A]ny opinion that purports to measure damages without making a judgment as to which effects stem from the [wrongful conduct] and which do not is useless." *Elorac, Inc. v. Sanofi-Aventis Canada, Inc.*, 2017 WL 3592775 at *16 & n.6 (N.D. Ill. Aug. 21, 2017).

Dr. Lynde did not analyze barriers to Plaintiffs' postulated but-for success. DigiShuffle never developed a casino-grade product, and was six months away from a production-ready model when DigiDeal stopped work on it in April 2014. (7/31/18 Tr. 36.) Before any patent litigation, DigiDeal was losing $3 to $4.4 million per year (DTX0353.034), Poydras refused to fund, and the Plaintiffs ended up in litigation among themselves. Shuffle Tech breached its promise to provide DigiDeal a camera technology. (Tr. 295, 299; DTX0350.001.) Poydras refused to fund, Shuffle Tech accused Poydras of breach of the agreements, and DigiDeal sued Shuffle Tech and Poydras for breach of contract. (Tr. 478-579; DTX335; DTX350.) Without any basis, Lynde assumed DigiDeal's prices would remain constant for 14 years with no price erosion.

**Third**, the component of damages attributable to anticipated lost profits from financing the sale of shufflers is legally remote. Remote damages may not be recovered in an antitrust case. *Mid-State Fertilizer Co. v. Exchange Nat'l Bank of Chicago*, 877 F.2d 1333, 1335-36 (7th Cir.

1989) ("shareholders, creditors, managers, lessors, suppliers," guarantors, and the like cannot recover due to injury done to the corporation because their injury is derivative). Here, the finance damages Plaintiffs seek are claimed by an investor in one of the Plaintiffs for damages that may be sustained by a different business, where that business does not yet exist.

## III. PLAINTIFFS HAVE NOT PROVED ANTITRUST STANDING OR THAT CARD SHUFFLERS ARE A RELEVANT ANTITRUST MARKET.

### A. Plaintiffs Failed to Prove Antitrust Standing.

To have standing, each Plaintiff must be the "proper party to bring a private antitrust action." *Assoc. Gen. Contractors of Cal., Inc. v. Cal. St. Council of Carpenters,* 459 U.S. 519, 535 n.31, 542 (1983). There must be "a direct link between the antitrust violation and the antitrust injury." *Greater Rockford Energy & Tech. Corp. v. Shell Oil Co.,* 998 F.2d 391, 395 (7th Cir. 1993). Plaintiffs lack antitrust standing: they are neither consumers nor competitors, but licensors and investors who were not direct targets of anticompetitive conduct. *See Grip-Pak, Inc. v. Illinois Tool Works, Inc.*, 694 F.2d 466 (7th Cir. 1982).

As this Court held in denying the motion to dismiss, "the Seventh Circuit directly addressed whether a plaintiff in their position suffers antitrust injury [in] *Grip-Pak*." (Dkt. 48 at 21.) *Grip-Pak* holds a party does not suffer antitrust injury simply by having a licensor-licensee relationship with a party whose sales may decrease due to anticompetitive conduct. (*Id.* at 22.) In *Grip-Pak*, plaintiff had standing because it was a "target" of anticompetitive conduct designed to keep it out of the market. *Grip-Pak*, 694 F.2d at 474-75. This Court ruled that Plaintiffs alleged standing by asserting SHFL's suit against DigiDeal aimed to prevent card shufflers produced under the license agreement from making their way to market. (Dkt. 48 at 24.) Since that ruling, however, "plaintiffs abandoned the 'common scheme or plan' theory" that SHFL brings meritless lawsuits against all competitors. (Dkt. 246 at 11,) Thus, each Plaintiff must prove it was targeted by

SHFL—but none of them has.

