**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

Shuffle Tech International, LLC, et al.,

        Plaintiffs,

    v.

 Scientific Games Corporation, et al.,

        Defendants.

Civil Action No. 1:15-cv-3702

Honorable Matthew F. Kennelly

---

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR
POST-TRIAL MOTION FOR RELIEF UNDER
FEDERAL RULES OF CIVIL PROCEDURE 50 AND 59**

---

Craig C. Martin
David Jiménez-Ekman
Timothy J. Barron
Rachel S. Morse
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654-3456
Tel: 312.222.9350

Attorneys for Defendants

October 26, 2018

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................................................... ii

I.   PLAINTIFFS LACK ANTITRUST STANDING. ..................................................................1

II.  THE COURT SHOULD ALTER OR AMEND THE DAMAGES AWARD, OR ENTER
     JUDGMENT FOR DEFENDANTS AS A MATTER OF LAW. ............................................6

     A.  Plaintiffs' Damages Are Impermissibly Speculative. ..........................................6

     B.  The Jury's Actual Awards Are Unsupported By Evidence. ..................................9

     C.  The Court Should Order a New Trial Due to Trial Errors. ..................................11

III. THE NEVADA COURT'S FINDINGS PRECLUDE BOTH THEORIES OF
     DIGIDEAL'S CLAIM AND ENTITLE DEFENDANTS TO JUDGMENT. .........................11

     A.  The Record Disproves DigiDeal's Claim of Assignment. ..................................12

     B.  The Nevada Court's Ruling Forecloses Both Theories Of DigiDeal's Claim. ...................13

IV.  THE JURY'S LIABILITY FINDING CANNOT STAND. .....................................................14

CONCLUSION .....................................................................................................................15

**TABLE OF AUTHORITIES**

**CASES**

*Amarel v. Connell*, 102 F.3d 1494 (9th Cir. 1996) ..........................................................3

*Armbruster v. WageWorks, Inc.*, 953 F. Supp. 2d 1072 (D. Ariz. 2013)......................................12

*AGC v. California State Council of Carpenters*, 459 U.S. 519 (1983)....................................2, 4, 5

*Blue Shield of Virginia v. McCready*, 457 U.S. 465 (1982) ................................................3

*BP Amoco Chemical Co. v. Flint Hills Resources LLC*, 697 F. Supp. 2d 1001 (N.D. Ill. 2010)..................................................................................15

*e360 Insight, Inc. v. Spamhaus Project*, 658 F.3d 637 (7th Cir. 2011) ........................................9

*Enterprise Refining Co. v. Sector Refining, Inc.*, 781 F.2d 1116 (5th Cir. 1986).........................11

*Freedom Holdings, Inc. v. Cuomo*, 592 F. Supp. 2d 684 (S.D.N.Y. 2009) ...................................1

*G.K.A. Beverage Corp. v. Honickman*, 55 F.3d 762 (2d Cir. 1995) ......................................1, 2, 4

*Giuliano v. SanDisk LLC*, 705 F. App'x 957 (Fed. Cir. 2017)......................................................14

*Grip-Pak, Inc. v. Illinois Tool Works, Inc.*, 694 F.2d 466 (7th Cir. 1982) ................................1, 5

*Houskins v. Sheahan*, 549 F.3d 480 (7th Cir. 2008)......................................................14

*Information Resources, Inc. v. Dun & Bradstreet Corp.*, 127 F. Supp. 2d 411 (S.D.N.Y. 2000) ...........................................................................2

*International Business Machines Corp. v. Platform Solutions, Inc.*, 658 F. Supp. 2d 603 (S.D.N.Y. 2009)...............................................................1

*Jamison Co. v. Westvaco Corp.*, 526 F.2d 922 (5th Cir. 1976) ......................................11

*Jimenez v. City of Chicago*, 877 F. Supp. 2d 649 (N.D. Ill. 2012) ...................................14

*Kossman v. Northeast Illinois Regional Commuter Railroad Corp.*, 211 F.3d 1031 (7th Cir. 2000).......................................................................15

*Mid-America Tablewares, Inc. v. Mogi Trading Co., Ltd.*, 100 F.3d 1353 (7th Cir. 1996) ...........................................................................7, 9

*Motorola Mobility LLC v. AU Optronics Corp.*, 775 F.3d 816 (7th Cir. 2015) .....................1, 2, 4

*Olympia Equipment Leasing Co. v. Western Union Telegraph Co.*, 797 F.2d 370 (7th Cir. 1986)...........................................................................8

*Petit v. City of Chicago*, 239 F. Supp. 2d 761 (N.D. Ill. 2002) .......................................14

*Ramsey v. American Air Filter Co.*, 772 F.2d 1303 (7th Cir. 1985)..................................6

*Sanner v. Board of Trade of City of Chicago*, 62 F.3d 918 (7th Cir. 1995) ....................3