Shuffle Tech has presented no evidence that the suit against DigiDeal was directed toward Shuffle Tech or its "washer" technology, or even that SHFL knew that the DigiShuffle incorporated Shuffle Tech technology. In fact, Shuffle Tech and DigiDeal agreed that "no claims of infringement have been asserted against the functions of the [DigiShuffle] device" licensed by Shuffle Tech. (DTX324-004.) Shuffle Tech also admits that it "doesn't manufacture its own stuff," that the "final form factor" was the result of DigiDeal engineering, and that DigiDeal was not its "legal partner." (Tr. 258, 290-91, 256-57.) Poydras and AcesUp have presented no evidence that SHFL even knew about them, let alone targeted them when it sued DigiDeal. Poydras, as an investor lacks antitrust standing because investors' claims are "redundant." *See Motorola Mobility LLC v. Au Optronics Corp.*, 775 F.3d 816, 821 (7th Cir. 2015). AcesUp, a would-be distributor, by definition only suffers "derivative" injury. *See G.K.A. Beverage Corp. v. Honickman*, 55 F.3d 762, 766 (2d Cir. 1995) (distributors' injury is derivative, not direct). Similarly, Plaintiffs failed to establish they suffered "antitrust injury" of the type the antitrust laws were intended to prevent that flows from an antitrust violation. *See Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977). Lost downstream revenues from are derivative, they are not of the type of injury the antitrust laws were not designed to prevent.

Separately, Shuffle Tech asserts standing as an assignee of DigiDeal. Yet DigiDeal never competed with SHFL—and it could not without GLI approval. Mr. Toyama admits GLI did not approve DigiDeal to sell its product to casinos (Tr. 284:4-14), the DigiShuffle prototype "was not capable of shuffling 1,000 times for GLI" (Tr. 287:4-6), and typically GLI requests 81,000 shuffles (Tr. 287:11-13). Without GLI approval, DigiDeal was "not a lawful competitor . . . for purposes of antitrust injury." *Ethypharm S.A. France v. Abbott Labs.*, 707 F.3d 223, 236-37 (3d Cir. 2013). (*See also* Tr. 1353-55.) Moreover, to the extent Shuffle Tech now asserts it has standing as

DigiDeal's assignee, its sham litigation claim is barred by issue preclusion under Judge Navarro's ruling in the *DigiDeal* case. (DTX2157; 5/22/18 Tr. 11-14.) *In re Fort Wayne Telsat, Inc*., 665 F.3d 816, 820 (7th Cir. 2011) (assignee of claim is in privity with assignor for claim preclusion).

**B. Casino-Grade Automatic Card Shufflers Are Not a Relevant Market.**

Plaintiffs contend that the relevant market consists of casino-grade automatic card shufflers in the U.S. In defining a relevant market, economic data is required: a "potpourri of survey research and armchair economics is insufficient." *Menasha Corp. v. News Am. Mktg. In-Store, Inc.*, 354 F.3d 661, 664 (7th Cir. 2004). "The Seventh Circuit has 'explicitly rejected the proposition that a firm [has] monopoly power in its own product, absent proof that the product itself has no economic substitutes.'" *DSM Desotech Inc. v. 3D Sys. Corp.*, 749 F.3d 1332, 1339 (Fed. Cir. 2014) (quoting *Elliott v. United Ctr.*, 126 F.3d 1003, 1005 (7th Cir. 1997)).

Plaintiffs did not prove, using economic analysis, that SHFL's products have no substitute. Plaintiffs have not rebutted Colin Helsen's testimony that casinos "have enormous buying power," that shufflers compete with "anything you can think of in a casino," and that when SHFL raised prices, casinos responded by shifting funds to other uses of casino space, causing SHFL to make less money. (Tr. 1372-73, 1336-37, 1368-69.) Plaintiffs produced no economic proof that hand-shuffling, pre-shuffled cards, electronic table games, and other methods of assisting casino game play do not compete with SHFL's products for casino space and dollars. Plaintiffs have not proved automatic card shufflers comprise a relevant antitrust market.

## CONCLUSION

For each of the foregoing reasons, SHFL respectfully requests judgment as a matter of law.

Dated: August 1, 2018

Respectfully submitted,

By: /s Craig C. Martin
One of the Attorneys for Defendants

Craig C. Martin
David Jiménez-Ekman
Timothy J. Barron
Rachel S. Morse
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654-3456
Telephone: +1 312 222 9350

**CERTIFICATE OF SERVICE**

I certify that on August 1, 2018, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will then send a Notice of Electronic Filing to all counsel of record.

/s/ Craig C. Martin