*Sherman v. First American Title Insurance Co.*, 38 P.3d 1229 (Ariz. Ct. App. 2002) ........................................................................................................................12

*Southwest Suburban Board of Realtors, Inc. v. Beverly Area Planning Ass'n*, 830 F.2d 1374 (7th Cir. 1987) ........................................................................................1

*Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447 (1993) ..............................................15

*Sunkist Growers, Inc. v. Winckler & Smith Citrus Products Co.*, 370 U.S. 19 (1962) ............................................................................................................................15

*Supreme Auto Transport, LLC v. Arcelor Mittal USA, Inc.*, 902 F.3d 734 (7th Cir. 2018) ..............................................................................................................................5

*TAS Distributing Co. v. Cummins Engine Co.*, 491 F.3d 625 (7th Cir. 2007)...............10

*Trading Technologies International, Inc. v. eSpeed, Inc.*, 2008 WL 345604 (N.D. Ill. Feb. 5, 2008)........................................................................................................10

*Ustrak v. Fairman*, 781 F.2d 573 (7th Cir. 1986).............................................................9

*Wells v. City of Chicago*, 896 F. Supp. 2d 725 (N.D. Ill. 2012) .......................................9

*Wordtech Systems, Inc. v. Integrated Networks Solutions, Inc.*, 609 F.3d 1308 (Fed. Cir. 2010) ......................................................................................................................9

*Zazu Designs v. L'Oreal, S.A.*, 979 F.2d 499 (7th Cir. 1992).........................................6

*Zenith Electronics Corp. v. WH-TV Broadcasting Corp.*, 395 F.3d 416 (7th Cir. 2005) ........................................................................................................................8, 9

iii

Plaintiffs' response brief is a study in evasion and obfuscation. Plaintiffs categorically ignore the wealth of case law establishing that distributors, investors, and licensors lack standing, and advance a "vertical integration" theory no court has ever endorsed. They defend a damages award premised on wishful optimism that the DigiShuffle would become the most successful shuffler in history, an erroneous assessment of market size, and a witness's description of his own made-up testimony as "conservative." They seek to avoid collateral estoppel, invoking an assignment that never happened and "equitable principles" they say allowed them to lie in wait as DigiDeal sought fees and then assert (after DigiDeal lost) that the fee proceeding was a nullity. And they defend instructions that relieved the jury of making critical findings only by imagining instructions that were never given. Plaintiffs may choose to ignore Defendants' arguments and the law, but this Court should not do the same. The jury's verdict cannot stand.

## I.      PLAINTIFFS LACK ANTITRUST STANDING.

In our opening brief, we showed that under bedrock principles and well-settled case law, distributors, investors, and licensors such as Aces Up, Poydras, and Shuffle Tech, lack antitrust standing. *See, e.g.*, *G.K.A. Beverage Corp. v. Honickman*, 55 F.3d 762, 766-67 (2d Cir. 1995) (distributors); *Int'l Business Machs. Corp. v. Platform Sols., Inc.*, 658 F. Supp. 2d 603, 610-11 (S.D.N.Y. 2009) (distributors); *Freedom Holdings, Inc. v. Cuomo*, 592 F. Supp. 2d 684, 694 (S.D.N.Y. 2009) (distributors); *Sw. Suburban Bd. of Realtors, Inc. v. Beverly Area Planning Ass'n*, 830 F.2d 1374, 1378 (7th Cir. 1987) ("officers, stockholders, and creditors"); *Motorola Mobility LLC v. AU Optronics Corp.*, 775 F.3d 816, 818-21 (7th Cir. 2015) (owner, employee, or investor); *Grip-Pak, Inc. v. Ill. Tool Works, Inc.*, 694 F.2d 466, 473 (7th Cir. 1982) (licensors).

Plaintiffs have not cited a *single* case to the contrary. They have not identified a single case in which a distributor, investor or licensor has been found to have standing, nor a single case that even calls this wealth of precedent into question. Plaintiffs' utter failure to do so is as telling

1

as it is unsurprising:  while competitors and consumers may have antitrust standing, distributors, investors and licensors—like the myriad other entities that might have a contractual relationship with a market competitor—do not experience "injury of the type the antitrust laws were intended to forestall." *AGC v. Cal. State Council*, 459 U.S. 519, 535 (1983).

Ignoring the abundant precedent that is fatal to their claims, Plaintiffs instead advance a hodgepodge of baseless arguments and inapposite case law.  First, Plaintiffs suggest that they may claim treble damages because "[c]ollectively, Plaintiffs competed against a vertically integrated SHFL that singularly performed each function performed by Plaintiffs."  Opp'n 1.  But no case law supports this astonishing claim.  For one thing, in *all* of the cases cited by Defendants, the various plaintiffs worked "collectively" with other entities to compete by providing distribution services, investor funding, or licenses, yet courts repeatedly rejected antitrust standing for distributors, investors and licensors. Likewise, courts have expressly rejected arguments that seek to rely on "collective" standing when, as here, plaintiffs seek to disregard corporate distinctions. *See, e.g.*, *Motorola Mobility*, 775 F.3d at 820 (refusing to treat separate companies as a "single integrated enterprise" for antitrust standing); *Info. Res., Inc. v. Dun & Bradstreet Corp.*, 127 F. Supp. 2d 411, 413-14 (S.D.N.Y. 2000) (citing *G.K.A. Beverage* to reject standing for party that claimed to provide a "unitary service" with its joint ventures and subsidiaries who were direct competitors of the defendant).  And courts have rejected claims by plaintiffs that actions by an integrated company to monopolize a product market gives distributors standing because of reduced competition in the distribution market.  *See G.K.A. Beverage*, 55 F.3d at 767 (rejecting plaintiff distributor's claim of "so-called 'distribution monopoly'").  Accepting Plaintiffs' arguments would accomplish a revolution in standing law.

Plaintiffs fail to cite *a single case* in which a distributor, investor, or licensor was held to have antitrust standing on any theory, let alone a case that relied on the "vertical integration" of

2

the defendant. The handful of cases they do cite are not about distributors, investors, or licensors and instead reinforce the point that it is competitors and consumers that typically have standing. First, in *Amarel v. Connell*, 102 F.3d 1494 (9th Cir. 1996), rice farmers had antitrust standing because they were "'competitors' in the market for milled rice," *id.* at 1509, and because the defendants sought to monopolize the milled rice market by eliminating independent rice farmers and independent mills, *id.* at 1508. Moreover, the Ninth Circuit's passing reference to vertical integration that Plaintiffs cite with fanfare was not part of the standing analysis and, in any event, referred to defendants who were no longer even in the case (the claims against them had been dismissed). Likewise in *Sanner v. Bd. of Trade of City of Chicago*, 62 F.3d 918 (7th Cir. 1995), the plaintiffs (soybean farmers) had antitrust standing because they were *actual competitors* in one of the markets (the "cash market for soybeans") that defendants intended to impact. *Id*. at 929; *see also id.* (noting that cash market and futures market "move in lockstep"). And finally *Blue Shield of Va. v. McCready*, 457 U.S. 465 (1982), was a case about *consumer* antitrust standing. The plaintiff, a consumer of psychotherapy from a psychologist, had antitrust standing to challenge her health plan's practices for reimbursing psychologists because she "bore Blue Shield's sanction in the form of an increase in the net cost of her psychologist's services." *Id*. at 483. McCready's injury thus "was borne directly" by her *as a consumer* and flowed directly from the defendant's acts. *Id.* Not so here, where SHFL sued only DigiDeal, and any impact on Aces Up, Poydras, and Shuffle Tech was (at best) an indirect result of DigiDeal's alleged direct competitive injury.

Plaintiffs' citation to boilerplate language in the Nevada stay order also cannot overcome their total lack of supporting case law. Opp'n 5. The stay language broadly prevented *anyone* from working in concert with DigiDeal to evade the stay. But that bar to DigiDeal's conspiring with others to evade a judicial stay hardly eliminated the distinctions between DigiDeal and its contractual partners or made them a single entity for standing purposes. Nor does that language

3

aid Plaintiffs by suggesting that defendant SHFL was (as Plaintiffs put it) "vertically integrated": antitrust standing is about the injury and identity of the *plaintiff*, not the corporate structure of the *defendant*. *DigiDeal* was the competitor—it sought to compete in the market for automatic card shufflers, the only market in which Plaintiffs contended SHFL had market power. So only DigiDeal, not its business associates, has standing. *See* Br. 6-11.

Plaintiffs similarly cannot find refuge in *AGC*. Plaintiffs are just flat wrong that Defendants ignored *AGC* or its factors—to the contrary, Defendants addressed *AGC* on a plaintiff-by-plaintiff basis. *E.g.*, Br. 5 (setting out *AGC* factors); *id.* at 7 (applying *AGC* to Aces Up); *id.* at 8-9 (applying *AGC* to Poydras); *id.* at 10-11 (applying *AGC* to Shuffle Tech). Even a cursory review of that analysis confirms that Plaintiffs (other than DigiDeal) lack standing under the *AGC* factors.

*Nature Of The Injury.* Antitrust laws protect *competition*, not *competitors*, which is why antitrust standing is typically limited to consumers or competitors in the impacted market. *See AGC*, 459 U.S. at 539. Here, Aces Up, Poydras, and Shuffle Tech had contractual interests in a *particular* market competitor's success, not in competition writ large. Accordingly, Aces Up, Poydras, and Shuffle Tech did not suffer *antitrust* injuries. Given that, Plaintiffs' contention that each allegedly invested money in developing the DigiShuffle, *see* Opp'n 8, is of no moment. The fact that Plaintiffs' injury was monetary does not mean it was the type of monetary injury the antitrust laws were intended to protect. *See, e.g.,* Br. 8-9 (investors are categorically barred from maintaining antitrust suits even when they lose money).

*Relationship Between The Violation And The Plaintiffs' Alleged Injuries.* Defendants showed the relationship between the violation—SHFL's suit against DigiDeal—and the alleged injuries of Aces Up, Poydras, and Shuffle Tech was too attenuated. Indeed, the abundant case law cited above forecloses any other conclusion. *E.g.*, *G.K.A. Beverage*, 55 F.3d at 767 ("the injury suffered by the distributors is derivative of injury suffered by [bottlers]"); *Motorola Mobility*, 775

4

F.3d at 820 (investor is a "derivative victim" that has suffered only a "derivative injury"); *Grip-Pak*, 694 F.2d at 473-74 (licensors' damages generally too "remote" to justify standing). Plaintiffs ignore this case law and instead claim that proximate causation is all that is required to meet this *AGC* factor. *See* Opp'n 9. But the Seventh Circuit recently reiterated that the antitrust standing test is more stringent than "ordinary principles of proximate causation." *Supreme Auto Transp., LLC v. Arcelor Mittal USA, Inc.*, 902 F.3d 734, 744 (7th Cir. 2018).

*Potential For Duplicative Recovery.* Both the potential for duplicative recovery and the "complex apportionment of damages" (which Plaintiffs ignore) weigh against antitrust standing. *AGC*, 459 U.S. at 545. The recovery of damages *at all* for Plaintiffs was entirely speculative. *E.g.*, Br. 7-9, 12-16; *infra* 6-9. The apportionment of damages among Plaintiffs was complex: Not only did Lynde's testimony allocate different percentages of the total damages to each entity in his "low" versus "high" calculations, but the jury's damages award did not match even remotely *either* of Lynde's proposed calculations. The verdict amply demonstrates this *AGC* factor favors dismissal.

*More Direct Victims.* There are more direct alleged victims than Aces Up, Poydras, and Shuffle Tech. DigiDeal is one, and casinos are another, notwithstanding Plaintiffs' vague suggestion—unsupported by Plaintiffs' citations—that "casinos might be unwilling to sue." Opp'n 11. Thus, the *AGC* factors confirm the distributor, investor, and licensor lack standing.

Finally, a word about *Grip-Pak*. At the motion-to-dismiss stage, despite the Seventh Circuit's admonition that licensors generally lack standing, this Court concluded Shuffle Tech had standing because Shuffle Tech alleged it had been "targeted." Trial testimony has now proved defendants did *not* target Shuffle Tech, or indeed any plaintiff other than DigiDeal, which was the only defendant in the Nevada litigation. The Nevada litigation related to the shuffler *housing*, in which Shuffle Tech's patents played no role. Tr. 290-91; 1434-35. To bring its shuffler to market,

5

Shuffle Tech could contract with any manufacturer whose housing did not infringe. *See also* Br. 10-11. Regardless, Plaintiffs seemingly have now abandoned any reliance on *Grip-Pak*'s targeting analysis, emphasizing "*AGC*'s express rejection of decisions" that addressed "the target area of the conspiracy," Opp'n 11, and trumpeting "the irrelevance of the *Grip-Pak* 'target' test," Opp'n 12. Accordingly, Plaintiffs and Defendants agree that *AGC* controls, and *AGC*, its progeny, and decades of case law demonstrate that distributors, investors, and licensors—just like employees, suppliers, and landlords—lack antitrust standing. The Court should enter judgment for Defendants on the claims of Aces Up, Poydras, and Shuffle Tech.

## II. THE COURT SHOULD ALTER OR AMEND THE DAMAGES AWARD, OR ENTER JUDGMENT FOR DEFENDANTS AS A MATTER OF LAW.

Plaintiffs similarly offer no meaningful response to the arguments and supporting case law showing that Plaintiffs' speculative evidence failed to prove the fact or amount of damage and that the jury award otherwise bore no relation to the evidence. Plaintiffs do not address, let alone dispute, that "[c]ompensatory damages must rest on 'a just and reasonable estimate of the damage based on relevant data.' Allowance for uncertainty is one thing, and rank speculation another." *Zazu Designs v. L'Oreal, S.A.*, 979 F.2d 499, 505-06 (7th Cir. 1992) (citations omitted). Instead, Plaintiffs rely on vague generalities and platitudes about jury verdicts. For example, citing *Ramsey v. Am. Air Filter Co.*, 772 F.2d 1303 (7th Cir. 1985), Plaintiffs state juries have discretion in determining damages. Opp'n 15. Juries surely do, but as the court in *Ramsey* stated, "the court must also ensure that the award is supported by competent evidence." 772 F.2d at 1313 (granting new trial). Here, it was not.

### A. Plaintiffs' Damages Are Impermissibly Speculative.

The law is clear: damages must be based on economic reality, not wishful thinking. Here, the verdict rested on speculative sales assumptions pulled from thin air based on an internal,

6

untested contractual exclusivity provision, not actual evidence of expected sales or reliable market analysis. Br. 13-16. Plaintiffs largely ignore Defendants' arguments. They argue they experienced some damage, but offer no rejoinder to the argument that the damages award was based on undue speculation. Indeed, a case they cite at length, *Mid-America Tablewares, Inc. v. Mogi Trading Co., Ltd.*, 100 F.3d 1353 (7th Cir. 1996), supports rather than undermines Defendants' argument. In *Mid-America*, the court first considered whether the *fact* of damage had been proven with sufficient certainty. The court cataloged the proof of plaintiff's prospects: seven experienced buyers testified plaintiff's product would have sold, plaintiff had aggressive marketing plans in place, plaintiff offered comprehensive sales projections, and it proved sales achieved by similar product lines. Even with that evidence, the court found it "a close call" whether plaintiff had proved fact of damage with certainty. *Id*. at 1366. In contrast, in this case there is no evidence Plaintiffs would have enjoyed market success. For eighteen months, DigiDeal was free to sell the DigiShuffle, but it sold none in the U.S. and only three overseas. Tr. 447:23-448:3.

Plaintiffs ignore the second, independent holding in *Mid-America*: the *amount* of the jury verdict was unsupported for purposes of Rule 59. *See* Br. 15-16. The Seventh Circuit held evidence of fact of damage "does not preclude a finding that the jury's actual verdict was excessive for purposes of Rule 59." *Mid-America*, 100 F.3d at 1367. The $2.6 million verdict was "monstrously excessive" and had "no rational basis in the evidence." *Id*. The award resulted from an "extreme degree of speculation" and "can only be understood as resting on one speculative inference heaped upon another." *Id*. at 1368.

Plaintiffs cite no case upholding damages where an expert assumed future sales based only on untested estimates of the level of sales needed to maintain exclusivity. Plaintiffs do not refute that Lynde's assumption that Plaintiffs would sell or lease at least 1,200 DigiShuffles per year was

based on the contractual exclusivity provisions. This Court noted the assumption of future sales was the "softest spot" of Lynde's analysis, Dkt. 230 at 4, but permitted the testimony based on Plaintiffs' promise of initial commitments and feedback from potential customers; "sales data showing the market share achieved by another automatic card shuffler supplier"; and a consultant's "study and business plan." Plaintiffs did not present the promised evidence and Lynde's testimony should be disregarded. Br. 14-16.

Plaintiffs now rely on two pieces of evidence to buttress their damages. First, they argue the potential customer base was so large that if they obtained a share of "1.5 to 15%," they would have met their sales assumption. Opp'n 18-19. The size of the customer base says nothing of *Plaintiffs'* likely ability to capture a share of it. As the Seventh Circuit held in *Olympia Equipment Leasing Co. v. Western Union Telegraph Co.*, 797 F.2d 370, 381-83 (7th Cir. 1986), "when a small, inexperienced firm . . . extrapolates a multi-million dollar future from a few months of success, courts must be on guard against the more than possibility that the extrapolation ignores economic reality." Plaintiffs relegate *Olympia* to a footnote, asserting the evidence there was faulty because the expert predicted a high rate of return and did not account for the effects of competition. But Lynde's estimate is more defective—it was based on a contract provision, not any market testing or analysis—and he likewise did not consider the effect of competition. Tr. 2269:25-2271:7. As *Zenith Elec. Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416, 419-20 (7th Cir. 2005), demonstrates, projected sales must rest on more than the plaintiff's own view that it would have been successful. Regardless of opportunity size, Plaintiffs failed to prove their likely sales to any customer.[1]

Second, Plaintiffs assert that they had evidence of leads for sales and leases. Opp'n 19-20. The "leads" were meaningless, Br. 15, and they never materialized into sales or even expressions

---

[1] Even Plaintiffs' assessment of market size is fatally flawed. The $100 million estimate was for *revenue*, not *profit*, and applied to sales of *all shufflers*, *worldwide*. Opp'n 19; Tr. 2590:8-21.

of interest while DigiDeal was free to sell. It only sold three units, none in the U.S. Even crediting Plaintiffs' inferences, the leads amount to less than one year's assumed shuffler transactions. In *Mid-America*, the Seventh Circuit found that basing ten years of lost profits on sales projections for one year was "weakly supported speculation" and set aside the damages award. 100 F.3d at 1368. Here, Plaintiffs assume they would sell or lease 1,200 units per year for fifteen years based on groundless optimism and a contractual exclusivity provision. *See Zenith*, 395 F.3d at 419-20.

Thus, even if this Court concludes Plaintiffs proved the fact of injury, Plaintiffs failed to prove its amount. And Plaintiffs do not even address the cases cited by Defendants demonstrating that, in these circumstances, Plaintiffs are entitled to no more than a nominal award. *See, e.g.*, *Ustrak v. Fairman*, 781 F.2d 573, 578-81 (7th Cir. 1986); *e360 Insight, Inc. v. Spamhaus Project*, 658 F.3d 637, 647-48 (7th Cir. 2011). Nor do Plaintiffs address Poydras's complete inability to obtain supposed damages to an un-formed entity to be owned by other investors who would somehow become involved in financing the DigiShuffle. Br. 9.

### B.     The Jury's Actual Awards Are Unsupported By Evidence.

Plaintiffs do not dispute that a court may set aside a compensatory damages award if "there is no rational connection between the award and the evidence." *Wells v. City of Chicago*, 896 F. Supp. 2d 725, 739 (N.D. Ill. 2012) (Kennelly, J.); *Wordtech Sys., Inc. v. Integrated Networks Sols., Inc.*, 609 F.3d 1308, 1321 (Fed. Cir. 2010) (ordering retrial because the verdict did not "fall within the range encompassed by the record as a whole"). There is no "rational connection" here.

First, the award is inconsistent with the inter-party relationships Plaintiffs used to calculate damages. Defendants cited cases in which courts set aside multi-party awards that were inconsistent with the relationships defined by the evidence. *See* Br. 18-19 (citing *Bruso* and *LaSalle Nat'l Bank*). Plaintiffs assert those cases "have nothing to do with this case," Opp'n 17, but do not explain why or cite any case upholding a verdict inconsistent with the parties' defined

9

relationships and the damages based on those relationships. Nor do Plaintiffs challenge the factual basis of this argument. Plaintiffs concede "each Plaintiff had defined responsibilities and a *defined split of the profits from the sale and leasing of shufflers to casinos*." Opp'n 10 (emph. added). Plaintiffs do not explain how a verdict that ignores evidence of the parties' relationships and the damages opinions based on those relationships can be upheld.

Instead, Plaintiffs rely on the general proposition that inconsistency in damages awards is not a reason to set aside a verdict. While the jury need not accept all of a plaintiff's claim, the award must be within the range permitted by the evidence. An award not in keeping with that range cannot stand. *See Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 2008 WL 345604, at *2 (N.D. Ill. Feb. 5, 2008) (the fact that total award is reasonable "does not justify an apportionment of damages unsupported by substantial evidence."). Here, the verdict should be set aside because it does not remotely reflect the evidence presented.

Second, the $45 million award to Shuffle Tech is also without any basis in evidence because it was nearly double the highest amount Lynde claimed—$23.9 million. Plaintiffs claim this award can be justified by alleged "pent-up" demand, inviting the Court to assume the jury concluded, without basis, that Plaintiffs could have sold or leased more than even the assumption of 1,200 units per year—an amount that was itself unduly speculative. Opp'n 13. Here, damages turned on expert proof, capitalized profit, division of profit under the parties' relationships, and calculations to discount to future value. For a jury to calculate fifteen years of damages from its own estimates of demand and profit without supporting testimony is the very definition of speculation. *See TAS Distrib. Co. v. Cummins Engine Co.*, 491 F.3d 625, 633 (7th Cir. 2007) (general rule that "lost profits of a new business are too speculative to be recoverable" can be overcome only with "convincing and non-speculative evidence sufficient to prove lost profits").

Plaintiffs also rely on Lynde's statement that his opinion was "conservative." Opp'n 18.

10

That meaningless qualifier is not evidence of higher damages nor a license for a jury to run amok. Were it so, a plaintiff could present any damage testimony, add that its theory was "conservative," and invite the jury to award, as here, nearly double the highest number suggested by that speculative testimony. Plaintiffs cite no case in which any court upheld a damages award on such a theory, let alone one where the jury nearly doubled the highest number in evidence. Plaintiffs assert that the jury could have awarded higher damages because Lynde at one point described a 7.7 "high" multiplier. But Lynde never used this multiplier and no evidence supported its use.

Defendants relied on *Enterprise Refining Co. v. Sector Refining, Inc.*, 781 F.2d 1116, 1120 (5th Cir. 1986), and *Jamison Co. v. Westvaco Corp.*, 526 F.2d 922, 936 (5th Cir. 1976), in which courts set aside verdicts that exceeded the maximum recovery supported by the evidence. Plaintiffs ignore both cases. *Jamison* is directly applicable here: "[i]f a complete and careful study of the record finds us confused in determining how the jury arrived at its decision, we must conclude that the jury was confused in its efforts" and reverse. 526 F.2d at 936.

### C. The Court Should Order a New Trial Due to Trial Errors.

The Court erred in excluding design-around testimony that was relevant to Plaintiffs' assertion that they had no way to avoid the impact of the patent suit. Br. 20. Plaintiffs state that they did not present testimony about design-around, *see* Opp'n 20, which misses the point. Plaintiffs argued they had *no other option* than to agree to the stay in Nevada. Br. 20. That was false: Plaintiffs could have designed around the suit. Plaintiffs opened the door to design-around, even if they did not intend to, and Defendants were prejudiced by its exclusion.

### III. THE NEVADA COURT'S FINDINGS PRECLUDE BOTH THEORIES OF DIGIDEAL'S CLAIM AND ENTITLE DEFENDANTS TO JUDGMENT.

In an effort to escape the preclusive effect of the Nevada Court's findings, Plaintiffs claim it is "undisputed" that DigiDeal assigned its rights to Shuffle Tech years before those findings

were issued, rendering the Nevada Court's order a nullity. Plaintiffs also argue the issues resolved by the Nevada Court are distinct from the elements of DigiDeal's *Walker Process* theory of its claim. Plaintiffs are wrong on both counts.

### A.    The Record Disproves DigiDeal's Claim of Assignment.

There was no "2013 assignment." The First Amended Agreement Plaintiffs contend was an assignment did not assign DigiDeal's rights to Shuffle Tech—it did not even contain the word "assign." Rather, its "Indemnification" provision stated that Shuffle Tech, which advanced funds to DigiDeal for the Nevada case, was "entitled to any reimbursement for fees and expenses and/or other damages resulting from the present patent infringement litigation payable by SHFL." PX729.10. Arizona law, which governs this agreement, distinguishes between an assignment of a legal right and an agreement to pay money that an entity collects based on its own legal right. Thus, in *Armbruster v. WageWorks, Inc.*, 953 F. Supp. 2d 1072, 1076 (D. Ariz. 2013), an ex-wife did not assign any rights to her ex-husband by promising him the proceeds of a stock sale. Similarly, in *Sherman v. First American Title Ins. Co.*, 38 P.3d 1229, 1234-35 (Ariz. Ct. App. 2002), escrow instructions directing a broker to pay commissions to a saleswoman did not constitute an assignment where "the instructions themselves [did] not contain the words 'assign' or 'assignment.'" Under Arizona law, DigiDeal's promise to pay was not an assignment of rights.

Subsequent events confirm that DigiDeal did not assign its rights to Shuffle Tech in 2013. In April 2016, DigiDeal—not Shuffle Tech—filed the motion for attorneys' fees. DTX177. On August 2, 2016, DigiDeal, Shuffle Tech, and Poydras executed a Settlement Agreement that attempted to assign other rights to Shuffle Tech, but expressly disclaimed Shuffle Tech's interest in any recovery DigiDeal obtained in its attorneys' fees motion. PX26 at 4. And most important, neither Shuffle Tech nor DigiDeal ever told the Nevada Court that DigiDeal's motion might be *ultra vires*, even though the magistrate judge's recommended denial of that motion *was pending*

12

*at the district court* when they signed the Settlement Agreement that acknowledged DigiDeal's fees motion. Shuffle Tech's studied silence while it watched DigiDeal pursue fees both before and after the Settlement Agreement demonstrates that no assignment was desired or achieved. Having watched DigiDeal zealously litigate the fees motion and lose, Shuffle Tech can hardly invoke "equitable principles" to support its claim—advanced for the first time *after* SHFL prevailed— that the entire fee proceeding somehow was a nullity.

### B. The Nevada Court's Ruling Forecloses Both Theories Of DigiDeal's Claim.

The Nevada Court's ruling that SHFL used "reasonable methods" to enforce claims with "substantive strength" precludes both of DigiDeal's theories asserted by Shuffle Tech here. DTX2152. Plaintiffs do not dispute that the Nevada Court "considered and rejected" the predicate for DigiDeal's sham litigation claim. Dkt. 165 at 15. Their only argument is to invoke (without elaboration or discussion) this Court's prior suggestion that the decision of the Nevada Court might not be "final." As shown in Defendants' opening brief, it was. Br. 23-24.

As to DigiDeal's *Walker Process* claim, Plaintiffs point to this Court's summary judgment order, but that is no answer. At summary judgment, this Court acknowledged two elements of a *Walker Process* theory, yet considered preclusion only as to the first: that the defendant "obtained the patent by knowing and willful fraud on the patent office." Dkt. 165 at 16. Neither the Court nor Plaintiffs have addressed the ruling's effect upon the second required element: that the defendant "maintained and enforced the patent with knowledge of the fraudulent procurement." The Nevada Court conclusively resolved that issue by holding that "it was reasonable for SHFL to bring this enforcement action" and that SHFL "did not litigate this action in an unreasonable manner." DTX2152. The Nevada Court reached that decision notwithstanding DigiDeal's supposed evidence that SHFL defrauded the PTO by concealing material prior art and then brought unreasonable litigation to enforce fraudulently obtained patents. DTX0177-005; DTX2147-008.

13

Plain and simple, the Nevada Court repudiated the same argument DigiDeal is advancing here.

Plaintiffs also contend this Court lacks authority to revisit this purely legal issue—which SHFL raised and preserved in its summary judgment motion—because it was not raised in SHFL's Rule 50(a) motion. But the purpose of a Rule 50(a) motion "is to challenge the sufficiency of the evidence rather than the propriety of questions of law." *Houskins v. Sheahan*, 549 F.3d 480, 489 (7th Cir. 2008). Thus, "[t]he Seventh Circuit has held that a failure to expressly state all grounds or expressly state a sufficient argument when the motion is presented at the close of the evidence will not result in waiver if previously presented arguments (in an earlier Rule 50(a) motion, in trial briefs, in motions in limine, on summary judgment, or otherwise) have made the moving party's position clear for the court and opposing party." *Petit v. City of Chicago*, 239 F. Supp. 2d 761, 767 (N.D. Ill. 2002); *see Jimenez v. City of Chicago*, 877 F. Supp. 2d 649, 673 (N.D. Ill. 2012) (Kennelly, J.) (discussing *Petit*). That precedent applies here. In any event, because the *Walker Process* argument is preserved for appeal and because this Court can correct its own preserved errors, the Court should reach the argument and hold DigiDeal's claims are entirely precluded.

## IV. THE JURY'S LIABILITY FINDING CANNOT STAND.

Plaintiffs' defense of the liability finding fails in four major respects. *First*, Plaintiffs' contention that the *Walker Process* instructions "reflected" the "specific intent to deceive" element ignores reality. Opp'n 26. The *Walker Process* claim undisputedly required Plaintiffs to prove by clear and convincing evidence a "clear intent to deceive" that demonstrates an "actual fraud upon the PTO." *Giuliano v. SanDisk LLC*, 705 F. App'x 957, 959-61 (Fed. Cir. 2017). The instructions omitted both essential phrases. Plaintiffs assert those concepts were somehow "reflected" in the instructions' reference to information that is "intentionally withheld" or "deliberately misrepresented." Yet a patent applicant can "intentionally withhold" information without clear intent to defraud. The instructions permitted the jury to find for Plaintiffs without finding the

14

required clear intent and actual fraud.

*Second*, Plaintiffs concede that "the *Walker Process* standard is nearly identical to or stricter than the *Therasense* standard." Opp'n 25. The final instructions, however, allowed the jury to find for Plaintiffs without *at least* the elements required by *Therasense*. That is the error—not the straw man Plaintiffs advance. Opp'n 24.

*Third*, the sham litigation instruction was flawed because it failed to distinguish between an intent to exclude competitors through a successful judgment or through the costs of litigation. Plaintiffs defend the instruction by pointing to the definition of anticompetitive conduct as conduct "that does not have a justification other than excluding competitors or limiting competition." Opp'n 26-27. That is no answer. An intent to exclude competitors does not suffice for "sham litigation" if the intent to exclude is to be accomplished by a judgment, rather than by the costs of litigation. Neither the Court's explanation of sham litigation nor the more general definition of "anticompetitive conduct" captured that critical distinction.

*Fourth*, Plaintiffs' argument that the general verdict can stand on either a *Walker Process* or sham litigation theory ignores contrary Supreme Court precedent. Opp'n 29. *See, e.g.*, *Sunkist Growers, Inc. v. Winckler & Smith Citrus Prods. Co.*, 370 U.S. 19, 29-30 (1962). The cases Plaintiffs cite (*Kossman v. Ne. Ill. Reg'l Commuter R.R.*, 211 F.3d 1031, 1037 (7th Cir. 2000) and *BP Amoco Chem. Co. v. Flint Hills Resources LLC*, 697 F. Supp. 2d 1001, 1017 (N.D. Ill. 2010)) differ from the facts here because, in those cases, the party challenging the verdict did not request a special verdict, which is precisely what Defendants did here. The general verdict cannot stand. *See Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 459-60 (1993).

## CONCLUSION

The Court should set aside the verdict and enter judgment for Defendants. Alternatively, the Court should order a new trial on all issues, order a new trial on damages, or alter or amend

the judgment as set forth above.

Dated: October 26, 2018

Respectfully submitted,

By: /s Craig C. Martin
    One of the Attorneys for Defendants

## CERTIFICATE OF SERVICE

I certify that on October 26, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a Notice of Electronic Filing to all counsel of record.


/s/ Craig C. Martin